UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
:
LEVI HUEBNER on behalf of himself and all : **MEMORANDUM OPINION**
others similarly situated, : **AND ORDER TO SHOW**
: **CAUSE**
Plaintiff, :
: 14-cv-6046 (BMC)
- against - :
:
MIDLAND CREDIT MANAGEMENT, INC., :
:
Defendant. :
----------------------------------------------------------- X

**COGAN**, District Judge.

Congress passed the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, for the salutary purpose of preventing the harassment of consumer debtors by professional debt collectors. The legislative history abounds with examples of the kind of abuse that occurred; from midnight calls, to calls occurring as frequently as fifty times in a single day, to calls to the debtor's children or employers for the sole purpose of embarrassing and pressuring the debtor. It continues to serve its important purpose in a number of cases. See, e.g., Rivera v. Nat'l Check Processing, LLC, No. 10-CA-605, 2011 WL 996340 (W.D. Tex. March 17, 2011).

In this Court, however, and I suspect in many others, the use of the statute has evolved into something quite different than its original purpose would suggest. The majority of cases that I see under the statute are brought by a handful of the same lawyers, based on complaints that read much more like legal briefs than complaints. Frequently, these cases are brought on behalf of the same debtor-plaintiffs, who seize on the most technical alleged defects in collection notices or telephone communications, often raising claims of "confusion" or "deception" regarding practices as to which no one, not even the least sophisticated consumer, could reasonably be confused or misled. These cases are often brought for the non-salutary purpose of

squeezing a nuisance settlement and a pittance of attorneys' fees out of a collection company, which it will often find cheaper to pay than to litigate. A cottage industry among limited players – plaintiffs' lawyers, debtors, and even defendants' lawyers – appears to be the primary progeny of the statute. Still, a technical violation of the statute is a violation, and although the social utility of this industry may be questioned, this technical use of the statute for economic gain violates no law or ethical precept.

Thus, despite misgivings as to what this statute has become, this Court has applied the statute, to the best of its ability, according to its language and the controlling case law that construes it, leaving it to Congress or higher courts to correct any excess application of the statute. The instant case, however, goes beyond anything that the Court has seen. It represents a deliberate and transparent attempt by a sophisticated debtor to entrap a collection company into a technical violation. Even more problematically, plaintiff chose to bring this action even though there is a tape recording showing that the attempt at entrapment utterly failed. The collection company in this case did everything by the book, and yet has still found itself a defendant in an FDCPA action. There are substantial questions about whether this action should be allowed to proceed and whether defendant is entitled to recover attorneys' fees for having had to defend it.

## BACKGROUND

Plaintiff's complaint asserts that defendant violated the FDCPA during a phone conversation that took place on October 17, 2013 regarding a debt obligation originally owed to Verizon. (In the cases before me, unpaid cellular phone bills seem to be the most frequently used basis for claims by debtors and their lawyers who are regular players in this industry.) It is important to note that it was plaintiff who initiated the call, and for reasons that now seem obvious, he chose to record it. His complaint alleges that defendant "wrongfully stated to the

2

Plaintiff that he could not orally dispute the debt" and that "he must have a reason to dispute a debt." The complaint states that defendant "made the above false statements in violation of 15 U.S.C. §§ 1692e(8) and 1692e(10)."

The parties appeared before the Court for an Initial Status Conference. At that conference, defense counsel explained that plaintiff had, in fact, been allowed to dispute his debt verbally. Indeed, according to defense counsel, immediately after the phone call between the parties, defendant issued a letter to plaintiff advising him that defendant was ceasing its collection efforts and was requesting the deletion of the item from plaintiff's credit reports. Thus, defendant argued that plaintiff was on notice that his verbal dispute – the one he alleges defendant refused to accept – resulted in an actual cessation of collection activity.

The parties agreed that if, in fact, a violation had occurred during the recorded telephone call, then even prompt dispatch of the cessation notice following the call would not absolve defendant of the technical violation. Plaintiff's counsel assured me that a violation had occurred because defendant had told plaintiff that the debt could only be disputed in writing, and that the tape recording would show it. I directed plaintiff's counsel to submit a copy of that recording to Chambers and defense counsel, which he did. A transcript of the phone call is annexed to this Memorandum Opinion and Order to Show Cause as Appendix A.

The recording is fifteen minutes long and consists of two calls. In the first, plaintiff simply leaves a voicemail. In the second, plaintiff asks a representative how he can dispute his debt. The representative transfers plaintiff to the consumer support department. Plaintiff asks the same question to the consumer support department representative, who responds that all he needs to do to dispute the debt is advise her of the dispute. When asked what he was disputing, plaintiff steadfastly declined to say any more than that the debt is "non-existent." The

3

representative said she was not clear about what that meant and asked a few questions to find out. Principal among these was whether plaintiff ever had an account with Verizon. As can be seen from the transcript, plaintiff would not tell her whether he ever had a Verizon account.

Moreover, his baiting of the representative is very apparent from the transcript. At one point, he asks her, "I don't understand, I can't take it off my credit card, my account without paying it?" The representative declined the bait: "That's not what I said, sir, I need to know what your dispute is before I can just delete it for you. So you're saying you want to dispute it, why is it that you want to dispute it?" Plaintiff then reverted to his refrain that the debt is "non-existent." For the third time, the representative asked, "Did you ever have Verizon, sir?" And plaintiff would only answer "I don't understand the question you ask me, this is a non-existent debt." She responds, "[i]t's a very straightforward question. Did you ever have Verizon service?" Plaintiff again evaded the question: "Okay, but I told you, you ask me, I told you, if you tell me, you're not going to take my dispute, that's fine. I'm just going to try to see if I can get more information." The substantive discussion in the call ended with the representative saying, "I'm trying to help you with your dispute, sir, but you're not really helping me help you."

It is notable that despite the representation in the complaint that plaintiff was told he could only dispute the debt in writing, which was reaffirmed by plaintiff's counsel at the Initial Status Conference, the word "writing" is never mentioned in the call. Again, it is undisputed that following this call, defendant immediately dispatched a cessation letter and no effort was made at collection.

## DISCUSSION

The FDCPA establishes a general prohibition against the use of "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The various subsections of § 1692e, sixteen in total, provide a non-exhaustive list of practices that fall within this ban. Plaintiff maintains that defendant's conduct violated two of these subsections, 1692e(8) and 1692e(10). The former prohibits communicating or threatening to communicate "credit information which is known, or should be known, to be false, including the failure to communicate that a debt is disputed." The latter prohibits the use of "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

Plaintiff alleges that defendant violated these two subsections by "[d]enying the Plaintiff the right to dispute the debt verbally"; "[r]equiring the Plaintiff to provide a valid reason to dispute the alleged debt"; "[f]ailing to communicate that a disputed debt is disputed; and "mak[ing] the above false statements in violation of" these two subsections. The recording does not support plaintiff's version of the events and there does not appear to be any good faith basis for this suit.

First, defendant's employee told plaintiff that all he needed to do to dispute his debt was to advise her of the dispute. There were no qualifications on that statement. The word "writing" was never mentioned. Second, immediately after the call, defendant sent plaintiff a letter telling him that it was ceasing its collection efforts. Far from denying plaintiff the right to dispute his debt, the phone conversation and follow-up letter make clear that plaintiff disputed his debt, and did so successfully. The phone conversation lacks any discernible false or deceptive statement or representation. The fact that defendant's representative wanted a smidgen of detail about the

5

dispute, when plaintiff was being obviously and intentionally vague, does not amount to a statutory violation.

This case has all the earmarks of a setup. Plaintiff and his lawyer decided they were going to outsmart the collection company and make a little money while at it. But this statute is not a game, and its purpose is not to provide a business opportunity. There are still consumers who are in fact harassed by debt collectors, albeit less often than prior to the statute's enactment. Those genuinely aggrieved parties are entitled to the protection of the statute. It should not be diluted to become a plaything for fast talking plaintiffs and their lawyers.

I am inclined to award defendant attorneys' fees and costs in connection with having to defend this action. See 15 U.S.C. § 1692k(a)(3). I am also inclined to award further sanctions under Federal Rule of Civil Procedure 11(b) and 11(c)(3). See Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393, 110 S.Ct. 2447, 2454 (1990). Plaintiff and his attorney are therefore Ordered to Show Cause by February 18, 2015 why this action should not be dismissed, with fees costs awarded under 15 U.S.C. § 1692k(a)(3), and sanctions issued pursuant to Rule 11.

**SO ORDERED.**

                                                                                            _____
                                                                                       U.S.D.J.

Dated: Brooklyn, New York
       February 11, 2015

# APPENDIX A

Automated:

Thank you for calling Midland Credit Management, a debt collection company.  To continue in English,  press 1.  If you know your party's five digit extension, enter it now.  Your call may be monitored or recorded, if you do not wish for this to happen, please advise the person who answers your call.
This is an attempt to collect a debt.  Any information obtained will be used for that purpose.  Please leave a voice message for David Strimson.   At the tone please record your message, when you are finished recording, hang up and press # for more options.

*********************

Hello, this is Mr. Huebner, I'd like to speak to Mr. Strimson, if you could kindly give me a call, I would appreciate it, 917-701-5432, 917-701-5432.  Thank you.

********************

Automated:

Thank you for calling Midland Credit, a debt collection company.  To continue in English, press 1.  If you know your party's five digit extension, enter it now, if you do not know your party's extension, press 6 to search by last name or for further assistance, press 0 now.  Your call may be monitored or recorded, if you do not wish for this to happen, please advise the person who answers your call.

********************

MCM Representative:  Thank you for calling MCM.  You are talking to Josh Gables, may I have the MCM account number please?

Mr. Huebner:  I really don't know the acct number but I got a thing on my credit report that said that I have something on there by Midland Funding.

MCM Representative:  Okay, so your first and last name please.

Mr. Huebner:  Levi, last name Huebner. H-U-E-B-N-E-R.

MCM Representative:  Okay, so this is the first time you're calling us you and you didn't receive any calls and not even a single letter from us.

Mr. Huebner:  I never received a letter from you, I just found out about this cause I had a, I got something on a credit report.

MCM Representative:  Alright, can you confirm for me the [inaudible] please?

Mr. Huebner:  It has an account number here, I can give you the account number that it says.

MCM Representative:  Is it with 10 digits?

Mr. Huebner:  Hold on.

MCM Representative:  Sure sir.

Mr. Huebner:  It starts off 855965.

MCM Representative:  855965, that's not the complete number sir.

Mr. Huebner:  Well, I'm looking at the account number that I could associate this with.  You know, I don't know where you got that acct number, the account number I have a different acct number let me see here, it's 7187569815.

MCM Representative:  7187569815

Mr. Huebner:  Yea.

MCM Representative:  Let me check.  Okay, that's the original account number sir, actually that's the telephone number that you had with Verizon.  That's a telephone number, it's a home telephone line that was activated by Verizon back in 2010 till 2011.

Mr. Huebner:  Okay.

MCM Representative:  Okay, and I'll give you the account number with our company, so write it down.

Mr. Huebner:  Okay.  Just a minute.

MCM Representative:  It is-

Mr. Huebner:  Just a minute, I'm getting a pen and paper if you don't mind.

MCM Representative:  Sure sure.

Mr. Huebner:  Okay, so the account, this is your account number.

MCM Representative:  Yes, I'm going to give you our account number

Mr. Huebner:  Yeah go ahead.

MCM Representative:  So 855

Mr. Huebner:  855

2

MCM Representative:  965

Mr. Huebner:  965

MCM Representative:  9948

Mr. Huebner:  9948. That's a Midland account number.

MCM Representative:  Yes, yes that is right, so the bill amount is for $131.21.

Mr. Huebner:  Did Midland send me a letter about this account?

MCM Representative:  Sir, I will verify the letter that was sent to you.  I think we also, the address which we mailed the letter to, it was in August, 478 Melbourne Street, first floor.  That's the address which we have for in Brooklyn, NY.  That's the only address we have.

Mr. Huebner:  And you sent the letter there?

MCM Representative:  Yes we sent the letter in the month of August when Verizon sold your account to us.

Mr. Huebner:  Okay, that's wonderful to hear that, and I want to know, if want to dispute the debt, what do I have to do?

MCM Representative:  Give me one minute, one minute sir.  Okay, the account number which I gave you, I'm going to connect your call with one of my departments, okay the dispute department, give that account number to them, and they will go ahead and explain to you the procedure how to dispute the account and how the account will be taken care of.  Okay, one minute, I'll transfer you to them.

********************

Automated:

[Please continue to hold for just a moment longer, we will on the line shortly to answer your call.  Thank you for calling Midland Credit Management, a debt collection company.  Your call may be monitored or recorded.  If you do not wish for this to happen, please advise the person who answers your call.  This is an attempt to collect a debt.  Any information obtained will be used for that purpose.  To continue in English, press 1.]

[Thank you for your continued patience, please hold for the next available agent.]

********************

MCM Representative:  Thank you for calling Midland Credit Management, my name is Emma Elliott, may I have the account number please?

Mr. Huebner:  Hi, how are you?

MCM Representative:  I'm good, thank you, how are you today?

Mr. Huebner:  Very good, the account number is 8559659948.

MCM Representative:  9948?

Mr. Huebner:  Correct

MCM Representative:  And what is your name please?

Mr. Huebner:  Levi Huebener, and may I ask your name?

MCM Representative:  My name is Emma.

Mr. Huebner:  E. How do you spell that?

MCM Representative:  E-M-M-A.

Mr. Huebner:  Okay.

MCM Representative:  That's 478 Melbourne Street your current address sir?

Mr. Huebner:  That's correct.

MCM Representative:  Okay. How can I assist you on this Verizon NY account?

Mr. Huebner:  What I want to know, what do I have to do if I want to dispute the debt?

MCM Representative:  Just advise me what your dispute is, and I can see if I can assist you with that.

Mr. Huebner:  And, how do I get it off my credit report?

MCM Representative:  Well we would need to work with what your dispute is in order to remove it sir, so why are you disputing?

Mr. Huebner:  I don't understand, I just can't get it off my credit report?

MCM Representative:  No sir, we can't just delete an account because the consumer wants it deleted.  We need to know why they want it deleted and what their dispute is.  I can assist you with your dispute here sir.

Mr. Huebner:  I don't understand, I can't take get it off my credit card, my account without paying it?

4

MCM Representative:  That's not what I said sir, I need to know what your dispute is before I can just delete it for you.  So you're saying that you want to dispute it, why is it you want to dispute it?

Mr. Huebner:  Because it's a non-existent debt.

MCM Representative:  Okay, can you elaborate as to what that means, did you already pay it with Verizon, did you never have Verizon?

Mr. Huebner:  Do you have a contact information?

MCM Representative:  What do you mean sir?

Mr. Huebner:  I don't understand what the questions you're asking me.

MCM Representative:  Sir you called in to dispute the debt, I need to know why you're disputing.  So I'm asking you questions about what your dispute is.

Mr. Huebner:  I'm telling you it's a non-existent debt

MCM Representative:  Okay, sir, but I don't know what that means, it is existing, cause its here in our system so why are you stating its non-existent?

Mr. Huebner:  Because it is non-existent.  How am I supposed to tell you, I can't prove a negative, its non-existent.

MCM Representative:  Okay sir, but I don't know what that means, I need you to elaborate so I can assist you with your dispute. Did you ever have Verizon?

Mr. Huebner:  Okay, so can I ask you a question?

MCM Representative:  Sure.

Mr. Huebner:  So, I don't understand what you're saying, do you have a contact number?

MCM Representative:  Yes sir, but my contact number is not going to assist you with your dispute.

Mr. Huebner:  Well, I don't understand, I want to kind of want to look into my files and see if I find anything, but I'm going to have to call you back.

MCM Representative:  Okay, our extension here is 32980.

Mr. Huebner:  I don't know, you mean the same number?

MCM Representative:  Yes sir.

Mr. Huebner: 800-265-8825. Extension

MCM Representative: 32980

Mr. Huebner: 32980. Okay, thank you Emma.

MCM Representative: You're welcome sir. So did you want to move forward with your dispute?

Mr. Huebner: I told you I dispute it, because it's a non-existent debt.

MCM Representative: I understand sir, but you haven't given me why you're disputing, you're just saying you're disputing, I need to know what you're disputing.

Mr. Huebner: It's a non-existent debt.

MCM Representative: Okay sir, but that's not a dispute.

Mr. Huebner: Okay.

MCM Representative: Did you ever have Verizon sir?

Mr. Huebner: I don't understand the question you ask me, this is a non-existent debt.

MCM Representative: It's a very straightforward question. Did you ever have Verizon service?

Mr. Huebner: Okay, but I told you, you ask me, I told you, if you tell me, you're not going to take my dispute, that's fine. I'm just going to try to see if I can get more information.

MCM Representative: I'm trying to tell help you with your dispute, sir, but you're not really helping me help you.

Mr. Huebner: Okay, so if I call back that number, if I have more information. If I call back that number, then I can reach you?

MCM Representative: You'll get someone in my department, sir, yes.

Mr. Huebner: I'll get someone in your department?

MCM Representative: We don't have direct extensions.

Mr. Huebner: Okay. So what department is this I'm speaking to?

MCM Representative: Consumer support.

Mr. Huebner: Okay, thank you very much.

MCM Representative: You're welcome sir.