IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **LEVI HUEBNER** on behalf of himself and all other similarly situated consumers,<br><br>      Plaintiff,<br> - against -<br><br>**MIDLAND CREDIT MANAGEMENT, INC.,**<br><br>      Defendant. | **Civil Action No. 1:14-cv-06046-BMC** |

**MIDLAND CREDIT MANAGEMENT, INC.'S REPLY TO
PLAINTIFF'S RESPONSE TO THE COURT'S ORDER TO SHOW
CAUSE AND MOTION TO VACATE, REASSIGN AND FOR LEAVE TO APPEAL**

              Matthew B. Johnson (MJ 1622)
              MARSHALL DENNEHEY WARNER
              COLEMAN  & GOGGIN, P.C.
              Wall Street Plaza
              88 Pine Street, 21st Floor
              New York, New York 10005
              (212) 376-6400
              MBJohnson@mdwcg.com

              *Attorneys for Defendant Midland Credit
              Management, Inc.*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES……………………………………………..………..iii

INTRODUCTION …………………………………………………………..……..1

LEGAL STANDARD…………………………………………………………......1

FACTS………………………………………………………………………….....2

ARGUMENT……………………………………………………………….………5

    I.     Midland did not state that Plaintiff could not orally dispute the debt………..5

    II.    Midland had no obligation to verify or investigate the account……………...7

    III.   The Court did not display bias against FDCPA suits in general and its

           impartiality is not open to question over a de minimus investment………….8

CONCLUSION…………………………………………………………………….10

# TABLE OF AUTHORITIES

**Cases**

Agence France Presse v. Morel, 934 F. Supp.2d 547 (S.D.N.Y. 2013). ......................................... 7

Farkas v. Ellis, 768 F. Supp. 476 (S.D.N.Y. 1991)...................................................................... 9

In re Pennie & Edmonds LLP, 323 F.3d 86 (2d Cir. 2003). ....................................................... 2

Jacobson v. Healthcare Fin. Servs., Inc., 516 F.3d 85 (2d Cir. 2008) ..................................... 9, 10

Jacques v. Solomon & Solomon P.C., 886 F. Supp. 2d 429 (D. Del. 2012) ............................. 7, 8

Jerman v. Carlisle, 559 U.S. 573 (2010).................................................................................. 9, 10

Randolph v. IMBS, Inc., 368 F.3d 726 (7th Cir. 2004) ................................................................. 7

Saunders v. NCO Fin. Sys., 910 F. Supp. 2d 464 (E.D.N.Y. 2012) ............................................. 2

Slanina v. United Recovery Sys., No. 11-1391, 2011 U.S. Dist. LEXIS 121356, 2011 WL
    5008367 (M.D. Pa. Oct. 20, 2011)........................................................................................... 8

United States v. Lauersen, 348 F.3d 329 (2d Cir. 2003) ............................................................... 9

**Statutes and Rules**

15 U.S.C. § 1692 *et seq.*............................................................................................................... 1

15 U.S.C. § 1692g........................................................................................................................ 8

15 U.S.C. § 1692e(11) ................................................................................................................. 6

15 U.S.C. § 1692g(a) ................................................................................................................... 5

15 U.S.C. § 1692k(a)(3)............................................................................................................... 1

28 U.S.C. § 144............................................................................................................................ 8

28 U.S.C. § 455(b)(4) .................................................................................................................. 9

Fed. R. Civ. P. 11(b) ................................................................................................................ 1, 5

On February 11, 2015, this Honorable Court issued an order for Plaintiff to Show Cause why this action should not be dismissed, and why sanctions should not issue, after the Court reviewed a recording of the call at issue and correctly concluded that Plaintiff was trying to set up an employee of Midland Credit Management, Inc. ("MCM") in an effort to manufacture a cause of action under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*.("FDCPA"). Plaintiff moved to vacate the Court's Order, sought reassignment of the case and requested leave for an interlocutory appeal. In so doing, Plaintiff again wastes the limited resources of the Court with frivolous arguments and as such, Plaintiff has failed to show cause[1] for allowing his meritless lawsuit to proceed.

## **LEGAL STANDARD**

The FDCPA provides that "[o]n a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs." 15 U.S.C. § 1692k(a)(3).

Rule 11(b) of the Federal Rules of Civil Procedure provides that an attorney who presents "a pleading, written motion, or other paper" to the court thereby "certifies that to the best of [his or her] knowledge, information, and belief formed after an inquiry reasonable under the circumstances," that the filing is: (1) not presented for any improper purpose, "such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation"; (2) "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law"; and (3) either supported by evidence or "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b). The purpose of Rule 11 "'is to deter baseless filings in district court and … streamline the

---

[1] If anything, the very basis of Plaintiff's conclusions of the Court's impartiality are so profoundly absurd as to justify sanctions in its own right.

administration and procedure of the federal courts.'" Saunders v. NCO Fin. Sys., 910 F. Supp. 2d 464, 470-71 (E.D.N.Y. 2012) (quoting Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393 (1990)). When a court acts *sua sponte,* either pursuant to its inherent powers or its statutory authority under Rule 11, "a finding of bad faith on the part of the attorney" is essential. In re Pennie & Edmonds LLP, 323 F.3d 86, 90 (2d Cir. 2003).

Although claims under the FDCPA are evaluated under the reasonable "least sophisticated consumer" standard, the Court need not apply this standard in a Rule 11 inquiry. Saunders, 910 F. Supp. 2d at 471. Plaintiffs and attorneys asserting claims under the FDCPA "are subject to the same good faith obligation as any other plaintiffs." Id.

## **FACTS**

On or about August 9, 2013, in connection with its efforts to collect Plaintiff's defaulted Verizon account ("the Account"), MCM sent an initial collection letter to Plaintiff's address of record, 478 Malbone St, Fl 1, Brooklyn, NY 11225-3200. Ross Decl. ¶¶ 2-3. The letter was not returned as undeliverable. Id.¶ 3. MCM began furnishing information regarding the Account to the major credit reporting agencies on September 25, 2013. Id. ¶ 4.

On October 17, 2013, Plaintiff called MCM. Ross Decl. ¶ 5. Plaintiff, an attorney, surreptitiously recorded the telephone conversation and provided a transcript of the conversation to the Court. Docket No. 20-2. MCM played Plaintiff a message stating, "This is an attempt to collect a debt. Any information obtained will be used for that purpose," then transferred him to an agent. Id. at 4:20-22; 5:2-4.[2] Plaintiff verified his identity to the agent, and the agent disclosed relevant debt information. Id. at 6:9-25. Plaintiff asked whether MCM issued a letter concerning the account, and the agent responded that MCM sent a letter to Plaintiff at his 478 Malbone

---

[2] Citations herein to Docket No. 20-2 utilize the page numbers assigned by the ECF system rather than the internal page numbers in the document.

2

Street, 1st Fl, Brooklyn, New York address. Id. at 8:4-13. Plaintiff stated, "That's wonderful to hear," and inquired how he could dispute the debt. Id. at 8:14-22. The agent transferred Plaintiff to an MCM department that handles disputes. Id. at 8:23-25, 9:2-8.

Once connected with the dispute department, Plaintiff again verified his street address, and stated that "[he] want[ed] to know what [he had] to do if [he] want[ed] to dispute the debt" (id. at 12:22-25; 13:2-7), to which the agent responded "Just advise me what your dispute is and I can see if I can assist you with that." Id. at 13:8-10. Plaintiff asked, "How do I get it off my credit report," and the agent replied, "Well, we need to, you know, work with what your dispute is in order to remove it, sir. So why are you disputing?" Id. at 13:13-16. Remarkably, Plaintiff responded that he did not understand the question, and simply asked MCM to remove his debt from his credit report. Id. at 13-17-19. The agent again asked for the basis of his dispute, and Plaintiff responded, "it is a nonexistent debt." Id. at 13:20-25; 14:2-14. Not understanding the response, the agent asked what Plaintiff meant – i.e., whether he was stating that he already paid Verizon, or that he never had a Verizon account. Id. 13:15-18. Plaintiff refused to explain the nature of his dispute, and evaded questions regarding the dispute in order to try to manufacture a claim. Finally, the MCM agent asked Plaintiff whether he ever had a Verizon account, and Plaintiff stated, "You asked me, I told you. If you're telling me you are not going to take my dispute, that's fine. I'm just going to try to see if I can get more information". Id. at 17:22-25; 18:2-6. The agent responded, "I am trying to help you with your dispute, sir, but you are not really helping me help you." Id. at 18:7-9. Having failed to entrap the MCM agent, Plaintiff concluded the call.

In light of Plaintiff's verbal dispute, at the conclusion of the call, MCM honored the dispute and ceased all collection efforts regarding the Account. MCM's account notes

3

unequivocally show MCM requested that the credit reporting agencies delete MCM's tradeline concerning the Account. Ross Decl. ¶ 6. Additionally, MCM generated a letter ("the Deletion Letter") to Plaintiff on October 17, 2013 (the same day as the telephone conversation with Plaintiff), advising Plaintiff that MCM was instructing the three major credit reporting agencies (TransUnion, Equifax and Experian) to delete the Account from Plaintiff's credit file.[3] Id. ¶ 7, Ross Ex. C. The Deletion Letter was mailed to Plaintiff on October 17, 2013, properly addressed to Plaintiff at 478 Malbone St, Fl 1, Brooklyn, NY 11225-3200. Id. ¶¶ 7- 8. The letter was not returned as undeliverable. Id. ¶ 8. MCM's request to delete the Account from Plaintiff's credit file was processed and transmitted to the three major credit reporting agencies on October 23, 2013. Id. ¶ 9, Ross Ex. B. In accordance with MCM's practice to ensure that its deletion requests are processed by the credit bureaus, MCM transmitted duplicate requests for deletion of the Account to the three major credit reporting agencies[4] on November 19, 2013, December 17, 2013, and January 16, 2014. Id. ¶ 10; Ross Ex. B.

After refusing to explain the nature of his dispute to MCM, for the first time through this Motion, Plaintiff introduces new facts: Verizon allegedly charged Plaintiff $131.21 for rewiring outside Plaintiff's residence, which Plaintiff alleges cannot properly be charged to him. Docket No. 20-14 at ¶ 6. Plaintiff further states that he informed Verizon that he disputed the debt and Verizon cancelled it. Id.

As Plaintiff notes, the August 9, 2013 initial collection letter states: "Communications concerning disputed debts, including an instrument tendered as full satisfaction of a debt, are to

---

[3] Plaintiff asserts that MCM's letter was "backdated to October 17, 2013" but provides no basis for this. Docket No. 20-14 ¶ 18. The letter was generated on October 17, 2013. Ross Decl. ¶ 7-8.
[4] Plaintiff argues that Experian's failure to delete the tradeline constitutes "proof" that MCM did not request tradeline deletion. Plaintiff forgets that MCM can merely request deletion; it cannot control the actions of the credit reporting agencies.

4

be sent to…" a specific address for MCM. Docket No. 11-1, p.2. The letter also effectively conveys the requisite notices under the FDCPA, including the notices required under 15 U.S.C. § 1692g(a), that "[u]nless you notify MCM within thirty (30) days after receiving this notice that you dispute the validity of the debt, or any portion thereof, MCM will assume this debt to be valid." Id. Also, the first page of the initial letter provides MCM's toll-free telephone number in four places: In the body of the letter ("We value your experience and understand that managing debt can be a difficult process … Visit www.midlandcreditonline.com to learn about our *Consumer Bill of Rights* or call (800) 265-8825 …"); under "Option 2" ("Call (800) 265-8825 and speak to a professional account manager to set up a plan"); next to a telephone symbol ("Call: (800) 265-8825") and under "Account at a Glance" ("Call: (800) 265-8825"). Docket No. 11-1, p. 1. The reverse side of the letter also provides that "[t]he records associated with the Verizon New York, Inc. account purchased by Midland Funding LLC, reflect that you are obligated on this account, which is in default. For further information, please call one of our Account Managers at (800) 265-8825." Id. at p.2.

## ARGUMENT

### I.     Midland Did Not State That Plaintiff Could Not Orally Dispute the Debt.

In order to show cause why his claim should not be dismissed, and in order to avoid the imposition of sanctions, Plaintiff must establish that his Complaint was not presented to harass, was warranted by existing law and was supported by evidence. Fed. R. Civ. P. 11(b). Plaintiff woefully fails in this endeavor. Plaintiff alleges that MCM "wrongfully stated to the Plaintiff that he could not orally dispute the debt" (Docket 3, ¶ 19); denied Plaintiff the right to dispute the debt orally without a "valid reason" (Id. ¶ 21); and "threatened the failure to communicate that a disputed debt is disputed." His claims are unsupported by his own recording.

5

When Plaintiff disputed the Account as "nonexistent," MCM's agent attempted to discover what he meant. <u>See</u> Docket No. 20-2. In response to, "[j]ust advise me what your dispute is and I can see if I can assist you with that" (<u>id.</u> at 13:8-10), Plaintiff obfuscated, stating that he did not understand and that the debt was "nonexistent" without further explanation. <u>Id.</u> at 13:17-19; 14:13-14. Asked "[d]id you ever have Verizon, sir?" Plaintiff responded, "I don't understand the question you are asking me. This is a nonexistent debt. I don't understand the question you are asking me." <u>Id</u>. at 17:15-21. In simple terms, Plaintiff *lied* for the purpose of creating a claim, and MCM's agent recognized Plaintiff's efforts to set a "trap" for MCM. Nonetheless, even in the face of Plaintiff's painfully obvious set-up attempt, MCM ceased collections and requested deletion of its tradeline furnished in connection with Plaintiff's Verizon debt.[5] Because both the recording and MCM's documented actions in requesting deletion of the account provide unrebutted evidence that Plaintiff's claims are truly frivolous, Plaintiff fails to meet the burden imposed under Rule 11(b). Forging on, in spite of the lack of evidentiary support for his claims, demonstrates Plaintiff's bad faith.[6]

The fact that MCM notified Plaintiff that "[t]his is an attempt to collect a debt, any information obtained will be used for that purpose," does not explain away Plaintiff's unscrupulous conduct in the course of his conversation with MCM. MCM is obligated to provide

---

[5] Plaintiff alleges, citing an excerpt of a tri-merged credit report, that the debt remains in his credit history. Docket No. 20-3. Significantly, this third party report supports MCM's position that it requested deletion, as is shows that Equifax and TransUnion removed the MCM tradeline. MCM can only request deletion; the credit bureau has to honor the request. If Experian is still reporting the tradeline, that does not give rise to any claims against MCM, but is an issue that Plaintiff needs to address with Experian.

[6] Indeed, on February 9, 2015, after listening to Plaintiff's recording, the undersigned contacted Plaintiff's counsel asking that Plaintiff dismiss the suit and informing him that MCM would seek its attorney fees and costs if Plaintiff refused. In response, counsel claimed that the recording buttressed Plaintiff's claims, that counsel could "waste [my] time on motion practice," or respond to the settlement demand he issued over a month prior.

this notice under 15 U.S.C. § 1692e(11). Plaintiff was free to explain why he disputed the debt, as he claims to have done with Verizon, but now claims that his evasiveness was merely intended to prevent MCM from using the information to attempt to collect the Account. It is difficult to fathom how explaining the nature of the dispute, including the claim that Verizon itself had agreed to cancel the debt, would cause MCM to redouble its collection efforts as Plaintiff implies. The assertion is plainly frivolous and warrants sanctions.

## II.     Midland Had No Obligation to Verify or Investigate the Account.

Plaintiff misguidedly asserts that MCM was obligated to either verify the Account or investigate its collection history before attempting to collect. Docket No. 20-14, § III. Once a consumer disputes a debt, the collector has a choice whether to verify the debt or cease collection efforts. Jacques v. Solomon & Solomon P.C., 886 F. Supp. 2d 429, 432-33 (D. Del. 2012) (citing 15 U.S.C. § 1692(b) and collecting cases). In response to Plaintiff's dispute, MCM ceased collection efforts and requested the deletion of its tradeline. Ross Decl ¶ 6. Although the FDCPA requires nothing further, MCM took the extra step of mailing Plaintiff the Deletion Letter.[7]

Similarly, Plaintiff's argument that MCM should have known that the debt was disputed because he had lodged disputes with other debt collectors lacks support under the law, and Plaintiff cites no cases indicating otherwise. See Docket No. 20-14, ¶¶ 32-33. "Courts do not impute to debt collectors other information that may be in the creditors' files – for example, that [the] debt has been paid or was bogus to start with." Randolph v. IMBS, Inc., 368 F.3d 726, 729 (7th Cir. 2004). Further, the FDCPA does not impose upon a debt collector a duty to investigate

---

[7] The "mailbox rule" "creates a presumption that properly addressed letters are received by the persons to whom they are addressed." Agence France Presse v. Morel, 934 F. Supp.2d 547, 572 (S.D.N.Y. 2013). Plaintiff confirmed his address during the October 17, 2013 call and it matched the address where MCM sent its letters. Thus, there is an unrebutted presumption that Plaintiff received both letters.

7

the validity of a debt prior to collection.[8] Jacques, 886 F. Supp. 2d at 433. Thus, even if Verizon was aware that Plaintiff had disputed the debt with it or with other collectors, that knowledge is not imputed to MCM and MCM was not obligated to inquire as to whether the debt had previously been disputed. The FDCPA, at § 1692g, provides the remedy for a consumer who disputes a debt – notify the collector attempting to collect the debt of the dispute.

### III. The Court Did Not Display Bias Against FDCPA Suits In General and its Impartiality Is Not Open To Question Over a *de minimus* Investment.

Plaintiff argues that the Court should recuse itself, pursuant to 28 U.S.C. § 144, due to its alleged bias against FDCPA suits and the Court's alleged financial interest in the outcome of this case. Section 144 requires recusal when a party submits an affidavit showing that "the judge before whom the matter is pending has a personal bias or prejudice . . . against him." In re Holocaust Victim Assets Lit., 09-CV-3215 (ERK) 96-CV-4849 (ERK), 2014 U.S. Dist. LEXIS 100741, *12 (E.D.N.Y. July 23, 2014) (quoting 28 U.S.C. § 144). "The mere filing of an affidavit of bias, pursuant to 28 U.S.C. § 144, however, does not require a judge to recuse himself." Id. (quoting Nat'l Auto Brokers Corp. v. General Motors Corp., 572 F.2d 953, 958 (2d Cir. 1978) (internal quotation marks omitted)). "Rather, the trial judge must review the facts included in the affidavit for their legal sufficiency and not recuse himself . . . unnecessarily." Id. at *13 (quoting Hoffenberg v. United States, 333 F. Supp. 2d 166, 171 (S.D.N.Y. 2004) (internal quotation marks omitted)). The Second Circuit has stated that:

> [J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion. Furthermore, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior

---

[8] In fact, such a duty would undermine Section 1692g of the FDCPA, rendering Section 1692g superfluous. See Slanina v. United Recovery Sys., No. 11-1391, 2011 U.S. Dist. LEXIS 121356, 2011 WL 5008367, at *2 (M.D. Pa. Oct. 20, 2011)(requiring debt collectors to investigate and verify a debt *before* collection would create an additional duty not found in the statute's plain language and would render 1692g(a)(4) superfluous).

8

> proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.

Id. (quoting LoCascio v. United States, 473 F.3d 493, 495-96 (2d Cir. 2007) (citations and quotation marks omitted)). Personal bias is an attitude arising from extrajudicial sources that results in an opinion on the merits based on something other than what the judge learned from his participation in the case. Id. at *14 (citations omitted).

Addressing a judge's financial interests in the outcome of a proceeding, 28 U.S.C. § 455(b)(4) provides that a judge shall disqualify himself when he knows that he, "individually or as a fiduciary, or [his] spouse . . . has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding." 28 U.S.C. § 455(b)(4). "Disqualification under section 455(a) requires a showing that would cause 'an objective, disinterested observer fully informed of the underlying facts [to] entertain significant doubt that justice would be done absent recusal.'" United States v. Lauersen, 348 F.3d 329, 334 (2d Cir. 2003) (citation omitted). A judge is presumed to be impartial and the moving party bears a substantial burden to overcome this presumption. See Farkas v. Ellis, 768 F. Supp. 476, 478 (S.D.N.Y. 1991).

Plaintiff premises his request for recusal largely upon the Court's rulings and opinions on the basis of facts introduced in this case. Plaintiff cites the Court's rejection of his frivolous complaint (Docket 20-14 ¶ 39), docket management (Id. at ¶40), concern that Plaintiff's counsel, unable to attend hearings in person, may not be in a position to try the case (Id. at ¶¶ 41-42), and the wording of the Court's Opinion and Order to Show Cause[9] ( ¶¶ 45-49). The Court, however,

---

[9] Contrary to Plaintiff's contentions, neither Jerman v. Carlisle, 559 U.S. 573 (2010) nor Jacobson v. Healthcare Fin. Servs., Inc., 516 F.3d 85 (2d Cir. 2008) reject use of the term "cottage industry" in the context of FDCPA suits. Rather, Jerman notes that risk of abusive

9

also notes the laudatory purposes of the FDCPA. Docket No. 16. None of the Court's statements or actions display a deep-seated favoritism or antagonism that would make fair judgment impossible. Rather, it is Plaintiff's conduct in advancing a frivolous claim, and his bad faith pursuit of a concocted FDCPA claim, that leads Plaintiff to his current predicament.

Plaintiff next asserts the that the Court's investment of $15,000 or less in iShares Russell 2000 Grown EFT ("Russell 2000"), which in turn holds over 500,000 shares of stock of MCM's corporate parent, Encore Capital Group, Inc. ("Encore"), explains the Court's alleged hostility towards Plaintiff. A review of the Court's May 2013 Financial Disclosure Report reveals that the Court's investment in the Russell 2000 had a gross value of $15,000 or less. Docket No. 20-11, p. 5. Encore stock makes up 0.0603% of the stock in the Russell 2000 fund. Docket No. 20-12, p. 4. Thus, the maximum economic interest of the Court in Encore comes to $9.05. This is hardly the type of financial interest that would cause an objective observer to entertain any doubt that justice would be done without recusal. Rather, the assertion is quite incredible, evidences bad faith and on its own constitutes grounds for sanction against Plaintiff and his counsel.

## **CONCLUSION**

**WHEREFORE**, MCM respectfully requests that the Court enter an Order:

1. Dismissing this action and awarding MCM its attorney fees and costs in connection with having to defend this action;

2. Awarding further sanctions pursuant to Fed. R. Civ. P. 11(b) and 11(c)(3);

3. Denying Plaintiff's request for leave to assert an interlocutory appeal; and

---

FDCPA suits is tempered by the court's authority to award attorney's fees to the defendant if a plaintiff brings suit in bad faith and for the purpose of harassment (as is justified in the present matter). Jerman, 559 U.S. at 598-99. In Jacobson, the Second Circuit rejected the lower court's application of the least sophisticated consumer standard but did not use the words "cottage industry." 516 F.3d at 90-91, 94-95.

    4.   Granting such other relief as the Court deems just and proper.

| | |
|---|---|
| New York, New York<br>Dated: April 3, 2015 | Respectfully submitted,<br><br>MARSHALL DENNEHEY WARNER<br>COLEMAN & GOGGIN, P.C.<br><br>By:_____/s/_____<br>Matthew B. Johnson (MJ 1622)<br>Attorneys for Defendant Midland Credit<br>Management, Inc.<br>88 Pine Street, 21st Floor<br>New York, NY 10005<br>(212) 376-6400 |

TO:    Elie C. Poltorak, Esquire
          Poltorak, PC
          Attorney for Plaintiff
          1650 Eastern Parkway, Suite 400
          Brooklyn, NY 11233