**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LEVI HUEBNER on behalf of himself and all others similarly situated, | X<br>:<br>: |
| *Plaintiff,* | :<br>:<br>: |
| vs. | **Case:   14-cv-6046 (BMC)**<br>:<br>: |
| MIDLAND CREDIT MANAGEMENT, INC., | :<br>: |
| *Defendant.* | :<br>X |

## PLAINTIFF'S REPLY

The Reply of Defendant ("Defendant's Reply"), Midland Credit Management ("Midland" or "Defendant"), misstates the relevant facts and law and fails to rebut the Response of Plaintiff, Levi Huebner's ("Huebner" or "Plaintiff").  Thus, the reply of Plaintiff and his counsel is warranted.

Plaintiff's Response dated March 18, 2015 ("Plaintiff's Response") evidences that the Memorandum Opinion and Order to Show Cause ("Memorandum Opinion") must be vacated, because the Court erred and applied the wrong standard. The Court viewed the Amended Complaint in the light most favorable to Defendant rather than the proper standard i.e. in the light most favorable to the Plaintiff.  The Amended Complaint alleges that in violation of the FDCPA, Midland refused to accept a dispute to a debt—a dispute Plaintiff made orally, Midland failed to communicate that the disputed debt is disputed, and Midland threatened to reject the dispute if the consumer did not disclose the reason for his dispute.  Rather than addressing Plaintiff's causes of action, Defendant's Reply and selective reasoning wrongly misconstrues the Amended Complaint as one reckoned on a Grammatical interpretation.  Moreover, Midland mislabels the judge as impartial even though the motion for reassignment does not do that. The reassignment is necessary under the Objective Observer standard in order to preserve the appearance of justice.

TABLE OF AUTHORITIES ................................................................................................iii

POINTS...............................................................................................................................1

I. First, Defendant's "Reply," which was filed without prior leave from the Court, lacks a procedural basis, since Defendant is not the moving party. Second, Defendant breached the Court's protocol by filing that Reply nine days late.  Third, to the extent Defendant opposes Plaintiff's motion to reassign, the Reply is still barred as filed two days late.  Defendant's late filing was without prior leave from the Court pursuant to FRCP Rule 7(b).  The Court should reject Defendant's untimely Reply. ....................................................................................................................1

II. The FDCPA requires accepting a dispute to a debt without the consumer's reason. Midland's "Declaration" admits violating that very FDCPA principle, by (1) refusing to process the dispute without first interrogating the consumer for a smidgen of detail, (2) refusing to communicate that a disputed debt is disputed. Alongside, Midland committed fraud, (3) by deceptively requiring a reason for a dispute, and (4) threatening to reject the consumer's dispute if the consumer does not provide a reason for the dispute. .............................................................................................2

 a. The Standard .............................................................................................3

 b. Applying the standard, the amended complaint states a cause of action upon which the Court may grant relief; thus, each of Defendant's contentions must be rejected. ...................................................................................................4

 c. Rather than addressing Plaintiff's causes of action, Defendant's Reply and selective reasoning wrongly misconstrues the Amended Complaint as one reckoned on a Grammatical interpretation. ...........................................................7

III. Midland's reply raises a genuine issue of fact which precludes the Court from issuing dismissal and requiring that this case proceed to discovery. Indeed, each set of facts furnished by Midland is riddled with deception, and reveals a pattern of violating the FDCPA. ...................................................................................................................9

IV. The standard for reassignment under 28 U.S.C. §§ 144 and 455 requires review from the eye of an Objective Observer for appearance of partiality, and mandates reassignment where there is an appearance regardless of whether the judge is actually partial or actually impartial.  The posture of this case is just so situated with the appearance of partiality. Indeed, the objective observer, viewing the appearance hostility of this case alongside Judge Cogan's Financial Disclosures, would say it appears that Judge Cogan has a substantial interest in favoring Encore. ..................14

CONCLUSION...................................................................................................................16

VERIFICATION.................................................................................................................17

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Biggs v. Credit Collections, Inc.*
  CIV-07-0053-F (W.D.Okla. 11-15-2007) ................................................................ 12

*Brady v. The Credit Recovery Company, Inc.,*
  160 F.3d 64 (1st Cir. 1998) ................................................................................ 4

*Carrillo v. Gillespie*
  2:12-cv-02165-JAD (D.Nev. 3-31-2015) .............................................................. 10

*Desantis v. Computer Credit, Inc.,*
  269 F.3d 159 (2nd Cir. 2001) ............................................................................ 4

*FTC v. Colgate-Palmolive Co.,*
  380 U.S. 374 (1965) .......................................................................................... 6

*Garcia v. Midland Credit Management*
  (D.Colo. 6-9-2014) ............................................................................................ 8

*Hooks v. Forman, Holt, Eliades & Ravin, L.L.C.,*
  717 F.3d 282 (2d Cir. 2013) .............................................................................. 3

*Jackson v. Hobbs*
  5:14-CV-314 JLH/BD (E.D.Ark. 4-2-2015) ........................................................ 10

*Johnson v. City of Shelby,*
  574 U. S. ____, 135 S.Ct. 346 (U.S. 11-10-2014)................................................ 7

*Jones-Bartley v. McCabe, Weisberg & Conway, P.C .,*
  2014 U.S. Dist. LEXIS 157571, 2014 WL 5795564 (S.D.N.Y. 11-6-2014)............... 4

*Kallal v. Ciba Vision Corporation, Inc.,*
  13-1786 (7th Cir. 2-24-2015) ............................................................................ 10

*Larsen v. Paramo*
  (N.D.Cal. 2-23-2015) ........................................................................................ 12

*Lee v. Kucker & Bruh*
  12 Civ. 4662 (BSJ) (S.D.N.Y. 2-25-2013) ........................................................... 12

*Martin v. LG Electronics USA*
  14-cv-83-JDP (W.D.Wis. 3-31-2015) .................................................................. 10

*Mathews v. United States,*
  485 U.S. 58 (1988) ............................................................................................ 12

*Mendez v. M.R.S. Assoc.,*
  2004 U.S. Dist. LEXIS 14901 (8-3-2004).............................................................. 4

*Mendez v. M.R.S. Assoc.,*
  2005 U.S. Dist. LEXIS 13705 (N.D.ILL. 6-27-2005)............................................. 3

*Montgomery v. Midland Credit Mgmt*
  (E.D. Pa 2014) ................................................................................................. 9

*Randall v. Midland Funding, LLC*
  (D.Neb. 7-23-2009) ......................................................................................... 8

*Richards v. U.S. Steel*
  12-cv-01195-JPG-DGW (S.D. ILL. 4-9-2015) .............................................. 10

*Russell v. Equifax A.R.S.*,
  74 F.3d 30 (2d Cir. 1996) ................................................................................ 6

*Semper v. JBC Legal Group*,
  2005 U.S. Dist. LEXIS 33591 (W.D. Wash. 9-6-2005) .................................. 4

*Smith v. Encore Capital Group Inc.*
  966 F. Supp.2d 817 (E.D.Wis. 8-23-2013) .................................................... 9

*U.S. v. Barta*,
  776 F.3d 931 (7th Cir. 1-28-2015) ............................................................... 12

*U.S. v. Delgado-Marrero*,
  744 F.3d 167 (1st Cir. 2014) ......................................................................... 12

*U.S. v. González-pérez*,
  12-1743 (1st Cir. 1-23-2015) ........................................................................ 12

*U.S. v. Hsu*,
  364 F.3d 192 (4th Cir. 2004) ......................................................................... 12

*U.S. v. Isnadin*,
  12-13474 (11th Cir. 2-14-2014) .................................................................... 12

*U.S. v. Isnadin*,
  742 F.3d 1278 (11th Cir. 2014) ..................................................................... 12

*U.S. v. Kopstein*,
  759 F.3d 168 (2nd Cir. 7-21-2014) ............................................................... 12

*U.S. v. Mayfield*,
  771 F.3d 417 (7th Cir. 11-13-2014) .............................................................. 12

*U.S. v. McLAURIN*,
  764 F.3d 372 (4th Cir. 8-22-2014) ................................................................ 12

*U.S. v. Mensah*,
  737 F.3d 789 (1st Cir. 12-16-2013) .............................................................. 10

*United States of America v. Ranalli*
  1:12-cr-00310-1 (M.D.Pa. 4-16-2014) .......................................................... 12

*Velderman v. Midland Credit Management, Inc.*
  (W.D.Mich. 2005) ............................................................................................ 8

*Zunogama v. Vigil*,
  14-cv-03013-KLM (D.Colo. 4-16-2015) ....................................................... 10

**Statutes**

15 U.S.C. §§ 1692e (8) ................................................................................. 4, 5

15 U.S.C. §§ 1692e(10) ............................................................................... 4, 5

28 U.S.C. § 144 ........................................................................................... 14, 17

28 U.S.C. § 1746 ......................................................................................... 10

28 U.S.C. § 455 ........................................................................................... 14

**Rules**

EDNY Local Rule 6.1 .................................................................................. 1

EDNY Local Rule 7.1(b) ............................................................................ 1

FRCP 8(a)(2) ............................................................................................... 7

FRCP Rule 11(b) ......................................................................................... 17

FRCP Rule 11(c)(2) ..................................................................................... 1

FRCP Rule 60(b)(1) ..................................................................................... 16

FRCP Rule 61 .............................................................................................. 7, 8

FRCP Rule 7(b) ........................................................................................... 1, 2

**Other Sources**

Can You Subtract Percentiles or Percentages? : Math Tips
    https://youtu.be/n754JstjfGM, YouTube, Jimmy Chang (last visited April 23, 2015) ............. 15

## POINTS

**I.** **First, Defendant's "Reply," which was filed without prior leave from the Court, lacks a procedural basis, since Defendant is not the moving party. Second, Defendant breached the Court's protocol by filing that Reply nine days late. Third, to the extent Defendant opposes Plaintiff's motion to reassign, the Reply is still barred as filed two days late. Defendant's late filing was without prior leave from the Court pursuant to FRCP Rule 7(b). The Court should reject Defendant's untimely Reply.**

1.      Pursuant to EDNY Local Rule 7.1(b), "an opposing party who seeks relief that goes beyond the denial of the motion shall comply as well with Local Civil Rule 7.1(a)(1) above," which requires a formal notice of motion specifying the relief sought. Defendant's Reply, which beseech "sanctions in its own right" (DE 21 p. 1) improperly requests the Court to dismiss the action based on inferences made in Defendant-Midland's affidavit, instead of viewing the Amended Complaint in the light most favorable to Plaintiff. Regardless, Defendant's plea for sanctions in its own right fails to meet the condition precedent enunciated in FRCP Rule 11(c)(2).

2.      It is long standing in this Court that procedurally, on a motion for summary judgment or a motion to dismiss, only the movant is entitled to reply. Thus, only the opening party may serve and file a reply, and that reply may solely rebut the opposing party's response. Defendant is not the opening party, as the Order to Show Cause was raised *sua sponte* by the Court, not Defendant. The non-moving Defendant does not have standing to reply to Plaintiff's Response to the order to show cause, especially without prior leave from the Court. Indeed, this concept that Midland replies on behalf of the Judge—with the threat of sanctions of its own right—advances the call for reassignment, where an objective observer would see an appearance that counsel for the non-movant replies as counsel of the Judge, the movant.

3.      Pursuant to EDNY Local Rule 6.1: "(2) any opposing affidavits and answering memoranda shall be served within fourteen days after service of the moving papers, and (3) any

reply affidavits and memoranda of law shall be served within seven days after service of the answering papers." Defendant improperly breached this Court's rules by filing a Reply nine days after its seven day deadline, without prior leave from the Court.  Likewise, Defendant's opposition to the Plaintiff's motion for reassignment breached this Court's rules by filing same two days after its fourteen day deadline, without prior leave from the Court. Thus, pursuant to FRCP Rule 7(b) the Court must reject Defendant's reply as untimely, filed without prior leave from the Court, and because Defendant failed to show the required element of "excusable neglect" and not seeking prior leave for an extension. Indeed, this advances the call for reassignment, where an objective observer would see an appearance of impropriety where the Court *sua sponte*  ordered Plaintiff to Amend his Complaint and *sua sponte* brought the within Order to Show Cause but the Court did not *sua sponte* lecture Defendant for its untimely Reply.

**II.    The FDCPA requires accepting a dispute to a debt without the consumer's reason. Midland's "Declaration" admits violating that very FDCPA principle, by (1) refusing to process the dispute without first interrogating the consumer for a smidgen of detail, (2) refusing to communicate that a disputed debt is disputed. Alongside, Midland committed fraud, (3) by deceptively requiring a reason for a dispute, and (4) threatening to reject the consumer's dispute if the consumer does not provide a reason for the dispute.**

4.        In sum, the Court should vacate its Memorandum Opinion, as pointed out in Huebner's Response, once the consumer states he or she is a disputing a debt, there is no legitimate basis to hold that consumer hostage to the phone under a dictate that the dispute cannot be communicated without gruelingly interrogating that consumer for a smidgen of detail. Likewise, the phone conversation reveals that Midland gruelingly interrogated Huebner for the smidgen of detail—the reason for the dispute.  Despite Huebner's rejection of the interrogation, Midland committed fraud under the FDCPA by threatening to reject Huebner's dispute if he does not forfeit a smidgen of detail—the reason for the dispute.  The phone conversation reveals that

Midland voluntary initiated the interrogation and that there was no entrapment. Whether Huebner initiated the phone call is immaterial to the cause of action or the recorded the conversation, because the phone call itself demonstrates that Huebner only sought to dispute a debt, and did so legitimately, orally and by telephonic communication. Rather than accepting the dispute, Huebner faced rejection of his dispute while being held hostage to the Defendant's grueling interrogation for a smidgen of detail—the reason for the dispute.  Midland's in its Reply admits to the authenticity of the phone recording. By failing to contest the foregoing events, Midland admits to these very FDCPA violations which are pled in the Amended Complaint in DE 3 ¶ 39.

     **a.** *The Standard*

     5.     To briefly enumerate the standard, which it seems, Midland has trouble in comprehending; The FDCPA affords consumers the right to dispute a debt.  *See Hooks v. Forman, Holt, Eliades & Ravin, L.L.C.*, 717 F.3d 282, 286 (2d Cir. 2013) ("The right to dispute a debt is the most fundamental of those set forth in § 1692g(a), and it was reasonable to ensure that it could be exercised by consumer debtors who may have some difficulty with making a timely written challenge").

     6.     The right to dispute does not hinge on the debtor's reason for the dispute. Because the general dispute rights afforded by the FDCPA give the debtor an unconditional right to contest or dispute any debt. The reason the right to dispute is unconditional is to protect the debtor from becoming the victim of a grueling cross-examination by the debt collector; otherwise, the consumer would unjustly be subject to a debt collector's self-governing process of harassment, interrogation, deliberation, and determination. *See Mendez v. M.R.S. Assoc.,* 2005 U.S. Dist. LEXIS 13705 (N.D.ILL. 6-27-2005) ("There is no requirement that the consumer have

a valid reason for disputing the debt") along with 2004 U.S. Dist. LEXIS 14901 (8-3-2004) ("A consumer is entitled to dispute the validity of a debt for a good reason, a bad reason, or no reason at all."); *also see Desantis v. Computer Credit, Inc.*, 269 F.3d 159, 162 (2nd Cir. 2001) (The FDCPA "gives the consumer the right to notify the debt collector that the debt 'is disputed'," also "A recipient, especially if unsophisticated, might well have understood that the collector's obligation to obtain verification would arise only if the consumer presented a valid reason for nonpayment. That would be inconsistent with the required message."); *Brady v. The Credit Recovery Company, Inc.*, 160 F.3d 64, 66 (1st Cir. 1998); *Semper v. JBC Legal Group*, 2005 U.S. Dist. LEXIS 33591 (W.D. Wash. 9-6-2005) ("the statute does not give debt collectors the authority to determine unilaterally whether a dispute has merit or whether to comply with the requirements of the FDCPA in a given case . . . 'failure to communicate that a disputed debt is disputed' violated the statute."); and *Jones-Bartley v. McCabe, Weisberg & Conway, P.C* ., 2014 U.S. Dist. LEXIS 157571, 2014 WL 5795564 (S.D.N.Y. 11-6-2014):

> "Nevertheless, Plaintiff has stated a claim for an FDCPA violation based on this language. Although Defendant's letter does not request that the recipient indicate a 'valid' reason for the dispute, *DeSantis* did not turn on this fact; instead, it held that a hypothetical least sophisticated consumer 'might well have understood' the notice to mean something that 'would be inconsistent with the [statutorily] required message.' Id. at 162. It further defined the 'required message' as one notifying the consumer of his or her 'right to notify the debt collector that the debt 'is disputed,' and it held that the consumer may exercise this right 'regardless of the absence of a valid reason for nonpayment.' Id. Because the statute, under *DeSantis*, does not require a 'valid reason,' and because it also just as surely does not require an 'invalid reason,' the clear implication of the Second Circuit's interpretation of the statute is that it requires no reason at all. Therefore, to the extent that Plaintiff alleges that Defendant's letter notifies the recipient that he or she must 'indicate the nature of the dispute,' Plaintiff has stated a claim for an FDCPA violation.

    **b.** ***Applying the standard, the amended complaint states a cause of action upon which the Court may grant relief; thus, each of Defendant's contentions must be rejected.***

    7.     The amended complaint alleges that the Defendant violated 15 U.S.C. §§ 1692e (8) and (10) by "[d]enying the Plaintiff the right to dispute the debt verbally"; "[r]equiring the

Plaintiff to provide a valid reason to dispute the alleged debt"; "[f]ailing to communicate that a disputed debt is disputed; and "mak[ing] the above false statements in violation of" 1692e (8) and (10). (DE 3 ¶ 38).  Indeed, Defendant confirms that the recording supports Plaintiff's version of the events and that Plaintiff has a good faith basis for this action.

8.      Midland acknowledges—and the phone recording supports the contention—that Midland told Huebner that he cannot dispute the debt without providing a smidgen of detail as to the reason for the dispute (DE 21 p. 1). As enumerated in Plaintiff's Response, ¶¶ 13-15, Midland verbally denied Huebner's right to dispute, and effectively demanded a "valid" basis for the dispute; a violation which is in contravention to the applicable standard. Thus, prongs (a) and (b) of the first cause of action in the Amended Complaint (DE 3 ¶ 39) clearly state a cause of action.

9.      Furthermore, by requiring a "valid" reason to dispute a debt and refusing to communicate that the disputed debt is disputed, in violation of 15 U.S.C. § 1692e Midland used a "false, deceptive, or misleading representation or means in connection with the collection of any debt" and limited "the general application of. . .  (8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." Midland fully acknowledges—and the phone recording supports the contention—that Midland verbally told Huebner that it refuses to process his dispute without first interrogating him for that smidgen of detail about the nature of the dispute.  Midland fully acknowledges—and the phone recording supports the contention—that Midland verbally refused to communicate that a disputed debt is disputed, because Huebner has not furnished that smidgen of detail about the nature of the

dispute.  Applying the standard enumerated *supra*, prongs (b), (c) and (d) of the first cause of action in the Amended Complaint (DE 3 ¶ 39) clearly state a cause of action.

10.     Moreover, it was a material misrepresentation of Midland to verbally threaten Huebner that he cannot dispute a debt without providing a valid reason for the dispute. Applying the standard enumerated *supra*, prong (d) of the first cause of action in the Amended Complaint (DE 3 ¶ 39) clearly states a cause of action.

11.     The requiring of a "valid" reason for the dispute was a conscious decision that Midland voluntarily made. When a debt collector chooses to ask the debtor about the nature of the dispute the debt collector has chosen to walk a fine line between permissibly accepting and notating a dispute and impermissibly assessing the merits and reason of the dispute. In other words, a debt collector may not evaluate the merit of a dispute; it must make clear to the least sophisticated debtor that its questions as to the nature of the dispute are made, without passing judgment as to the merit of the dispute, that those questions will not affect the consumer's ability to dispute the debt. Clearly, the phone transcript reveals that Midland told Huebner that not providing a "valid" reason to Midland does affect Huebner's right to dispute the alleged debt. *See Russell v. Equifax A.R.S.*, 74 F.3d 30, 35 (2d Cir. 1996) ("As the Supreme Court has held in the general context of consumer protection — of which the Fair Debt Collection Practices Act is a part — it does not seem unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line." quoting *FTC v. Colgate-Palmolive Co.*, 380 U.S. 374, 393 (1965)).

12.     It was Midland's conscious choice to interrogate Huebner for that smidgen of detail by demanding a "valid" reason for the dispute.  To the extent that Midland insisted that Huebner must furnish a smidgen of detail about the "validity" of the dispute, Midland is liable

for violations of the FDCPA.  It makes no difference whether Huebner's answers provided any reason to the dispute or whether Huebner said it is a Nonexistent Debt; it also makes no difference as to whether Midland sent a cessation notice; the FDCPA violation persists, and Midland is liable to Plaintiff.  Indeed, Midland fully acknowledges—and the phone recording supports the contention—that at no point in the phone conversation did Midland communicate to Huebner that the dispute of the alleged debt is processed.

     **c.** ***Rather than addressing Plaintiff's causes of action, Defendant's Reply and selective reasoning wrongly misconstrues the Amended Complaint as one reckoned on a Grammatical interpretation.***

     13.    Prong (a) of the first cause of action in the amended complaint alleges that Midland "Den[ied] the Plaintiff the right to dispute the debt verbally." (DE 3 ¶ 39).  Based on the word "verbally" Defendant's Reply is needlessly obsessed with the word "orally" used merely three times in the Amended Complaint. Thus, prong (a) should be clarified that the cause of action is for "Denying the Plaintiff the right to dispute the debt [a denial which Midland made] verbally" or "Verbally denying the Plaintiff the right to dispute the debt." This entire uproar with the words "verbally" and "orally" boils down to the absurdity of a grammatical misinterpretation, which should be corrected by further leave to amend the complaint, rather than sanctions.

     14.    In contravention of FRCP Rule 61, which requires the Court to disregard all such errors and defects that do not prejudice a party, Midland insists without showing any prejudice that the Court must burden itself by disregarding well settled Supreme Court precedent, of the "Fed. Rule Civ. Proc. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *See Johnson v. City of Shelby*, 574 U. S. ____, 135 S.Ct. 346 (U.S. 11-10-2014).  As discussed in Plaintiff's Response, to the extent that the Amended Complaint appears—or is misconstrued—as alleging that during the phone

recording the Defendant stated that it required that the dispute must be in writing[1]; such concept is a mistake, which FRCP Rule 61 mandates disregarding, because that mistake does not affect any party's substantial rights, and this can easily be corrected by further amendment of the complaint.

15.     Nonetheless, Midland fully acknowledges in its Reply—and its backdated collection letter supports the contention—that pursuant to its company policy Midland does not accept disputes to debts unless they are made in writing. This is evidenced in its collection letter wherein the Defendant demands that, "Communications concerning disputed debts . . . are to be sent to: 8875 Aero Drive, Suite 200, San Diego, CA 92123; Attn: Consumer Support Services." The letter simply does not inform the consumer that the dispute can be made orally by phone, a posture where Midland deceives the least sophisticated consumer of its rights to verbally or orally dispute a debt.

16.     Indeed, in district courts all across the board, Midland has a history of denying consumers the right to dispute a debt. In each of the following cases: the district courts found that the debtor's complaint stated a claim. *See Garcia v. Midland Credit Management* (D.Colo. 6-9-2014)(denying summary judgment where plaintiff insisted the debt is **nonexistent**—as not owing the debt, but Midland refused to accept the dispute)(Exhibit B); *Randall v. Midland Funding, LLC* (D.Neb. 7-23-2009) ("Midland reported the debt to a credit reporting service without indicating the dispute" thus denying dismissal and also denied Midland's motion for sanctions for frivolous action)(Exhibit C);  *Velderman v. Midland Credit Management, Inc*. (W.D.Mich. 2005) (summary judgment in favor of plaintiff where Midland denied as invalid the dispute made

---

[1] Of course this begs the question; if Huebner could not effectively dispute the debt orally by phone without having to provide a valid reason, what other means would he have to dispute the debt other than by a written communication?

orally) (Exhibit D); *Smith v. Encore Capital Group Inc.* 966 F. Supp.2d 817, 826 (E.D.Wis. 8-23-2013) ("Denying motion to dismiss to the extent that Midland communicated false information to the credit bureaus") (Exhibit E); and *Montgomery v. Midland Credit Mgmt* (E.D. Pa 2014) ("A jury will decide whether Midland knew or should have known that reporting Plaintiff's debt to the credit agencies constituted a false statement.") (Exhibit G p. 6).

**III. Midland's reply raises a genuine issue of fact which precludes the Court from issuing dismissal and requiring that this case proceed to discovery. Indeed, each set of facts furnished by Midland is riddled with deception, and reveals a pattern of violating the FDCPA.**

17. First, in a substantial part, the Memorandum Opinion relies on issues of genuine fact the Court mistakenly drew in the light most favorable to Defendant, such allegations that Defendant made in its answer, joint statement, and upon the unverified hearsay representations of Defendant's attorney, made during the unrecorded telephonic conference. This case is in its pre-discovery stage and no motion for summary judgment was yet presented. Defendant's Reply confirms that genuine issues of fact remain, precluding the Defendant from proceeding to summary judgment, let alone for judgment on a motion for dismissal.

18. In its "FACTS," Midland declares that it "began furnishing information regarding the Account to the major credit reporting agencies on September 25, 2013" after sending the "initial collection letter" to Huebner "On or about August 9, 2013." (Docket Entry "DE" 21 p. 2). That assertion of Midland is blatantly false. Exhibit H in Plaintiff's Response clearly evidences that Midland began reporting the disputed debt to Experian on July 1, 2013. (DE 20-9). Indeed, Exhibit H, which is a true copy of Huebner's credit report, printed on October 8, 2013, does not evidence the September 25, 2013 date.

19. Second, Midland's initial collection letter—backdated to August 9, 2013—insists that "On 07-22-2013, your Verizon New York Inc. account was sold to Midland Funding LLC,

and Midland Credit Management, Inc." (DE 20-4).  That assertion evidences, that Midland acted

in bad faith all along, in violation of the FDCPA; whereas Midland began reporting the disputed

debt to Experian on July 1, 2013, before acquiring the nonexistent debt. (*See* DE 20-9).

20.     Third, more troubling is the pattern of contradictions. Midland's Division

Manager, Angelique Ross declares[2] "the account history and records of the Verizon account of

Levi Huebner . . . was placed with MCM for servicing and assigned Midland account number

XXXXX9948." (DE 21-2 p. 1).  This assertion follows Midland's answer, also prepared by

Defendant's Counsel, which states *inter alia* that "MCM denies that it purchased Plaintiff's valid

---

[2] The proposed declaration by Angelique Ross fails to declare whether the statements made in it are true, or whether based on personal knowledge of the declarer, and fails to declare as true under the penalties of perjury. Thus, 28 U.S.C. § 1746 does not allow giving such Declaration force and effect, and should be "stricken for the purpose of Plaintiff's Response." *See Richards v. U.S. Steel* 12-cv-01195-JPG-DGW (S.D. ILL. 4-9-2015) at 6; *Zunogama v. Vigil,* 14-cv-03013-KLM (D.Colo. 4-16-2015) at 3; *Jackson v. Hobbs* 5:14-CV-314 JLH/BD (E.D.Ark. 4-2-2015) ("Unsworn statements will not be considered in deciding the motion for summary judgment. And to be considered, an affidavit must be based on the personal knowledge of the person who signs it"); *Martin v. LG Electronics USA* 14-cv-83-JDP (W.D.Wis. 3-31-2015) at n. 2 ("The proposed declaration fails to state that it was made under penalty of perjury as required by 28 U.S.C. § 1746 . . . the declaration fails to present information from the relevant time period. Even if the court allowed the belated declaration, it is unpersuasive."); *Carrillo v. Gillespie* 2:12-cv-02165-JAD (D.Nev. 3-31-2015) ("These documents lack this guarantee of truthfulness."); *Kallal v. Ciba Vision Corporation, Inc.*, 13-1786 (7th Cir. 2-24-2015)("Kallal failed to satisfy it"); *U.S. v. Mensah*, 737 F.3d 789, 806 (1st Cir. 12-16-2013) ("making a statement 'under oath' commonly is associated with a verbal swearing — such as that traditionally required of witnesses at a trial — federal law recognizes that oaths may be in writing and treats a written statement 'subscribed . . . as true under penalty of perjury' as equivalent to such a penned oath"). Ross's proposed declaration contains no sufficient declaration or magic words subscribing to the content provided. Indeed, the notary in the proposed declaration clearly states that an "officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document." (*See* DE 21-1 p. 3). Furthermore, the proposed declaration fails to present information from the relevant time period by omitting material information, such as the July 1, 2013 timelines—the date when Midland began the negative reporting on Huebner's credit report—and the basic information as to how Midland acquired the disputed debt, the proposed declaration is evasive of key facts. Moreover, the proposed declaration does not include the specifics of the deletion request; the mere words "Delete Entire Account (for reasons other than fraud)" without more information is vague.

and delinquent Verizon debt." Yet, Midland's initial collection letter—backdated to August 9,

2013—insists that "On 07-22-2013, your Verizon New York Inc. account was sold to Midland

Funding LLC, and Midland Credit Management, Inc." (DE 20-4), a written statement that goes

along with what MR. GABLES said to Huebner: "Verizon sold your account to us." (DE 2-20

p.7).  Assuming what Defendant's counsel asserts is true, that the alleged debt was assigned—

not sold to Midland; by not being truthful as to how Midland acquired the disputed debt, a

material misrepresentation was communicated by Midland to Huebner, over the phone and by

letter, further violating the FDCPA on the status of the alleged debt by communicating to

Huebner that the alleged debt was sold to Midland.  Indeed, on Huebner's current credit report,

at one place Midland Credit Management claims to own the Nonexistent Debt, at another place

Midland Funding LLC claims to own the Nonexistent Debt, at another place claiming that

Verizon owns the Nonexistent Debt. (Exhibit A). The standing question, how the disputed debt

made its way to Midland is a genuine issue of fact, especially since Midland raised a defense that

Huebner's dispute to the alleged debt was untimely.

　　　21.　　　Fourth, even Defendant concedes that Huebner orally asked the Midland

operators "I want to know what do I have to do if I want to dispute the debt." (DE 20-2 p. 12).

The answer Huebner repeatedly got, "We need to know why they want it deleted and what their

dispute is." (Id). Throughout the entire phone conversation, Midland insisted that it cannot

process the dispute without first interrogating Huebner for a smidgen of detail—the reason for

dispute.  The conversation itself reveals that Midland voluntarily insisted on that smidgen of

detail, despite Huebner's objection.  Indeed, in the entire phone record, whether audio or

transcribed, there is simply no evidence whatsoever of any inducement, entrapment, force, or any

lack of predisposition on the part of Midland.[3] The insistence or defense that Midland was

entrapped or induced to interrogate Huebner for the smidgen of detail, if anything—at the most,

is a genuine issue of fact that Midland must prove before a jury with credible evidence, and at

this stage cannot and should not be viewed in the light most favorable to defendant.[4]

      22.     Fifth, Midland insists that it "began furnishing information regarding the Account

to the major credit reporting agencies on September 25, 2013." (DE 21 at p. 2). However, before

Huebner contacted Midland the tradeline began appearing on Huebner's credit report starting

---

[3] The standard for a "valid entrapment defense has two related elements: government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in criminal conduct." *See U.S. v. Kopstein*, 759 F.3d 168, 173 (2nd Cir. 7-21-2014) (citing *Mathews v. United States*, 485 U.S. 58, 63 (1988)) also see *U.S. v. Delgado-Marrero*, 744 F.3d 167 (1st Cir. 2014) ("It is black-letter law that an entrapment defense has two elements"). "The defendant bears the burden of presenting credible evidence of government inducement." *Kopstein* at Id.

    *See also United States of America v. Ranalli* 1:12-cr-00310-1 (M.D.Pa. 4-16-2014) ("Defendant was not predisposed to sell the drugs and was induced through repeated urging, this allegation of entrapment does not meet the standard necessary for a due process violation under relevant case law."); *U.S. v. Isnadin*, 12-13474 (11th Cir. 2-14-2014) at 31 ("The defendant bears an initial burden of production to show that the first element, Government inducement, is met"); *Larsen v. Paramo* (N.D.Cal. 2-23-2015) ("a recording device at the behest of the investigators does not amount to entrapment."); and *U.S. v. McLAURIN*, 764 F.3d 372 (4th Cir. 8-22-2014)("The assertion of an entrapment defense does not justify admission of every bad act ever done by the defendant.")

    Also see *Lee v. Kucker & Bruh* 12 Civ. 4662 (BSJ) (S.D.N.Y. 2-25-2013) (granting quash to subpoena seeking to establish entrapment defense in a FDCPA case); and *Biggs v. Credit Collections, Inc*. CIV-07-0053-F (W.D.Okla. 11-15-2007) at 7 (in FDCPA case, "This entrapment defense is another disputed circumstance that is relevant to a determination" by trial, thus denying summary judgment).

[4] "The question of entrapment is generally one for the jury, rather than for the court." *Kopstein* at 181 also *U.S. v. Barta,* 776 F.3d 931, 936 (7th Cir. 1-28-2015); *U.S. v. Mayfield*, 771 F.3d 417, 427 (7th Cir. 11-13-2014); *U.S. v. Isnadin*, 742 F.3d 1278, 1303 (11th Cir. 2014) ("entrapment as a matter of law is a sufficiency of the evidence inquiry"); and *U.S. v. Hsu*, 364 F.3d 192 (4th Cir. 2004).  Entrapment requires a plus factor of conduct which "include[s], excessive pressure, such as the use of intimidation, threats, or dogged insistence, and taking advantage of an alternative, non-criminal type of motive." *See U.S. v. González-pérez*, 12-1743 (1st Cir. 1-23-2015) at 9, a showing that Midland has yet to make.  "Operations which merely give a defendant an opportunity to commit a crime, including sting operations, ordinarily do not constitute entrapment." *Id*.

July 1, 2013, as evidenced by Huebner's credit report printed on October 8, 2013.  (DE 20-9). As such, the September 25, 2013 date Midland asserts it began collection is disputed as being a doctored date.

23.     Sixth, Midland claims "In light of Plaintiff's verbal dispute, at the conclusion of the call, MCM honored the dispute and ceased all collection efforts regarding the Account." (DE 21 p. 3). At the same time, Midland claims it generated a letter dated October 17, 2013[5] indicating that "we have instructed the three major credit reporting agencies to delete the above-referenced MCM account from your credit file. However, as demonstrated in Plaintiff's Response, Midland continues the negative tradeline on Huebner's credit report to this very day, without communicating that the disputed debt is disputed. Thus, Midland's assertion that it communicated Huebner's dispute is a genuine issue of fact.  Midland's assertion that it has no control over the credit reporting agencies is belied by the very fact that after Huebner contacted Midland to dispute the nonexistent debt, Midland was able to change its status date to September 25, 2013 instead of July 1, 2013.

24.     Indeed, a true copy of Huebner's current credit report shows that neither Midland nor Verizon deleted the negative account from Trans Union but Midland continues the tradeline under its sister name of Midland Funding LLC. Furthermore, with Equifax, Midland clearly reported the account was opened on July 1, 2013, which is about twenty-two (22) days before Midland claims it bought or was assigned the Verizon account.  Moreover, the overall deception that Midland is playing here shows that Midland never deleted its tradeline from Huebner's

_____

[5]  Notably, Defendant in its Reply contends that it did not direct the credit reporting agencies to delete its tradeline until October 23, 2013, over a week after sending the supposed cessation letter stating "we have instructed the three major credit reporting agencies to delete the above-referenced MGM account from your credit file." DE 21-1 Exhibit B. Thus, the October 17, 2013 letter is deceptive and in violation of the FDCPA by miscommunicating the status of an alleged debt.

credit report, and has every intention to continue the negative reporting.  If anything, Midland

Credit Management is hiding its continued collection activities under the umbrella of Midland

Funding LLC, further violating the deceptive proscriptions, prohibited by the FDCPA.

**IV.    The standard for reassignment under 28 U.S.C. §§ 144 and 455 requires review
from the eye of an Objective Observer for appearance of partiality, and mandates
reassignment where there is an appearance regardless of whether the judge is
actually partial or actually impartial.  The posture of this case is just so situated
with the appearance of partiality. Indeed, the objective observer, viewing the
appearance hostility of this case alongside Judge Cogan's Financial Disclosures,
would say it appears that Judge Cogan has a substantial interest in favoring Encore.**

25.      Plaintiff's Response demonstrated the need for reassignment where an objective

observer would notice a long list comments by Judge Cogan appearing to ridicule the Plaintiff

and his counsel, along with comments Judge Cogan has expressed appearing to exhibit a deep

affection for Midland. Indeed, Midland squarely acknowledges that appearance of partiality

exists where there is a "display [of] a deep-seated favoritism or antagonism that would make fair

judgment impossible." (DE 21 p. 9).

26.      Midland does not explain why an objective observer would ignore as "judicial in

nature" the appearance how Judge Cogan antagonized Plaintiff and his counsel, such as aligning

them with his negative feelings to the majority of the FDCPA lawsuits filed by those plaintiffs',

wherein the Court states "the majority of cases that I see under the statute are brought by a

handful of the same lawyers based on complaints that read much more like legal briefs then

complaints."  Nor does Midland explain why an objective observer would ignore "as judicial in

nature" the appearance of affectionate comments Judge Cogan made praising Midland as "doing

everything by the book."

27.      An objective observer would not ignore the American Disabilities Act, which

Congress enacted as Federal Policy to afford individuals, confined to a wheel chair, access to

governmental buildings. When Plaintiff's counsel requested to appear by phone for the Initial

Status Conference because the streets were covered with snow; an objective observer could

perceive an appearance of hostility, in Judge Cogan's *sua sponte* statement of "whether counsel

can effectively represent his client if he cannot get to court" by wheel chair in inclement weather.

(DE 02/02/2015). Midland offers no logical reason as to why an objective observer would say it

is appropriate when a federal judge appears to ridicule an attorney's fitness for being confined to

a wheel chair.

       28.    Midland wrongly insists that Judge Cogan's financial interest in iShares Russell

2000 Growth ETF ("iShares"), a company that owns over 500,000 shares of Encore Capital

Group ("Encore"), is somehow de minimums; while an objective observer would see a

substantial investment, since iShares is a top tier investor of Encore. (*See* Exhibit G). First, as of

today, iShares notional value in Encore rates at $5,622,799.56, and the positive impact Encore

has on the returns of iShares is substantial; likewise any negative impact from Encore would be

substantial on iShares. Indeed, an objective observer would notice that iShares is one of Encore's

top 10 mutual funds investors (Exhibit G), and that Encore's percentile in iShares increased from

0.063% to 0.0764% over the past month. (Compare DE 20-13 with Exhibit H). Second,

Midland's percentile conversion is not scientific. It is long standing, even in elementary math,

that conversions from a percentile are unreliable. *See* https://youtu.be/n754JstjfGM;  In other

words, Midland's percentile conversion cannot scientifically inform anyone of Judge Cogan's

actual financial interest in Encore, since the "0.0603%" percentile originated from the division of

holdings iShares has to potential investors, and not the actual assets that iShares has invested in

Encore, yet that very percentile increased in less than 30-days. Indeed, according to Encore

disclosure in Exhibit G, iShares outstanding shares in Encore stand at 1.7%.  Moreover, 5 U.S.C.

§ 102 requires reporting all assets that exceed $1,000, which Judge Cogan properly did in his financial disclosures. All that matters is what an objective observer would say makes the appearance of impartial justice impossible, not the parties' estimation of the exact value of the judge's actual investment.

29.     Indeed, in the 2013 Financial Disclosure of Judge Cogan, which Plaintiff received on April 24, 2015, it appears that Judge Cogan has a portfolio in The Vanguard Group, Inc. ("Vanguard") under its 529 College Access portfolios (Exhibit J # 205-208)., a company which owns at least 10% of Encore (Exhibit G).  According to Encore, Vanguard under its parent name owns more than 6.2% of Encore's outstanding shares. (Exhibit G).  Likewise, the combined outstanding shares that Vanguard owns in Encore (i.e. Vanguard Small-Cap Index Fund, Vanguard Total Stock Market Index Fund, and Vanguard Explorer Fund) far exceed a 10% ownership. (Exhibit G).  Furthermore, an objective observer would notice that Vanguard themselves do not earmark its Encore holding to any particular fund, as iShares do; thus, Judge Cogan's 529 portfolio cannot be differentiated by an objective observer from Vanguard's ownership in Encore. (Exhibit K).    Moreover, an objective observer would see that in 2012, Judge Cogan's Vanguard portfolio exceeded $50,000 in value, and that in 2013 Judge Cogan's Vanguard Portfolio exceeded $15,000 in value.  Thus, the motion for reassignment should be granted in the interest of justice to preserve the appearance of justice in the eyes of the objective observer.

## CONCLUSION

**WHEREFORE,** Levi Huebner through Counsel respectfully requests the Court enter an Order:

(a) Pursuant to FRCP Rule 60(b)(1), (3), and (6) vacating the Court's Memorandum Opinion and Order to Show Cause; and

(b) Declining to impose any sanction on Plaintiff or his counsel; and

(c) Declining to decide this case *sua sponte* without discovery and summary judgment;

(d) Reassigning this case pursuant to 28 U.S.C. §§ 144 and 455 through the Clerk of the Court to another judge by random selection.

*In the alternative*, if any portion of the foregoing request for relief is denied, Levi Huebner respectfully requests from the Court to enter an order:

(e) Directing Levi Huebner to amend the complaint further to correct any presumed deficiency; and/or

(f) Granting leave to appeal before the entry of a judgment or any sanction; and/or

(g) Together with other relief the Court sees fit as just and reasonable under the circumstances.

## <u>VERIFICATION</u>

I Leopold Gross verify to Rule 11(b) of the Federal Rules of Civil Procedure and under the laws prohibiting perjury, that I conducted a reasonable inquiry to the facts and laws stated in the foregoing pleading, and certify in good faith that under the circumstances:

1. The factual allegations stated in the foregoing related to Elie C. Poltorak and Levi Huebner are true to the best of my knowledge.

2. The factual allegations stated in the foregoing related to the Defendant is made to the best of my knowledge by familiarity of the facts and statements Defendant or its agents made, while reserving the right to verify its veracity or dispute them.

3. The cited laws were read from Lois Law, LexisNexis, or West Law.

4. Signed as an affidavit for purposes of 28 U.S.C. § 144.

Dated: Brooklyn, NY
April 28, 2015

Respectfully submitted,

**POLTORAK PC**, *Attorneys for Plaintiff*

/ s / Leopold Gross
_____

By: Leopold Gross
Of Counsel to Poltorak PC

668 Crown Street
Brooklyn, NY 11233
Telephone: (718) 943-8815
Direct:      (212) 943-4300
Email: elie@poltoraklaw.com

# 14-cv-6046 (BMC)

## United States District Court
## Eastern District of New York

LEVI HUEBNER on behalf of himself and all others similarly situated,

*Plaintiff,*

- against -

MIDLAND CREDIT MANAGEMENT, INC.,

*Defendant.*

## PLAINTIFF'S REPLY

*By*: Leopold Gross
**Of Counsel To:**
**POLTORAK PC**,
Attorneys for Plaintiff
668 Crown Street
Telephone: (718) 943-8815
Direct:      (718) 753-1777
Email: elie@poltoraklaw.com