```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------  X
                                                            :
LEVI HUEBNER on behalf of himself and all                   :   **MEMORANDUM DECISION**
others similarly situated,                                  :   **AND ORDER**
                                                            :
                              Plaintiff,                    :   14 Civ. 6046 (BMC)
                                                            :
                - against -                                 :
                                                            :
MIDLAND CREDIT MANAGEMENT, INC.,                            :
                                                            :
                              Defendant.                    :
----------------------------------------------------------  X
```

**COGAN**, District Judge.

On February 11, 2015, I issued a Memorandum Opinion and Order to Show Cause ("Order to Show Cause") directing plaintiff to show cause why this action under the Fair Debt Collection Practices Act ("FDCPA") should not be dismissed, with costs awarded and sanctions issued, for having been brought in bad faith. See Huebner v. Midland Credit Mgmt., Inc., No. 14 Civ. 6046, ___ F. Supp. 3d ___, 2015 WL 569194 (E.D.N.Y. Feb. 11, 2015). Familiarity with the Order to Show Cause is assumed, but to summarize, a transcript of the recorded conversation that plaintiff, an attorney, had initiated with defendant debt collection agency strongly suggested that plaintiff had deliberately, but unsuccessfully, sought to entrap defendant into an FDCPA violation. Plaintiff then brought this action despite his failed effort at manipulation.

Plaintiff's attorney told me at the Initial Status Conference that his client's claim was based exclusively on the recorded conversation. He assured me that once I listened to the recording, I would see that defendant had told plaintiff that he could only dispute his debt in writing, which would violate the FDCPA. I issued the Order to Show Cause because, in fact, after the conference, when he produced the recording to me, the recorded conversation showed just the opposite of what counsel had represented. Moreover, the record showed that

immediately following the recorded conversation, defendant instructed the three major credit reporting agencies to delete plaintiff's account with defendant from his credit file.

In responding to the Order to Show Cause, plaintiff does not deny that he attempted to trick defendant into a violation of the FDCPA.[1]  Instead, he makes essentially two arguments. First, he claims that if I had a more complete record, which he has now supplied, I would have seen that defendant did, in fact, violate the FDCPA, for reasons to which he did not refer at the Initial Status Conference.  Second, he alleges that because the Order to Show Cause criticized abuses of the FDCPA by some attorneys and plaintiffs, and because of the manner in which I have managed this case, I have demonstrated bias that mandates my recusal.  As part of this argument, he contends that I have a financial interest in defendant, and therefore should not be hearing this case.  Based on these allegations, he moves to vacate the Order to Show Cause, to have me recuse myself, and to certify for appeal my ruling on these motions in the event I deny them.  Defendant has opposed plaintiff's motion, urging that there is neither merit to his case nor to his motion for recusal.

As shown below, plaintiff's motion for recusal is in part frivolous and entirely without merit.  Had plaintiff done his research, he would have learned that I have no financial interest, as that term is defined in the Code of Conduct for United States Judges, in defendant, and that nothing in the Order to Show Cause, or in my management of this case, approaches the level necessary to warrant disqualification.  With respect to the merits of plaintiff's case, to the extent that the Order to Show Cause was based on only a partial view of the facts (and it appears now that it was), it was because plaintiff's counsel, in violation of his obligations under Federal Rule

---

[1] Plaintiff, for the first time in his reply, suggests that "there is simply no evidence whatsoever" of inducement or entrapment.  If anything, he says, the insistence that defendant was induced by plaintiff to violate the FDCPA "is a genuine issue of fact".  Notably, this argument does not deny that plaintiff called defendant with the intent to manufacture this claim.  Plaintiff's intent is readily apparent from the transcript of the phone conversation between the parties.  See Huebner, 2015 WL 569194, at Appendix A.

2

of Civil Procedure 16, failed to give me any of the facts behind his claim other than his reliance on the recorded conversation, which proved nothing except plaintiff's failed attempt to entrap defendant.

Accordingly, for the reasons set forth below, plaintiff's motion for recusal and related relief is denied.[2] The case shall proceed in the normal course to determine if the new version of the claim that plaintiff has now set forth has any merit. However, I am sanctioning plaintiff's attorney for failing to participate in the Initial Status Conference in good faith as required by Rule 16.

I.   **The Recusal Motion**

In preparing his motion for recusal, plaintiff obtained copies of my publicly-available Financial Disclosure Reports ("FDRs") for the 2012 and 2013 calendar years. The FDRs disclose that I own shares in a substantial number of large, publicly traded mutual funds and exchange-traded funds ("ETFs"). Plaintiff apparently went through the trouble of looking up the holdings for each of these funds, and found that one of them, Ishares Russell 2000 Growth ETF, holds shares in Encore Capital Group, Inc., which plaintiff asserts is the parent company of defendant. Plaintiff also references my ownership of a portfolio in The Vanguard Group, Inc.

---

[2] As mentioned above, plaintiff also moves, pursuant to Federal Rule of Civil Procedure 60(b), to vacate the Order to Show Cause. However, "[b]y its terms, Rule 60(b) applies only to 'a final judgment, order, or proceeding.'" Johnson v. Askin Capital Mgmt., L.P., 202 F.R.D. 112, 113 (S.D.N.Y. 2001). Since the Order to Show Cause is not a final judgment, order, or proceeding, Rule 60(b) is not the proper vehicle to challenge it. To the extent plaintiff is making any motion beyond his recusal motion – and I doubt he is – it would properly be a motion for reconsideration pursuant to Local Civil Rule 6.3. Nevertheless, other than mentioning Rule 60(b) on the first and last pages of his memorandum of law, plaintiff does not provide any legal basis, let alone a sufficient legal basis, for why this relief should be granted.

In the alternative, plaintiff moves for leave to appeal pursuant to 28 U.S.C. § 1292 if any portion of his application is denied. Plaintiff does not offer any legal basis in support of this motion.

under its 529 College Access portfolios, which, plaintiff alleges, also owns shares in Encore.[3] Plaintiff therefore asserts that I have a financial interest in defendant, and must recuse myself from hearing this case.

Defendant points out that the ETF's investment in Encore constitutes 0.0603% of its holdings, and considering the amount of my investment in this ETF, my alleged "interest" in Encore comes to about $9, but this is beside the point. If I owned even $9 in shares of defendant's parent company, I would have to recuse myself. However, the law is quite clear that a judge who owns shares in a mutual fund or ETF does not thereby own the securities held by those mutual funds or ETFs.[4]

Canon 3C(1)(c) of the Code of Conduct for United States Judges provides that a judge must disqualify himself in a proceeding where he "has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be affected substantially by the outcome of the proceeding." However, it also states that "ownership in a mutual or common investment fund that holds securities is not a 'financial interest' in such securities unless the judge participates in the management of the fund." Code of Conduct for United States Judges Canon 3C(3)(c)(i). The Committee on Codes of Conduct has elaborated on this Canon in a published opinion:

> We approach our analysis with the following principle firmly in mind: that the Code should be interpreted to the extent reasonably possible to enable judges to invest in funds without transgressing the Code or engaging in a conflict of interest.

---

[3] Plaintiff asserts that "The Vanguard Group" owns "over 10%" of Encore, but that is misleading. The exhibits he annexes show that several different Vanguard funds own shares in Encore, but not all of those Vanguard funds are held by the 529 plan.

[4] The 529 plan is the same as a mutual fund for these purposes. It is actually a diversified portfolio invested in 15 different mutual funds.

4

> Canon 3C(1)(c) requires a judge to disqualify himself or herself when the judge knows that he or she "has a financial interest in the subject matter in controversy or in a party to the proceeding," or when the judge has "any other interest that could be affected substantially by the outcome of the proceeding." However, "ownership in a mutual or common investment fund that holds securities is not a 'financial interest' in such securities unless the judge participates in the management of the fund." Canon 3C(3)(c)(i). These Code provisions, read together, provide that investments in a mutual fund will normally avoid triggering recusal concerns with respect to the securities that the fund holds. Consistent with the "safe harbor" concept, the Committee has advised that investment in a mutual fund does not convey an ownership interest in the companies whose stock the fund holds. We also have advised that a judge who invests in a mutual fund has no duty to affirmatively monitor the underlying investments of the fund for recusal purposes.

Judicial Conference of the United States, Committee on Codes of Conduct, Advisory Opinion No. 106 (2014). The opinion expressly states that ETFs are the same as mutual funds for these purposes. And while there are limited exceptions to this rule, such as when the judge's interest in the fund could be materially affected by a particular litigation, none of them is even arguably applicable here. The point is thus not that my interest in defendant's parent corporation is *de minimis*; it is that under the rules, it is not a financial interest at all.

It is a serious matter for a party to accuse a judge of holding an undisclosed financial interest in a case before him. It is particularly serious here since plaintiff is not alleging an unknowing or technical violation.[5] Instead, he expressly alleges that I am hostile to his case because of this alleged financial interest. Yet in making this accusation, plaintiff did not research the relevant law with the same diligence he used to scrutinize the funds listed in my FDRs. His suggestion that I have a disqualifying interest in this case is frivolous.

The other grounds offered by plaintiff in support of his motion for recusal are similarly without merit. He first argues that the Order to Show Cause shows that I am biased against FDCPA cases in general. It is true that the Order to Show Cause noted that the statute is

---

[5] In fact, I had no knowledge that these securities were held by the ETF fund or the Vanguard portfolio until this motion.

5

frequently abused. However, judges have to be free to be able to relate those kinds of observations without triggering recusal. The public, and indeed Congress, are entitled to have the perspective of judges who witness litigation abuse, and who are in a unique position to identify such abuses for the public. See LoCascio v. United States, 473 F.3d 493, 495-96 (2d Cir. 2007) ("[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion. Furthermore, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.") (citations and quotation marks omitted); see also Caldwell v. Pesce, No. 14 Civ. 4196, 2015 WL 430382 (E.D.N.Y. Feb. 3, 2015) (recognizing that a motion for recusal may not be made upon a court's rulings or conduct); In re Holocaust Victim Assets Litig., No. 09 Civ. 3215, 2014 WL 3670998 (E.D.N.Y. July 23, 2014).

In fact, I am not the only Judge to comment on the frequent misuse of the FDCPA in this district. As Judge Dearie recently held:

> The statute . . . has evolved into something dramatically different than its original purpose would suggest. Enterprising and imaginative advocates have extended its protections to a wide variety of communications that, like the content in question here, do not on their face reflect obvious deception or dissembling. . . . In this Court's view, no reasonable assessment of the correspondence in question here – as in a growing number of cases before this Court – could be found to violate the letter or spirit of the Act.

Avila v. Riexinger & Assocs., LLC, No. 13 Civ. 4349, 2015 WL 1731542, at *12 (E.D.N.Y. Apr. 14, 2015).

Nevertheless, the Order to Show Cause clearly pointed out that despite the abuses that I, and others, have observed in cases under the FDCPA, I fully acknowledge and adhere to the obligation to review each case individually and to apply the law impartially, according to its

6

language and the case law construing it. No reasonable observer could conclude that I am required to recuse myself in FDCPA cases on the basis of such statements.

Plaintiff also argues that the way I have managed this case demonstrates my bias. His argument compiles trivial complaints. For example, he points that out I set the Initial Status Conference in this case for a date six weeks after he filed his amended complaint, even though he has 120 days to effect service under Federal Rule of Civil Procedure 4(m).[6] However, all of my Initial Status Conferences are set on this timetable, whether they are FDCPA cases or not (except in social security and habeas corpus cases). If a plaintiff requires more time to effect service, he tells me, and the conference is almost always adjourned. (In fact, it is usually defendants, not plaintiffs, who ask for more time before the Initial Status Conference, as most plaintiffs recognize their interest in prosecuting a case promptly.) Plaintiff's general complaints about my management of this case are even more unfounded since I granted all three of his requests to adjourn the Initial Status Conference as well as a fourth request to allow him to attend by telephone instead of in person.[7]

Plaintiff also points out that upon initial review of the case, I directed him to either file an amended complaint or show cause why the one initially filed should not be dismissed. The initial complaint constituted a teaching exercise in how not to draft a pleading. It contained pages and pages of case citations and discussion of case law along with other allegations that have no place in any complaint. An objective observer would recognize that I directed the filing of an amended complaint not because of any prejudice against plaintiff, but because his

---

[6] Rule 4(m) is likely to be amended, as of December 15, 2015, reducing the 120 day period to 90 days, thus emphasizing the need to accelerate the resolution of cases.

[7] Plaintiff's counsel goes so far as to accuse me of bias against the disabled because he is in a wheelchair. Of course, I did not know he was in a wheelchair until he told me in his request to appear by telephone, which I immediately granted.

7

complaint very clearly failed to comply with the "short and plain statement of the claim" requirement of Federal Rule of Civil Procedure 8(a).

Federal Rule of Civil Procedure 1 provides that the Rules should be applied to achieve the "just, speedy, and inexpensive determination" of cases, and the Rule is likely to be amended as of this December to emphasize the Court's and the parties' need to be actively involved in achieving those goals.[8]  By directing plaintiff to file an amended complaint or show cause why he should not have had to, I eliminated weeks or months of unnecessary motion practice that would have likely resulted in the dismissal of his complaint with leave to amend and, ultimately, the amended complaint that we have now.  Again, getting plaintiff closer to his presumed goal of resolving this case quickly is hardly evidence of bias.

Finally, plaintiff contends that since he submitted an affidavit in support of his motion, I am required by 28 U.S.C. § 144 to reassign his motion for recusal to another judge.[9]  Again, plaintiff misreads the law.  Section 144 requires a party to file an affidavit stating the reasons why the Court has a "personal bias or prejudice either against him or in favor of an adverse party."  Although plaintiff has filed an affidavit, it does not meet the explicit requirements set by the statute because it does not offer any meaningful allegations about this Court's bias or prejudice either in favor of, or against, any party.  See e.g., Manko v. Steinhardt, No. 12 Civ. 2964, 2012 WL 3779913, at *1 (E.D.N.Y. Aug. 30, 2012) (finding the "plaintiff's affidavit in support of her recusal motion legally insufficient because it does not allege, must less provide

---

[8] See Judicial Conference of the United States Committee on Rules of Practice and Procedure, Proposed Amendments to the Federal Rules of Civil Procedure, Rule 1 (Sept. 2014) (available at http://www.uscourts.gov/uscourts/RulesAndPolicies/rules/Reports/ST09-2014.pdf).

[9] It is worth noting that plaintiff also mentions 28 U.S.C. § 455 as a basis for his recusal motion.  However, plaintiff never discusses this statute (or any of its subsections) at any point in his memorandum of law.  For that reason, I can only address his argument pursuant to 28 U.S.C. § 144.

8

facts supporting a claim, that this court has a personal bias or prejudice either against [her] or in favor of any adverse party.") (internal quotation marks omitted).

Even if plaintiff had submitted a proper affidavit under the statute, "[t]he mere filing of an affidavit of prejudice does not require a judge to recuse himself." See Nat'l Auto Brokers Corp. v. Gen. Motors Corp., 572 F.2d 953, 958 (2d Cir. 1978). "Rather, the trial judge must review the facts included in the affidavit for their legal sufficiency and not recuse himself . . . unnecessarily." Hoffenberg v. United States, 333 F.Supp.2d 166, 171 (S.D.N.Y. 2004) (internal quotation marks omitted). As discussed above, an objective observer would not believe that I have any bias towards defendants in FDCPA cases, or against plaintiff in this particular case.

In any event, none of the prejudices that plaintiff perceives are extrajudicial in nature. See e.g., LoCascio, 473 F.3d at 495-96. Plaintiff has not demonstrated any basis for recusal.

## II.   Sanctions

Federal Rule of Civil Procedure 16 sets forth the goals to be accomplished at the Initial Status Conference. It explains that

> the court may order the attorneys and any unrepresented parties to appear for one or more pretrial conferences for such purposes as: (1) expediting disposition of the action; establishing early and continuing control so that the case will not be protracted because of lack of management; discouraging wasteful pretrial activities; (4) improving the quality of the trial through more thorough preparation; and (5) facilitating settlement.

Fed. R. Civ. P. 16(a). In addition, Rule 16(c)(2) provides that a court may consider the following matters at pretrial conferences:

> (A) formulating and simplifying the issues, and eliminating frivolous claims or defenses; (B) amending the pleadings if necessary or desirable; (C) obtaining admissions and stipulations about facts and documents to avoid unnecessary proof . . . and (P) facilitating in other ways the just, speedy, and inexpensive disposition of the action.

9

Rule 16(f)(1) provides that, "[o]n motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney . . . is substantially unprepared to participate – or does not participate in good faith – in the [pretrial] conference." Fed. R. Civ. P. 16(f)(1)(B).

Consistent with Rule 16, my Individual Practices require the parties, in advance of the Initial Status Conference, to submit a detailed letter setting forth their versions of the facts that they expect the evidence to show. This assists in the structuring of discovery by identifying the material issues, whether legal or factual, and expedites the case.

In both the joint letter and his statements at the Initial Status Conference, plaintiff raised one claim and one claim only – that the recorded conversation between plaintiff and defendant's agent would show that defendant advised plaintiff that he could only dispute his debt in writing, not orally.[10] I issued the Order to Show Cause because the recording showed exactly the opposite.

In responding to the Order to Show Cause, however, plaintiff has come up with a whole new theory of the case that is at odds with the one he set forth in the joint letter and described at the Initial Status Conference. He now asserts, for the first time, that when he subscribed to Verizon service, Verizon billed him for $131.21, purportedly for rewiring his house. He maintains that the bill is improper because there was no work done inside his home. Plaintiff asserts that he disputed the bill with Verizon, which allegedly failed to process cancellation of the bill. Plaintiff then recounts the conversations he had with defendant, and which were described in the Order to Show Cause, in which he deliberately refused to tell defendant's

---

[10] In his response to the Order to Show Cause, plaintiff now states, in a footnote, that "neither the complaint nor the amended complaint makes any reference to a cause of action that Midland required its disputes to be in 'writing'," and that to the extent that his submissions are construed as such, the Court should disregard all errors as the "mistake does not affect any party's substantial rights, and can easily be corrected by further amending the complaint."

10

employee any of these facts. In addition, plaintiff now contends that he never received the cessation letter sent by defendant.

Notably, as mentioned above, plaintiff nowhere denies that he deliberately refrained from disclosing any of these facts when asked point blank by defendant's agent why he was disputing the debt, or even if he had ever had a Verizon account. Nor does plaintiff deny that he refused to answer the agent's simple questions in order to manufacture an FDCPA claim.

Defendant has disputed all of these new allegations, but that is not the point. None of these allegations were disclosed either prior to or at the Initial Status Conference. Plaintiff's accusation of bias based on my prejudging the case is thus particularly ironic since the Order to Show Cause was premised on an entirely different description of his claim than he now asserts. It was, in fact, plaintiff's counsel who violated Rule 16 by not participating in good faith, apparently seeking to hold back his theory of the case for some later date.

The history of this case demonstrates that plaintiff's counsel did not participate in the Initial Status Conference in good faith. First, he raised only one claim, that plaintiff could not dispute the debt verbally. In support of that claim, he relied on the recorded conversation, which debunked his claim entirely. Nevertheless, plaintiff now comes forward with new allegations that are not recently discovered, are relevant, and would have materially changed the posture of this case had they been disclosed at the proper time, in the joint letter, or even at the Initial Status Conference.

That is not the good faith cooperation required by Rule 16. It is, rather, an attempt to mislead defendant and the Court, just as plaintiff himself attempted to trick defendant into committing an FDCPA violation. Based on plaintiff's failure to participate in the Initial Status Conference in good faith and his intentionally misleading the Court and defendant as to his

11

theory of the case, plaintiff's counsel violated Rule 16(f)(1)(B).  He is sanctioned in the amount of $500, payable to the Clerk within one week, with proof of payment filed in this action.[11]

The case will proceed in the normal course based on plaintiff's new theory of the case. By separate order, the Court will schedule a Status Conference to set a discovery plan.

**SO ORDERED.**

                                                                                  U.S.D.J.

Dated: Brooklyn, New York
        May 1, 2015

---

[11] It is also arguable that plaintiff's frivolous recusal motion is sanctionable under Fed. R. Civ. P. 11(c).  I have determined not to impose a sanction under that Rule.  The prior decision and this decision are publicly available documents and are sufficient to illustrate the nature of plaintiff and his attorney's conduct.