**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| LEVI HUEBNER on behalf of himself and all other similarly situated consumers, | : : : | **Case:   14-cv-6046 (BMC)** |
| *Plaintiff,* | : : : | |
| - against - | : : | |
| MIDLAND CREDIT MANAGEMENT, INC., and MIDLAND FUNDING LLC, | : : : | |
| *Defendants.* | : : | |

**CLASS ACTION THIRD AMENDED COMPLAINT**

Plaintiff Levi Huebner, by his counsel POLTORAK PC sues, on behalf of himself and all others similarly situated, Defendants Midland Credit Management, Inc, and Midland Funding LLC, and states:

**<u>JURISDICTIONAL ALLEGATIONS</u>**

1.      At all times material to this lawsuit, Levi Huebner ("Plaintiff") is domiciled in the Eastern District of New York.

2.      At all times material to this lawsuit, Midland Credit Management, INC. ("Defendant" or "MCM") does business in the State of New York.

3.      At all times material to this lawsuit, Midland Funding LLC ("Defendant" or "MFL") does business in the State of New York.

4.      All acts necessary or precedent to bringing this lawsuit occurred or accrued in the Eastern District of New York.

5.      Federal law governs the facts and questions of law precedent to this suit.

6.      This Court has jurisdiction.

## NATURE OF ACTION

7.      This lawsuit is brought for violations alleged under the Federal Debt Collection Protection Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*

8.      The FDCPA affords a consumer the right to dispute a debt.  The definition of a consumer is defined as the least sophisticated consumer.  The right to dispute a debt only requires notification of a dispute by the consumer.  The right to dispute a debt does not hinge on the consumer's reason for the dispute.  Under the FDCPA, the right to dispute gives the consumer the absolute and unequivocal right to contest or dispute any debt.  This means, that the right of a consumer to dispute a debt, afforded by the FDCPA, is unconditional.  The reason the right to dispute is unconditional is (i) to protect the consumer from becoming a victim of a grueling cross-examination by the debt collector, (ii) to protect the debt collector from a violation of 15 U.S.C. § 1692e (10) when inquiring about the nature of the dispute.  Without the absolute right to dispute a debt, the consumer would unjustly be subject to a debt collector's self-governing process of harassment, interrogation, deliberation, and determination, which would only defeat the purpose of the FDCPA.

9.      When a debt collector chooses to ask the consumer about the nature of the dispute the debt collector has chosen to walk a fine line from the duty to accept and notate a dispute to impermissibly assessing the merits and reason of the dispute.  A debt collector may not evaluate the merit of a dispute.  The debt collector must make clear to the consumer that the debt collectors questions as to the nature of the dispute (i) are without passing judgment as to the merit of the dispute, and (ii) will not affect the consumer's ability to dispute the debt.  In addition, the debt collector must make clear to the debtor that despite its questions about the dispute the debt collector did in fact accept and notate the dispute.

10.     In short, on October 17, 2013, Plaintiff attempted to dispute a disputed debt allegedly assigned to MFL.  The disputed debt purported to be for a Verizon account. MCM insisted that Plaintiff should provide a reason for the dispute.  Upon Plaintiff's response that the debt is "nonexistent," MCM insisted, "that's not a dispute."

11.     MCM's statement "that's not a dispute" would lead the least sophisticated consumer to conclude that the Debt Collector did not accept or notate that the debt is disputed. Neither MCM nor MFL communicated the disputed status of the debt when communicating information about the debt to third parties.  Thus, the least sophisticated consumer would believe that neither MCM nor MFL accepted the dispute.

**PARTIES**

12.     Plaintiff is a consumer as defined by 15 U.S.C. § 1692a (3) of the FDCPA.

13.     The Plaintiff's Class are consumers who are adversely affected by similar situated policies that affected Plaintiff as defined by 15 U.S.C. § 1692k (b) (2) of the FDCPA.

14.     Defendants Midland Credit Management, INC and Midland Funding LLC are subsidiaries of Encore Capital Group, Inc.

15.     Defendants are engaged in the business of acquiring debt for the purpose of collection.

16.     Defendants are debt collectors as defined by 15 U.S.C. § 1692a (6) of the FDCPA.

17.     Without waving the right to joinder of individuals and entities party to this suit, upon information and belief, this amended complaint does not join other parties, if any, who cannot be made a party without depriving this court of subject-matter jurisdiction because upon information and belief, the causes of action are attributed directly to the named Defendants.

## RELEVANT FACTS PARTICULAR TO LEVI HUEBNER

18.     Upon information and belief, on a date better known by Defendants, Defendants began efforts to collect an alleged consumer debt from the Plaintiff.

*The Chain of Title of the Alleged Debt as Currently Known to Plaintiff*

19.     On a date better known to Verizon New York Inc. ("Verizon"), Verizon manufactured a bill (the "Alleged Debt") purporting to be for work done inside Plaintiff's home.

20.     Plaintiff disputed the bill, on the basis that no work was ever done by Verizon inside his home.

21.     Plaintiff informed Verizon of his dispute.

22.     Verizon noted the dispute on that account.

23.     Verizon informed plaintiff by phone that the bill is cancelled.

24.     The Alleged Debt is a nonexistent debt (the "Nonexistent Debt" or "Alleged Debt").

25.     Verizon on its part made no further contact with Plaintiff regarding the bill.

26.     Currently unknown to Plaintiff is whether Verizon failed to process the bill cancelation, or whether Verizon sold the Alleged Debt before cancelation.

27.     At some point in 2011, I.C. System, Inc. ("I.C.") began collecting the Alleged Debt.

28.     On July 27, 2011, Plaintiff wrote to I.C. disputing the debt and requesting verification of the Alleged Debt.

29.     I.C. did not respond to Plaintiff's request for verification.

30.     On October 14, 2011, Plaintiff received a collection letter about the Alleged Debt from Afni, Inc. ("Afni").

31.     Plaintiff communicated with Afni disputing the Alleged Debt, and requested its verification.

32.     Afni did not respond to Plaintiff's dispute or request for verification.

33.     Currently unknown to Plaintiff is whether Afni sold the debt directly to MCM or MFL.  Plaintiff reserves the right and demands from MCM and MFL discovery for the chain of title of the Alleged Debt.  Plaintiff also reserves the right and demands from MCM and MFL discovery to verify the validity of the Alleged Debt.

*Defendants Collections Efforts and Practices*

34.     On or about October 8, 2013 Plaintiff's wife received a phone call from David Strimson ("Strimson").

35.     Upon information and belief, Strimson is an employee of a Defendant.

36.     Currently unknown to Plaintiff is whether Strimson is employed by MCM or MFL.  Plaintiff reserves the right and demands from MCM and MFL discovery to verify whether Strimson is employed by MCM or MFL.

37.     Subsequently, on October 8, 2013, Plaintiff retrieved his credit report through CreditCheck.  ("Exhibit A").

38.     The credit report produced by CreditCheck showed three current reports of Plaintiff's credit history with the Credit Reporting Agencies known as Experian, Equifax, and TransUnion ("CRA's").

39.     With Experian, the Plaintiff's credit report showed a purported $131 debt that MFL assumed as of July 1, 2013 ("Experian 2013 Report").

40.     The Experian Report did not include the source of the debt.

41.     The Experian Report did not communicate the debt as disputed.

42.     With Equifax, the Plaintiff's credit report did not show a purported $131 debt from either MCM or MFL ("Equifax 2013 Report").

43.     With TransUnion, the Plaintiff's credit report did not show a purported $131 debt from MCM or MFL ("TransUnion 2013 Report").

44.     After reviewing the 2013 credit reports from CreditCheck, Plaintiff returned Strimson's phone call.  ("Exhibit B").

45.     Upon contacting the phone number provided by Strimson, Plaintiff was informed that he contacted MCM, "Thank you for calling Midland Credit Management, a debt collection company."

46.     Strimson did not answer Plaintiff's phone call, wherein Plaintiff left a message for Strimson.

47.     Moreover, Strimson never returned Plaintiff's call.

48.     On or about October 17, 2013, Plaintiff contacted MFL by phone.

49.     Plaintiff's call was answered by MCM.

50.     MCM informed Plaintiff, "Your call may be monitored or recorded. . . . This is an attempt to collect a debt; any information obtained will be used for that purpose."

51.     MCM educated Plaintiff for the first time that the alleged $131 debt listed in the Experian 2013 Report was from Verizon.

52.     MCM informed Plaintiff that it purchased the alleged $131 debt from Verizon.

53.     Plaintiff inquired as to how he could go about disputing the Alleged Debt.

54.     MCM informed Plaintiff that he would have to talk to a specialist in the Dispute Department, who would be able to handle Plaintiff's dispute.

55.      MCM introduced the Plaintiff to speak to its representative, Emma Elliot, to handle the dispute ("Emma").

56.      Emma introduced herself to Plaintiff as an employee of MCM.

57.      Emma stated to Plaintiff, "advise me what your dispute is and I can see if I can assist you with that."

58.      Emma queried Plaintiff, "Well, we need to, you know, work with what your dispute is in order to remove it, sir.  So why are you disputing?"

59.      Emma demanded of Plaintiff, "We need to know why they [Consumer] want it deleted and what their dispute is."

60.      Emma told Plaintiff, "I need to know what your dispute is before I can just delete it for you.  So you're saying that you want to dispute it, why is it you want to dispute it?"

61.      Emma questioned Plaintiff, "Sir, you called in to dispute the debt.  I need to know why you are disputing.  So I'm asking you questions."

62.      Plaintiff informed Emma he is disputing the debt: "*Because it's a Nonexistent Debt,*" wherein Emma responded: "that's not a dispute."

63.      Emma insisted that Plaintiff act as a witness against himself and demanded he answer, "Did you ever have Verizon?"

64.      Emma further insisted that Plaintiff act as a witness against himself and answer, "It's a very straightforward question.  Did you ever have Verizon service?"

65.      Emma continued to insist that Plaintiff act as a witness against himself and answer, "Did you already pay it with Verizon?  Did you never have Verizon?"

66.      Emma intended to speak said words to the Plaintiff.

67.     Emma ended the conversation without informing Plaintiff whether MCM or MFL accepted and notated the dispute.

68.     Emma ended the conversation without informing Plaintiff whether MCM or MFL will communicate to third parties the dispute to the disputed debt.

69.     MCM and its employee acts and omissions, done in connection with efforts to collect the Alleged Debt from the Plaintiff, were done intentionally and willfully.

70.     MFL and its employee acts and omissions, done in connection with efforts to collect the Alleged Debt from the Plaintiff, were done intentionally and willfully.

71.     Upon information and belief, MCM never mailed the initial collection letter dated August 9, 2013 (the "Initial Letter") to Plaintiff.

72.     Upon information and belief, MFL never mailed the initial collection letter dated August 9, 2013 (the "Initial Letter") to Plaintiff.

73.     On or about December 15, 2014, for the first time MCM communicated the Initial Letter to Plaintiff as an attachment to MCM's Answer.

74.     December 15, 2014 is the first time that MCM communicated the Initial Letter to Plaintiff.

75.     The Initial Letter reads:

"Unless you notify MCM within thirty (30) days after receiving this notice that you dispute the validity of the debt, or any portion thereof, MCM will assume this debt to be valid. . . .  Communications concerning disputed debts, including an instrument tendered as full satisfaction of a debt, are to be sent to: 8875 Aero Drive, Suite 200, San Diego, CA 92123; Attn: Consumer Support Services."

76.     On or about December 15, 2014, MCM caused a purported cessation letter dated as October 17, 2013 (the "Cessation Letter") to be communicated to Plaintiff.

77.     On or about December 15, 2014, for the first time, MCM communicated the Cessation Letter to Plaintiff as an attachment to MCM's Answer.

78.      Upon information and belief, MCM never mailed the Cessation Letter to Plaintiff.

79.      The Cessation Letter purported that MCM ceased collection efforts regarding the Alleged Debt.

80.      Moreover, the Cessation Letter stated the following language:

"Based on the information you have provided to us, **we have instructed** the three major credit reporting agencies to delete the above-referenced MCM account from your credit file."  Emphasis added.

81.      On April 23, 2015, Plaintiff retrieved his credit report through CreditCheck.  ("Exhibit C").

82.      The credit report produced by CreditCheck showed three current reports of Plaintiff's credit history with credit reporting agencies, known as Experian, Equifax, and TransUnion (the "CRA's").

83.      With Experian, the Plaintiff's credit report showed a purported $131 debt that is allegedly owed to MFL ("Experian 2015 Report").

84.      On the Experian 2015 Report, the date is different from that of the Experian 2013 Report.

85.      The Experian 2015 Report states "Status Date: September 25, 2013."

86.      With Equifax, the Plaintiff's credit report appeared under "New Accounts" that a purported $131 debt that is allegedly owed to MCM ("Equifax 2015 Report").

87.      On the Equifax 2015 Report, the balance date with MCM is declared as of July 1, 2013.

88.      Upon information and belief, the Nonexistent only began appearing with Equifax at some point after Plaintiff brought the underlying suit.  The basis for belief is confirmed by the fact that (i) in 2015, a 2013 account was listed as a New Account with Equifax,

and (ii) before bringing the underlying lawsuit, Plaintiff reviewed his most recent Credit Report with all CRAs through CreditCheck, and there was no account of either MCM or MFL listed with Equifax.

89.     With TransUnion, the Plaintiff's credit report showed under "New Accounts" a purported $131 debt that is allegedly owed to MFL ("TransUnion 2015 Report").

90.     On the TransUnion 2015 Report, the balance date with MFL is declared as of October 8, 2013.

91.     Upon information and belief, the Nonexistent Debt only began appearing with TransUnion at some point after Plaintiff brought the underlying suit.  The basis for belief is confirmed by the fact that (i) in 2015, a 2013 account was listed as a New Account with TransUnion, and (ii) before bringing the underlying lawsuit, Plaintiff reviewed his most recent Credit Report with all CRAs through CreditCheck, and there was no account of either MCM or MFL listed with TransUnion.

92.     As a direct or proximate result of the foregoing, MCM denied Plaintiff the right to dispute an Alleged Debt.

93.     As a direct or proximate result of the foregoing, MCM continue to communicate to third parties information about the Alleged Debt without communicating the dispute.

94.     As a direct or proximate result of the foregoing, MFL continue to communicate to third parties information about the Alleged Debt without communicating the dispute.

95.     As a direct or proximate result of the foregoing, MCM continued to collect the Nonexistent Debt.

96.     As a direct or proximate result of the foregoing, MFL continue to pursue Plaintiff a for collection of the Nonexistent Debt.

97.     As a direct or proximate result of the foregoing, Defendants caused and Plaintiff suffered actual damages and injury, including but not limited to, fear, stress, mental anguish, emotional stress, acute embarrassment and suffering for which he should be compensated in an amount to be established by a jury at trial.

## RELEVANT FACTS PARTICULAR TO THE CLASS

98.     The least sophisticated consumer does not know of the right to dispute a debt.

99.     The least sophisticated consumer does not know of the right to dispute a debt without providing a reason.

100.    The least sophisticated consumer does not know that the FDCPA provides a procedure for a debt collector's efforts to collect a debt.

101.    The FDCPA imposes a duty on debt collectors like MCM to inform the consumer of their rights, including the right to dispute a debt.

102.    Upon information and belief, MCM requires that Plaintiff furnish a reason to dispute the Alleged Debt, because, with all consumers who call to dispute the debt, as with Plaintiff, it is MCM's policy to employ the "Reason Requirement."

103.    Plaintiff reserves the right and demands from MCM discovery to review the manual of the company policy in operation by MCM.

104.    In the same professionalism MCM handled Plaintiff's phone call to dispute a debt, the same professionalism MCM applies to all consumers who call to dispute a debt.

105.    Upon information and belief, as MCM required of Plaintiff, MCM applies the Reason Requirement to all consumers who call to dispute a debt that a reason be furnished to dispute the Alleged Debt.

106.    Upon information and belief, as MCM did to Plaintiff, MCM applies the Reason Requirement to all consumers who call to dispute a debt that a *valid* reason be presented to dispute the Alleged Debt.

107.    Upon information and belief, as MCM did to Plaintiff, the implementation of the Reason Requirement leads to denying consumers the right to dispute a debt, because the least sophisticated consumer does not know that no reason is required to dispute a debt.

108.    Upon information and belief, as MCM required of Plaintiff, the implementation of the Reason Requirement deceives consumers in abandoning the right to dispute a debt.

109.    Upon information and belief, as MCM required of—and did to—Plaintiff, MCM directs all consumers that "Communications concerning disputed debts, including an instrument tendered as full satisfaction of a debt, are to be sent to: 8875 Aero Drive, Suite 200, San Diego, CA 92123; Attn: Consumer Support Services."  Thus, when consumers call to dispute a debt, instead of a written dispute, MCM applies its Reason Requirement policy.

110.    Upon information and belief, as MCM required of—and did to—Plaintiff, MCM practices are applied uniformly without distinguishing between the sophisticated and the least sophisticated consumer.

*Basis and Intention for Class Certification*

111.    Plaintiff brings this action individually, and on behalf of all other persons similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

112.     The identities of all class members are readily ascertainable from the records of MCM.

113.     MCM have a log with a record of every consumer who calls to dispute a debt.

114.     Plaintiff reserves the right and demands from MCM discovery of its log indicating each consumer who called to dispute a debt between October 17, 2013 and December 15, 2014.

115.     Plaintiff's class does not include individuals who are officers, members, partners, managers, directors, and employees of MCM or MFL.

116.     The question of law and fact common to the Plaintiff's Class is whether MCM's practice requiring consumers to furnish a reason to dispute a debt, upon the consumer's attempt to dispute a debt, is allowed under the FDCPA.

117.     The question of law and fact common to the Plaintiff's Class is whether MCM's practice requiring consumers to furnish a *valid* reason, upon the consumer's attempt to dispute a debt, is allowed under the FDCPA.

118.     The question of law and fact common to the Plaintiff's Class is whether MCM's practice of the "Reason Requirement" is allowed under the FDCPA if it causes the least sophisticated consumer to believe that the right to dispute a debt was denied.

119.     The question of law and fact common to the Plaintiff's Class is whether MCM's practice of the "Reason Requirement" is allowed under the FDCPA if it deceives the least sophisticated consumer to believe that there is no such right to dispute a debt.

120.     The question of law and fact common to the Plaintiff's Class is whether MCM's  and MFL's practice of disclosing the disputed debts to third parties, without communicating that the disputed debt is disputed, is allowed under the FDCPA.

121.     The question of law and fact common to the Plaintiff's Class is whether MCM's practice of informing consumers that a reason or valid reason is required to dispute a debt, is a statement materially false pursuant to 15 U.S.C. §§ 1692e(8) and 1692e(10).

122.     The question of law and fact common to the Plaintiff's Class is whether MCM is liable for statutory penalties to each member of Plaintiff's Class as it is liable to Plaintiff.

123.     The Plaintiff's claims are typical to the class members, as outlined, based upon the same facts and legal theories.

124.     The Plaintiff can protect the interests of the Plaintiff's Class fairly and adequately.

125.     The Plaintiff has retained experienced counsel in good standing, who will vigorously pursue this action in the best interest of the Plaintiff's Class.

126.     This class action will preserve adjudications from inconsistent and varying rulings, including exercising the appeals process.

127.     This class action will preserve judicial resources because Plaintiff's Class is so numerous that joinders of all members, the prosecution of all claims individually would be impractical, or that Plaintiff not pursuing the valid claims common to each member of Plaintiff's Class will constitute a manifest of injustice.

128. This class action will protect class as a practical matter, including the least sophisticated consumer, who would have difficulties commencing an action by themselves to assert his or her rights.

129. Certification of a class under FRCP Rule 23(b)(2) will determine whether MCM's communications with the Plaintiff, riddled by MCM's violations under the FDCPA, is the same as with each member of Plaintiff's Class, where tantamount to declaratory relief and monetary relief under the FDCPA would be merely identical to that determination.

130. Class Certification under FRCP Rule 23(b)(3) will show that the questions of law and fact common to all member of the Plaintiff's Class predominate over any questions affecting an individual member, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

131. Defendants have acted, or failed to act, on grounds generally applicable to the Rule (b)(l)(A) and (b)(2) Classes, thereby making appropriate final injunctive relief with respect to the Class as a whole, to enjoin the Reason Requirement employed by MCM when disputing a debt.

132. Notice is hereby given, depending on the outcome of further investigation and discovery, at the time of class certification motion Plaintiff may seek to certify one or more classes only as to particular issues pursuant to Fed. R. Civ. P. 23(c)(4).

## FIRST CLAIM FOR RELIEF

133. Plaintiff incorporates herein all of the allegations stated in paragraphs from 1 to 132, for relief on behalf of himself and all others similarly situated against MCM under 28 U.S.C. §§ 1331, 2201, and 2202, and 15 U.S.C. § 1692e(8).

134. Because MCM communicated to Plaintiff that a reason or valid reason is required to dispute a debt, and MCM communicated that, unless a reason or valid reason is provided, it will fail to communicate that a disputed debt is disputed.

135. Because MCM communicated to Plaintiff that a reason or valid reason is required to dispute a debt, MCM also threatened that, unless a reason or valid reason is provided, it will fail to communicate that a disputed debt is disputed.

136. Because MCM communicated to each member in Plaintiff's Class that a reason or valid reason is required to dispute a debt, MCM also communicated that, unless a reason or valid reason is provided, it will fail to communicate that a disputed debt is disputed.

137. Because MCM communicated to each member in Plaintiff's Class that a reason or valid reason is required to dispute a debt, MCM also threatened that, unless a reason or valid reason is provided, it will fail to communicate that a disputed debt is disputed.

138. A claim for declaratory and injunctive relief arises from MCM's "Reason Requirement" practice, requiring from consumers to provide a reason to dispute a debt.

139. A claim for declaratory and injunctive relief arises from MCM's practice requiring from consumers a *valid* reason, upon the consumer's attempt to dispute a debt.

140. A claim for declaratory and injunctive relief arises from MCM's "Reason Requirement" practices that communicate to, or threaten, the consumer to fail to communicate that a disputed debt is disputed.

141. The right to dispute a debt is of the most fundamental of those set forth in the FDCPA.

142. A consumer is entitled to dispute the validity of a debt for a good reason, a bad reason, or no reason at all.

143.     Because of MCM's "Reason Requirement" practice is communicated to the consumer as a prerequisite to disputing a claim and communicate, or threaten, the consumer to fail to communicate that a disputed debt is disputed; thus, declaratory and injunctive relief is warranted to prohibit and enjoin MCM's "Reason Requirement."

144.     Plaintiff has no other adequate remedy at law available to redress and remedy this controversy for relief.

## SECOND CLAIM FOR RELIEF

145.     Plaintiff incorporates herein all of the allegations stated in paragraphs from 1 to 144, for relief on behalf of himself and all others similarly situated against MCM under 28 U.S.C. §§ 1331 and 15 U.S.C. § 1692e(10).

146.     MCM informed Plaintiff "This is an attempt to collect a debt; any information obtained will be used for that purpose."

147.     MCM informed consumers in Plaintiff's Class "This is an attempt to collect a debt; any information obtained will be used for that purpose."

148.     Because MCM employed on Plaintiff the "Reason Requirement," MCM used a false representation and deceptive means to collect or attempt to collect a debt to use the consumers provided information for that purpose.

149.     Because MCM employed on Plaintiff's Class the "Reason Requirement," MCM used a false representation and deceptive means to collect or attempt to collect a debt to use the consumers provided information for that purpose.

150.     Because MCM employed on Plaintiff the "Reason Requirement" to inquire whether Plaintiff had Verizon, MCM used a false representation and deceptive means to

obtain information concerning a consumer, to use that information to advance the collection efforts against Plaintiff.

151.    Because MCM employed on Plaintiff the "Reason Requirement" to inquire whether Plaintiff had already paid Verizon, MCM used a false representation and deceptive means to obtain information concerning a consumer, to use that information to advance the collection efforts against Plaintiff.

152.    Because MCM employed on Plaintiff the "Reason Requirement" to inquire whether the consumer in Plaintiff's Class actually had a relationship with the creditor, or whether the consumer in Plaintiffs Class paid the creditor, MCM used a false representation and deceptive means to obtain information concerning a consumer, to advance the collection efforts against that member of Plaintiff's Class.

153.    Plaintiff has no other adequate remedy at law available to redress and remedy this controversy for relief.

**THIRD CLAIM FOR RELIEF**

154.    Plaintiff incorporates herein all of the allegations stated in paragraphs from 1 to 153, for relief on behalf of himself against MCM and MFL under 28 U.S.C. §§ 1331 and 15 U.S.C. § 1692e (2) (A), § 1692e (5) and § 1692e (10)

155.    MCM communicated to Plaintiff through the Court, by way of alleging to have mailed a Cessation Letter to Plaintiff, stating that Defendants ceased to collect the Alleged Debt.

156.    The Cessation Letter gives the appearance that Defendants deleted the Alleged Debt and the Defendants tradeline.  (Exhibit D).

157.    The Cessation Letter gives an appearance that on or before October 17, 2013, the Defendants "**instructed**" the CRAs to delete the Alleged Debt of Defendants tradeline.

158.    On October 17, 2013, Defendants, actually, had not instructed the CRAs to delete the Alleged Debt and the Defendants tradeline. (Exhibit E).

159.    Moreover, MCM still continues to communicate through CRA's that Plaintiff still owes the Alleged Debt and continue with the Defendants tradeline on the CRA's.

160.    Moreover, MFL still continues to communicate through CRA's that Plaintiff still owes the Alleged Debt and continue with the Defendants tradeline on the CRA's.

161.    MCMs Cessation Letter, which is addressed to Plaintiff, was according to MCM issued before Defendants deleted the Alleged Debt from its tradeline.

162.    MCM's Cessation Letter, which is addressed to Plaintiff, was according to MCM issued before requesting from the CRAs to delete Defendants communication of the Alleged Debt from Plaintiff's credit report.

163.    Because Defendants did not delete the Alleged Debt from its tradeline, and MCM issued the Cessation Letter before requesting the CRA's to delete all communications of the Alleged Debt on Plaintiff's Credit Report, the cessation letter is a false representation and deceptive, and such cessation letter would likely deceive the least sophisticated consumer.

164.    Because MCM continues to communicate to CRA's that Plaintiff owes the Alleged Debt, without communicating the dispute; MCM used a false representation to deceive Plaintiff, in order to collect, or attempt to collect, the Alleged Debt without communicating Plaintiff's dispute, and such cessation letter would likely deceive the least sophisticated consumer.

165.    Because MFL continues to communicate to CRA's that Plaintiff owes the Alleged Debt, without communicating the dispute; MFL falsely represents the Alleged Debt, in order to collect, or attempt to collect, without communicating Plaintiff's dispute.

166.    MCM and MFL knew or should have known that the Alleged Debt is disputed, yet they each fail to communicate that the Alleged Debt is disputed.

167.    Plaintiff has no other adequate remedy at law available to redress and remedy this controversy for relief.

**FOURTH CLAIM FOR RELIEF**

168.    Plaintiff incorporates herein all of the allegations stated in paragraphs from 1 to 167, for relief on behalf of himself against MCM and MFL under 28 U.S.C. §§ 1331 and 15 U.S.C. §§ 1692e (2)(A), 1692e(8), and §1692e(10).

*False Representation of the Status of the Alleged Debt*

169.    Plaintiff attempted to dispute a nonexistent debt.

170.    MCM insisted that Plaintiff provide a reason, which he did by stating, "*it's a Nonexistent Debt.*"

171.    MCM in response stated to Plaintiff that the Alleged Debt "is existent because it's here in our system."

172.    Because MCM represented to Plaintiff that the debt is valid "because it's here in our system," MCM falsely represented to Plaintiff the legal status of a debt.

173.    Because Verizon—the original creditor—informed Plaintiff that the bill is cancelled, the character, amount, and legal status of the debt was canceled, and MCM misrepresented the Alleged Debt when stating it is valid "because it's here in our system," MCM falsely represented the legal status of a debt.

174.    Because Plaintiff disputed the Alleged Debt with I.C. and Afni, which neither debt collector could verify the validity of the debt; MCM knew or should have known from the record of the Alleged Debt tradeline that the disputed debt is disputed.  MCM violated §1692e(8) and §1692e(10) by stating that the Alleged Debt is valid "because it's here in our system," and falsely representing the legal status of the debt.

175.    Because Plaintiff disputed the Alleged Debt with MCM, who knew or should have known from its records that the Alleged Debt is disputed, MCM violated §1692e(2)(A), §1692e(8), and §1692e(10) by communicating the Alleged Debt to Equifax (i) without communicating the dispute, and (ii) misrepresenting the legal status of the Alleged Debt.

176.    Because Plaintiff disputed the Alleged Debt with MCM, MFL knew or should have known from its records that the Alleged Debt is disputed, MFL violated §1692e(2)(A), §1692e(8), and §1692e(10) by communicating the Alleged Debt to TransUnion (i) without communicating the dispute, and (ii) misrepresenting the legal status of the Alleged Debt.

177.    The least sophisticated consumer would be deceived that the Nonexistent Debt is Existent Debt because the debt collector said the debt exists because it is in our system.

### Collecting a Nonexistent Debt

178.    Because Plaintiff disputed the Alleged Debt with I.C. and Afni, which neither debt collector could verify the validity of the debt; MCM knew or should have known from the record of the Alleged Debt tradeline that the Alleged Debt cannot be validated.  MCM violated §1692e (8) and §1692e (10) by collecting a Nonexistent Debt.

179.    Because Plaintiff disputed the Alleged Debt with I.C. and Afni, which neither debt collector could verify the validity of the debt; MFL knew or should have known

from the record of the Alleged Debt tradeline that the Alleged Debt cannot be validated.  MFL violated §1692e (8) and §1692e (10) by collecting a Nonexistent Debt.

180.    Because MCM supposedly ceased collecting the Alleged Debt, MCM improperly continues to collect a Nonexistent Debt.

181.    Because MCM supposedly ceased collecting the Alleged Debt, MFL improperly continues to collect a Nonexistent Debt.

*Retaliation for Suit*

182.    Upon information and belief, to harm the Plaintiff because Plaintiff brought the underlying suit, in retaliation, MCM communicated the Alleged Debt without communicating the dispute, which began appearing with Equifax only after Plaintiff brought the underlying suit.

183.    Upon information and belief, to harm the Plaintiff because Plaintiff brought the underlying suit, in retaliation, MFL communicated the Alleged Debt without communicating the dispute, which began appearing with TransUnion only after Plaintiff brought the underlying suit.

184.    Plaintiff has no other adequate remedy at law available to redress and remedy this controversy for relief.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, respectfully requests that this Court enter judgment in Plaintiff's

favor and award damages as follows:

a) FOR THE FIRST CLAIM FOR RELIEF against MCM, (i) declaratory and permanent injunctive relief enjoining Defendants "Reason Requirement," (ii) class certification, (iii) recovery of actual damages, (iv) statutory damages for Plaintiff and Plaintiffs Class, and (v) costs with attorney's fees.

b) FOR THE SECOND CLAIM FOR RELIEF against MCM, (i) class certification, (ii) recovery of actual damages, (iii) statutory damages for Plaintiff and Plaintiffs Class, and (iv) costs with attorney's fees.

c) FOR THE THIRD CLAIM FOR RELIEF against MCM and MFL, (i) recovery of actual damages, (ii) statutory damages for Plaintiff and Plaintiffs Class, and (iii) costs with attorney's fees, (iv) as well as such other and further relief in favor of this complaint.

d) FOR THE FOURTH CLAIM FOR RELIEF against MCM and MFL, (i) recovery of actual damages, (ii) statutory damages for Plaintiff and Plaintiffs Class, and (iii) costs with attorney's fees, (iv) as well as such other and further relief in favor of this complaint.

e) Plaintiff respectfully demands a trial by jury of all claims so triable.

Dated: Brooklyn, New York
        June 5, 2015

                        Respectfully submitted,

                        POLTORAK PC

                        /S/      Jacob T. Fogel
                        _____
                        By: Jacob T. Fogel Esq.
                        26 Court Street, Suite 908
                        Brooklyn, NY 11242
                        (718) 855-4792
                        Fax: (718) 228-9272
                        Email: jayfogel@att.net

## **VERIFICATION**

I Levi Huebner verify to Rule 11(b) of the Federal Rules of Civil Procedure and under the laws prohibiting perjury, that I conducted a reasonable inquiry to the facts and laws stated in the foregoing pleading, and certify in good faith that under the circumstances:

1.  The factual allegations stated in the foregoing related to me are true to the best of my knowledge.

2.  The factual allegations stated in the foregoing related to the Defendants is made to the best of my knowledge by familiarity of the facts and statements Defendants or its agents made, while reserving the right to verify its veracity or dispute them.

Dated: Brooklyn, NY
　　　June 5, 2015

Respectfully submitted,

By:  Levi Huebner