August 19, 2015

Honorable Brian M. Cogan
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

    Re:    Huebner v. Midland Credit Management, Inc. *et al.*, Case No. 1:14-cv-06046-BMC
            **Joint letter regarding Midland's Request to Narrow Scope of Inquiry of Corporate Representative**

Dear Judge Cogan:

    The parties respectfully submit this joint letter regarding the proposed scope of Plaintiff's deposition of the Corporate Representative of Midland Credit Management, Inc.("Midland Credit") and Midland Funding, LLC (Midland Funding) (collectively, "Midland"). In compliance with Local Civil Rule 37.3, Defense counsel Matthew Johnson and Plaintiff's counsel Elie Poltorak discussed the discovery issues addressed in this letter in person on the afternoon of August 12, 2015, in multiple email exchanges after that call and again, briefly, on August 19, 2015, from approximately 12:00 to 12:05. Midland requests a protective order limiting the scope of inquiry of Midland's Corporate Representative; Plaintiff's counsel objects.

    **Facts on which the Parties Agree:**

    Defendants received Plaintiff's discovery demands, including a Notice of Deposition, by email on June 19, 2015. The deposition notice, attached as Exhibit A, includes 60 topics for inquiry, 14 duces tecum request, and 9 requests for documents pursuant to Fed. R. Civ. P. 30 and 34.

    Defendants asserted that Plaintiff had waived discovery, thus, the parties submitted a joint letter to the Court regarding Plaintiff's discovery demands. The Court issued an order dated July 21, 2015 directing that Defendants respond to Plaintiff's discovery demands on or before August 10, 2015. Defendants produced some responsive documents, but withheld others under claim of confidentiality pending issuance of a protective order, granted by the Court on August 18, 2015.

    On August 11, 2015, Midland's counsel called Plaintiff's counsel, requesting that Plaintiff agree to limit the scope of inquiry and documents to be produced. Plaintiff's counsel asked that Midland's counsel identify the proposed limits in an email, which Midland's counsel sent Plaintiff's counsel the following day. Plaintiff responded that

August 19, 2015
Page 2

Defendants time to object to discovery demands had expired and Plaintiff refused to limit the scope of inquiry. The next day during the conference held before the Court on August 12, 2015 counsel for the Defendants did not raise objections to the discovery schedule.

On or about August 17, 2015, the Court entered an order denying Defendants' request for extension of the deadline for deposition of its 30(b)(6) witness and instructed Defendants to produce any remaining responsive documents no later than 72 hours prior to the deposition.

Following the Court's order, Defendants' counsel furnished a draft protective order. Plaintiff's counsel promptly consented to Defendants' draft, which was then filed and So-Ordered by the Court. Defendants have not yet produced the documents withheld under claim of confidentiality.

### **Midland's Statement**

To address the joint statement above, at the time of the August 12, 2015 status conference, Defense counsel believed that the deposition of its corporate representative could be accomplished within the time period permitted. Though its representative had issues scheduling her trip for the deposition, the deposition is set for August 24, 2015 and the parties expect to complete it that day. Further, Defendants will produce documents to Plaintiff pursuant to the Protective Order granted by the Court on August 18, 2015 before the close of the 72 hour deadline imposed by the Court.

Defendants' counsel had believed that the parties could agree to limit the scope of the corporate representative to matters relevant to Plaintiff's claims. Defense counsel provided Plaintiff's counsel a detailed proposal in that regard on August 12, 2015. Plaintiff stated he would respond the next day, then on August 14, 2015, he responded denying the request, stating that Plaintiff did not feel any limits were needed and that if Plaintiff found the deponent's answers unsatisfactory, they would pursue the appropriate remedies. In seeking a protective order, Defendants seek to avoid unproductive arguments over inquiries not relevant to Plaintiff's claims and the potential for delay in the completion of discovery.

Fed. R. Civ. P. 26(c) authorizes a federal court, for good cause, to issue "an order to protect a party or person [from whom discovery is sought] from annoyance, embarrassment, oppression, or undue burden or expense." The rule serves in part to protect parties' privacy interests. Seattle Times Co. v. Rhinehart, 467 U.S. 20, 35 n.21 (1984); Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1114 n.10 (3d Cir. 1986). Rule 26(c) "allows for the crafting of appropriate relief, including 'that the disclosure or discovery may be had only on specified terms and conditions.'" Flaherty v. Seroussi, 209 F.R.D. 300, 304 (N.D.N.Y. 2002) (quoting Fed.R.Civ.P. 26(c)).

The scope of discovery is limited to "any nonprivileged matter that is relevant to any party's claim . . ." Hassan v. Town of Brookhaven, 13-cv-4544 (JMA)(SIL), 2015 U.S. Dist. LEXIS 69591, at *7-8 (May 29, 2015) (quoting Fed. R. Civ. P. 26(b)(1)). To be discoverable,

the information "need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. (quoting Fed. R. Civ. P. 26(b)(1)). A court must limit discovery if it determines that the discovery "is unreasonably cumulative or duplicative" or that "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issue." Id. (quoting 26(b)(2)(C)).

The party seeking a protective order bears the burden of establishing that good cause for the order exists. Gambale v. Deutsche Bank AG, 377 F.3d 133, 142 (2d Cir. 2004). Good cause is established by "demonstrating a particular need for protection." Cipollone, 785 F.2d at 1121. That movant must certify that he or she has "in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." Fed. R. Civ. P. 26(c). Further, Local Rule 37.3 requires that the movant make a good faith effort to confer with opposing counsel in person or by telephone.

Plaintiff alleges the following violations of the FDCPA: (1) Requiring that a consumer provide a valid reason in order to verbally dispute a debt (which Plaintiff terms the "Reason Requirement"); (2) allegedly employing "Reason Requirement" constitutes a false representation or deceptive means to collect a debt; (3) that Midland Credit letter to Plaintiff informing him that it requested deletion of his account was false and deceptive; (4) that Midland Credit falsely represented that the Account existed; (5) failure to communicate that the Account was disputed; (6) attempting to collect the Account when the account did not exist; and (7) that Midland Credit reported the account to Equifax after Plaintiff filed suit, in retaliation for this suit.

Midland believes that the scope of the inquiry in the deposition of its Corporate Representative should be limited to matters relevant to Plaintiff's claims. Midland believes that the Parties risk not being able to complete the deposition of its Corporate Representative without such an order and believes that Plaintiff's counsel may demand that Midland's Representative return for further inquiry unless the scope of inquiry is reasonably limited.

Midland asserts that the relevant topics are as follows:

1. Midland Credit's policies and procedures regarding verbal debt disputes, including the alleged "Reason Requirement."

2. The information that Midland received regarding the account at issue, Plaintiff's former Verizon account ("the Account"), including whether Midland received any indication that Plaintiff disputed the Account from any source other than Plaintiff and, if so, what dispute information it received.

3. Midland Credit's process for investigating a debt upon receipt of a dispute.

4. Midland Credit's process for requesting deletion of a debt and the efforts it took to request deletion of the Account.

5. Whether Midland Credit misrepresented the status of the debt by representing that the debt existed or failing to report the debt as disputed.

6. Whether Midland violated the FDCPA by allegedly furnishing credit information regarding the Account to any credit bureau after Plaintiff filed suit, allegedly in retaliation for Plaintiff filing suit.

7. Midland Credit's policies and procedures regarding mailing notices to consumers such as Plaintiff.

Plaintiff's deposition notice is overly broad and burdensome. Plaintiff seeks to inquire regarding "all debts of which [Midland's] records allege that Plaintiff owes (past and present included)." As only the Account is at issue, and Plaintiff has not identified any other accounts at issue, Midland requests that Plaintiff's inquiries be limited to addressing the above topics in relation to the Account alone.

Further, Midland objects to the following proposed topics and requests:

Objections to Plaintiff's Deposition Topics:

26-27. The personnel files of all individuals who worked on Plaintiff's account. This is overly burdensome, seeks highly private and personal information and materials and is not reasonably calculated to lead to the discovery of admissible evidence.

32-33: Bona fide error defenses of Midland Credit and Midland Funding. Midland does not assert the bona fide error defense because Midland did not violate the law.

42: Variations of names between Midland Credit and Midland Funding. This subject is irrelevant to Plaintiff's claims.  Midland Credit was the servicer of Plaintiff's debt and Midland Funding owned Plaintiff's debt.

47-48: The history of all formal and informal complaints against Midland from the past 3 years. This topic is vastly overbroad, overly burdensome and is not reasonably calculated to lead to the discovery of admissible evidence. Further, Midland does not assert the bona fide error defense, making this inquiry irrelevant.

51-52: Contracts or agreements between Midland and Verizon and other creditors. Midland has produced the Bill of Sale under which the Account was transferred. Inquiry beyond that is overly broad,

burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Further, Verizon does not direct Midland's collection activity because Midland Funding purchased Plaintiff's debt and does not engage in any collection activity.

Objections to Plaintiff's Duces Tecum Requests:

1. Plaintiff seeks all documents responsive to the deposition topics. Midland requests that this request be limited to those documents relevant to the topics set forth *supra* as relevant to this matter.

10-11. Policy manual of Midland Credit and Midland Funding – Midland Credit will produce relevant portions of its policy manual pursuant to a protective order. Midland Funding has no responsive documents.

12-13. All documents, manuals and literature which guides employees "when and where the employee may inquire from the consumer a reason for the dispute." Midland Credit will produce relevant portions of its policy manual pursuant to a protective order. Midland Funding has no responsive documents.

14. A log indicating each consumer (including name and address) who called Midland Credit to dispute a debt between October 17, 2013 and December 15, 2014. Midland Credit does not possess such a log, though, even if it did, it would not be able to produce it without violating the privacy provisions of the FDCPA as to all other consumers other than Plaintiff.

Objections to Plaintiffs Requests Pursuant to Rules 30 and 34:

1. Midland's income tax returns for the past three years. This request is overly burdensome and is not reasonably calculated to lead to the discovery of admissible evidence.

2. All of Midland's collection agency licenses.  This request is overly burdensome and is not reasonably calculated to lead to the discovery of admissible evidence. Midland's licensing status is not at issue.

2(a)-(h): All documents summarizing, describing, detailing or training Midland employees in collection policies, procedures, methods, techniques, tactics, rules, regulations and compliance with local, state or federal laws, codes or regulations. This request is vastly overbroad and burdensome. Subject to a protective order, Midland will produce portions of its training manual relevant to Plaintiff's claims as set forth *supra*.

5

3. All training, personnel or instruction manuals used by Midland's collection personnel. Midland reiterates its objections to request 2(a)-(h).

4. Software manuals/instructions for every computer system, software package, software system or other electronic or non-electronic device used in any manner by Midland in the collection process. Midland's software is not at issue in this litigation, thus the request is overly burdensome, overly broad and not reasonably calculated to lead to the discovery of admissible evidence.

5. All documents related in any way to other lawsuits, legal or equitable claims, regulatory complaints or reports or any other proceedings that have been brought against Midland during the last five years. This request seeks privileged documents and is overly broad, overly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Midland does not assert bona fide error as Midland did not violate the FDCPA; therefore, other complaints are not relevant to the present matter.

8. All printouts computer, mechanical or other reports printed, prepared or otherwise created using any computer system, software package, software system, or other electronic or non-electronic device used in any manner in Midland's collection process that includes Plaintiff's name, address, telephone number, account number or any other information personally identifiable to Plaintiff. This request is overly broad and burdensome. Midland has produced all relevant and reasonably available responsive documents.

9. A plain-English glossary for all codes contained in any documents produced to Plaintiff. This request is not relevant and Midland does not possess responsive documents. Midland's Corporate Representative will explain any such codes, etc., at the deposition if requested by Plaintiff.

**Plaintiff's Statement**

Plaintiff served its discovery demands, including a Notice of Deposition (the "Notice"), on May 29, 2015, with a copy via e-mail, at Defendants' request, one June 19, 2015, by email.

This eleventh hour application is yet another attempt by Defendants to obstruct, impede, and delay discovery at every turn. If Defendants had an issue with the Notice of Deposition, they had over plenty of time to object to it since it was served on May 29—or even June 19, when it was e-mailed to Defendants. Instead, Defendants waited until the very last minute to begin quibbling item by item.

Nonetheless, when counsel first informed me that Defendants have an issue with topics in the Notice, I asked him to send me an e-mail setting forth the particular topic or

topics he has an issue with, in an attempt to move discovery forward as smoothly as possible. However, rather than identifying a particular issue or two, Defendants seek to quibble over every detail—in effect, seeking to dictate to Plaintiff how to conduct its deposition.

Needless to say, Plaintiff does not intend to go on a fishing expedition in deposing Defendant. Plaintiff will ask questions pertinent to its theory of the case. But Plaintiff cannot tie its hands in advance by taking entire topics off the table, when the witness's testimony may bring them into play. Moreover, Plaintiff has very little remaining time to prepare for the deposition and review any documents Defendants will produce in the coming days. Plaintiff cannot waste hours on end bickering with Defendants over each deposition topic.

To the extent Defendants assert that they are not in possession of particular requested documents or lack knowledge with respect to any topic, they obviously need not produce what they do not possess or testify without knowledge. Similarly, to the extent Defendants assert that any topic not applicable (such as those pertaining to an error defense), the issue is moot, as there is nothing to inquire about. That hardly requires seeking the Court's intervention with a Protective Order.

To the extent any documents or topics are confidential, they will be subject to the Protective Ordered entered herein. To the extent Defendants' counsel believes that any topic is subject to privilege or so patently irrelevant as to amount to harassment of the witness, he may instruct his witness not to answer. In that case, if the information is important to Plaintiff, we will have no choice but to take it up with the Court. Defendants have no grounds or legal authority upon which to rely in seeking to preemptively limit the scope of the deposition to ***their*** theory of the case.

Furthermore, Defendants simply ignore the fact that this is a class action, and Plaintiff is entitled to take discovery in support of its contemplated motion for class certification, as well as (in the event the Court grants said motion) to support its claims on behalf of the class. Thus, the deposition cannot be limited solely to the facts and circumstances pertaining to the named Plaintiff. Other relevant topics include Defendants' policies, course of conduct, past FDCPA complaints, any electronic systems used by Defendants to report and/or remove credit reports, financial information that goes to damages, information regarding the corporate structure of Defendants and their relation to each other, basic information regarding any particular employees involved in the actions giving rise to this litigation,[1] etc.

Plaintiff respectfully urges the Court to deny this application and yet again instruct Defendants to cooperate with discovery in a timely manner.

---

[1] It goes without saying that Plaintiff does not seek confidential personal information from employees' personnel files. Rather, Plaintiff listed such files as a topic for the witness to review, so that he may answer basic questions as to who did what, what their roles and responsibilities were, etc.

7

**Defendants' Proposed Resolution**

Midland respectfully requests that the Court issue an Order limiting Plaintiff's scope of inquiry to the seven topics Midland identified as relevant to Plaintiff's claims and barring inquiry as any accounts owed by Plaintiff other than the Account at issue (Midland is unaware of any other debts owed by Plaintiff to Midland Funding) or as to any other consumer and to the items Midland identified as objectionable, other than to the extent Midland proposed to provide limited responsive documents and information as to those items.

**Plaintiff's Proposed Resolution**

Plaintiff respectfully requests that Defendants' application be denied in its entirety.

Respectfully submitted,

**MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN COLEMAN & GOGGIN, P.C.**

By: /s/ Matthew Johnson
Matthew B. Johnson (MJ 1622)
Attorneys for Defendants Midland Funding, LLC and Midland Credit Management, Inc.
88 Pine Street, 21st Floor
New York, New York 10005-1811
Ph: (212) 376-6433
MBJohnson@mdwcg.com

**POLTORAK PC**

/s/ Elie C. Poltorak
Elie C. Poltorak
Attorneys for Plaintiff
668 Crown St.
Brooklyn, NY 11213
(718) 943-8815
elie@poltoraklaw.com