To:    Honorable Brian M. Cogan
       United States District Court
       Eastern District of New York
       225 Cadman Plaza East
       Brooklyn, NY 11201

Dated: September 18, 2015

     Re:    *Huebner v. Midland Credit Management, Inc. et al.*, 1:14-cv-06046-BMC

## JOINT LETTER REGARDING OUTSTANDING DISCOVERY ISSUES

Dear Judge Cogan:

On September 4, 2015, at the Status Conference, the parties briefed the Court on discovery issues. The Court directed the parties to address these issues by a Joint Letter. On September 16, 2015, counsels for Plaintiff Levi Huebner ("Plaintiff") and Defendants Midland Credit Management, Inc. ("MCM") and Midland Funding, LLC ("MFL") (collectively "Defendants") met and conferred for about 30 minutes.

Plaintiff presents, and Defendants object, that the following discovery issues remain unresolved. Should Defendants produce the records of communications MCM and MFL made to third parties regarding the alleged debt Verizon attributed to Plaintiff? Should Defendants produce the log of those consumers who, in the year proceeding to this lawsuit, sought by phone to designate their debts as disputed? Should Defendants produce the records of claims made against them involving "requests from debtors to designate their debts as disputed"? Should Defendants produce the records of the evidence substantiating that the alleged Verizon debt is "valid"?

At the same time, Plaintiff requests that the Court reschedule the time to move for Class Certification.

## UNCONTESTED STATEMENT OF FACTS

At the Discovery conference held May 7, 2015, the Court directed the parties to serve discovery requests by May 24, 2015, and by August 31, 2015 complete the fact discovery. On May 22, 2015, Plaintiff sought a modification of the discovery schedule to amend the complaint; the Court directed that all written discovery demands are to be served by May 29, 2015.

Upon Defendants request, on July 21, 2015 the Court modified the discovery schedule and directed Defendants to comply with Plaintiff's discovery requests by August 10, 2015, that Plaintiff's motion for class certification be filed by September 1, 2015, and that the parties complete fact discovery by October 1, 2015.

On August 16, 2015, Defendants sought to extend the time to complete discovery further. On August 17, 2015, the Court ordered that the Defendants must produce, at least 72 hours

September 18, 2015
Page 2

_____

before the 30(b)(6) deposition, all outstanding documents subject to discovery and that on
August 24, 2015; Defendants must produce its 30(b)(6)-witness for a deposition.

On August 20, 2015, the Court ordered:

1. "it is incumbent upon defendants to produce a 30(b)(6) witness who is prepared to
   testify to the full extent of the information known to defendants that is responsive
   to the Rule 30(b)(6) notice."

2. "Defendants shall produce those portions of their policy and training manuals that
   refer or relate to responding to requests from debtors to designate their debts as
   disputed."

3. "Affirmative defenses that are not raised in the answer may not be the subject of
   inquiry."

4. "Plaintiff's requests for defendants' income tax returns, collection agency
   licenses, software, and contracts or agreements with Verizon and other creditors
   need not be produced as they are either irrelevant or the time and cost of
   introducing them into this litigation is disproportional to the possibility that they
   would contain or lead to probative evidence. None of these categories is relevant
   to the claims of plaintiff's class."

5. "Defendants need not produce a "plain-English glossary for all codes contained in
   any documents produced to Plaintiff," as plaintiff may ask the witness to explain
   anything he does not understand at the deposition."

6. "Plaintiff may inquire into the employment history of each employee. The Court
   assumes that the witness will be educated by defendants to answer questions
   about any prior complaints or claims within the last five years that defendants
   have refused, declined, or made it more difficult than legally permissible to mark
   a debt as 'disputed,' and defendants shall produce documents referring or relating
   to any such complaints or claims."

On September 2, 2015, the Court denied without prejudice Plaintiff's request to for an
extension of time to file the motion for class certification.

## PLAINTIFF'S STATEMENT

Pursuant to FRCP 16(a)(4), the discovery process exists to improve "the quality of the
trial through more thorough preparation." Plaintiff's entire discovery requests are limited to
confirming the veracity of the claims for relief stated in the third amended complaint, and to
verify the veracity of the affirmative defenses stated in the answer.  The present discovery issues
reflect persistent-evasiveness by Defendants to prevent Plaintiff from conducting basic trial
preparation, by refusing to provide the documents that are now past due for production.

September 18, 2015
Page 3
_____

This case involves two principal subjects. The first subject is a class action, involving the procedure that MCM employs when a consumer seeks to designate a debt as disputed.  The second subject is the action that MCM and MFL employed towards Plaintiff, in handling an alleged debt that Verizon New York Inc. ("Verizon") allegedly attributed to Plaintiff. As demonstrated *infra*, Plaintiff's documents requests concentrate only on these two subjects.

So far, (1) the Defendants have yet to produce its records of all communications MCM and MFL made to third parties regarding the alleged debt that Verizon attributed to Plaintiff. (2) Defendants have yet to produce the log of its consumers who over the year preceding this action, by phone, sought to designate their debts as disputed.  (3) Defendants have yet to produce records related to claims made against Defendants within the last five years involving "requests from debtors to designate their debts as disputed."(4) At the 30(b)(6) deposition, the Defendants refused to respond why the alleged Verizon debt is "valid," and the Defendants failed to produce evidence substantiating that the alleged Verizon debt is "valid."

In an attempt to resolve the foregoing failure to produce documents, at the 30(b)(6) deposition, Plaintiff inquired into the communications Defendants made to third parties regarding the alleged debt that Verizon attributed to Plaintiff. Nonetheless, Mr. Johnson repeatedly interjected "objection to form."  The witness then claimed not to know communications Defendants made what third parties regarding the alleged debt that Verizon attributed to Plaintiff; thus, failing to answer questions regarding communications made to third parties.

Similarly, when Plaintiff inquired from the 30(b)(6) witness whether the Defendants have been sued in the past five years for the failure to designate a debt as disputed. The Defendants failed to disclose any lawsuits or that a complaint and fine in the sum of $10,000,000 and $42,000,000 in restitution as directed by the United States of America Consumer Financial Protection Bureau was pending. (*See* **Exhibit A**).  Mr. Johnson repeatedly interjected "objection to form" and the witness failed to disclose any complaints or lawsuits.[1]

_____

[1] The Court's order, dated August 20, 2015 states:

> *"8. Plaintiff may inquire into the employment history of each employee. The Court assumes that the witness will be educated by defendants to answer questions about any prior complaints or claims within the last five years that defendants have refused, declined, or made it more difficult than legally permissible to mark a debt as 'disputed,' and defendants shall produce documents referring or relating to any such complaints or claims."*

At the deposition, Defendants insisted that the Court's directive must be read in conjunctive as one sentence, to limit Plaintiff's inquiry only into claims made against Defendants employees. Thus, Defendants refused to answer questions regarding consumer claims made within the last five years about Defendants refused, declined, or made it more difficult than

September 18, 2015
Page 4

_____

In addition, Defendants Answer alleges that MFL and MCM are separate entities, with MFL having no employees.  When Plaintiff inquired from the 30(b)(6) witness how MFL operates without personnel, Mr. Johnson repeatedly interjected "objection to form" and the witness responded that MCM's employees does all acts on behalf of MFL.

When Plaintiff inquired from the 30(b)(6) witness whether the alleged Verizon debt is "valid," Mr. Johnson repeatedly interjected "objection to form" often leaving the question as to validity of the debt unanswered.  The transcript shows that Plaintiff's attempt to examine the 30(b)(6) witness was repeatedly interrupted, leaving Plaintiff without answers as what and to whom Defendants made communications regarding Plaintiff.

Moreover, on May 7, 2015, the Court directed there shall be no speaking objections at the depositions. In contravention of this Courts May 7, 2015 order on the record, counsel for the Defendants made not less than 50 speaking objections often directing the witness not to answer the question, and not less than 250 "objection[s] to form," often without a valid reason. This was made more egregious when counsel's interruption was made while the witness was about to answer an open question.

On September 9, 2015, Plaintiff informed Defendants of the records they believe are now past due for production.  On September 16, 2015, counsels met and conferred, Defendants counsel offered to Plaintiff that he will review with his clients whether Defendants will make an additional production of documents, to satisfy Plaintiff's requests.  As of September 18, 2015, Defendants have yet to inform Plaintiff whether Defendants will produce these records. Therefore, Plaintiff submitted the draft of the letter within. In response, Defendants counsel informed Plaintiff "I have yet to meet with my client, today at 9:30 AM pacific time." Thus, in anticipation Defendants offer to produce documents to Plaintiff, the draft of the joint letter could not be submitted earlier.

### *The Defendants should be compelled to produce the Documents related to Plaintiff's First and Second Claims for Relief.*

The Class Action involves only the First and Second Claims for Relief. By order dated August 20, 2015, the Court directed that Defendants produce the records related to complaints made against Defendants within the last five years, involving "requests from debtors to designate their debts as disputed." Defendants have yet to produce any of these documents that comply with the Court's mandate.  Additionally, due to the Defendants failure to produce any documents the Plaintiff was denied the ability to ask the Defendants 30(b)(6) witness regarding those

_____

legally permissible to mark a debt as disputed. Defendants' sentence convolution of the Court's directive seeks to frustrate Plaintiff's diligence in obtaining records that are actually relevant to this case.

documents reflecting such complaints. Thus, the question presented to the Court is whether Defendants should be compelled to comply, precluded or should be sanctioned for its evasiveness.

It was not until today, when Plaintiff submitted its draft of this joint letter when Defendants finally produced a few of the complaints made against Defendants within the last five years, involving requests from debtors to designate their debts as disputed. Yet, in Defendants own words, they produced only "records relating to the cases Plaintiff cited in Plaintiff's letter to the Court of September 1, 2015 (Docket No. 48)." Obviously, if Plaintiff has not mentioned to the Court the citation or case number, Defendants have chosen to continue to deprive Plaintiff of the records of complaints.

The First and Second Claims for Relief allege that in violation of the FDCPA, Defendants employ a Reason Requirement whenever a consumer seeks by phone to designate their debts as disputed.  The first and second claims for relief allege that practice is a false or deceptive or means in connection with the collection of any debt, because the FDCPA allows disputing a debt without providing any reason.

The First Claim for Relief alleges that the *communication* requiring a reason for disputing the debt, is a known false communication or threat to fail to communicate that a disputed debt is disputed, in violation of 15 U.S.C. § 1692e(8). The Second Claim for Relief alleges that the *reason requirement,* improperly seek from the consumer a reason for disputing the debt, a means Defendants use to obtain information concerning a consumer in connection with the collection of a debt, in violation of 15 U.S.C. § 1692e(10).

Concerning the Reason Requirement there is no question of fact present. Defendants concede it is their practice to "endeavor" the consumer for a reason when disputing a debt.  *See* Answer to Third Amended Complaint paragraph 142 and footnote "1."  Furthermore, the company policy manuals produced by Defendants are descriptive.  They detail how the Customer Service Specialist ("CSS") should endeavor the consumer for a Reason disputing the debt. Indeed, one example, the manuals Defendants produced in discovery on bates number Midland-060 state:

> "*Documentation and Information Relating to Verbal Disputes. In certain situations, the information the consumer provides by telephone may be sufficient to substantiate their dispute. In those situations (described below), the CSS Phone Specialist will take the aforementioned steps to close the account. In other situations, the information will not be sufficient to substantiate the dispute and MCM must either obtain the dispute in writing or obtain documentation to substantiate the dispute (or both). The scenarios, probing questions, and factors set forth below are not exhaustive. The CSS Specialist should consult and utilize these probing questions and factors when discussing a dispute with the consumer*,"

September 18, 2015
Page 6

_____

Therefore, the Reason Requirement is a question of law, which the parties can address on summary judgment. According to the answer, Defendants will argue it is good company policy to "endeavor" the consumer for a reason when disputing a debt.  However, Plaintiff "argues that a consumer can dispute a debt for 'no reason at all,' and that is true."*Dekoven v. Plaza Associates*, 599 F.3d 578, 582 (7th Cir. 2010) citing *Desantisv. Computer Credit, Inc.*, 269 F.3d 159, 162 (2nd Cir. 2001)(holding no valid reason is required under the FDCPA for nonpayment).

Moreover, pursuant to FRCP 23(a)(2)-(3), the first and second claims for relief, present the Court with a question of fact and law common to Plaintiff and the Class.  The endeavoring Plaintiff for a reason to dispute the alleged debt was not an isolated incident, but a product of Defendants official company policy.  The same policy Defendants apply to every consumer who calls to designate their debts as disputed.[2]

If the Court will certify the Class Action pursuant to FRCP 23(b)(3), proper notice must be given to all of Defendants consumers, who have called Defendants by phone, to designate an alleged debt as disputed. Therefore, Plaintiff properly seeks the log of its consumers who, over the year preceding this action, by phone, sought to designate their debts as disputed.

In any way, even if the Court will certify the Class Action pursuant to FRCP 23(b)(1) or (b)(2), the records of claims made against Defendants within the last five years, involving "requests from debtors to designate their debts as disputed" is relevant. Because Plaintiff will

_____

[2]Defendants have a history of "endeavoring" and inducing consumers to furnish a reason to dispute a debt. *See* **Exhibit A § 36 -44** on an average month, "10,000" consumers call by phone to designate a debt as disputed.  *Also see Garcia v. Midland Credit Management* (D.Colo. 6-9-2014) (plaintiff insisted the debt is **nonexistent**—as not owing the debt, but Midland refused to accept the dispute, which was made orally); *Randall v. Midland Funding, LLC*, Dist. Court, D. Nebraska 2009 (Defendants failed to indicate the dispute, thus, plaintiff stated a claim under 15 U.S.C. § 1692e(8)); *Barris v. Midland Funding LLC*, Dist. Court, D. New Jersey 2015 (Defendants failed to communicate that a disputed debt as disputed); *Gomez v. Midland Funding, LLC*, Dist. Court, ND Illinois 2014 (Plaintiff sued for the failure to communicate that the debt was disputed); *Oberther v. Midland Credit Management, Inc.*, Dist. Court, D. Massachusetts 2014 ("Here, just as in Pollard, the [communication] would cause an unsophisticated consumer to be uncertain as to the effect of disputing the debt....To give the required notice of a right to dispute the debt while simultaneously and inaccurately disparaging the benefit of the right is to cause the consumer to think that the right to dispute has less benefit than is actually the case"); *Orrick v. Midland Credit Management, Inc.*, Dist. Court, D. Colorado 2013 (Plaintiff contended Midland knowingly failed to advise that the debt was in dispute); *Bauer v. Midland Credit Management*, *Inc*., Dist. Court, MD Florida 2012 (The plaintiff states that he told Defendant's representatives that he disputed three alleged debts; but Defendant failed to communicate that a disputed the debts); *Hubbard v. Midland Credit Mgmt.*, 2013 U.S. Dist. LEXIS 162086; and *Mejia v. Midland Funding LLC*, 2015 U.S. Dist. LEXIS 89889 (Plaintiff sued because he "could not dispute the debt unless he had a reason to do so, and that any dispute would have to be in writing").

need to demonstrate that Defendants acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole. Defendants' excuse of "burdensome," failing to produce the claims regarding "requests from debtors to designate their debts as disputed," demonstrates that either Plaintiff's class is numerous or Defendants fear revealing to the Court an enduring FDCPA violation.  In addition, Defendants might be in fear of justifying Plaintiff's plea for declaratory and injunctive relief.

Moreover, "The FDCPA instructs that, in the case of a class action, that damages should be assessed, *inter alia*, on the basis of 'the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, the resources of the debt collector, the number of persons adversely affected, and the extent to which the debt collector's noncompliance was intentional'. § 1692k(b)(2)."*Sykes v. Mel S. Harris and Associates LLC*, 780 F.3d 70, 83 (2nd Cir. 2-10-2015).  Therefore, the log of consumers who sought to designate their debts as disputed, and the claims made against Defendants for refusing to designate a debt as disputed, is relevant to demonstrate the frequency and persistence of noncompliance by Defendants. Defendants failed to provide a valid excuse for its failure to produce.

**Exhibit a § 36 44**, the Consent Order, refutes Defendants excuse that they not possess a log of its callers who sought within the year preceding to this action to designate a debt as disputed.  On an average month, "10,000" consumers call by phone to designate a debt as disputed. It is axiomatic; the Consumer Financial Protection Bureau only gained that information after discovery of Defendants company records.

### *The Defendants should be compelled to produce the documents related to Plaintiff's Third and Fourth Claims for Relief.*

The Third and Fourth Claims for Relief involve the procedure that MCM and MFL employed towards Plaintiff, in handling an alleged debt that Verizon New York Inc. allegedly attributed to Plaintiff. Thus, Plaintiff properly seek the communications MCM and MFL made to third parties regarding Plaintiff's alleged Verizon debt, and the evidence substantiating that the alleged Verizon debt is "valid."

The Third Claim alleges that in violation of 15 U.S.C. § 1692e(8), Defendants made false communications regarding the alleged Verizon debt attributed to Plaintiff, by issuing to Plaintiff a letter stating that Defendants had deleted the alleged debt, when actually that deletion had not yet happened.

The Fourth Claim alleges that in violation of 15 U.S.C. § 1692e(8) and (10), Defendants made the false and deceptive misrepresentation that the alleged Verizon debt is "valid." First, Defendants communicated to Plaintiff that the alleged debt is "valid" because it is in our system, while not communicating to the credit bureaus that the alleged debt is disputed; even after

Defendants knew that the alleged debt could not be verified. Second, by knowingly collecting a Nonexistent debt, Defendants made the false representation of a debt collection. Third, the alleged Verizon debt began appearing on Plaintiff's Equifax and TransUnion credit reports only after filing the underlying suit, which Plaintiff alleges is Defendants retaliation to Plaintiff's suit.

Therefore, Plaintiff properly seek the communications MCM and MFL made to third parties regarding the alleged debt Verizon attributed to Plaintiff, and the evidence substantiating that the alleged Verizon debt is "valid."  Defendants should be compelled to produce the evidence substantiating that the alleged Verizon debt is "valid" or be barred from asserting so in this action.

Defendants in their answer insist that the alleged Plaintiff's debt Defendants purchased from Verizon is valid.  Came to the 30(b)(6) deposition, Plaintiff inquired as to what knowledge Defendants have substantiating the alleged debt as valid.  Defendants refused to answer Plaintiff's with an "objection to form." Every other question asked by Plaintiff was rigged with Defendants "objection to form."

Nonetheless, a Consent Order, entered on September 9, 2015, refutes Defendants assertion that its purchase a batch of debts from Verizon confirms its validity. Indeed, "the only investigation typically taken by [Defendants] prior to a Debt portfolio purchase has been to review the data file for facial anomalies such as a default date preceding an account open date or a Social Security number that is obviously a placeholder (e.g., made up of all the same numbers)."  (*See* **Exhibit A§ 24-35 "**Sellers Disclaim the Accuracy and Enforceability of Debt They Sold to Encore").  In this case, Defendants have provided no basis to argue that the alleged Verizon debt is valid.  While the Term Agreement shows Verizon conveying something to Defendants, that conveyance was made "without recourse," which reaffirms the findings made by the Consumer Financial Protection Bureau.  Defendants should be ordered to produce all the documents they claim validated the alleged Verizon debt attributed to Plaintiff, or otherwise be precluded from alleging that the alleged Verizon debt is valid.

Likewise, in its answer, Defendants asserts that they did not make some of the communications regarding Plaintiff's alleged Verizon debt. Defendants should be compelled to produce the communications it made to third parties regarding the alleged Verizon debt or otherwise be precluded from contesting the evidence Plaintiff produced substantiating their communication.

Moreover, Defendants refusal to be deposed on the question whether MFL and MCM are separate entities, require striking Defendants affirmative defense alleging that MCM and MFL are separate entities.

September 18, 2015
Page 9

_____

## PLAINTIFF'S ARGUMENTS FOR RELIEF

Plaintiff has gone out of its way to respond to every document that Defendants sought from Plaintiff including documents reflecting litigation over ten years old. Yet, when it comes to Plaintiff requesting documents form Defendants, the process has become like pulling.  The present discovery issues reflect persistent-evasiveness by Defendants to elude production and prevent Plaintiff from obtaining basic records that are now past due for production. (1) The Defendants have yet to produce its records of all communications MCM and MFL made to third parties regarding the alleged Plaintiff's Verizon debt. (2) Defendants have yet to produce the log of its consumers who, over the year preceding to this action sought by phone to dispute their debt.  (3) Defendants have yet to produce records related to claims made against Defendants within the last five years, involving "requests from debtors to designate their debts as disputed." (4) At the 30(b) (6) deposition, the Defendants refused to answer what reliance they have that the alleged Verizon debt is "valid," they also refused to provide the evidence that substantiate the alleged Verizon debt as "valid." (5) The Defendants failed to produce all of the manuals which were in use at the time of Plaintiff's dispute of the alleged Verizon debt. Rather, Defendants produced manuals (of which relevant pages are missing) which were effective October 29, 2013, July 21, 2014, February 16, 2015, and March 20, 2015; on September 18, 2:30 pm, Defendants finally produced a manual labeled as Enterprise Risk Management effective August 13, 2013, (albeit with pages missing). Nonetheless, the remaining manuals are yet to be produced.

Defendants cannot claim that the foregoing records are irrelevant, because in their letter motion, dated August 19, 2015, Defendants conceded that the foregoing records are relevant to deciding the underlying case. *See* **Docket Entry #44**:

> *"Midland asserts that the relevant topics are as follows: 1. Midland Credit's policies and procedures regarding verbal debt disputes, including the alleged 'Reason Requirement.' 2. The information that Midland received regarding the account at issue, Plaintiff's former Verizon account ('the Account'), including whether Midland received any indication that Plaintiff disputed the Account from any source other than Plaintiff and, if so, what dispute information it received. 3.Midland Credit's process for investigating a debt upon receipt of a dispute. 4. Midland Credit's process for requesting deletion of a debt and the efforts it took to request deletion of the Account. 5. Whether Midland Credit misrepresented the status of the debt by representing that the debt existed or failing to report the debt as disputed. 6. Whether Midland violated the FDCPA by allegedly furnishing credit information regarding the Account to any credit bureau after Plaintiff filed suit, allegedly in retaliation for Plaintiff filing suit. 7.Midland Credit's policies and procedures regarding mailing notices to consumers such as Plaintiff."*

In its August 17, 2015 order, the Court directed "To the extent not all written discovery was produced, it must be produced at least 72 hours before the 30(b)(6) deposition or the Court

_____

may impose sanctions on defendants, including monetary sanctions or precluding defendants from proving issues on which they are alleged to have blocked discovery."  A month after that order, on the last minute after Plaintiff completed the foregoing draft letter; Defendants finally began producing a fraction of the documents they withheld from Plaintiff, all this time.  Now, Plaintiff no longer has the benefit of examining a 30(b)(6) witness, while, Defendants now produce documents filled with code language that Plaintiff cannot reasonably assume their definition without examining the 30(b)(6) witness. (Exhibit D).

   Defendants excuse, that they do not possess a log of its callers who sought within the year preceding to this action to designate a debt as disputed,  is utterly refuted by the Consent Order, **Exhibit A § 36 44,** showing that on an average month, "10,000" consumers call Defendants by phone to designate a debt as disputed. Defendants assertion that its purchase a batch of debts from Verizon confirms its validity is refuted by **Exhibit A § 24-35 "**Sellers Disclaim the Accuracy and Enforceability of Debt They Sold to Encore."

   Defendants production of a handful of documents on September 18, 2015, 26-days after the 30(b)(6) witness was deposed, deprives Plaintiff of examining the witness regarding their content, in particular communications Defendants made to third parties regarding the alleged debt Verizon attributed to Plaintiff, and prior claims Defendants faced for failing to designate a debt as disputed.  Defendants' slow motion discovery production reflects a game effectively played by Defendants on Plaintiff, which has no other adequate remedy at law but for the Court to intervene.

   Because Defendants failed to produce the log of consumers who sought to designate their debts as disputed, and Defendants failed to produce all the claims made against them for refusing to designate a debt as disputed, Plaintiff is practically halted from filing for Class Certification. Thus, Plaintiff respectfully requests that the Court to schedule a timeframe for filing for Class Certification, on a date after the Defendants comply or upon the resolution of Plaintiff's discovery motion.

### PLAINTIFF'S PROPOSED RESOLUTION

   Defendants have provided no excuse as to why they could not produce the records of communications they made to third parties regarding the alleged debt Verizon attributed to Plaintiff.  Exhibit C only shows link communications Defendants made to third parties, they do not show what and to whom the communication was made.  Thus, with no objection in sight, Plaintiff can only pray to the Court that Defendants be compelled to produce all those records of communications made to third parties regarding Plaintiffs; or otherwise, Defendants should be precluded from defending the Third and Fourth Claims for Relief.

   In its Consent Order, the US Consumer Financial Protection Bureau found that Defendants possess a log showing that every month about "10,000" consumers seek to designate

their debts as disputed, and that Defendants inquired a reason for disputing the debt. Thus, with no question of fact in sight, Plaintiff can only pray to the Court that Defendants be compelled to produce the log of its consumers who, over the year preceding to this action sought by phone to designate their dispute to a debt.  Otherwise, Defendants should be precluded from mitigating the Class Action maximum award of class damages[3] and from defending the First and Second Claims for Relief.

In its Order dated August 20, 2015, the Court ordered Defendants to produce records related to claims made against Defendants within the last five years, involving "requests from debtors to designate their debts as disputed." Thus, because Defendants have yet to comply, Plaintiff can only pray to the Court that Defendants should be compelled to produce all the records of claims of those who sought by phone to designate their debts as disputed,  not only those cases Plaintiff mentioned to the Court.  Otherwise, Defendants should be precluded from mitigating the maximum award of class damages and from defending the First and Second Claims for Relief.

If Defendants want to insist that the alleged debt Verizon attributed to Plaintiff is valid, then they should be compelled to answer what reliance they have that the alleged Verizon debt is "valid." Otherwise, Defendants should produce the evidence substantiating that the alleged Verizon debt is "valid," or Defendants should be precluded from defending the Third and Fourth Claims for Relief.

In its order dated August 20, 2015, the Court directed that Affirmative defenses that are raised in the answer may be the subject of inquiry. Defendants refusal to be deposed on the question whether MFL and MCM are separate entities, require striking Defendants affirmative defense alleging that MCM and MFL are separate entities. The alternative solution is for Defendants to produce their tax returns demonstrating how MFL operates with no personnel.

At the same time, Defendants persistent-evasiveness to elude Plaintiff from basic records resulted that Plaintiff could not move yet for class certification. Thus, Plaintiff requests from the Court to schedule a timeframe, whereas the motion for class certification will be due after the Defendants comply, or are in default, with their outstanding obligations to produce the log of consumers who sought to designate their debts as disputed and produce all the claims made against them for refusing to designate a debt as disputed.

---

[3] In FDCPA cases, "Class damages are capped at $500,000 or 1per centum of the net worth of the debt collector.  § 1692k(a)(2)(B)."  *Sykes v. Mel S. Harris and Associates LLC*, 780 F.3d 70, 83 (2nd Cir. 2-10-2015).

September 18, 2015
Page 12

_____

## DEFENDANTS STATEMENT

Plaintiff allowed counsel for Midland Credit Management, Inc. ("Midland Credit") and Midland Funding, LLC ("Midland Funding") (together, "Midland") to review unredacted copies of the "CreditCheck" documents that he asserts support his claims regarding Midland's credit reports, which addressed Midland's discovery production concerns.

Midland notes that Plaintiff has not produced any actual credit reports to support his claims. The CreditCheck terms and conditions specifically provide that a CreditCheck report is not a credit report. Midland notes for the record that Plaintiff asserts that he does not possess any actual credit report issued by TransUnion, Equifax or Experian.

Counsel for Midland and Plaintiff did meet and confer on September 16, 2015, and at that conference Midland informed Plaintiff that Midland would produce records relating to the cases Plaintiff cited in Plaintiff's letter to the Court of September 1, 2015 (Docket No. 48). On September 18, 2015, Midland provided Plaintiff copies of all complaints cited in Docket No. 48 as well as the relevant court decisions arising out of those complaints.

## DEFENDANTS COUNTER-ARGUMENTS

Midland has provided Plaintiff with all relevant documentation and testimony concerning his claims. To address Plaintiff's assertions:

1.     Plaintiff asserts that Midland has not produced records of all communications Midland made to third parties regarding Plaintiff's Verizon debt. To the contrary, Midland produced Midland Credit's account notes concerning Plaintiff's account in response to Plaintiff's Requests for Production. Included in those notes is a record of all credit reporting information that Midland Credit furnished to the consumer reporting agencies (attached as Exhibit B), which Midland's corporate representative explained at her deposition. Midland Funding performs no independent credit reporting of the accounts it purchases.

Further, on September 18, 2015, Midland produced to Plaintiff the relevant data that was uploaded reported to the credit reporting agencies via the e-OSCAR system, which is also reflected in Midland Credit's account notes, produced to Plaintiff long ago.

2.     Plaintiff asserts that Midland has not produced a log of all consumers who, over the year preceding this action, by phone sought to dispute their debts. Midland has consistently informed Plaintiff, beginning in its responses to Plaintiff's requests for production, that it does not possess such a log. Midland's corporate representative also testified to this fact.

3.     Plaintiff asserts that Midland has not produced records related to claims made against Defendants within the last five years involving requests from debtors to designate their

September 18, 2015
Page 13

---

debts as disputed. This assertion reflects an erroneous understanding of the Court's order in Docket No. 45 as well as a failure to recognize what it is that Plaintiff informed the Court he was seeking.

In the Parties' Joint Letter to the Court (Docket No. 44), Plaintiff stated that he needed, among other information, "basic information regarding any particular employees involved in the actions giving rise to this litigation, etc," with a footnote stating "[i]t goes without saying that Plaintiff does not seek confidential personal information from employees' personnel files. Rather, Plaintiff listed such files as a topic for the witness to review, so that he may answer basic questions as to who did what, what their roles and responsibilities were, etc."

Your Honor issued an Order responding to the Joint Letter (Docket No. 45). The Order provided, at paragraph 8, that "Plaintiff may inquire into the employment history of each employee. The Court assumes that the witness will be educated by defendants to answer questions about any prior complaints or claims within the last five years that defendants have refused, declined, or made it more difficult than legally permissible to mark a debt as 'disputed,' and defendants shall produce documents referring or relating to any such complaints or claims."

In context, it is clear that the "complaints or claims" to which the Court refers are related to "the employment history of each employee" involved in the actions giving rise to this litigation. If this were not so, Midland believes that the Court would have constructed the above-quoted text as two paragraphs – one allowing Plaintiff to inquire into the employment history of each employee, the other providing that defendants shall answer questions and produce documents involving claims that Midland "refused, declined, or made it more difficult than legally permissible to mark a debt as 'disputed.'"

Accordingly, at the deposition of Midland's corporate representative, Midland's counsel asked the representative if she had reviewed the employment records of each employee involved in the actions giving rise to this litigation and she testified that she had. Then Midland's counsel asked whether any of those employees had been the subject of any complaints or claims alleging that they had refused, declined, or made it more difficult than legally permissible to mark a debt as disputed, and she testified that they had not. Thus, Midland satisfied the duty to provide information regarding other allegations as requested by Plaintiff and as set forth in the Court's Order. Despite this, in an effort to defuse this dispute, Midland provided Plaintiff documents relevant to all cases Plaintiff cited in Docket 48. Midland provided these records to respond to Plaintiff's complaints, not because Midland believed that it was obligated to do so.

4.     Plaintiff alleges that Midland refused to respond why it believes that the Verizon debt is valid and that Midland failed to produce evidence showing that the debt is valid. This

September 18, 2015
Page 14

claim is not true. Midland produced records showing that Verizon sold a batch of accounts to Midland Funding, and that among those accounts was Plaintiff's account. Midland's corporate representative testified regarding Midland Funding's purchase of the debt and the data that Midland Funding received from Verizon at purchase of the debt. A copy of the information Verizon provided Midland Funding regarding Plaintiff's debt, produced to Plaintiff in response to Plaintiff's Requests for Production, shows that Verizon represented that the debt existed and was due and owing. Exhibit C. Midland's corporate representative explained what the information in exhibit C represented.

5.    Plaintiff alleges that Midland failed to produce all manuals in use at the time of Plaintiff's dispute of the debt. Midland, however, did produce portions of various manuals which were relevant to Midland's policies and procedures concerning oral disputes of debts, some of which were the versions in effect at the time of the call, others which had been updated since the call. Midland's corporate representative, however, testified that Midland Credit's policies and procedures regarding oral disputes of debts had not changed in any material way since the 2011 to the present.

On August 20, 2015, Midland Credit provided Plaintiff relevant portions of its "Account Manager Manual," portions of which were updated at different dates but all dated before October 17, 2013; relevant portions of Midland Credit's "Fair Debt Collection Practices Act (FDCPA and Related State Law Policy," dated October 29, 2013; relevant portions of Midland Credit's "Consumer Dispute Policy," dated February 16, 2015; and relevant portions of Midland Credit's "State Law Variations" manual, dated July 21, 2014; and the full manual titled "Handling Verbal Disputes and Supporting Information" document, dated March 20, 2015. No relevant pages were withheld. Plaintiff was free to, and in fact did, question Midland's representative regarding Midland's policies and procedures concerning accepting oral disputes on the date of the call at issue. Further, in an effort to resolve the present dispute, Midland Credit produced the August 13, 2013 version of Fair Debt Collection Practices Act (FDCPA) and Related State Law Policy on September 18, 2015, though Midland believes that it had already satisfied its production requirement.

Plaintiff alleges that Midland improperly did not disclose the CFPB's Consent Order. Midland was not at liberty to discuss the Consent Order before it issued and, as the Order makes clear, Midland did not admit any wrongdoing in connection with the Order. Exhibit A, § 3.

Plaintiff represents that Midland's corporate representative refused to be deposed as to whether Midland Credit and Midland Funding are separate entities. This is not true, but regardless, this fact is easily confirmed via the companies' public records. Midland's corporate representative testified that at the time of the events at issue in this matter, Midland Funding had

September 18, 2015
Page 15

no employees. Midland Funding has, since that time, added employees due to the collection agency regulations of the State of Michigan, and those employees are only involved in the collection of debt from residents of Michigan. No Midland Funding employee ever had any involvement with Plaintiff's account.

Regarding Plaintiff's concerns about Midland's objections to form at the deposition of Midland's corporate representative, although Plaintiff and Plaintiff's counsel's questions were objectionable, as Plaintiff whispered what appeared to be deposition questions to counsel throughout the deposition, Midland's corporate representative did testify as to Midland's communications with third parties, namely the consumer reporting agencies to which Midland Credit reported Plaintiff's debt.

### **DEFENDANTS PROPOSED RESOLUTION**

The documents Plaintiff has produced or failed to produce reflect that Plaintiff has failed to state a claim. Midland has produced all documents and testimony required of it. Midland does not believe any sanctions against it are appropriate. Further, Midland opposes Plaintiff's belated and improper request to extend the time to move for class certification in this letter and Plaintiff's many arguments that are irrelevant to any discovery matters at issue.

Midland notes that Plaintiff did not provide a copy of Plaintiff's statements for this Joint Letter until September 18, 2015 at 8:44 a.m., necessitating a scramble to complete the letter by the beginning of Shabbes.

Midland believes that Plaintiff's frivolous discovery disputes merit sanction

September 18, 2015
Page 16
_____

Respectfully submitted,

**POLTORAK PC**

By:      /s/ Jacob T. Fogel

_____

Jacob T. Fogel Esq.
*Counsel for Plaintiff Levi Huebner*

26 Court Street, Suite 908
Brooklyn, NY 11242
Tel: (718) 855-4792
Fax: (718) 228-9272
Email: jayfogel@att.net


**MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN COLEMAN &
GOGGIN, P.C.**

By:  /s/ Matthew Johnson

_____

Matthew B. Johnson (MJ 1622)
*Counsel for Defendants Midland Funding, LLC* and
*Midland Credit Management, Inc.*

88 Pine Street, 21st Floor
New York, New York 10005-1811
Ph: (212) 376-6433
MBJohnson@mdwcg.com