## MARSHALL DENNEHEY
## WARNER COLEMAN & GOGGIN

ATTORNEYS-AT-LAW   WWW.MARSHALLDENNEHEY.COM

A PROFESSIONAL CORPORATION

Wall Street Plaza. 88 Pine Street, 21st Floor · New York, NY 10005
(212) 376-6400 · Fax (212) 376-6490

PENNSYLVANIA
Allentown
Doylestown
Erie
Harrisburg
King of Prussia
Philadelphia
Pittsburgh
Scranton

NEW JERSEY
Cherry Hill
Roseland

DELAWARE
Wilmington

OHIO
Cincinnati
Cleveland

FLORIDA
Ft. Lauderdale
Jacksonville
Orlando
Tampa

NEW YORK
Long Island
New York City
Westchester

Direct Dial: 212-376-6433
Email: mbjohnson@mdwcg.com

October 5, 2015

Honorable Brian M. Cogan
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:   Huebner v. Midland Credit Management, Inc. et al., No. 1:14-cv-06046-BMC
      Pre-Motion Conference Request Regarding Motion to Reconsider and Request for
      Extension of Time

Dear Judge Cogan:

Defendants Midland Credit Management, Inc. ("MCM") and Midland Funding, LLC, (collectively "Midland") though counsel, respectfully submit this letter seeking a promotion conference regarding a motion for partial reconsideration, pursuant to Fed. R. Civ. P. 60(b) and Local Civil Rule 6.3, of the Court's Order of September 22, 2015 (Docket No. 51). Midland also requests an extension of time to comply with the Court's Order, for Plaintiff to depose its corporate representative a second time and to move for summary judgment.

Motions for reconsideration are entrusted to the discretion of the court. Keller Painting Corp. v. Torcon, Inc., 12-CV-1061 (ADS)(ARL), 2014 U.S. Dist. LEXIS 161516, at *4 (E.D.N.Y. Nov. 18, 2014). Such a motion is appropriate when the moving party believes that the court overlooked important "matters or controlling decisions" that would be expected to have altered the conclusion reached by the court. Baumgarten v. Suffolk County, 12-CV-0171(JS)(AKT), 2014 U.S. Dist. LEXIS 116145, at *3-4 (E.D.N.Y. Aug. 19, 2014).

Midland respectfully suggests that the Court overlooked, or more accurately was not aware, of the amount of time and expense that would be required to create records concerning data it was ordered to produce. Midland cannot comply with the Court's order within the time allowed, as complying with the Order would require many weeks of employee time to cull though documents, identify responsive information and create new documents tailored to Plaintiff's request to satisfy the Order's directives.

MCM receives a large number of both informal and formal complaints from debtors. Midland does not categorize complaints to identify informal or formal complaints where an individual claims that a verbal dispute was not honored by MCM. Although Plaintiff asserted attorney-client privilege in the course of his deposition when asked if he sought to certify a class of New York residents or a nationwide class, his complaint asserts a nationwide class. Analyzing complaints to ascertain if any complaints include an alleged failure to identify a

verbal dispute concerning New York residents alone would be a large undertaking; analyzing this data to create records concerning the entire nation is a very significant project for an entity as large as MCM.

In order to obtain a record of all calls made to MCM within the year preceding this action in which a consumer verbally disputed a debt (Order Point 5), we have requested that MCM build software code so that MCM can identify responsive records and create a spreadsheet of the calls, identifying the name, address and telephone number of each individual who made a verbal dispute. MCM estimates that it can accomplish this in approximately one week.  MCM does not maintain a list of individuals who verbally disputed their debts.

Midland recognizes that the Consent Order from the Consumer Financial Protection Bureau ("CFPB") states that Encore Capital Group, Inc. ("Encore") receives an average of 10,000 oral complaints from consumers each month, however, that number was a rough estimate provided to by a representative of MCM. Encore did not present an actual monthly count to the CFPB and the CFPB did not request such data.  It should be noted that Midland Funding and Encore did not receive disputes, as they had no employees and did not engage in any debt collection activity. Only MCM would have the data that MCM is presently trying to piece together for the spreadsheet.

Despite a lack of a factual basis for his allegations, Plaintiff puts forth the proposition that MCM requires a reason as a prerequisite for acceptance of a verbal dispute. While this was not the case with Plaintiff (as MCM honored his dispute without a reason), Plaintiff seeks records regarding all calls that resulted in MCM marking a debt disputed as a result of a verbal dispute. Production of a list of all consumers who called MCM and had their debt marked disputed would not establish the members of Plaintiff's putative class, it would remove these individuals from the baseless class. It is presumed that Plaintiff intends to contact each of those consumers (or a sampling) and inquire as to whether MCM required a reason before MCM would accept their verbal disputes. To the extent that Plaintiff contacts any consumer, Midland would then be compelled to depose each consumer contacted by Plaintiff (whether the consumer identified the fictional "reason requirement" or not). The required individual investigation of each consumer contacted thoroughly undermines the purpose of a class action – to avoid mini-trials as to each putative member.

Thus, Midland respectfully submits that requiring it to generate a list of names, address and numbers of consumers who verbally disputed their debts with MCM serves no purpose whatsoever. On the one hand, it shows that MCM properly addressed each verbal dispute. On the other, it shows that each consumer's claims lack typicality and commonality sufficient to render class treatment remotely superior to individual treatment.

In order to produce records relating to complaints made against Midland relevant to this litigation from the past five years which are related to requests from debtors to designate their debts as disputed (Order Point 4), MCM would have to examine data from five different systems in two departments, Operations and Legal.

Operations' records of complaints retained from May 29, 2010 through November 7, 2013, exist in the form of Excel spreadsheets; these would have to be manually reviewed to identify responsive complaints. MCM estimates that it would take 23 working days (184 hours) to perform this review. Once responsive complaints are identified, MCM estimates that it would take from 10 to 45 minutes to manually retrieve each complaint and the response thereto.

Operations' records of complaints received from November 8, 2013 to May 29, 2015 are stored in a database that can be searched electronically to identify potentially relevant records. Those records would then

need to be manually reviewed to identify records that are responsive. Midland estimates that manual review of the records would take approximately 9 working days (72 hours) and that it would take approximately 15 minutes to manually retrieve each complaint and the response thereto.

MCM's legal department may also have responsive records. Over the period from May 29, 2010 to May 29, 2015, the legal department utilized three different document retention systems. Each system would have to be examined for relevant records.

Providing Plaintiff with a list of every complaint where a debtor claims he or she attempted to dispute a debt which was not honored (unlike Plaintiff, whose dispute was honored) will not aid Plaintiff in attempting to certify a class to which he cannot be a member.

Midland respectfully suggests that in order to satisfy Plaintiff's discovery request that it provide Plaintiff with further non-privileged records related to the nine cases Plaintiff's counsel identified in his letter of September 1, 2015 (Docket No. 48). Plaintiff alleges that these cases demonstrate that Midland has a practice of inducing consumers to furnish a reason to dispute a debt. Should Midland be obligated to produce the documents as presently ordered, Midland asks that Plaintiff be required to compensate Midland for the cost of the searches and record creation and production, as the Court noted that "Plaintiff must bear the burden of financing his own suit, not defendants." Docket No. 52 at Point 5.

In addition, Midland requests extra time to produce the ordered supplemental discovery to Plaintiff (Order Point 7). Depending on what the Court orders MCM to produce, MCM may need four months to create records to satisfy the Order. Midland respectfully requests additional time for Plaintiff to depose Midland's corporate representative a second time as well, until after the ultimate deadline for Midland to satisfy its production obligations.[1] Finally, Midland seeks additional time to move for Summary Judgment, the deadline for which is presently October 16, 2015 (Order, September 4, 2015). Midland suggests a deadline of one month after the deadline set or reset for production of documents.

Midland respects the Court's Order but is simply unable to create and secure documents that serve the singular purpose of distinguishing the facts from Plaintiff's false claims against Midland within the timeframe ordered by the Court. Therefore, Midland respectfully submits that modification of the Order would be proper in order to secure the just and speedy determination of this action, including the recovery of defense costs incurred as a result of Plaintiff's efforts to craft a claim in the absence of any factual basis.

Respectfully,

Matthew B. Johnson

---

[1] Midland notes that the prior deposition of Midland's corporate representative lasted 6 hours, 50 minutes. Given the 7 hour limit on depositions, Midland suggests that Plaintiff be permitted an extra hour to depose Midland's corporate representative.