Honorable Brian M. Cogan
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

November 30, 2015

Re:   *Huebner v. Midland Credit Management, Inc. et al.*, 1:14-cv-06046-BMC

**LETTER REQUESTING PRE-MOTION CONFERENCE FOR RECONSIDERATION**

Dear Judge Cogan:

  We represent Plaintiff Levi Huebner ("Plaintiff"). Pursuant to Rule 60(b) and Local Civ. Rule 6.3, we write to respectfully request that the Court schedule a pre-motion conference to address Plaintiff's contemplated motion for reconsideration of the order dated November 24, 2015, which provides in relevant part: "defendants' discovery certification is adequate. In light of the fact that defendants produced additional discovery materials to plaintiff on 11/23/2015, plaintiff has until 12/8/2015 to submit his class certification motion." (ECF 11/24/2015).

  Unfortunately, the Court's order, "that defendants produced additional discovery materials to plaintiff on 11/23/2015" was entered without providing Plaintiff an adequate opportunity to address the inadequacy of Defendants Midland Credit Management, Inc. (MCM") and Midland Funding LLC ("MFL") (collectively "Midland") "Certification of Documents Produced." (ECF 60). The Defendants' certification is inaccurate in material respects and necessary class and merits discovery is still outstanding. Furthermore, it appears that the Court's order is inconsistent with prior orders of this Court and may require clarification.

## BACKGROUND

  On May 7, 2015, the Court ordered the parties to complete discovery on or before July 8, 2015. (ECF 05/07/2015). Plaintiff timely completed his discovery production, Midland did not produce any discovery by the July 8, 2015 deadline. (ECF 37). Accordingly, on July 21, 2015, the Court ordered "Defendants are to respond to plaintiff's written discovery requests by 8/10/15." (ECF 07/21/2015).

  On August 12, 2015, Midland reported to the Court that "they are complying with the current discovery schedule." (ECF 08/12/2015). Four days later, on August 16, 2015,

Midland filed a unilateral motion for extension of time to complete discovery. (ECF 40). The following day, the Court order provided, "Defendants must produce the 30(b)(6) witness for deposition by 8/24/15 and should have produced all outstanding written discovery by 8/10/15. **To the extent not all written discovery was produced, it must be produced at least 72 hours before the 30(b)(6) deposition or the Court may impose sanctions on defendants, including monetary sanctions or precluding defendants from proving issues on which they are alleged to have blocked discovery.**" (ECF 08/17/2015) (Emphasis added). Accordingly, the due date to produce written discovery was extended to August 20, 2015. Thereafter, on August 24, 2015, Plaintiff deposed Midland 30(b)(6) witness.

However, on August 19, 2015, Midland moved for a protective order. (ECF 44). On August 20, 2015, the Court further adjusted the schedule for Midland's discovery, setting forth the documents Midland must produce. (ECF 45).

On September 9, 2015, Plaintiff was forced to move for an extension of time to file for class certification, because Midland has still not completed discovery. (ECF 48). The Court denied Plaintiff's letter without prejudice because Plaintiff did not indicate "that the circumstances that allegedly caused that delay (defendants' non−production) are ever going to change." (ECF 09/02/2015). Recognizing Midland's delay, in response, the Court further adjusted the schedule, to address Midland's delaying the case by September 18, 2015. (ECF 09/04/2015).

Thereafter, on September 18, 2015, Midland had still not produced the requested documents and refused to comply with its discovery obligations. (ECF 50). Accordingly, the Court ordered: "As the Court has previously held, any supplemental discovery must be produced by October 9, 2015." (ECF 51 ¶ 7). "Additionally, plaintiff is entitled to re-depose defendants' 30(b)(6) witness, by telephone or video, on any issues for which supplemental discovery has been ordered and produced. This deposition must take place by October 14, 2015." (ECF 51 ¶ 8). Thus, the Court adjusted the schedule to again address Midland's persistent noncompliance in delay of this action.

Instead of complying, on October 5, 2015, Midland again unilaterally moved for an extension of several months to comply with discovery. (ECF 52). Clearly mindful, that Plaintiff had already completed his discovery production by August 17, 2015, and that Midland moved in breach of this Court's rules without first filing a joint letter, the Court for the fifth time adjusted the schedule further stating, "This Court previously held that any supplemental discovery must be produced by October 9, 2015. In light of defendants failure

to comply with the Court's prior order any supplemental discovery must be produced by October 30, 2015." (ECF 54 ¶ 7). "Additionally, plaintiff is entitled to re-depose defendants' 30(b)(6) witness, by telephone or video, on any issues for which supplemental discovery has been ordered and produced. This deposition must now take place by November 6, 2015." (ECF 54 ¶ 8).

Nevertheless, October 31, 2015 passed and Midland did not comply with the Court's supplemental discovery order. On November 4, 2015, Plaintiff sought a pre-motion conference in contemplation of a motion to compel discovery. (ECF 55). The Court denied the application "without prejudice to renewal with a joint discovery dispute letter as required by this Court's Individual Practice Rules." (ECF 11/05/2015).

On November 13, 2015, after a meet and confer, Plaintiff sought a pre-motion conference in contemplation of a motion to revoke from certain documents the improper "confidential" designation. (ECF 57). Plaintiff informed the Court that Midland refused to cooperate with the submission of a joint letter. Notably, while Plaintiff had fully complied with discovery, the Court *sua sponte* sanctioned Plaintiff "for again attempting to delay this action." (ECF 11/13/2015).

On November 19, 2015, the Court clarified: "What defendants did have to produce is: (1) records of calls from consumers where a debt was marked as disputed, or where a consumer refused to provide a reason for disputing a debt; (2) all documents from Operations' electronically searchable database of complaints received from November 8, 2013 to May 29, 2015; (3) any outstanding communications to third parties regarding the alleged debt; (4) documents demonstrating the validity of the alleged debt; and (5) those portions of their policy and training manuals that refer or relate to responding to requests from debtors to designate their debts as disputed. Defendants are required to file a certification by November 23, 2015 that they have produced all such documents in their possession, custody, or control." (ECF 59 ¶ 6).

For purposes of this application, though defendants have not fully complied with items (2), (4), and (5), Plaintiff will only concentrate on items (1) and (3).

## POINT I FOR RECONSIDERATION

On November 23, 2015, Midland represented in their certification to the Court that "on November 23, 2015, Midland sent Plaintiff a CR ROM via Federal Express containing a list of all calls to MCM made between October 15, 2013 and October 15, 2014 that resulted

in an account being coded 261 and 050. Included in this list are the dates each account was coded 261 and 050, the names and addresses associated with each account and the phone numbers associated with each account." However, absent from the certification was a statement that Midland produced "(1) records of calls from consumers where a debt was marked as disputed, or where a consumer refused to provide a reason for disputing a debt" as the Court ordered in ECF 59 ¶ 6.

On November 25, 2015, Plaintiff sought clarification from Midland by email, "First, at the teleconference November 9, 2015, your colleague Mr. Schwartz stated that the call log contains more a list of more than 500,000 consumers, yet the log you provided contains only 5947 names. Second, assuming that Defendants provided a list of 'all' the consumers whose accounts were marked '050-261', can you please answer why Plaintiff's name is missing from that very list?"

In response, on November 29, 2015, Midland represented by email to Plaintiff, that they produced only those accounts where MCM marked the accounts 050 (consumer disputes account) in conjunction with 261 (consumer refuses to pay by not committing to any of the offers MCM provided OR consumer won't provide proof on disputes outside of validation). However, Midland represented they did not produce the relevant call logs, such as Plaintiff's, where the code 261 was entered without the entry of 050. Likewise, Midland represented that they did not produce those accounts that were marked 050 without the entry of 261, but they disclosed that they possessed 553,107 additional accounts which had been marked as disputed by the consumer.

In simple terms, in defiance of the Court's order that production must be "(1) records of calls from consumers where a debt was marked as disputed, or where a consumer refused to provide a reason for disputing a debt." (ECF 59 ¶ 6). Midland could not properly certify compliance of item (1) because they did not comply.

## POINT II FOR RECONSIDERATION

On November 23, 2015, Midland represented to the Court: "The communications Midland provided are reports from MCM to the consumer reporting agencies ('CRAs'), which MCM provided **until** it requested that the CRAs delete all information it reported concerning Plaintiff's account." (ECF 60 *3)(emphasis added). "If MF appears on Plaintiff's CreditCheck Total document, it is because MCM reported that Plaintiff owed a debt owned by MF." (ECF 60 *3). Midland did not certify that no other records are available, such as communications Midland made after the alleged request for deletion, or the communications

they made in MFL's name. From Midland's limited production to Plaintiff, there is no way to ascertain the difference between communications made in MCM's name as opposed to those made in MFL's name.

On November 25, 2015, Plaintiff sought clarification from Midland by email. Plaintiff inquired as follows:

> *"In your Certification of Documents Produced you stated 'If MF appears on Plaintiff's CreditCheck Total document, it is because MCM reported that Plaintiff owed a debt owned by MF.' I request that from the production Defendants made to Plaintiff, you provide the references that differentiate the communication, to the third parties, between the use of names MCM and MF."*

So far, Midland has not explained to Plaintiff how one can ascertain from the production the difference between communications made in MCM's name as opposed to those made in MFL's name.

The Fourth Claim for relief alleges that the alleged Verizon debt began appearing on Plaintiff's Equifax and TransUnion credit reports (through Credit Check Total) only after filing the underlying suit, which Plaintiff alleges is retaliation to suit. In particular, two separate tradelines (one from MCM and one from MF) appeared on Plaintiff's CreditCheckTotal for the same alleged debt, even after Midland allegedly deleted that tradeline. It begs the question as to why Midland did not certify that no other records exists, such as communications Midland made after the alleged request for deletion, or communications they made in Midland's name. Midland's discovery certification is not adequate because they did ***not*** certify that they produced "(3) any outstanding communications to third parties regarding the alleged debt," in accordance with this Court's order.

## **POINT III FOR RECONSIDERATION**

The Court's order, "that defendants produced additional discovery materials to plaintiff on 11/23/2015," and further directing Plaintiff to file a class certification motion by December 8, 2015 appears to be inconsistent with the Court's prior orders that "plaintiff is entitled to re-depose defendants' 30(b)(6) witness, by telephone or video, on any issues for which supplemental discovery has been ordered and produced." (ECF 51 ¶ 8 and 54 ¶ 8). It is axiomatic, "[t]he major grounds justifying reconsideration are . . . the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Doe v. New York City Dept. of Social Services*, 709 F.2d 782, 789 (2nd Cir. 1983). The Court's order was

decided without giving Plaintiff an adequate opportunity to address the accuracy of Defendants self-serving and inaccurate "Certification of Documents Produced" and without providing Plaintiff an opportunity to conduct a supplemental deposition at the alleged conclusion of Midland's supplemental discovery as previously ordered by this Court.

The procedural history in this action demonstrates that Midland began producing previously withheld discovery after Plaintiff deposed Midland's 30(b)(6) witness on August 24, 2015, thus depriving Plaintiff from inquiring at that deposition as to the belatedly produced documents. The Court's order, "that defendants produced additional discovery materials to plaintiff on 11/23/2015" (ECF 11/24/2015), itself recognized that Midland failed to comply with the Court's previous order and produce all written discover "at least 72 hours before the 30(b)(6) deposition." (ECF 08/17/2015). Accordingly, Plaintiff respectfully seeks reconsideration of the Court's order "defendants' discovery certification is adequate" on the ground that it is prejudicial to Plaintiff depriving him of a rightful 30(b)(6) deposition, ordered by this Court, and because the discovery produced to date is **not** in material compliance with the Court's previous orders and prevents Plaintiff from preparing an adequate motion for class certification.

**WHERFORE** Plaintiff respectfully requests that the Court reconsider its *ex parte* order holding that "defendants' discovery certification is adequate. In light of the fact that defendants produced additional discovery materials to plaintiff on 11/23/2015, plaintiff has until 12/8/2015 to submit his class certification motion." Plaintiff requests the Court enter a revised order directing that:

1. Within 7-days, Midland should produce all records of calls from consumers where a debt was marked as disputed, or where a consumer refused to provide a reason for disputing a debt, to include those accounts that are only designated 261 along with those accounts that are only designated 050;

2. Within 7-days, Midland should produce any outstanding communications to third parties regarding the alleged debt: including (i) those communications made after requesting deletion of the alleged debt, (ii) the communications MCM made in MFL's name, and (iii) the records demonstrating a distinction between communications made in MCM's name verses those made in MFL's name;

3. Directing the deposition of Midland's 30(b)(6) witness within 15-days after the foregoing production;

4. Revising the scheduling orders to reflect the foregoing requested relief; and

5. Directing the parties to file a joint certification of compliance.

      Respectfully submitted,

      **POLTORAK PC**

      By: /s/ Jacob T. Fogel

      Jacob T. Fogel Esq.
      *Counsel for Plaintiff Levi Huebner*

      26 Court Street, Suite 908
      Brooklyn, NY 11242
      Tel: (718) 855-4792
      Fax: (718) 228-9272