**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

LEVI HUEBNER on behalf of himself and
all other similarly situated consumers,

                Plaintiff,

    -against-

MIDLAND CREDIT MANAGEMENT,
INC. and MIDLAND FUNDING LLC,

               Defendants.

**CASE NO. 1:14-cv-06046-BMC**


## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT


MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN
Wall Street Plaza
88 Pine Street 21st Floor
New York, NY 10005
Tel: 212-376-6433
mbjohnson@mdwcg.com

*Attorneys for Defendants Midland Credit*
*Management, Inc. and Midland Funding, LLC*

## TABLE OF CONTENTS

I.     PRELIMINARY STATEMENT ................................................................... 1

II.    PROCEDURAL HISTORY.......................................................................... 2

III.    STATEMENT OF FACTS ......................................................................... 2

IV.    STANDARD OF REVIEW ......................................................................... 5

V.    ARGUMENT .......................................................................................... 6

    A.    Plaintiff has produced no evidence that Midland failed to request deletion of the account or re-furnished the Account in retaliation for this lawsuit. ............................... 6

    B.    Midland did not impair Plaintiff's ability to dispute the account, nor did it refuse (or threaten to refuse) to inform the CRAs that Plaintiff disputed the account.................. 10

    C.    Midland made no false statements and threatened no illegal or unintended action....... 12

    D.    The Deletion Letter is not subject to 1692e because it is not a communication made in connection with the collection of a debt. .................................................................... 14

    E.    Plaintiff's claim that Midland violated multiple sections of § 1692e when MCM's agent stated that the Account was "in our system" fails for lack of evidentiary support......... 16

    F.    Midland did not attempt to collect a non-existent debt ................................................. 16

    G.    Plaintiff's notice of a dispute to third parties is not imputed to Midland...................... 18

VI.    CONCLUSION..................................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505 (1986) ....................................... 6

*Araujo v. Pennymac Loan Servs., LLC*, 15-cv-00062 (DLI)(LB), 2015 U.S. Dist. LEXIS 128222 (E.D.N.Y. Sept. 23, 2015) ................................................................................................ 14

*Clark v. Capital Credit and Collection Servs.*, 460 F.3d 1162 (9th Cir. 2006) ..................... 11, 18

*Corcia v. Asset Acceptance, LLC*, No. 13-CV-6404 (JFB)(GRB), 2014 U.S. Dist. LEXIS 99862, 2014 WL 3656049 (E.D.N.Y. July 22, 2014) ...................................................... 11

*Derisme v. Hunt Leibert Jacobson P.C.*, 880 F. Supp. 2d 339 (D. Conn. 2012) ...................... 15

DIC v. Great Am. Ins. Co., 607 F.3d 288 (2d Cir. 2010) ................................................ 6

Fincher v. Depository Trust & Clearing Corp., No. 06 Cv. 9959 (WHP), 2008 U.S. Dist. LEXIS 70046, 2008 WL 4308126 (S.D.N.Y. Sept. 17, 2008)........................................... 6, 17

*Fritz v. Resurgent Capital Servs., LP*, 955 F. Supp. 2d 163 (E.D.N.Y. 2013) ........................... 12

*Gabriele v. Am. Home Mortg. Servicing, Inc.*, 503 F. App'x 89 (2d Cir. 2012); ....................... 12

*Gannon v. IC Systems, Inc.*, No. 09-60302-CIV-COHN, 2009 U.S. Dist. LEXIS 133781 (S.D. Fla. Sept. 25, 2009) ............................................................................................ 8, 9

*Goodson v. Bank of Am., N.A.*, 600 Fed. Appx. 422 (6th Cir. 2015) .................................... 14, 15

*Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169 (6th Cir. 2011) ................................... 14, 15

*Greco v. Trauner, Cohen & Thomas, LLP*, 412 F.3d 360 (2d Cir. 2005) .................................... 11

*Hasbrouck v. Arrow Fin. Servs. LLC*, No. 1:09-CV-748 (MAD/RFT), 2011 U.S. Dist. LEXIS 53928, 2011 WL 1899250 (N.D.N.Y. May 19, 2011) .................................................. 12

*Huebner v. Midland Credit Management, Inc.*, 2015 U.S. Dist. LEXIS 57535 (E.D.N.Y. May 1, 2015) ................................................................................................................ 7

*Huebner v. Midland Credit Management, Inc.*, 85 F. Supp. 3d 672 (E.D.N.Y. 2015) ................. 7

*Jacques v. Solomon & Solomon P.C.,* 886 F. Supp. 2d 429 (D. Del. 2012) ............................... 18

*Lane v. Fein, Such & Crane, LLP*, 767 F. Supp. 2d 382 (E.D.N.Y. 2011) ............................... 11

*Lautman v. 2800 Coyle St. Owners Corp.*, 14-cv-1868 (ARR)(VVP), 2014 U.S. Dist. LEXIS 137454 (E.D.N.Y. Sept. 26, 2014) .................................................................. 12, 13

*Llewellyn v. Asset Acceptance, LLC*, 2015 U.S. Dist. LEXIS 145437 (S.D.N.Y. Oct. 26, 2015) ............................................................................................................ 6, 17

*Mabbitt v. Midwestern Audit Serv., Inc.*, 2008 U.S. Dist. LEXIS 20446, 2008 WL 723507 (E.D. Mich. Mar. 17, 2008) ................................................................................... 15

*Mitchell v. Shane*, 350 F.3d 39 (2d Cir. 2003)............................................................ 6

*Randolph v. IMBS, Inc.*, 368 F.3d 726 (7th Cir. 2004)..................................................... 18

*Rezzonico v. H&R Block, Inc.*, 182 F.3d 144 (2d Cir. 1999) ............................................... 7

*Slanina v. United Recovery Sys.*, LP, 2011 U.S. Dist. LEXIS 121356, 2011 WL 5008367 (M.D. Pa. Oct. 20, 2011) .......................................................................................... 18

*United States v. Henry*, 307 Fed. Appx. 331 (11th Cir. 2009).......................................... 9

*United States v. Uccio*, 940 F.2d 753 (2d Cir. 1991)................................................... 7

*Valle v. Bendett & McHough, P.C.*, No. 3:14-cv-1796 (SRU), 2015 U.S. Dist. LEXIS 133111 (D. Conn. Sept. 30, 2015) ................................................................................... 11

*Wright v. Specialized Loan Serv.*, No. 1:14-CV-01587-JLT, 2014 U.S. Dist. LEXIS 147689 (E.D. Cal. Oct. 16, 2014) ..................................................................................... 11, 16

*Yentin v. Michaels, Louis & Assocs., Inc.*, 2011 U.S. Dist. LEXIS 104711, 2011 WL 4104675 (E.D. Pa. Sept. 15, 2011) ................................................................................... 18

*Zamos v. Asset Acceptance, LLC*, 423 F. Supp. 2d 777 (N.D. Ohio 2006) ............................... 10

**Statutes**

15 U.S.C. § 1681a(d)(1)........................................................................................... 7

15 U.S.C. § 1692a ................................................................................................... 2

15 U.S.C. § 1692e(2)(A)……………………………………………..…….5, 10, 13

15 U.S.C. § 1692e(5) ……………………………………………………..…..5, 13

15 U.S.C. § 1692e(8)……………………………………………………….5, 11

15 U.S.C. § 1692e(10)…………………………………..………..5, 10, 11, 12-13, 16

**Rules**

Local Civ. Rule 56.1 Statement ("R56") ................................................................. 2

Fed. R. Civ. P. 56(a) ................................................................................................ 5

Fed. R. Civ. P. 56(c)(1)) .......................................................................................... 6

Fed. R. Evid. 801(c)................................................................................................. 8

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LEVI HUEBNER on behalf of himself and all other similarly situated consumers, <br><br> Plaintiff, <br><br> -against- <br><br> MIDLAND CREDIT MANAGEMENT, INC. and MIDLAND FUNDING LLC, <br><br> Defendants. | **CASE NO. 1:14-cv-06046-BMC** <br><br> **MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

AND NOW comes Defendants Midland Credit Management, Inc. ("MCM") and Midland Funding, LLC ("MF") (collectively "Midland"), by and through their undersigned counsel, who respectfully submit this Memorandum of Law in Support of their Motion for Summary Judgment.

## I. PRELIMINARY STATEMENT

Plaintiff, a member of the New York Bar, sought to exploit consumer protection caselaw holding that a consumer may dispute a debt for any reason or no reason by attempting to trick Midland into violating the FDCPA. To do so, he invented a baseless dispute and recorded a telephone call he placed to Midland in which he asserted that his debt was "nonexistent." Although Plaintiff refused to provide any details, Midland accepted the dispute, ceased collections, requested that any information MCM had furnished to the consumer reporting agencies be deleted and issued a letter to Plaintiff informing him of its actions. Not satisfied with evading payment of his debt, Plaintiff filed the present meritless class action lawsuit seeking actual damages, statutory damages and attorney fees and costs.

## II.    PROCEDURAL HISTORY

Plaintiff Levi Huebner ("Plaintiff") filed a Class Action Complaint in the United States District Court for the Eastern District of New York on October 15, 2014, alleging several violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692a, *et. seq.*(the "FDCPA"). *See* ECF 1. On May 21, 2015, having already amended his original pleading once, Plaintiff filed a Second Amended Class Action Complaint which alleged new facts, asserted new legal theories and added MF as an additional defendant. *See* ECF 29. On June 5, 2015, Plaintiff filed a Third Amended Class Action Complaint (hereinafter the "Complaint"). ECF 35.

## III.    STATEMENT OF FACTS[1]

Plaintiff resides at 478 Malbone Street, Floor 1, Brooklyn, New York 11225-3200 ("Malbone Street Address"). Ex. A (Huebner Dep.) at 38:14-39:2; Local Civ. Rule 56.1 Statement ("R56") ¶ 1. Plaintiff is an attorney who was admitted to the New York Bar in 2006. Ex. A at 6:25-8:3; R56 ¶ 2. At some point prior to 2010, Plaintiff received landline telephone service from Verizon at the Malbone Street Address. Ex. A at 23:5-25; R56 ¶ 3. Plaintiff discontinued his Verizon service prior to 2010 and changed phone service providers. Ex. A at 24:23-25:4; R56 ¶ 4.

After Plaintiff discontinued service with Verizon, he claims that his former Verizon line caused interference with his then-current phone line, but his new service provider was unable to remedy the problem. Ex. A at 25:14-26:3; R56 ¶5. Plaintiff thus resumed service with Verizon, and maintained a phone number ending in -9815. Ex. A at 25:8-13; R56 ¶ 6. Verizon fixed the interference issue by performing some wiring work inside the Malbone Street Address. Ex. A at 30:17-31:4, 31:24-32:25; R56 ¶¶ 7, 8. Verizon billed Plaintiff approximately $131 for these

---

[1] Midland incorporates its Local Civil Rule 56.1 statement by reference.

services. Plaintiff claims that he disputed the charge and Verizon told him that they would remove it from his invoice, but has produced no evidence that Verizon did so. Ex. A at 34:13-25; 35:6-18; 36:19-37:6; R56 ¶¶ 9-11.

MF purchases debts and places the debts with MCM for servicing. Ex. B (Ross Dep.) at 12:4-22; R56 ¶ 12. On July 22, 2013, MF purchased accounts from several Verizon entities, including Plaintiff's Account, which Verizon represented was due and owing at the time of MF's purchase in the amount of $131.21. Ex. B at 29:10-19; 32:11-22; 54:24-56:7, 66:13-22; Ex. C at Midland-014 to Midland-015; R56 ¶¶ 13-14. MCM's records reflect that the balance due on the Account was $131.21. Ex. C at Midland-001-002, Midland-015; R56 ¶ 17.

MCM's records reflect on or about August 8, 2015, MCM mailed Plaintiff an initial collection letter ("the Initial Letter"), properly addressed to Plaintiff at 478 Malbone St, Fl 1, Brooklyn, NY 11225-3200, demanding payment of $131.21. ECF 11-1; ECF 35 at ¶¶ 71-73; Ex. B at 38:14-39:2; R56 ¶¶ 18-19. The Initial Letter was not returned as undeliverable. *Id.* MCM furnished information regarding the Account to the major credit reporting agencies on September 25, 2013. ECF 35-5 at ¶ 4; Ex. B at 109:21-110:10; Ex. C at Midland-005; R56 ¶ 20. MF does not report information to the CRAs. Ex. B at 126:15-127:5; R56 ¶ 20.

On October 17, 2013, Plaintiff called MCM. ECF35-5 at ¶ 5; Ex. C at Midland-002-003; R56 ¶ 21. Plaintiff recorded the telephone conversation and provided a transcript of the conversation to the Court. ECF 35-2; R56 ¶ 22. In this conversation, Plaintiff disputed the Account as "nonexistent" and asked how he could get the Account off his credit report. ECF 32-2; R56 ¶¶ 23-44. Although the agent inquired as to the reasons Plaintiff asserted that the Account was "nonexistent," Plaintiff refused to provide any specifics about his dispute, and refused to confirm or deny that he once was a Verizon customer. He repeatedly stated that he did not

3

*understand* the agent's questions. *Id.* For example, asked "So why are you disputing," Plaintiff responded "I don't understand. I just can't get it off my credit report (ECF 35-2 at 12:15-19; R56 ¶¶ 30-31); asked "Can you elaborate as to what [it is a nonexistent debt] means. Did you already pay it with Verizon? Did you never have Verizon?" Plaintiff stated "Do you have a contact information?" and "Well, I don't understand what questions you are asking me." ECF 35-2 at 13:15-25; R56 ¶¶ 35-36.

MCM's records reflect that on the same date as this call, MCM ceased collection efforts and coded Plaintiff's Account to request deletion of the information MCM furnished to the CRAs concerning Plaintiff and his Account. The request to delete the MCM tradeline, which was entered on October 17, 2013, was uploaded to the CRA's on October 23, 2013, completing the initial deletion request process.[2] Ex. B at 131:20-132:20; Ex. C at Midland-002-003, Midland-05; ECF 35-5 at ¶9; R56 ¶¶ 46-47. MCM's records reflect that it transmitted duplicate requests for deletion of the Account to the CRAs on November 19, 2013, December 17, 2013, and January 16, 2014. Ex. C at Midland-005; ECF 35-5 at 9; R56 ¶48.

Although Plaintiff asserts claims concerning Midland's credit reporting activities, Plaintiff has not produced a credit report issued by one of the CRAs in support of his claims. Ex. A at 234:5-235:2; R56 ¶ 52. Instead, Plaintiff relies on a document entitled "CreditCheck Total" to provide "evidence" of what appears in his credit reports. ECF 35-3; R56 ¶ 53. The terms and conditions applicable to the CreditCheck Total documents, however, provide that CreditCheck Total documents may not contain the same information as would be found in the consumer credit reports available from the three national credit reporting companies. Ex. D (CreditCheck Terms & Conditions); R56 ¶ 54.

---

[2] The term "tradeline" is an industry term for account information supplied by a data furnisher to a credit reporting agency that appears on a consumer credit report.

4

MCM's records further reflect that on October 17, 2013, MCM properly addressed and mailed Plaintiff a letter (the "Deletion Letter"), which was not returned as undeliverable, informing him that it had ceased collections and that MCM instructed the CRAs to delete its tradeline concerning Plaintiff's Account. ECF 11-2; ECF 35-5 at ¶ 8; Ex. C at Midland-002; R56 ¶¶ 49-51.

Plaintiff's Complaint alleges that Midland violated 15 U.S.C. § 1692e(8) by asking Plaintiff explain why he disputed the debt. ECF 35 at ¶¶ 55-65; 134-152. Asking such questions, according to Plaintiff, also constitutes a violation 15 U.S.C. § 1692e(10), which prohibits the use of false and deceptive means in connection with debt collection. *Id.* Plaintiff also claims that Midland violated 15 U.S.C. §§ 1692e(2)(A), 1692e(5) and 1692e(10) by sending him an allegedly inaccurate letter and by continuing erroneously to report Plaintiff's debt as delinquent. *Id.* at ¶¶ 76-80, 155-158. Finally, Plaintiff asserts violations of 15 U.S.C. §§ 1692e(2)(A), 1692e(8) and 1692e(10), complaining that: (1) Midland falsely represented the status of Plaintiff's debt by asserting the debt was valid (*id.* at ¶¶ 81-96, 159-166, 169-177); (2) Midland attempted to collect and continues to attempt to collect a "Nonexistent Debt" (*id.* at ¶¶ 178-181); and (3) Midland, in retaliation for Plaintiff bringing suit against it, continues to furnish a tradeline concerning the delinquent Account to the CRA's without noting the debt is disputed (*id.* at ¶¶ 182-184.

## IV.   STANDARD OF REVIEW

Summary judgment is appropriate if the moving party shows that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248,

106 S. Ct. 2505 (1986); *see also Mitchell v. Shane*, 350 F.3d 39, 47 (2d Cir. 2003). "The party asserting that a fact is genuinely disputed must support their assertion by 'citing to particular parts of materials in the record' or 'showing that the materials cited do not establish the absence … of a genuine dispute.'" *Llewellyn v. Asset Acceptance, LLC*, 2015 U.S. Dist. LEXIS 145437, at *5 (S.D.N.Y. Oct. 26, 2015) (quoting Fed. R. Civ. P. 56(c)(1)). "The nonmoving party 'may not rely on conclusory allegations or unsubstantiated speculation.'" *Id.* (quoting *DIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010). "Moreover, '[a non-moving party's] self-serving statement, without direct or circumstantial evidence to support the charge, is insufficient to defeat a motion for summary judgment.'" *Id.* at *5-6 (quoting *Fincher v. Depository Trust & Clearing Corp.*, No. 06 Cv. 9959 (WHP), 2008 U.S. Dist. LEXIS 70046, 2008 WL 4308126, at *3 (S.D.N.Y. Sept. 17, 2008) *aff'd*, 604 F.3d 712 (2d Cir. 2010)).

## V.   <u>ARGUMENT</u>

### A.   **Plaintiff has produced no evidence that Midland failed to request deletion of the account or re-furnished the Account in retaliation for this lawsuit**.

The evidentiary record demonstrates that MCM promptly requested deletion of its reported information and followed the initial deletion request with three duplicate requests for deletion. Ex. B at 131:20-132:6; Ex. C at Midland-005; ECF 35-5 at ¶ 9; R56 ¶¶ 47-48. Notwithstanding this unrefuted evidence, Plaintiff alleges that Midland not only failed to delete the Account, but continues to report it, all in retaliation for Plaintiff bringing this lawsuit. ECF 35 at ¶¶ 158-166; 180-183. This Court already found that "immediately following the recorded conversation, [Midland] instructed the three major credit reporting agencies to delete [P]laintiff's account with [Midland] from his credit file." *Huebner v. Midland Credit Management, Inc.*, 2015 U.S. Dist. LEXIS 57535, at *1 (E.D.N.Y. May 1, 2015); *see also Huebner v. Midland Credit Management, Inc.*, 85 F. Supp. 3d 672, 675 (E.D.N.Y. 2015). This issue has already been

6

determined by the Court and it is the law of the case and there exists no cogent or compelling reasons to deviate from this Court's prior determinations. *Rezzonico v. H&R Block, Inc.*, 182 F.3d 144, 148 (2d Cir. 1999) (law of the case doctrine "posits that when a court decides upon a rule of law, that decision should [generally] continue to govern the same issues in subsequent stages of the same case"); *United States v. Uccio*, 940 F.2d 753, 758 (2d Cir. 1991). Here the Court has already rendered its decision that Midland's conduct upon the conclusion of the conversation with Plaintiff comported with the FDCPA.

Even looking past the law of the case doctrine, Plaintiff presents no credible evidence that Midland did not request deletion of the information it furnished regarding the Account or that it furnished information to the CRAs in retaliation for this suit; therefore Plaintiff has failed to substantiate his theory that Midland violated the FDCPA in these respects. Equally unsupported by fact are Plaintiff's theories that Midland conveyed false information or falsely represented the character of the Account. Rather, the evidence shows that Midland ceased collection efforts and requested the deletion of its tradeline.

Plaintiff bases his claims solely on documents he received from CreditCheck Total. ECF 35 at ¶ 37. These documents, however, are not credit reports. The Fair Credit Reporting Act defines the term "consumer report" as any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness [creditworthiness], credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living *which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for - (A) credit or insurance to be used primarily for personal, family, or household purposes.*"15 U.S.C. § 1681a(d)(1) (emphasis added). Although Plaintiff asserts that the CreditCheck Total documents

7

constitutes a credit report (ECF 35 at ¶37), he has provided no evidence that the CreditCheck Total documents are used or expected to be used by anyone other than Plaintiff. This is because these documents are intended only for Plaintiff's personal use. The CreditCheck Total "Terms and Conditions" at "FCRA Disclosures" provides that "[t]he credit report you are requesting from [CreditCheck] is not intended to constitute the disclosure of Experian information required by the FCRA or similar laws…." which are "different from the consumer credit report provided by [CreditCheck]…. the credit reports from each of the three national credit reporting companies that are available from [CreditCheck] may not have the same information as a credit report obtained directly from the three national credit reporting companies …" Ex. D; R56 ¶ 54.[3]

Plaintiff's CreditCheck Total documents are also inadmissible hearsay. The Federal Rules of Evidence define hearsay as a declarant's out-of-court statement "offer[ed] in evidence to prove the truth of the matter asserted in the in the statement." Fed. R. Evid. 801(c). Hearsay is admissible only if it falls within an enumerated exception. *See id.* 802. Plaintiff offers no testimony or affidavit of a qualified person to substantiate the documents. Further, Plaintiff is not the custodian of the information and is not qualified to testify regarding the procedures for compilation and creation of the information in the CreditCheck documents. Indeed, Plaintiff was unable to offer a cogent explanation of the information found in the CreditCheck documents. *See, e.g.*, Ex. A 130:2-136:25; R56 ¶ 55. *See Gannon v. IC Systems, Inc.*, No. 09-60302-CIV-COHN, 2009 U.S. Dist. LEXIS 133781, at *2-3 (S.D. Fla. Sept. 25, 2009) (excluding CRA reports from evidence where Plaintiff was unable to authenticate the documents).

Though plaintiff may be able to verify his name and Social Security number on the CreditCheck documents, allowing Plaintiff to authenticate that the documents pertain to him,

---

[3] CreditCheck apparently utilizes a loose definition of "credit report," which as noted is a specifically defined term under the FCRA.

"the business record hearsay exception requires that its elements be shown by the testimony of the custodian or other qualified witness." *Id.* Even actual credit reports issued by CRAs are admissible only when there is testimony from someone at the credit bureau with knowledge of how the reports are compiled in order to satisfy the trustworthiness prong of Rule 803(6). *Id.* at *3-4 (citing *United States v. Henry*, 307 Fed. Appx. 331, 336 (11th Cir. 2009). As such, Plaintiff's CreditCheck Total documents are inadmissible hearsay and provide no support for his claims.

Finally, Midland has repeatedly requested copies of the relevant credit reports from Plaintiff. Plaintiff has simply failed to provide legitimate credit reports reflecting the furnishing of credit information by Midland. Ex. A at 234:5-235:2; ECF 35-3; Ex. E (Pl. Resp. to MCM Req. for Prod. No. 20); R56 ¶¶ 52-53. Lacking admissible evidence supporting his claims regarding or related to credit reporting, these claims fail.

Midland produced overwhelming and unrebutted evidence that it ceased collection efforts and requested deletion of its tradeline the Account with the CRAs on multiple occasions.[4] This fact is reflected in the Deletion Letter, Midland's account records and the testimony of Midland's corporate representative. Ex. B at 131:20-132:20; Ex. C at Midland-002 and 005; ECF 11-2; ECF 35-5 at ¶¶ 8- 9; R56 ¶¶ 47-51. MCM's records show no evidence that MCM re-reported the account, debunking Plaintiff's theory that Midland reported the account in retaliation for this suit. Ex. C at Midland-005; R56 ¶ 48. Plaintiff has not provided a single credit report issued by a CRA showing that MCM furnished credit information concerning Plaintiff's Account after it requested deletion of the tradeline at issue. Ex. A at 129:20-130:14, 131:16-132:3, 136:9-25, 234:5-235:2; R56 ¶ 52. Despite Plaintiff's insistence that MCM continued to furnish credit

---

[4] It is MCM's practice to make multiple requests for deletion with the CRA's to insure that the CRA's follow through with deletion process. ECF 35-5 at ¶ 10;  R56  ¶ 48.

information concerning Plaintiff's Account to the CRAs and that MCM continues in its collection efforts (*see, e.g.*, ECF 35 at ¶¶ 94 and 95), Plaintiff has produced no evidence supporting either claim. Therefore, there is no genuine dispute that MCM properly requested deletion of its tradeline associated with the Account. Further, MCM did not re-report the Account in retaliation for Plaintiff's filing of the present lawsuit.

Even if Plaintiff's CreditCheck Total documents were actual credit reports (though they are not), there is no question of fact as to whether MCM requested deletion. Whether or not the CRAs abided by MCM's request may be in question, but the fact that MCM requested deletion of the Account has been firmly established and Plaintiff has produced no evidence showing otherwise. *See Zamos v. Asset Acceptance, LLC*, 423 F. Supp. 2d 777, 784 (N.D. Ohio 2006) (Plaintiff's citation to a consumer reporting agency report entry showing a different amount than the original bill is not sufficient evidence to raise a genuine issue of material fact as to a violation of 15 U.S.C. § 1692e(2)(A)). The uncontroverted evidence establishes that MCM requested deletion of the Account from Plaintiff's credit reports from TransUnion, Equifax and Experian. MCM's sole duty is to request deletion of credit information furnished by MCM. *See* 15 U.S.C. § 1692e(8). Once MCM requests deletion, its role in the reporting process is concluded, and no liability can flow to MCM based on the CRA's failure to honor MCM's deletion request. Therefore, Plaintiff has failed to provide evidentiary support for his claims under 15 U.S.C. § 1692e(8), and Midland is entitled to summary judgment as a consequence.

**B.     Midland did not impair Plaintiff's ability to dispute the account, nor did it refuse (or threaten to refuse) to inform the CRAs that Plaintiff disputed the account.**

Plaintiff's Complaint alleges that Midland violated 15 U.S.C. §§ 1692e(8) (at ECF 35 ¶¶ 133-144) and 1692e(10) (at ECF 35 at ¶¶ 145-152) by requiring Plaintiff to provide a reason for

disputing the Account. Plaintiff theorizes that Midland's request constitutes an implicit threat that Midland would refuse to provide Plaintiff's dispute to the CRAs. Section 1692e(8) forbids "communicating or threatening to communicate to any person credit information which is known, or should be known, to be false, including the failure to communicate that a disputed debt is disputed." This section applies not just to communications with CRAs, but also with "any person." *Valle v. Bendett & McHough, P.C.*, No. 3:14-cv-1796 (SRU), 2015 U.S. Dist. LEXIS 133111, at *30 (D. Conn. Sept. 30, 2015) (citation omitted). A violation of § 1692e(8) may only be established where the plaintiff can show that the defendant knew or should have known the information it was communicating to be false. *Wright v. Specialized Loan Serv.*, No. 1:14-CV-01587-JLT, 2014 U.S. Dist. LEXIS 147689, at *11 (E.D. Cal. Oct. 16, 2014) (citing *Clark v. Capital Credit and Collection Servs.*, 460 F.3d 1162, 1176 n.11 (9th Cir. 2006)). Section 1692e(10) prohibits using "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

Courts in this circuit analyze whether a statement is false or misleading under § 1692e by asking whether the statement would be misleading to the "'least sophisticated consumer.'" *Lane v. Fein, Such & Crane, LLP*, 767 F. Supp. 2d 382, 388 (E.D.N.Y. 2011) (quoting *Greco v. Trauner, Cohen & Thomas, LLP*, 412 F.3d 360, 363 (2d Cir. 2005)). Whether a statement is false or misleading is a question of law, so that a court "can resolve whether a communication violates § 1692e on a motion to dismiss." *Corcia v. Asset Acceptance, LLC*, No. 13-CV-6404 (JFB)(GRB), 2014 U.S. Dist. LEXIS 99862, 2014 WL 3656049, at *4 (E.D.N.Y. July 22, 2014).

The Second Circuit has suggested that violations of § 1692e must be material in order to be enforceable. *Valle*, 2015 U.S. Dist. LEXIS 133111, at *30 (citing *Gabriele v. Am. Home Mortg. Servicing, Inc.*, 503 F. App'x 89, 94 (2d Cir. 2012); *Fritz v. Resurgent Capital Servs., LP*,

11

955 F. Supp. 2d 163, 170 (E.D.N.Y. 2013) (adopting a materiality standard); *Lautman v. 2800 Coyle St. Owners Corp.*, 14-cv-1868 (ARR)(VVP), 2014 U.S. Dist. LEXIS 137454, at *34 (E.D.N.Y. Sept. 26, 2014) (same)). "Statements are material if they influence a consumer's decision to pay a debt or if they would impair the consumer's ability to challenge the debt.'" *Lautman*, 2014 U.S. Dist. LEXIS 137454, at *34 (quoting *Hasbrouck v. Arrow Fin. Servs. LLC*, No. 1:09-CV-748 (MAD/RFT), 2011 U.S. Dist. LEXIS 53928, 2011 WL 1899250, at *4 (N.D.N.Y. May 19, 2011)).

MCM's questions to Plaintiff in no way impaired his ability to challenge the debt or suggested that MCM would fail to update its tradeline with the CRAs. The evidentiary record, as well as the established *law of the case*, demonstrates that MCM honored Plaintiff's dispute and, on the same day, began the process of requesting that the CRAs delete its tradeline associated with the Account. ECF 35-5 at ¶¶ 5-8; R56 ¶¶ 21, 45-46. The fact that MCM accepted Plaintiff's dispute (despite Plaintiff's inexplicable refusal to explain what he meant by characterizing the debt as "nonexistent") belies Plaintiff's claim that MCM requires consumers to explain the basis for a dispute before "accepting" it. Therefore, MCM's questions to Plaintiff regarding the basis of his dispute cannot be material statements and thus cannot be said to violate 1692e. "The fact that [Midland's] representative wanted a smidgen of detail about the dispute, when [P]laintiff was being obviously and intentionally vague, does not amount to a statutory violation." *Huebner*, 85 F. Supp. 3d at 675. Therefore, Plaintiff's claims under §§ 1692e(8) and 1692e(10) fail.

**C.    Midland made no false statements and threatened no illegal or unintended action.**

Plaintiff next claims that Midland's Deletion Letter violated the FDCPA in two ways: first, Plaintiff contends that the letter misrepresented the process by which MCM requested deletion of the Account. Second, Plaintiff contends that the letter failed to communicate his

dispute to the CRAs. ECF 35 at ¶ 154-166. Plaintiff asserts that because MCM had not yet requested that the CRAs delete his account from his credit history at the time it sent its letter, and because MCM continues to report the Account, the Deletion Letter contained a false statement in violation of §§ 1692e(2)(A) (prohibiting any "false representation" regarding "the character, amount or legal status of any debt"), 1692e(5) (prohibiting any "threat to take action that cannot legally be taken or that is not intended to be taken") and 1692e(10) (barring "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information about a consumer"). *Id.* at ¶ 154. The evidentiary record contains no support for Plaintiff's claims and, as a consequence, they fail.

MCM accepted Plaintiff's dispute on October 17, 2013, and began the process to transmit a request to the CRAs to delete the information it had reported regarding the Account. Ex. B at 131:15-17, 20-132:6; Ex. C at Midland-002 to -003; R56 ¶¶ 45-46. The Deletion Letter was dated October 17, 2013. According to MCM's records, the letter was mailed on the same date (though Plaintiff asserts, with no accompanying evidentiary support, that he first received on December 15, 2014). The deletion request process was completed when the request was transmitted to the CRAs on October 23, 2013. Ex. B at 131:20-132:6; Ex. C at Midland-005; ECF 35-5 at ¶ 9; R56 ¶ 47. The Deletion Letter informed Plaintiff that MCM was acting on the information Plaintiff had provided. ECF 11-2; R56 ¶ 49. As noted *supra*, in the context of 1692e, statements are considered material "if they influence a consumer's decision to pay a debt or if they would impair the consumer's ability to challenge the debt." *Lautman*, 2014 U.S. Dist. LEXIS 137454, at *34. Only a material statement is actionable under § 1692e. *Id.* Plaintiff cannot establish a claim that the Deletion Letter constitutes a false statement, let alone a materially false statement. Whether MCM concluded its processing of the deletion request to the

13

CRAs on October 17, 2013, or on October 23, 2013, could exert no influence on Plaintiff and his decision not pay his valid and delinquent debt obligation. Plaintiff's verbal dispute was honored on October 17, 2013; the request for deletion was coded on that same date; collection efforts on the Account ceased on October 17, 2013, and the Deletion Letter issued on October 17, 2013; Plaintiff presents no admissible evidence to the contrary. Plaintiff cannot reasonably aver that the time to process the deletion request to the CRA's had any influence on Plaintiff's already-formed decision not to pay the Account.

      **D.**      **The Deletion Letter is not subject to 1692e because it is not a communication made in connection with the collection of a debt.**

      Section 1692e of the FDCPA applies only to communications made "in connection with the collection of any debt." 15 U.S.C. § 1692e. To be actionable, "'a communication need not itself be a collection attempt; it need only be 'connect[ed]' with one.'" *Goodson v. Bank of Am., N.A.*, 600 Fed. Appx. 422, 430 (6th Cir. 2015) (quoting *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011)). "'The statute does not apply to every communication between a debt collector and a debtor.'" *Id.* (quoting *Grden*, 643 F. 3d at 173); *see also Araujo v. Pennymac Loan Servs., LLC*, 2015 U.S. Dist. LEXIS 128222, at *8-9 (E.D.N.Y. Sept. 23, 2015)(holding that a collector responding to a consumer's request for mortgage documentation by sending copy of the note but not demanding payment or discussing specifics of underlying debt was not a communication under the FDCPA). "'For a communication to be in connection with the collection of a debt, an animating purpose of the communication must be to induce payment by the debtor.'" *Id.* at 431-32 (quoting *Grden*, 643 F.3d at 173). Where a reasonable jury could not find that the animating purpose of a statement was to induce payment, summary judgment is appropriate. *Id.* at 432 (citing *Grden*, 643 F.3d at 173). "[C]ommunications that are merely informational and do not demand payment cannot be considered communications 'in

14

connection with the collection of any debt' under the FDCPA." *Derisme v. Hunt Leibert Jacobson P.C.*, 880 F. Supp. 2d 339, 372 (D. Conn. 2012) (collecting cases).

On its face, it is clear that the animating purpose of MCM's Deletion Letter was not to induce payment – rather, it informed him that MCM was requesting deletion of the tradeline associated with the Account. *See* ECF 11-2; R56 ¶ 49. Contrary to demanding payment, this Letter informed Plaintiff that Midland was no longer seeking to collect the debt given Plaintiff's assertion that it was invalid. *Id.* [5] Further, though the letter does identify a "current balance" of the Account, it does not request payment or otherwise suggest that Plaintiff contact MCM to arrange for payment. This does not render it a communication in connection with the collection of a debt. *See Mabbitt v. Midwestern Audit Serv., Inc.*, 2008 U.S. Dist. LEXIS 20446, 2008 WL 723507 (E.D. Mich. Mar. 17, 2008) (finding that a letter notifying a consumer that her outstanding balance had been transferred to a new account for her "convenience in making payment" did not contain language that she was "required to pay the debt" and thus was not communication in connection with the collection of any debt). As the sole purpose to the Deletion Letter was to inform Plaintiff of MCM's deletion request, the letter is not a "communication in connection with the collection of a debt" subject to section 1692e and Plaintiff's claims regarding this letter fail.

**E.   Plaintiff's claim that Midland violated multiple sections of § 1692e when MCM's agent stated that the Account was "in our system" fails for lack of evidentiary support.**

In paragraphs 169 through 174 of his Complaint, Plaintiff asserts that Midland violated various sections of 1692e when it responded to Plaintiff's assertion that the Account was

---

[5] Although the letter does state that it "is a communication in connection with the collection of a debt," this statement is included out of an abundance of caution to avoid violation of 15 U.S.C. § 1692e(11) and does not transform a letter notifying Plaintiff of its cessation of collection activity and deletion of its tradeline with the CRAs into a "collection letter".

"nonexistent" by stating that the Account was "existent because it's here in our system." In the conversation at issue, MCM's agent sought "a smidgen of detail about the dispute" in response to Plaintiff's "obviously and intentionally vague" dispute. *Huebner*, 85 F. Supp. 3d at 675. Posing such a question cannot be said to impair Plaintiff's ability to challenge the Account – rather, it was part of a clear effort to attempt to address and, if possible, resolve Plaintiff's dispute. *See* ECF 35-2 at p. 17 ("I am trying to help you with your dispute, sir, but you are not really helping me help you"). As such, informing Plaintiff that the Account appeared in MCM's system, in the context of attempting to flesh out Plaintiff's vague "it is nonexistent" dispute, cannot be said to constitute a false or misleading statement actionable under § 1692e.

**F.      Midland did not attempt to collect a non-existent debt.**

Plaintiff contends Midland violated §§ 1692e(8) and 1692e(10) by attempting to collect a non-existent debt. ECF 35 at ¶¶ 178-181. As noted *supra*, a statement may only violate § 1692e(8) where the Plaintiff can show that the defendant knew or should have known the information it was communicating was false. *Wright,* 2014 U.S. Dist. LEXIS 147689, at *11. Here, Plaintiff has produced no evidence to demonstrate that Midland knew or should have known that the account was "non-existent." In fact, Plaintiff offers no facts or evidence showing that the Account was non-existent.

The evidentiary record demonstrates that on July 22, 2013, MF purchased the Account from Verizon. At the time of purchase, Verizon provided MF with account data reflecting that a balance of $131.21 was due and owing. Ex. B at 54:25-56:7; Ex. C at Midland-015; R56 ¶ 14. MCM created a record reflecting the details of the Account from electronic records provided by Verizon to MF. Ex. B at 55:14-56:7; Ex. C at Midland-015; R56 ¶ 15. The record reflects that the Account was issued in Plaintiff's name, at his Malbone Street Address, and it was associated

16

with Plaintiff's telephone number ending in -9815, and shows a last payment date of April 4, 2011 and a balance due of $131.21. Ex. A at 25:10-13; Ex. B at 62:25-63:5; Ex. C at Midland-001, -002, -015; R56 ¶¶ 14, 16-17.

Plaintiff admitted he had a Verizon account during the relevant time period. Ex. A at 25:8-13; R56 ¶ 6. Plaintiff admitted that he had Verizon perform some work on his phone line that resulted in an invoice from Verizon to him for approximately $131. Ex. A at 25:14-26:3, 30:17-31:4, 31:24-32:25; R56 ¶¶ 6-8. Although Plaintiff claims that Verizon told him it would remove charge from his invoice, Plaintiff has provided no evidence other than his own self-serving testimony that the charge was waived. Ex. A at 34:13-25. 35:6-18, 36:19-37:6; R56 ¶¶ 9-11.

In the context of a motion for summary judgment, "[a non-moving party's] self-serving statement, without direct or circumstantial evidence to support the charge, is insufficient to defeat a motion for summary judgment.'" *Llewellyn,* 2015 U.S. Dist. LEXIS 145437, at *5-6 (quoting *Fincher v. Depository Trust & Clearing Corp.*, No. 06 Cv. 9959 (WHP), 2008 U.S. Dist. LEXIS 70046, 2008 WL 4308126, at *3 (S.D.N.Y. Sept. 17, 2008) *aff'd*, 604 F.3d 712 (2d Cir. 2010)). Midland's evidence of the existence of the debt is uncontroverted by any supporting evidence other than his self-serving statement. Given Plaintiff's failure to marshal any supporting evidence that the Account is invalid, there is no genuine dispute as to whether the account exists. As such, Plaintiff's claim that the account was "non-existent" fails, and Midland is entitled to summary judgment.

**G.      Plaintiff's notice of a dispute to third parties is not imputed to Midland.**

Plaintiff asserts that prior to MF's purchase of the Account, he disputed the Account with Verizon, I.C. System, Inc. ("I.C.") and Afni, Inc. ("Afni"),[6] and that he requested validation from both I.C. and Afni. ECF 35 at ¶¶ 20-31. Plaintiff further alleges that because he disputed the Account with these entities, knowledge of his dispute is imputed to Midland such that any representation by Midland that the Account was valid constitutes both a false representation regarding the legal status of the Account, as well as the use of a false or deceptive means to collect the Account. ECF 35 at ¶¶ 173-174, 178-179.

Plaintiff's claims regarding imputed knowledge fail as a matter of law. "'Courts do not impute to debt collectors other information that may be in the creditors' files – for example, that [the] debt has been paid or was bogus to start with.'" *Jacques v. Solomon & Solomon P.C.,* 886 F. Supp. 2d 429, 433 (D. Del. 2012) (quoting *Randolph v. IMBS, Inc.*, 368 F.3d 726, 729 (7th Cir. 2004)). Further, the FDCPA imposes no duty upon a debt collector any duty to investigate independently the validity of the debt. *Id.* (citing *Slanina v. United Recovery Sys.*, LP, 2011 U.S. Dist. LEXIS 121356, 2011 WL 5008367, at *3 (M.D. Pa. Oct. 20, 2011) ("The FDCPA did not require [the debt collector] to validate the debt prior to its initial contact with [the consumer]"); *Yentin v. Michaels, Louis & Assocs., Inc.*, 2011 U.S. Dist. LEXIS 104711, 2011 WL 4104675, at *9 (E.D. Pa. Sept. 15, 2011) (concluding that no provision of the FDCPA does not require a debt collector any duty to 'investigate' debts that it seeks to collect, either before collection activities begin or after a consumer disputes a debt); *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1174 (9th Cir. 2006) ("[T]he FDCPA did not impose upon [the debt collector] any duty to investigate independently the claims presented by [the creditor].")). Accordingly, as neither MF nor MCM could be said to have imputed knowledge or a duty to investigate whether

---

[6] I.C. Systems, Inc., and Afni, Inc., were debt collectors collecting on behalf of Verizon when Verizon owned Plaintiff's debt obligation. ECF 35 at ¶¶ 27, 30.

18

Plaintiff had disputed the Account with Verizon or the other debt collectors, Midland did not violate the FDCPA by attempting to collect the debt in the wake of those disputes.

## VI.    CONCLUSION

For the foregoing reasons, Defendants Midland Credit Management, Inc. and Midland Funding, LLC respectfully request that this Honorable Court grant their Motion for Summary Judgment and dismiss Plaintiff's claims with prejudice, awarding such other relief as it deems proper. Midland reserves the right to seek its costs and fees from Plaintiff in connection with Plaintiff's prosecution of this action in bad faith and for the purposes of harassment pursuant to 15 U.S.C. § 1692k(a)(3).

Respectfully submitted,

Dated: New York, New York          **MARSHALL DENNEHEY WARNER**
       December 1, 2015          **COLEMAN & GOGGIN**

By: _/s/  Matthew B. Johnson_
Matthew B. Johnson (MJ 1622)
_Attorneys for Defendants Midland Credit_
_Management, Inc. and Midland Funding, LLC_ 88
Pine Street, 21st Floor
New York, New York 10005
(212) 376-6433
MBJohnson@mdwcg.com

19