## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| LEVI HUEBNER on behalf of himself and all other similarly situated consumers, | : : : | **Case:   14-cv-6046 (BMC)** |
| *Plaintiff,* | : : | **INITIAL DRAFT** |
| -against- | : : | |
| MIDLAND CREDIT MANAGEMENT, INC., and MIDLAND FUNDING LLC, | : : : | |
| *Defendants.* | : : | |

## LOCAL RULE 56.1 STATEMENT

Plaintiff Levi Huebner ("Huebner" or "Plaintiff"),by his counsel POLTORAK PC recounts, pursuant to Local Rule 56.1(a) the material facts as to which there is no genuine issue to be tried, and later pursuant Local Rule 56.1(b) the material facts as to which there exists a genuine issue to be tried:

## LOCAL RULE 56.1(a) UNCONTESTED FACTS

*General Uncontested facts to all Causes of Action*

1.    Midland Credit Management, Inc. ("MCM") acts in the name of Midland Funding LLC ("MFL") (collectively "Midland" or "Defendants"). Exhibit A at 14–16.

2.    MCM is a debt a collector. ECF 36 ¶ 15.

3.    MFL is an entity in whose name MCM buys portfolios of alleged "debt." Exhibit A at 15:23 – 16:23.

4.    MCM acts on behalf of MFL in the name of Verizon New York Inc. ("Verizon") to collect from Plaintiff an alleged consumer debt ("alleged debt"). ECF 36 ¶ 52.

5.      MCM assumed the alleged debt without a valid social security number of Plaintiff. ECF 65-3 at PageID #895-896.

6.      MCM inquires from consumers to provide information about the basis for the dispute of a debt.  ECF 36 ¶ 10 n1, and ¶ 142.

7.      MCM has a formal procedure to endeavor the consumer for a reason when initiating a verbal dispute. Exhibit D.

8.      MCM policy is to advise the consumer to send their dispute in "writing," and MCM requires its employees to inform consumers of this advice. Exhibit D at *3.

9.      If the consumer calls 45 days after MCM's initial communication, MCM policy is to advise the consumer to send their dispute in writing along with supporting documentation of their dispute, and it is MCM's policy to advise the consumer of this requirement. Exhibit D at *3.

10.     On October 17, 2013, Plaintiff contacted MCM by phone and was informed, "Your call may be monitored or recorded.  . . .  This is an attempt to collect a debt; any information obtained will be used for that purpose."ECF 35-2 at *8

*Uncontested Facts Supporting the First Cause of Action*

11.     MCM understood the nature of Plaintiff's call "CU [Costumer] STS [states] WANTS TO DISPUTE." ECF 65-3 at PageID #894and Exhibit C at 175:20.

12.     Plaintiff asked, "I want to know what do I have to do if I want to dispute the debt." In response, MCM informed Plaintiff, "advise me what your dispute is and I can see if I can assist you with that."ECF 35-2 at *9

13.     Plaintiff asked, "How do I get it off my credit report?"  In response, MCM informed Plaintiff "Well, we need to, you know, work with what your dispute is in order to remove it, sir. So why are you disputing?"ECF 35-2 at *12

14.     MCM asked Plaintiff, "I need to know what your dispute is . . . So you are saying you want to dispute it. Why is it that you want to dispute it?"  ECF 35-2 at *13

15.     MCM made a point to inform Plaintiff, "Sir, you called in to dispute the debt. I need to know why you are disputing.  So I'm asking you questions."ECF 35-2 at *14

16.     Thereafter, MCM asked Plaintiff "Did you want to move forward on your dispute?"  ECF 35-2 at *15.   In response, Plaintiff informed MCM, "I told you I dispute it because it's a nonexistent debt."  Nonetheless, MCM insisted in pursuing its reason requirement, "But you haven't given me why you are disputing. You are just saying you are disputing. I need to know what you are disputing."ECF 35-2 at *16

17.     Plaintiff furnished the reason for his dispute informing MCM "It's a nonexistent debt."  MCM rejected the reason and the dispute, "okay, sir, but that's not a dispute." ECF 35-2 at *16

18.     MCM did not inform Plaintiff that the alleged debt was marked as disputed. ECF 35-2

19.     MCM admits, the Plaintiff's "debt was not marked as 'disputed.'" Exhibit B at *1 ¶2.

_Uncontested Facts Supporting the Second Cause of Action_

20.     MCM asked Plaintiff, "So you are saying you want to dispute it. Why is it that you want to dispute it?"  In response, Plaintiff informed MCM, "Because it is a nonexistent

debt."However, MCM inquired Plaintiff to "elaborate as to what that means. Did you already pay it with Verizon? Did you never have Verizon?"ECF 35-2 at *12-13.

21.     MCM questioned Plaintiff, "So I need you to elaborate so I can assist you with your dispute. Did you ever have Verizon?" ECF 35-2 at *14.

22.     MCM demanded that Plaintiff answer, "Did you ever have Verizon, sir?" Plaintiff replied, "I don't understand the question you are asking me. This is a nonexistent debt." MCM grilled Plaintiff, "It's a very straightforward question. Did you ever have Verizon service?"  ECF 35-2 at *16.

*Uncontested Facts Supporting the Third Cause of Action*

23.     On or about December 15, 2014, MCM produced a purported cessation letter (the "Cessation Letter") addressed to Plaintiff.ECF 11-2.

24.     The Cessation Letter is dated October 17, 2013.ECF 11-2.

25.     The Cessation Letter represents "Original Creditor: Verizon New York Inc., Original Account No.: ******5496, MCM Account No.: 8559659948, Current Balance:$131.21." ECF 11-2.

26.     The Cessation letter purported to state, "we **have** instructed the three major credit reporting agencies to delete the above-referenced MCM account from your credit file. Please be advised, our credit reporting does not affect any credit reporting of this account by the original creditor."ECF 11-2.

27.     The Cessation letter informs, "Please understand this is a communication from a debt collector. This is an attempt to collect a debt. Any information obtained will be used for that purpose."  ECF 11-2 *2.

28.     MCM produced the Cessation Letter though MCM was aware that it never made a deletion request on or before October 17, 2013, while inadvertently stating to the consumer that the "request to delete the Account from Mr. Huebner's credit file was processed and transmitted to the three major credit reporting agencies on October 23, 2013."  ECF 21-1 ¶ 9.

29.     As of October 31, 2014, MCM's records maintain the current balance for "8559659948 - Levi Huebner – [is] $131.21."  ECF 65-3 at PageID #897.

*Uncontested Facts Supporting the Part One of the Fourth Cause of Action*

30.     MCM admits that on October 17, 2013 at 10:22:08 Plaintiff "CALLED TO DISPUTE THE A/C." ECF 65-3 at PageID #895.

31.     Thereafter, on October 17, 2013 at about 10:39:48, MCM asked Plaintiff, "I need to know what your dispute is . . . So you are saying you want to dispute it. Why is it that you want to dispute it? . . ."  Plaintiff stated, "*Because it's a Nonexistent Debt.*"ECF 35-2 at *13 and ECF 65-3 at PageID #894-5.

32.     MCM confirmed to understand the purpose of the call, "So you are saying you want to dispute it."  ECF 35-2 at 13. "Sir, you called in to dispute the debt." ECF 35-2 at *14.

33.     Thereafter, MCM stated to Plaintiff that the alleged debt "is existent because it's here in our system."  ECF 35-2 at *14.

34.     MCM communicated that the legal status of the debt as "valid" without communicating the dispute. ECF 35-2 at *14-18.

35.     MCM did not inform Plaintiff that the alleged debt was marked as disputed. ECF 35-2

36.     MCM did not mark the alleged debt as disputed.  Exhibit B at *1.

*Uncontested Facts Supporting the Part Two and Three of the Fourth Cause of Action*

37.      As of December 1, 2015, MCM's records claim that Plaintiff still owes $131.21 for the alleged Verizon debt attributed to Plaintiff.  ECF 65-3 at PageID #893, 894, 897, and 898.

38.      As of **December 1, 2015**, MCM's records represent that the account status of the alleged Verizon debt attributed to Plaintiff is "open." ECF 65-4 at PageID #893 "Open/Closed: **O"**

39.      MCM never furnished a communication indicating that MCM actually deleted the alleged Verizon debt attributed to Plaintiff.

40.      MCM did not produce any evidence that MFL authorized MCM to delete the alleged Verizon debt attributed to Plaintiff allegedly purchased by MFL.

41.      The "Last Ltr [letter]" MCM issued to Plaintiff was on August 8, 2013; the Cessation Letter was never transmitted on "October 17, 2013."  ECF 65-4 at PageID #894 "Last Ltr: 08/09/2013."

42.      As of April 23, 2015, CreditCheckTotal records indicate that MFL maintains that Plaintiff has an alleged balance of $131, without communicating the dispute. ECF 35-3 at PageID #453.

43.      As of April 23, 2015, CreditCheckTotal records indicate that MCM maintains that Plaintiff's has an alleged balance of $131. ECF 35-3 at PageID #453.

## LOCAL RULE 56.1(b) CONTESTING DEFENDENATS RULE 56.1 STATEMENT

The following correspondingly numbered paragraph respond to each numbered paragraph in the statement of Defendants Rule 56.1 Statement, filed as ECF 64, alongside Plaintiff's response.

1. "Plaintiff resides at 478 Malbone Street, Floor 1, Brooklyn, New York 11225-3200 ("Malbone Street Address"). Ex. A (Huebner Dep.) at 38:14-39:2."

*Responding to 1.* Uncontested.

2. "Plaintiff is an attorney, admitted to the New York Bar in 2006. *Id.* at 6:25-8:3."

*Responding to 2.* Irrelevant. The standard for this case evaluates the Plaintiff under the least sophisticated consumer, and evaluates the conduct and knowledge of the debt collector.

3. "At some point prior to 2010, Plaintiff received phone service from Verizon at the Malbone Street Address. *Id.* at 23:5-25."

*Responding to 3.* Contested; this factual contention is immaterial to summary judgment. The causes of action does not surround whether Plaintiff did or did not have Verizon "at some point prior to 2010." The factual questions are whether Defendants violated the FDCPA in the process of collecting an alleged debt.

4. "Plaintiff discontinued his Verizon service prior to 2010 and changed phone service providers. *Id.* at 24:23-25:4."

*Responding to 4.* Contested; this factual contention is immaterial to summary judgment. The causes of action does not surround whether Plaintiff discontinued with Verizon for another service provider. The factual questions are whether Defendants violated the FDCPA in the process of collecting an alleged debt.

5. "After Plaintiff discontinued service with Verizon, he claims that his former Verizon line caused interference with his then-current phone line, but his new service provider was unable to remedy the problem. *Id.* at 25:14-26:3."

*Responding to 5.* Contested; this factual contention is immaterial to summary judgment. The causes of action does not surround whether the "new service provider was unable to remedy the problem." The factual questions are whether

Defendants violated the FDCPA in the process of collecting an alleged debt. To the extent of relevance, Plaintiff submitted into evidence the worksheet produced by Verizon. Exhibit F. Then this paragraph should read as follows: After Plaintiff discontinued service with Verizon, his former Verizon line caused interference with his then-current phone line, and his new service provider was unable to remedy the problem. *Id.* at 25:14-26:3."

6.  "In 2010, Plaintiff switched back to Verizon phone service. *Id.* at 25:8-13. At that time, the phone number associated with Plaintiff's Verizon Account ended in 9815. *Id.*

*Responding to 6.*  Contested; these factual contentions are immaterial to summary judgment.  The causes of action does not surround whether Plaintiff switched back to Verizon or had an account ending in 9815.  The factual questions are whether Defendants violated the FDCPA in the process of collecting an alleged debt.

7.  "Once Plaintiff returned to Verizon, Verizon "jerry-rigged the line," solving the interference issue.  *Id.* at 30:17-31:4."

*Responding to 7.*  Contested; these factual contentions are immaterial to summary judgment.  The causes of action does not surround whether Verizon jerry-rigged the line.   The factual questions are whether Defendants violated the FDCPA in the process of collecting an alleged debt. To the extent of relevance, Defendants omitted to include that the "jerry-rigged the line" occurred outside Plaintiff's home, work which was not billable to Plaintiff.

8.  "After this work was performed, Plaintiff received a bill from Verizon of approximately $131 for fixing the issue, which Verizon explained required it to perform wiring work inside the Malbone Street Address.  *Id.* at 31:24-32:25."

*Responding to 8.*  Uncontested. These facts confirm that Verizon attempted to bill Plaintiff for purposes classified as "debt" pursuant to 15 U.S.C. 1692a(5).

9.  Plaintiff claims that he called Verizon to dispute the charge. *Id.* at 34:13-25.

*Responding to 9.*  Contested; this statement is a description of evidence. Plaintiff did call Verizon to dispute the charge, which is supported by MCM's records. ECF 65-3 at PageID #907.  MCM's printout shows that (1) the only ("First" and "Final") bill Verizon ever issued to Plaintiff was dated March 22, 2011, (2) the last payment Plaintiff made was April 4, 2011, and (3) and the write off date was May 5, 2011.  There is simply no evidence that Verizon issued to Plaintiff more than one bill/invoice because Verizon accepted Plaintiff's dispute.

Per the Court's Individual Rules (B)(4(a), Defendants paragraph 9 should read as follows: "Plaintiff called Verizon to dispute the charge. Id at 34:13-25."

10.      "Plaintiff claims that Verizon told him they would remove the $131 charge from his invoice and that invoices Plaintiff later received indicated that the charge had been credited or removed. *Id.* at 35:6-18."

*Responding to 10.* Contested; this statement is a description of evidence. Verizon did remove the charge, which is supported by MCM's records. ECF 65-3 at PageID #907.  MCM's printout shows that (1) the only ("First" and "Final") bill Verizon ever issued to Plaintiff was dated March 22, 2011, (2) the last payment Plaintiff made was April 4, 2011, and (3) and the write off date was May 5, 2011.  There is simply no evidence that Verizon issued to Plaintiff more than one bill/invoice, because Verizon removed the charge from Plaintiffs account.

Per the Court's Individual Rules (B)(4(a), Defendants paragraph 10 should read as follows: "Verizon told Plaintiff they would remove the $131 charge from his invoice and that invoices Plaintiff later received indicated that the charge had been credited or removed."

11.      "Plaintiff cannot locate any of the invoices reflecting the credit or provide any other documentation that the account was credited, simply asserting that Verizon told him over the phone that the $131 charge had been waived. *Id.* at 36:19-37:6."

*Responding to 11.* Contested; these factual contentions are immaterial to summary judgment.  Plaintiff submitted into evidence the worksheet produced by Verizon. Exhibit F.  Absent from the work records are any entry of a service charge despite containing Plaintiff's credit card information. Plaintiff also produced Exhibit E from I.C. Systems, which shows that Verizon could not verify the charge. Moreover, MCM's printout shows that (1) the only ("First" and "Final") bill Verizon ever issued to Plaintiff was dated March 22, 2011, (2) the last payment Plaintiff made was April 4, 2011, and (3) and the write off date was May 5, 2011.  ECF 65-3 at PageID #907.  There is simply no evidence that Verizon issued to Plaintiff more than one bill/invoice.

12.      "MF purchases debt and places the debts with MCM for servicing. Ex. B (Ross Dep.) at 12:4-22."

*Responding to 12.* Contested. This conclusory statement by MCM's 30(b)(6) witness is hearsay and self-serving.  *See* Fed. R. Evi. 801(c). To the contrary, Angelica Ross testified that MDL has *no* employees but MCM acts in the name of MFL to purchase debt. Exhibit A at 14–16.

13.      "On July 22, 2013, MF purchased accounts from several Verizon entities, including from Verizon New York, Inc. *Id.* at 29:10-19; 32:11-22; Ex. C at Midland-014."

> *Responding to 13.* Contested. This conclusory statement by MCM's 30(b)(6) witness is hearsay and self-serving. *See* Fed. R. Evi. 801(c). In addition, MCM's statement fails to inform that the debts purchased from Verizon are "without recourse." Moreover, the document Midland-014 does not inform anyone how that page is related to the alleged debt Verizon attributed to Plaintiff. To the contrary, Angelica Ross testified that MDL has **no** employees but MCM acts in the name of MFL to purchase debt. Exhibit A at 14–16. If anything, MCM purchased accounts from Verizon in the name of MFL.

14.      "Verizon provided MF data regarding Plaintiff's Verizon account (the "Account"), reflecting that it was one of the accounts that MF purchased along with others from Verizon and that it was due and owing at the time of MF's purchase in the amount of $131.21. Ex. B at 54:24-56:7, 66:13-22; Ex. C at Midland-015."

> *Responding to 14.* Contested. This conclusory statement by MCM's 30(b)(6) witness is hearsay and self-serving. *See* Fed. R. Evi. 801(c). "Midland-015" is not a business record from Verizon or MFL, but a self-serving printout manufactured by MCM. In discovery, MFL did not produce the "Notification File" showing that that the alleged debt attributed to Plaintiff was subject to a purchase from Verizon.

15.      "MCM created a record reflecting the details of the Account from electronic records provided by the various Verizon entities to MF. Ex. B at 55:14-56:7; Ex. C at Midland-015."

> *Responding to 15.* Contested. This conclusory statement by MCM's 30(b)(6) witness is hearsay and self-serving. *See* Fed. R. Evi. 801(c). Moreover, "Midland-015" is not a business record from Verizon or MFL, but a self-serving printout manufactured by MCM.   In discovery, MCM failed to produce any evidence showing that "various Verizon entities" provided such information about Plaintiff to MFL. Plaintiff has no way of knowing what "electronic records [were] provided by the various Verizon entities to MF."

16.      "The record reflects that the Account was issued in Plaintiff's name at the Malbone Street Address, is associated with Plaintiff's telephone number ending in 9815, and

shows a last payment date of April 4, 2011. Ex. A at 25:10-13; Ex. B at 62:25-63:5; Ex. C at

Midland-015."

> *Responding to 16.* Contested. This conclusory statement by MCM's 30(b)(6) witness
> is hearsay and self-serving. *See* Fed. R. Evi. 801(c). MCM's hearsay printout
> shows that the last payment Plaintiff made were April 4, 2011; MCM produced no
> evidence whatsoever that Verizon ever issued to Plaintiff a bill for an outstanding
> balance after the "last payment date of April 4, 2011."

17.    "MCM's records reflect that the balance due on the Account is $131.21.

Ex. C at Midland-001-002, Midland-015."

> *Responding to 17.* Contested. Plaintiff acknowledges that despite MCM's purported
> deletion letter deleting the alleged tradeline, MCM has not ceased its collection
> efforts against Plaintiff for the amount represented in the alleged deleted tradeline.

18.    "On December 15, 2014, MCM produced to Plaintiff an initial collection

letter ("the Initial Letter"), dated August 9, 2013, properly addressed to Plaintiff's at 478

Malbone St, Fl 1, Brooklyn, NY 11225-3200, demanding payment of $131.21. ECF 11-1; ECF

35 at ¶¶ 71-73; Ex. A at 38:14-39:2."

> *Responding to 18.* Uncontested. Plaintiff acknowledges that the first time he received
> the Initial Letter was when MCM produced it on "December 15, 2014."

19.    "MCM's records reflect that the Initial Letter was mailed to Plaintiff at his

address on or about August 8, 2013, and that it was not returned as undeliverable. Ex. C at

Midland-003; ECF 35-5 at ¶ 3."

> *Responding to 19.* Contested; these factual contentions are immaterial to summary
> judgment.  The causes of action does not surround whether MCM mailed to
> Plaintiff the Initial Letter.  It is worth noting. MCM's records are inconsistent. In
> this statement, MCM claims the letter dated August 9, 2013 was mailed August 8,
> 2013; yet *supra* in its paragraph 18, MCM states that "On December 15, 2014,
> MCM produced to Plaintiff" the initial letter.

20.    "MCM furnished information regarding the Account to the major credit

reporting agencies on September 25, 2013. MF does not report to the CRAs. ECF 35-5 at ¶ 4;

Ex. B at 126:15-127:5; Ex. C at Midland-005."

> *Responding to 20.* Contested. This conclusory statement by MCM's 30(b)(6) witnesses is hearsay and self-serving. *See* Fed. R. Evi. 801(c). The purported document "Midland-005" is conclusory and does not show to **who** the communication was made. Indeed, ECF 35-1 and 35-3 show that MFL did report the alleged debt to at least one Credit Reporting Agency. Moreover, in its Certification to the Court, MCM certified, "MCM reports information to the CRAs on MF's behalf. **If MF appears on Plaintiff's CreditCheck Total document, it is because MCM reported that Plaintiff owed a debt owned by MF.**" ECF 60 at *4. (emphasis added).

21.    "On October 17, 2013, Plaintiff called MCM. ECF 35-5 at ¶ 5; Ex. C at Midland-002-003."

> *Responding to 21.* Contested as incomplete. On October 17, 2013, Plaintiff called MCM to dispute the alleged debt.  See ECF 65-3 at PageID #895 "10/17/2013 10:22:08."

22.    "Plaintiff recorded the telephone conversation and provided a transcript of the conversation to the Court.  ECF 35-2.  Midland incorporates this transcript by reference."

> *Responding to 22.* Uncontested.

23.    "MCM played Plaintiff a message stating, "This is an attempt to collect a debt. Any information obtained will be used for that purpose," then transferred him to an agent. *Id.* at 3:20-4:4."

> *Responding to 23.* Uncontested.

24.    "Plaintiff verified his identity to the agent, and the agent disclosed the Account's original number, which was the Verizon telephone number associated with the Account (ending in 9815) and stated that the amount of the debt was $131.21. *Id.* at 4:9-7:3."

> *Responding to 24.* Uncontested, to the extent, the conversation between MCM and Plaintiff happened.

25.    "Plaintiff asked whether MCM issued a letter concerning the account, and the agent responded that MCM sent a letter to Plaintiff at his 478 Malbone Street, 1st Fl, Brooklyn, New York address. *Id.* at 7:4-13."

*Responding to 25.* Uncontested, to the extent, the conversation between MCM and
Plaintiff happened.

26.        "Plaintiff stated, "That's wonderful to hear," and inquired how he could
dispute the debt. *Id.* at 7:14-22."

*Responding to 26.* Uncontested.

27.        "The agent transferred Plaintiff to an MCM department that handles
disputes. *Id.* at 7:23-8:11."

*Responding to 27.* Uncontested.

28.        "Once connected with the dispute department, Plaintiff stated, "Well, I
want to know what I have to do if I want to dispute the debt." *Id.* at 12:5-7."

*Responding to 28.* Uncontested.

29.        "The agent responded "Just advise me what your dispute is and I can see if
I can assist you with that." *Id.* at 12:8-10."

*Responding to 29.* Uncontested.

30.        "Plaintiff asked, "How do I get it off my credit report," and the agent
replied, "Well, we need to, you know, work with what your dispute is in order to remove it, sir.
So why are you disputing?" *Id.* at 12:11-16."

*Responding to 30.* Uncontested.

31.        "Plaintiff responded "I don't understand. I just can't get it off my credit
report?" to which the agent responded "No sir. We just can't delete an account because the
consumer wants it deleted. We need to know why they want it deleted and what their dispute is. I
can assist you with your dispute here, sir. *Id.* at 12:12-13:2."

*Responding to 31.* Uncontested.

32.       "Plaintiff stated "I don't understand. I can't get it off my credit card – my account without paying it?" *Id.* at 13:3-5."

*Responding to 32.* Uncontested.

33.       "The agent told Plaintiff "That's not what I said sir. I need to know what your dispute is before I can just delete it for you. So you are saying you want to dispute it. Why is it that you want to dispute it?" *Id.* at 13:6-12."

*Responding to 33.* Uncontested.

34.       "Plaintiff responded: "Because it is a nonexistent debt." *Id.* at 13:13-14."

*Responding to 34.* Uncontested.

35.       "The agent stated, "Okay. Can you elaborate as to what that means. Did you already pay it with Verizon? Did you never have Verizon? *Id.* at 13:16-19.""

*Responding to 35.* Uncontested.

36.       "Plaintiff asked "Do you have a contact information" and stated "I don't understand what questions you are asking me." *Id.* at 13:19-25."

*Responding to 36.* Uncontested.

37.       "The agent stated "Sir, you called in to dispute the debt. I need to know why you are disputing. So I'm asking you questions …" and Plaintiff stated "I'm telling you it's a nonexistent debt." *Id.* at 14:2-7."

*Responding to 37.* Uncontested.

38.       "The agent stated "Okay, sir, but I don't know what that means. It is existent because it's here in our system, so why are you stating it's nonexistent"? *Id.* at 14:8-12."

*Responding to 38.* Uncontested.

39.       "Plaintiff stated "Because it is nonexistent. How am I supposed to tell you? I can't prove a negative. It is nonexistent." *Id.* at 14:14-16."

*Responding to 39.* Uncontested.

40.     "The agent stated "I don't know what that means. So I need you to elaborate so I can assist you with your dispute. Did you ever have Verizon?" *Id.* at 14:17-21."

*Responding to 40.* Uncontested.

41.     "Plaintiff responded that he did not "understand what you are saying" and asked "Do you have a contact that number?" *Id.* at 14:25-15:3."

*Responding to 41.* Uncontested.

42.     "The agent provided the extension number and asked "Did you want to move forward on your dispute?" to which Plaintiff responded "I told you I dispute it because it's a nonexistent debt. *Id.* at 15:14-16:4."

*Responding to 42.* Uncontested.

43.     "The agent stated "I don't understand, sir. But you haven't given me why you are disputing. You are just saying you are disputing. I need to know what you are disputing," to which Plaintiff responded "It's a nonexistent debt." *Id.* at 5-11."

*Responding to 43.* Uncontested. The correct citation is 15-11.

44.     "The agent asked "[D]id you ever have Verizon service?" and Plaintiff stated, "You asked me, I told you. If you're telling me you are not going to take my dispute, that's fine. I'm just going to try to see if I can get more information". *Id.* at 16:22-17:6. The agent responded, "I am trying to help you with your dispute, sir, but you are not really helping me help you." *Id.* at 17:7-9.

*Responding to 44.* Uncontested.

45.     "MCM's records reflect that on October 17, 2013, MCM closed the Account, ceased all collection activity, and coded the Account as closed.  Ex. B at 131:15-132:20; Ex. C at Midland-002 to -003."

Page 15

*Responding to 45.* Contested. MCM conceded that Plaintiff's account was not marked as disputed.  Exhibit B and ECF 67 at *2.  As of December 1, 2015, MCM's records claim that Plaintiff still owes $131.21 for the alleged Verizon debt attributed to Plaintiff.  ECF 65-3 at PageID #893, 894, 897, and 898.  MCM's records represent that the account status of the alleged Verizon debt attributed to Plaintiff is "open." ECF 65-4 at PageID #893 "Open/Closed: **O**"

46.        "MCM's records reflect that MCM began the process to transmit a request to the three major credit reporting agencies (Experian, Equifax and TransUnion – the "CRAs") to delete the information it had reported regarding the Account on October 17, 2013.  Ex. B at 131:8-132:6; Ex. C at Midland-002 to -003."

*Responding to 46.* Contested. MCM's records show that the "Last Ltr [letter]" issued to Plaintiff was on August 8, 2013; there is no evidence that the deletion letter was actually transmitted on "October 17, 2013."  ECF 65-4 at PageID #894 "Last Ltr: 08/09/2013."

47.        "MCM's records reflect that its first deletion request was transmitted to the CRAs on October 23, 2013, completing the deletion request process. Ex. B at 131:20-132:20; Ex. C at Midland-005; ECF 35-5 at ¶ 9."

*Responding to 47.* Contested. Besides the representation of an alleged "deletion letter," there is no evidence that MCM deleted the alleged Verizon debt attributed to Plaintiff. MCM did not produce any evidence that MFL authorized MCM to delete the alleged Verizon debt attributed to Plaintiff allegedly purchased by MFL.

48.        "MCM's records reflect that it transmitted duplicate requests for deletion of the Account to the three major credit reporting agencies on November 19, 2013, December 17, 2013, and January 16, 2014. It is MCM's practice to issue duplicate requests for deletion to the credit reporting agencies to ensure that the agencies process the request for deletion. MCM's records reflect no later reporting activity. Ex. C at Midland-005; ECF 35-5 at ¶¶ 9-10."

*Responding to 48.* Contested. This conclusory statement by MCM's 30(b)(6) witness is hearsay and self-serving.  *See* Fed. R. Evi. 801(c).As of April 23, 2015, CreditCheckTotal shows that MCM and MFL maintain that Plaintiff's has an alleged balance of $131. ECF 35-3 at PageID #453.

49.      "On December 15, 2014, MCM produced a letter to Plaintiff ("the Deletion Letter") dated October 17, 2013, advising Plaintiff that MCM ceased collections and instructed the CRAs to delete the information MCM had reported regarding the Account from Plaintiff's credit file. ECF 35 ¶¶ 76-77, 79-80; ECF 11-2."

*Responding to 49.* Contested. MCM's records show that the "Last Ltr [letter]" issued to Plaintiff was on August 8, 2013; there is no evidence that the deletion letter was actually transmitted on "October 17, 2013." ECF 65-4 at PageID #894 "Last Ltr: 08/09/2013." Besides the representation of an alleged "deletion letter," there is no evidence that MCM deleted the alleged Verizon debt attributed to Plaintiff. MCM did not produce any evidence that MFL authorized MCM to delete the alleged Verizon debt attributed to Plaintiff allegedly purchased by MFL.

50.      "The Deletion Letter, dated October 17, 2013, is properly addressed to Plaintiff at 478 Malbone St, Fl 1, Brooklyn, NY 11225-3200. ECF 11-2."

*Responding to 50.* Uncontested.

51.      "MCM's records reflect that the Deletion Letter was mailed to Plaintiff and was not returned as undeliverable. ECF 35-5 at ¶ 8; Ex. C at Midland-002."

*Responding to 51.* Contested. MCM's records show that the "Last Ltr [letter]" issued to Plaintiff was on August 8, 2013; there is no evidence that the deletion letter was actually transmitted on "October 17, 2013." ECF 65-4 at PageID #894 "Last Ltr: 08/09/2013."

52.      "Plaintiff has not produced a credit report issued by one of the three main consumer reporting agencies, Equifax, Experian and TransUnion. Ex. A at 129:20-130:14, 131:16-132:3, 136:9-25, 234:5-235:2."

*Responding to 52.* Contested. Plaintiff produced a record of which is maintained by CreditCheckTotal, a subsidiary of Equifax demonstrating that the MCM and MFL maintain that the account is still "open."MCM's records also represent that the account status of the alleged Verizon debt attributed to Plaintiff is "open." ECF 65-4 at PageID #893 "Open/Closed: **O."**The contention that Plaintiff did not need to produce a "credit report," such as used for the evaluation of credit, because the FDCPA focuses on communicating dispute to third parties, regardless of whether the third party is a credit bureau.  Besides, Plaintiff is not possession of any other credit report other than those produced by CreditCheckTotal.

53.     "Instead of providing a credit report issued directly from a CRA, Plaintiff has produced redacted documents titled "CreditCheck Total." When asked to produce any copy of his credit report in his possession or control, Plaintiff produced only copies of his CreditCheck Total documents. ECF 35-3; Plaintiff's Response to MCM's Request for Production No. 20.

*Responding to 53.* Contested. Plaintiff produced a record of which is maintained by CreditCheckTotal, a subsidiary of Equifax demonstrating that the MCM and MFL maintain that the account is still "open."MCM's records also represent that the account status of the alleged Verizon debt attributed to Plaintiff is "open." ECF 65-4 at PageID #893 "Open/Closed: **O."**The contention that Plaintiff did not need to produce a "credit report," such as used for the evaluation of credit, because the FDCPA focuses on communicating dispute to third parties, regardless of whether the third party is a credit bureau.  Besides, Plaintiff is not possession of any other credit report other than those produced by CreditCheckTotal.

54.     "Plaintiff's CreditCheck Total monitoring reports "Terms and Conditions" states, under "FCRA Disclosures," that "[t]he credit report you are requesting from [CreditCheck] is not intended to constitute the disclosure of Experian information required by the FCRA or similar laws.  Experian's National Consumer Assistance Center provides a proprietary consumer disclosure that is different from the consumer credit report provided by [CreditCheck]. The disclosure report must be obtained directly from Experian by going to [Experian's website] or by calling [Experian's toll-free number]…. Although comprehensive, the credit reports from each of the three national credit reporting companies that are available from [CreditCheck] may not have the same information as a credit report obtained directly from the three national credit reporting companies or through the central source." Ex. D."

*Responding to 54.* Contested.  The CreditCheck record produced by Plaintiff is consistent with the records produced by MCM.  Plaintiff produced a record of which is maintained by CreditCheckTotal, a subsidiary of Equifax demonstrating that the MCM and MFL maintain that the account is still "open."  MCM's records also represent that the account status of the alleged Verizon debt attributed to Plaintiff is "open." ECF 65-4 at PageID #893 "Open/Closed: **O."**The contention that Plaintiff did not need to produce a "credit report," such as used for the evaluation of credit, because the FDCPA focuses on communicating dispute to third parties, regardless of whether the third party is a credit bureau.  Besides,

Plaintiff is not possession of any other credit report other than those produced by CreditCheckTotal.

55.        "When questioned at his deposition, Plaintiff was unable to provide a

cogent explanation of the information found in the CreditCheck documents. Ex. A 130:2-

136:25."

*Responding to 55.* Contested. "CreditCheck Total is part of a family of online consumer credit reporting sites belonging to ConsumerInfo.com, Inc., an Experian company." There is no reason to question to the authenticity of information reported by CreditCheck  the CreditCheck record produced by Plaintiff is consistent with the records produced by MCM.  Plaintiff produced a record of which is maintained by CreditCheckTotal, a subsidiary of Equifax demonstrating that the MCM and MFL maintain that the account is still "open."  MCM's records also represent that the account status of the alleged Verizon debt attributed to Plaintiff is "open." ECF 65-4 at PageID #893 "Open/Closed: **O.**"


Dated: Brooklyn, New York
       December 14, 2015

Respectfully submitted,

POLTORAK PC

/s/          Jacob T. Fogel
_____
By: Jacob T. Fogel Esq.
26 Court Street, Suite 908
Brooklyn, NY 11242
(718)855-4792
Fax: (718)228-9272
Email: jayfogel@att.net

## **VERIFICATION**

I Levi Huebner verify to Rule 11(b) of the Federal Rules of Civil Procedure and under the laws prohibiting perjury, that I conducted a reasonable inquiry to the facts and laws stated in the foregoing pleading, and certify in good faith that under the circumstances:

      1.  The factual allegations stated in the foregoing related to me are true to the best of my knowledge.

      2.  The factual allegations stated in the foregoing related to the Defendants is made to the best of my knowledge by familiarity of the facts and statements Defendants or its agents made, while reserving the right to verify its veracity or dispute them.

Dated: Brooklyn, NY
      December 14, 2015

                    Respectfully submitted,

                    / s /  Levi Huebner

                    _____

                    Levi Huebner