## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| LEVI HUEBNER on behalf of himself and all other similarly situated consumers, | **Case:   14-cv-6046 (BMC)** |
| *Plaintiff*, | |
| -against- | |
| MIDLAND CREDIT MANAGEMENT, INC., and MIDLAND FUNDING LLC, | |
| *Defendants.* | |

## PLAINTIFF'S RESPONSE TO LOCAL RULE 56.1 STATEMENT

Plaintiff Levi Huebner ("Huebner" or "Plaintiff"), by his counsel POMERANTZ LLP and POLTORAK PC responds to Midland Credit Management, Inc.'s ("MCM") and Midland Funding LLC's ("MF") (collectively "Midland" or "Defendants") Rule 56.1 Statement.  Pursuant to Local Rule 56.1(a), Plaintiff recites the material facts as to which there is no genuine issue to be tried, and pursuant to Local Rule 56.1(b), the material facts as to which there exists a genuine issue to be tried:

The following correspondingly numbered paragraphs respond to each numbered paragraph in the statement of Defendants' Rule 56.1 Statement, filed as ECF 64, alongside Plaintiff's response.

1.     "Plaintiff resides at 478 Malbone Street, Floor 1, Brooklyn, New York 11225-3200 ("Malbone Street Address"). Ex. A (Huebner Dep.) at 38:14-39:2."

*Responding to 1*.   Uncontested.

2.     "Plaintiff is an attorney, admitted to the New York Bar in 2006. *Id.* at 6:25-8:3."

1

> *Responding to 2.*  Plaintiff does not contest Proposed Fact 2, but he objects to the extent that Proposed Fact 2 alters Defendants' obligations under the FDCPA. The standard set by the FDCPA is to evaluate Plaintiff under the least sophisticated consumer standard, and to evaluate the conduct and knowledge of the debt collector. Plaintiff's occupation is not a material part of the analysis.

3.      "At some point prior to 2010, Plaintiff received phone service from Verizon at the

Malbone Street Address.  *Id.* at 23:5-25."

> *Responding to 3.*  Plaintiff does not contest Proposed Fact 3, but he objects because Proposed Fact 3 is not material to summary judgment.  The causes of action do not depend upon whether Plaintiff had Verizon service "at some point prior to 2010." Proposed Fact 3 does not bear upon whether Defendants are liable under FDCPA.

4.      "Plaintiff discontinued his Verizon service prior to 2010 and changed phone service

providers. *Id.* at 24:23-25:4."

> *Responding to 4.*  Plaintiff does not contest Proposed Fact 4, but he objects because Proposed Fact 4 is not material to summary judgment.  The causes of action do not depend upon whether Plaintiff had Verizon service "at some point prior to 2010." Proposed Fact 4 does not bear upon whether Defendants are liable under FDCPA.

5.      "After Plaintiff discontinued service with Verizon, he claims that his former

Verizon line caused interference with his then-current phone line, but his new service provider was

unable to remedy the problem. *Id.* at 25:14-26:3."

> *Responding to 5.*  Plaintiff does not contest Proposed Fact 5, but he objects because Proposed Fact 5 is not material to summary judgment.  The causes of action do not depend whether the "new service provider was unable to remedy the problem." Proposed Fact 5 does not bear upon whether Defendants violated the FDCPA in the process of collecting an alleged debt.  To the extent that Proposed Fact 5 affects Plaintiff's claims, it is unclear whether Defendants contest or concede that Verizon caused interference with Plaintiff's telephone line.

6.      "In 2010, Plaintiff switched back to Verizon phone service. *Id.* at 25:8-13. At that

time, the phone number associated with Plaintiff's Verizon Account ended in 9815. *Id.*

> *Responding to 6.*  Plaintiff does not contest Proposed Fact 6, but he objects because Proposed Fact 6 is not material to summary judgment.  The causes of action do not depend upon whether Plaintiff switched back to Verizon or had an account ending

in 9815. Proposed Fact 6 does not bear upon whether Defendants violated the FDCPA in the process of collecting an alleged debt.

7.    "Once Plaintiff returned to Verizon, Verizon "jerry-rigged the line," solving the interference issue. *Id.* at 30:17-31:4."

> *Responding to 7.* Plaintiff does not contest Proposed Fact 7, but he objects because Proposed Fact 6 is not material to summary judgment. The causes of action do not depend upon whether Verizon jerry-rigged the line. Proposed Fact 7 does not bear upon whether Defendants violated the FDCPA in the process of collecting an alleged debt. To the extent that Proposed Fact 7 is relevant, Defendants omitted to include that the interference requiring work to be performed occurred outside Plaintiff's home. Under New York law, Verizon could not charge Plaintiff for work due to line difficulties outside of Plaintiff's property. *See* Ex. 14, 16 NYCRRR §609.2(a) (limiting the scope of charges to "Residential service [which] is basic local exchange service furnished in private homes or apartments, including all parts of the subscriber's domestic establishment"). Thus, the jerry-rigging was not properly billable to Plaintiff.

8.    "After this work was performed, Plaintiff received a bill from Verizon of approximately $131 for fixing the issue, which Verizon explained required it to perform wiring work inside the Malbone Street Address. *Id.* at 31:24-32:25."

> *Responding to 8.* Admitted. These facts confirm that Verizon attempted to bill Plaintiff for purposes classified as "debt" pursuant to 15 U.S.C. §1692a(5). However, Defendants omitted that the bill for that date was March 22, 2011. (ECF 65-3 p. 16).

9.    "Plaintiff claims that he called Verizon to dispute the charge. *Id.* at 34:13-25."

> *Responding to 9.* Plaintiff contests Proposed Fact 9. Per the Court's Individual Practice III(B)(4)(a), Proposed Fact 9 is not a fact. Plaintiff did call Verizon to dispute the charge, which MCM's records support. ECF 65-3 at PageID #907. MCM's printout shows that (1) the only ("First" and "Final") bill Verizon ever issued to Plaintiff was dated March 22, 2011, (2) the last payment Plaintiff made was April 4, 2011, and (3) and the write off date was May 5, 2011. There is no evidence that Verizon issued to Plaintiff more than one bill/invoice because Verizon accepted Plaintiff's dispute.
>
> Pursuant to the Court's Individual Practice III(B)(4)(a), Defendants paragraph 9 should read as follows: "Plaintiff called Verizon to dispute the charge. *Id.* at 34:13-25."

10.     "Plaintiff claims that Verizon told him they would remove the $131 charge from his invoice and that invoices Plaintiff later received indicated that the charge had been credited or removed. *Id.* at 35:6-18."

> *Responding to 10.* Plaintiff contests Proposed Fact 10.  Per the Court's Individual Practice III(B)(4)(a), Proposed Fact 10 is not a fact. Verizon did remove the charge, which MCM's records support.  ECF 65-3 at PageID #907.  MCM's printout shows that (1) the only ("First" and "Final") bill Verizon ever issued to Plaintiff was dated March 22, 2011, (2) the last payment Plaintiff made was April 4, 2011, and (3) and the write off date was May 5, 2011.  There is no evidence that Verizon issued to Plaintiff more than one bill/invoice after April 4, 2011, because Verizon removed the charge from Plaintiff's account.
>
> Per the Court's Individual Rules III(B)(4(a), Defendants' paragraph 10 should read as follows: "Verizon told Plaintiff they would remove the $131 charge from his invoice and that invoices Plaintiff later received indicated that the charge had been credited or removed." *Id.* at 35:6-18.

11.     "Plaintiff cannot locate any of the invoices reflecting the credit or provide any other documentation that the account was credited, simply asserting that Verizon told him over the phone that the $131 charge had been waived. *Id.* at 36:19-37:6."

> *Responding to 11.* Plaintiff contests Proposed Fact 11.  Plaintiff submitted into evidence the worksheet produced by Verizon. Ex. 16.  Absent from the work records are any entry of a service charge despite containing Plaintiff's credit card information.  Plaintiff also produced Ex. 17 from I.C. Systems, which shows that Verizon could not verify the charge.  Moreover, MCM's printout shows that (1) the only ("First" and "Final") bill Verizon ever issued to Plaintiff was dated March 22, 2011, (2) the last payment Plaintiff made was April 4, 2011, and (3) and the write off date was May 5, 2011.  ECF 65-3 at PageID #907.  There is no evidence that Verizon issued to Plaintiff more than one bill/invoice.

12.     "MF purchases debt and places the debts with MCM for servicing. Ex. B (Ross Dep.) at 12:4-22."

> *Responding to 12.* Plaintiff contests Proposed Fact 12.  Proposed Fact 12, a conclusory statement by MCM's 30(b)(6) witness, is not admissible at trial because it is hearsay and self-serving.  *See* Fed. R. Evid. 801(c).  To the contrary, Angelique Ross testified that MF has **no** employees but MCM acts in the name of MF to purchase debt. Ex.2 at 14–16.

13.    "On July 22, 2013, MF purchased accounts from several Verizon entities, including

from Verizon New York, Inc. *Id.* at 29:10-19; 32:11-22; Ex. C at Midland-014."

> *Responding to 13.* Plaintiff contests Proposed Fact 13.  Proposed Fact 13, a conclusory
> statement by MCM's 30(b)(6) witness, is not admissible at trial because it is
> hearsay and self-serving.  *See* Fed. R. Evid. 801(c).  In addition, MCM's statement
> fails to inform that those debts purchased from Verizon are "without recourse."
> (ECF 65-3 p. 15).  Moreover, Midland-014 does not evidence its relation to the
> alleged debt; likewise, Midland-015 does not certify whether its content
> authenticate with the data of the Notification File conveyed in Midland-014.  *See*
> Ex. 6 at Midland-014-15.  To the contrary, Angelique Ross testified that MF has
> **no** employees, but that MCM acts in the name of MF to service debt.  Ex.2 at 14-
> 16.

14.    "Verizon provided MF data regarding Plaintiff's Verizon account (the "Account"),

reflecting that it was one of the accounts that MF purchased along with others from Verizon and

that it was due and owing at the time of MF's purchase in the amount of $131.21. Ex. B at 54:24-

56:7, 66:13-22; Ex. C at Midland-015."

> *Responding to 14.* Plaintiff contests Proposed Fact 14.  Proposed Fact 14, a conclusory
> statement by MCM's 30(b)(6) witness, is not admissible at trial because it is
> hearsay and self-serving.  *See* Fed. R. Evid. 801(c). Ex. 6 (Midland 015) is not a
> business record from Verizon or MF, but is instead a self-serving printout
> manufactured by MCM.  In discovery, MF did not produce the "Notification File"
> showing that the alleged debt was subject to a purchase from Verizon. Indeed,
> Midland-015 does not certify whether its content authenticates with the data of the
> Notification File conveyed in Midland-014. *See* Ex. 6.

15.    "MCM created a record reflecting the details of the Account from electronic records

provided by the various Verizon entities to MF. Ex. B at 55:14-56:7; Ex. C at Midland-015."

> *Responding to 15.* Plaintiff contests Proposed Fact 15.  Proposed Fact 15, a conclusory
> statement by MCM's 30(b)(6) witness, is not admissible at trial because it is
> hearsay and self-serving.  *See* Fed. R. Evid. 801(c).  Moreover, Midland-015 is not
> a business record from Verizon or MF, but a self-serving statement about a printout
> manufactured by MCM.  *See* Ex. 6.  In discovery, MCM failed to produce any
> evidence showing that the "various Verizon entities" provided such information
> about Plaintiff to MF. The Court has no way of knowing what "electronic records
> [were] provided by the various Verizon entities to MF."

16.     "The record reflects that the Account was issued in Plaintiff's name at the Malbone Street Address, is associated with Plaintiff's telephone number ending in 9815, and shows a last payment date of April 4, 2011. Ex. A at 25:10-13; Ex. B at 62:25-63:5; Ex. C at Midland-015."

> *Responding to 16.* Plaintiff contests Proposed Fact 16. Proposed Fact 16, a conclusory statement by MCM's 30(b)(6) witness, is not admissible at trial because it is hearsay and self-serving. *See* Fed. R. Evid. 801(c). While it is true that MCM's hearsay printout shows that the last payment Plaintiff made was April 4, 2011, MCM produced no evidence whatsoever that Verizon ever issued to Plaintiff a bill for an outstanding balance after the "last payment date of April 4, 2011." Thus, Proposed Fact 16 is immaterial to the extent that Defendants seek to legitimize a never invoiced/billed debt.

17.     "MCM's records reflect that the balance due on the Account is $131.21. Ex. C at Midland-001-002, Midland-015."

> *Responding to 17.* Plaintiff admits to Proposed Fact 17 to the extent that MCM's records make such misrepresentation. Plaintiff contests Proposed Fact 17 to the amount charged as a balance due. Plaintiff acknowledges that despite MCM's purported deletion letter deleting the alleged tradeline, MCM has not ceased its collection efforts against Plaintiff for the amount represented in the alleged deleted tradeline.

18.     "On December 15, 2014, MCM produced to Plaintiff an initial collection letter ("the Initial Letter"), dated August 9, 2013, properly addressed to Plaintiff's at 478 Malbone St, Fl 1, Brooklyn, NY 11225-3200, demanding payment of $131.21. ECF 11-1; ECF 35 at ¶¶ 71-73; Ex. A at 38:14-39:2."

> *Responding to 18.* Admitted. Plaintiff acknowledges that the first time he received the Initial Letter was when MCM produced it on "December 15, 2014," not at any time before that.

19.     "MCM's records reflect that the Initial Letter was mailed to Plaintiff at his address on or about August 8, 2013, and that it was not returned as undeliverable. Ex. C at Midland-003; ECF 35-5 at ¶ 3."

> *Responding to 19.* Plaintiff contests Proposed Fact 19. Plaintiff testified that he never received the "Initial Letter." Whether Plaintiff received the Initial Letter is, at the very least, a genuine issue of material fact.

20.     "MCM furnished information regarding the Account to the major credit reporting agencies on September 25, 2013. MF does not report to the CRAs. ECF 35-5 at ¶ 4; Ex. B at 126:15-127:5; Ex. C at Midland-005."

> *Responding to 20.* Plaintiff contests Proposed Fact 20. Proposed Fact 20, a conclusory statement by MCM's 30(b)(6) witnesses is not admissible at trial as hearsay and self-serving. *See* Fed. R. Evid. 801(c). The purported document "Midland-005" is conclusory and does not show to ***whom*** the communication was made. *See* Ex. 18. Indeed, MF did communicate the alleged debt to at least a third party. *See* Ex. 15. Moreover, in its Certification to the Court, MCM certified to the validity of CreditCheck Total's records, "MCM reports information to the CRAs on MF's behalf. **If MF appears on Plaintiff's CreditCheck Total document, it is because MCM reported that Plaintiff owed a debt owned by MF.**" ECF 60 at *4. (Emphasis added).

21.     "On October 17, 2013, Plaintiff called MCM. ECF 35-5 at ¶ 5; Ex. C at Midland-002-003."

> *Responding to 21.* Plaintiff does not dispute Proposed Fact 21, but it misleads and misrepresents the nature of the interaction between Plaintiff and Defendants. Defendants initiated contact with Plaintiff by attempting to contact him on at least September 17, 2013, September 20, 2013, September 28, 2013, October 4, 2013, October 11, 2013, and October 12, 2013. Ex. 5 at Midland-003. Plaintiff's account was marked with code 261 on October 11, 2013, despite not yet having spoken to MCM. Ex. 3 at 28:19-24. Thereafter, on October 17, 2013, Plaintiff returned MCM's multiple calls. Plaintiff was connected to MCM employee Josh Gables and informed Gables that he is disputing the debt. ECF 35-2 at PageID 434. Gables transferred Plaintiff to Emma Elliott to process the dispute of the alleged debt. *See* Ex. 5 at Midland-003 ("10/17/2013 10:22:08"). At the conclusion of that call, Elliott marked Plaintiff's account with code 289. Ex. 3 at 31:12-32:1.

22.     "Plaintiff recorded the telephone conversation and provided a transcript of the conversation to the Court. ECF 35-2. Midland incorporates this transcript by reference."

> *Responding to 22.* Admitted.

23.     "MCM played Plaintiff a message stating, "This is an attempt to collect a debt. Any information obtained will be used for that purpose," then transferred him to an agent. *Id.* at 3:20-4:4."

> *Responding to 23.* Admitted.

24.     "Plaintiff verified his identity to the agent, and the agent disclosed the Account's original number, which was the Verizon telephone number associated with the Account (ending in 9815) and stated that the amount of the debt was $131.21. *Id.* at 4:9-7:3."

> *Responding to 24.* Admitted, to the extent the conversation between MCM and Plaintiff happened. Plaintiff contests Proposed Fact 24 to the extent that it purports to prove that there is a debt, because Verizon could never verify that debt and Defendants did not produce any invoices Verizon allegedly issued to Plaintiff.

25.     "Plaintiff asked whether MCM issued a letter concerning the account, and the agent responded that MCM sent a letter to Plaintiff at his 478 Malbone Street, 1st Fl, Brooklyn, New York address. *Id.* at 7:4-13."

> *Responding to 25.* Admitted, to the extent the conversation between MCM and Plaintiff happened.  Plaintiff contests Proposed Fact 25 to the extent that it purports to be evidence that Defendants sent to Plaintiff a letter concerning the account at any time on or before October 17, 2013.  *See supra* ¶ 18 on December 15, 2014, MCM produced to Plaintiff an initial collection letter ("the Initial Letter"), dated August 9, 2013.

26.     "Plaintiff stated, 'That's wonderful to hear,' and inquired how he could dispute the debt. *Id.* at 7:14-22."

> *Responding to 26.* Admitted.

27.     "The agent transferred Plaintiff to an MCM department that handles disputes. *Id.* at 7:23-8:11."

> *Responding to 27.* Admitted.

28.     "Once connected with the dispute department, Plaintiff stated, "Well, I want to know what I have to do if I want to dispute the debt." *Id.* at 12:5-7."

*Responding to 28.* Admitted.

29.     "The agent responded "Just advise me what your dispute is and I can see if I can assist you with that." *Id.* at 12:8-10."

*Responding to 29.* Admitted.

30.     "Plaintiff asked, "How do I get it off my credit report," and the agent replied, "Well, we need to, you know, work with what your dispute is in order to remove it, sir. So why are you disputing?" *Id.* at 12:11-16."

*Responding to 30.* Admitted.

31.     "Plaintiff responded "I don't understand. I just can't get it off my credit report?" to which the agent responded "No sir. We just can't delete an account because the consumer wants it deleted. We need to know why they want it deleted and what their dispute is. I can assist you with your dispute here, sir. *Id.* at 12:12-13:2."

*Responding to 31.* Admitted.

32.     "Plaintiff stated "I don't understand. I can't get it off my credit card – my account without paying it?" *Id.* at 13:3-5."

*Responding to 32.* Admitted.

33.     "The agent told Plaintiff "That's not what I said sir. I need to know what your dispute is before I can just delete it for you. So you are saying you want to dispute it. Why is it that you want to dispute it?" *Id.* at 13:6-12."

*Responding to 33.* Admitted.

34.     "Plaintiff responded: "Because it is a nonexistent debt." *Id.* at 13:13-14."

*Responding to 34.* Admitted.

35.     "The agent stated, "Okay. Can you elaborate as to what that means. Did you already pay it with Verizon? Did you never have Verizon? *Id.* at 13:16-19."

*Responding to 35.* Admitted.

36.     "Plaintiff asked "Do you have a contact information" and stated "I don't understand what questions you are asking me." *Id.* at 13:19-25."

*Responding to 36.* Admitted.

37.     "The agent stated "Sir, you called in to dispute the debt. I need to know why you are disputing. So I'm asking you questions ..." and Plaintiff stated "I'm telling you it's a nonexistent debt." *Id.* at 14:2-7.

*Responding to 37.* Admitted.

38.     "The agent stated "Okay, sir, but I don't know what that means. It is existent because it's here in our system, so why are you stating it's nonexistent"? *Id.* at 14:8-12."

*Responding to 38.* Admitted.

39.     "Plaintiff stated "Because it is nonexistent. How am I supposed to tell you? I can't prove a negative. It is nonexistent." *Id.* at 14:14-16."

*Responding to 39.* Admitted.

40.     "The agent stated "I don't know what that means. So I need you to elaborate so I can assist you with your dispute. Did you ever have Verizon?" *Id.* at 14:17-21."

*Responding to 40.* Admitted.

41.     "Plaintiff responded that he did not "understand what you are saying" and asked "Do you have a contact that number?" *Id.* at 14:25-15:3."

*Responding to 41.* Admitted.

42.     "The agent provided the extension number and asked "Did you want to move forward on your dispute?" to which Plaintiff responded "I told you I dispute it because it's a nonexistent debt. *Id.* at 15:14-16:4."

*Responding to 42.* Admitted.

43.     "The agent stated "I don't understand, sir. But you haven't given me why you are disputing. You are just saying you are disputing. I need to know what you are disputing," to which Plaintiff responded "It's a nonexistent debt." *Id.* at 5-11."

*Responding to 43.* Admitted. The correct citation is 15-11.

44.     "The agent asked "[D]id you ever have Verizon service?" and Plaintiff stated, "You asked me, I told you. If you're telling me you are not going to take my dispute, that's fine. I'm just going to try to see if I can get more information". *Id.* at 16:22-17:6. The agent responded, "I am trying to help you with your dispute, sir, but you are not really helping me help you." *Id.* at 17:7-9.

*Responding to 44.* Admitted.

45.     "MCM's records reflect that on October 17, 2013, MCM closed the Account, ceased all collection activity, and coded the Account as closed.  Ex. B at 131:15-132:20; Ex. C at Midland-002 to -003."

> *Responding to 45.* Plaintiff contests Proposed Fact 45.  MCM conceded that Plaintiff's account was not marked as disputed.  Ex.3 at 38:24-39:7.  As of October 31, 2014, MCM's records claimed that Plaintiff still owes $131.21 for the alleged Verizon debt attributed to Plaintiff.  ECF 65-3 at PageID #893, 894, 897, and 898.  MCM's records represent that the account status of the alleged Verizon debt attributed to Plaintiff is "open." Ex. 4 at Midland-001  ("Open/Closed: **O**"). Moreover, ECF 35-5 ¶ 9 shows that MCM's alleged deletion was not processed until October 23, 2013.

46.     "MCM's records reflect that MCM began the process to transmit a request to the three major credit reporting agencies (Experian, Equifax and TransUnion – the "CRAs") to delete the information it had reported regarding the Account on October 17, 2013.  Ex. B at 131:8-132:6; Ex. C at Midland-002 to -003."

> *Responding to 46.* Plaintiff contests Proposed Fact 46. MCM's records show that the "Last Ltr [letter]" issued to Plaintiff was on August 8, 2013; there is no evidence that the deletion letter was actually transmitted on "October 17, 2013." Ex. 5 at Midland-002 ("Last Ltr: 08/09/2013."). MCM's records show that the alleged deletion was not processed until October 23, 2013. Ex. 18 at Midland-005.

> Proposed Fact 46 is belied by Defendants own records. *See* Ex.18. Notwithstanding that MCM allegedly deleted the alleged debt as of October 17, 2013, Midland-287 shows that on four later dates (October 23, 2013, November 19, 2013, December 17, 2013, and January 16, 2014), MCM communicated to the CRAs that Plaintiff's "HDCBAL" is $131.00 and "HDPDUE" is $131.00. *Id.* Midland-290 defines "HDCBAL= current balance" and "HDPDUE=past due amount." *Id.* In plain words, MCM did not transmit a request to delete the information it had reported regarding the Account on October 17, 2013. Instead, MCM informed the CRAs, a third party, that Plaintiff owes them $131 without communicating the dispute.

47.     "MCM's records reflect that its first deletion request was transmitted to the CRAs on October 23, 2013, completing the deletion request process. Ex. B at 131:20-132:20; Ex. C at Midland-005; ECF 35-5 at ¶ 9."

> *Responding to 47.* Plaintiff contests Proposed Fact 47.  Besides the representation of an alleged "deletion letter," there is no evidence that MCM actually deleted the alleged Verizon debt attributed to Plaintiff.  MCM did not produce any evidence that MF authorized MCM to delete the alleged Verizon debt attributed to Plaintiff allegedly purchased by MF.  Indeed, MCM's records represent that the account status of the alleged Verizon debt attributed to Plaintiff is "open." Ex. 4 at Midland-001 ("Open/Closed: **O**").

> Proposed Fact 47 is belied by Defendants own records. *See* Ex.18. Notwithstanding that MCM allegedly deleted the alleged debt as of October 17, 2013, Midland-287 shows that on four later dates (October 23, 2013, November 19, 2013, December 17, 2013, and January 16, 2014), MCM communicated to the CRAs that Plaintiff's "HDCBAL" is $131.00 and "HDPDUE" is $131.00.  *Id.* Midland-290 defines "HDCBAL= current balance" and "HDPDUE=past due amount." *Id.* In plain words, when conducting that alleged "deletion request process," MCM informed the CRAs, a third party, that Plaintiff owes them $131 without communicating the dispute.

48.     "MCM's records reflect that it transmitted duplicate requests for deletion of the Account to the three major credit reporting agencies on November 19, 2013, December 17, 2013, and January 16, 2014. It is MCM's practice to issue duplicate requests for deletion to the credit reporting agencies to ensure that the agencies process the request for deletion. MCM's records reflect no later reporting activity. Ex. C at Midland-005; ECF 35-5 at ¶¶ 9-10."

> *Responding to 48.* Plaintiff contests Proposed Fact 48. Proposed Fact 48, a conclusory statement by MCM's 30(b)(6) witness, is not admissible at trial because it is hearsay and self-serving. *See* Fed. R. Evid. 801(c). As of April 23, 2015, CreditCheck Total shows that Defendants maintain that Plaintiff has an alleged balance of $131.21. ECF 35-3 at PageID #453. The records of CreditCheck Total are consistent with MCM's records showing that that the account status of the alleged Verizon debt attributed to Plaintiff is "open." Ex. 4 at Midland-001 ("Open/Closed: **O**"). Indeed, MCM certified to the Court, "**If MF appears on Plaintiff's CreditCheck Total document, it is because MCM reported that Plaintiff owed a debt owned by MF.**" ECF 60 at *4 (emphasis added).
>
> Proposed Fact 48 is belied by Defendants own records. *See* Ex.18. Notwithstanding that MCM allegedly deleted the alleged debt as of October 17, 2013, Midland-287 shows that on four later dates (October 23, 2013, November 19, 2013, December 17, 2013, and January 16, 2014), MCM communicated to the CRAs that Plaintiff's "HDCBAL" is $131.00 and "HDPDUE" is $131.00. *Id.* Midland-290 defines "HDCBAL= current balance" and "HDPDUE=past due amount." *Id.* In plain words, when conducting that alleged "deletion request process," MCM informed the CRAs—a third party—that Plaintiff owes them $131 without communicating the dispute.

49.     "On December 15, 2014, MCM produced a letter to Plaintiff ("the Deletion Letter") dated October 17, 2013, advising Plaintiff that MCM ceased collections and instructed the CRAs to delete the information MCM had reported regarding the Account from Plaintiff's credit file. ECF 35 ¶¶ 76-77, 79-80; ECF 11-2."

> *Responding to 49.* Plaintiff contests Proposed Fact 49. MCM's records show that the "Last Ltr [letter]" issued to Plaintiff was on August 8, 2013; there is no evidence that the deletion letter was actually transmitted on "October 17, 2013." Ex. 5 at Midland-002 ("Last Ltr: 08/09/2013."). Plaintiff admits that December 15, 2014 is the first time that MCM produced the alleged "Deletion Letter") dated October 17, 2013.

Besides the representation of an alleged "deletion letter," there is no evidence that MCM deleted the alleged Verizon debt attributed to Plaintiff. MCM did not produce any evidence that MF authorized MCM to delete the alleged Verizon debt attributed to Plaintiff allegedly purchased by MF. Indeed, MCM's records represent that the account status of the alleged Verizon debt attributed to Plaintiff is "open." Ex. 4 at Midland-001 ("Open/Closed: **O**").

Proposed Fact 49 is belied by Defendants own records. *See* Ex.18. Notwithstanding that MCM allegedly deleted the alleged debt as of October 17, 2013, Midland-287 shows that on four later dates (October 23, 2013, November 19, 2013, December 17, 2013, and January 16, 2014), MCM communicated to the CRAs that Plaintiff's "HDCBAL" is $131.00 and "HDPDUE" is $131.00. *Id.* Midland-290 defines "HDCBAL= current balance" and "HDPDUE=past due amount." *Id.* In plain words, when instructing the CRAs to delete the information from Plaintiff's credit file," MCM informed the CRAs−a third party−that Plaintiff owes them $131 without communicating the dispute.

50. "The Deletion Letter, dated October 17, 2013, is properly addressed to Plaintiff at 478 Malbone St, Fl 1, Brooklyn, NY 11225-3200. ECF 11-2."

> *Responding to 50.* Admitted.

51. "MCM's records reflect that the Deletion Letter was mailed to Plaintiff and was not returned as undeliverable. ECF 35-5 at ¶ 8; Ex. C at Midland-002."

> *Responding to 51.* Plaintiff contests Proposed Fact 50. MCM's records show that the "Last Ltr [letter]" issued to Plaintiff was on August 8, 2013; there is no evidence that the deletion letter was actually transmitted on "October 17, 2013." Ex. 5 at Midland-002 ("Last Ltr: 08/09/2013."). Moreover, MCM's alleged deletion was not processed before October 23, 2013. Ex. 18 at Midland-005.

52. "Plaintiff has not produced a credit report issued by one of the three main consumer reporting agencies, Equifax, Experian and TransUnion. Ex. A at 129:20-130:14, 131:16-132:3, 136:9-25, 234:5-235:2."

> *Responding to 52.* Plaintiff contests Proposed Fact 52. Plaintiff produced a credit report record maintained by CreditCheck Total, a subsidiary of Experian. *See* Ex.15. This document demonstrates that Defendants maintain that the account is still "open," and also that they did not communicate Plaintiff's dispute when they communicated information about his alleged debt to third parties. MCM has conceded that they did not mark Plaintiff's account as disputed. Ex.3 at 38:24-39:7. MCM's records are consistent also representing that the account status of the

14

alleged Verizon debt attributed to Plaintiff is "open."  Ex. 4 at Midland-001 ("Open/Closed: **O**.").  The evidence that Plaintiff produced is sufficient because the FDCPA focuses on the communication of a disputed debt to third parties without communicating that the debt has been disputed. At least one such third party to which Defendants communicated is CreditCheck Total.

53.   "Instead of providing a credit report issued directly from a CRA, Plaintiff has produced redacted documents titled "CreditCheck Total." When asked to produce any copy of his credit report in his possession or control, Plaintiff produced only copies of his CreditCheck Total documents.  Ex. 15; Plaintiff's Response to MCM's Request for Production No. 20.

> *Responding to 53.* Plaintiff contests Proposed Fact 53.  Plaintiff produced a record that demonstrates that Defendants maintain that the account is still "open," and also that they did not communicate Plaintiff's dispute when they communicated information about his alleged debt to third parties.  MCM has conceded that they did not mark Plaintiff's account as disputed. Ex. 3 at 38:24-39:7.  MCM's records also represent that the account status of the alleged Verizon debt attributed to Plaintiff is "open." Ex. 4 at Midland-001 ("Open/Closed: **O**.").  The evidence that Plaintiff produced is sufficient because the FDCPA focuses on the communication of a disputed debt to third parties without communicating that the debt has been disputed. At least one such third party to which Defendants communicated is CreditCheck Total.
>
> Indeed, Proposed Fact 53 is belied by Defendants own records. *See* Ex.18. Notwithstanding that MCM allegedly deleted the alleged debt as of October 17, 2013, Midland-287 shows that on four later dates (October 23, 2013, November 19, 2013, December 17, 2013, and January 16, 2014), MCM communicated to the CRAs that Plaintiff's "HDCBAL" is $131.00 and "HDPDUE" is $131.00.  *Id.* Midland-290 defines "HDCBAL= current balance" and "HDPDUE=past due amount." *Id.*  In plain words, the records of CreditCheckTotal show a consistent fact, MCM informed the CRAs−a third party−that Plaintiff owes them $131 without communicating the dispute.

54.   "Plaintiff's CreditCheck Total monitoring reports 'Terms and Conditions' states, under 'FCRA Disclosures,' that '[t]he credit report you are requesting from [CreditCheck] is not intended to constitute the disclosure of Experian information required by the FCRA or similar laws.  Experian's National Consumer Assistance Center provides a proprietary consumer disclosure that is different from the consumer credit report provided by [CreditCheck]. The disclosure report must be obtained directly from Experian by going to [Experian's website] or by

calling [Experian's toll-free number]…. Although comprehensive, the credit reports from each of

the three national credit reporting companies that are available from [CreditCheck] may not have

the same information as a credit report obtained directly from the three national credit reporting

companies or through the central source.' Ex. D."

> *Responding to 54.* Plaintiff contests Proposed Fact 54.  Unlike the FCRA that applies only to Credit Reporting Agencies, the FDCPA consists of distinct procedures that apply strictly to debt collectors.  The CreditCheckTotal report produced by Plaintiff is consistent with the records produced by MCM.  Plaintiff produced a record that demonstrates that Defendants maintain that the account is still "open," and also that they did not communicate Plaintiff's dispute when they communicated information about his alleged debt to third parties.  First, MCM has conceded that they did not mark Plaintiff's account as disputed.  Ex.3 at 38:24-39:7.  MCM's records also represent that the account status of the alleged Verizon debt attributed to Plaintiff is "open."  Ex. 4 at Midland-001 ("Open/Closed: **O**."). The evidence that Plaintiff produced is sufficient because the FDCPA focuses on the communication of a disputed debt to third parties without communicating that the debt has been disputed. At least one such third party to which Defendants communicated is CreditCheck Total.   Second, Proposed Fact 54 is belied by Defendants own records. *See* Ex.18. Notwithstanding that MCM allegedly deleted the alleged debt as of October 17, 2013, Midland-287 shows that on four later dates (October 23, 2013, November 19, 2013, December 17, 2013, and January 16, 2014), MCM communicated to the CRAs that Plaintiff's "HDCBAL" is $131.00 and "HDPDUE" is $131.00.  *Id.* Midland-290 defines "HDCBAL= current balance" and "HDPDUE=past due amount." *Id.*  In plain words, MCM informed the CRAs−a third party−that Plaintiff owes them $131 without communicating the dispute.

55.     "When questioned at his deposition, Plaintiff was unable to provide a cogent

explanation of the information found in the CreditCheck documents. Ex. A 130:2-136:25.R"

> *Responding to 55.* Plaintiff contests Proposed Fact 55.  "CreditCheck Total is part of a family of online consumer credit reporting sites belonging to ConsumerInfo.com, Inc., an Experian company."  Ex. 15.  The information reported by CreditCheck is consistent with the records produced by MCM.  Plaintiff produced a record that demonstrates that Defendants maintain that the account is still "open," and also that they did not communicate Plaintiff's dispute when they communicated information about his alleged debt to third parties.  MCM has conceded that they did not mark Plaintiff's account as disputed.  Ex.3 at 38:24-39:7.  MCM's records also represent that the account status of the alleged Verizon debt attributed to Plaintiff is "open," without communicating the dispute.  Ex. 4 at Midland-001 "Open/Closed: **O**.").

Proposed Fact 55 is belied by Defendants own records. *See* Ex.18. Notwithstanding that MCM allegedly deleted the alleged debt as of October 17, 2013, Midland-287 shows that on four later dates (October 23, 2013, November 19, 2013, December 17, 2013, and January 16, 2014), MCM communicated to the CRAs that Plaintiff's "HDCBAL" is $131.00 and "HDPDUE" is $131.00. *Id.* Midland-290 defines "HDCBAL= current balance" and "HDPDUE=past due amount." *Id.* In plain words, MCM informed the CRAs−a third party−that Plaintiff owes them $131 without communicating the dispute. Only Defendants can provide a cogent explanation of the information found in their files.

## PLAINTIFF'S STATEMENT OF ADDITIONAL FACTS IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

56.     Midland Credit Management, Inc. ("MCM") services debts acquired in the name of Midland Funding LLC ("MF") (collectively "Midland" or "Defendants"). Ex. 2 at 14-16.

57.     MCM is a debt collector. Ex. 2 at 13:5-9.

58.     MCM obtains portfolios of alleged "debt" from MF. Ex. 2 at 14:6-8; 15:23 – 16:23 ("MCM would basically, I believe, make those arrangements on behalf of Midland Funding").

59.     MCM services debts acquired in the name of MF from, among other entities, Verizon New York Inc. ("Verizon"). MCM sought to collect from Plaintiff an alleged consumer debt ("alleged debt") in the name of Verizon. Ex. 6 at Midland-014.

60.     MCM assumed the alleged debt without a valid social security number of Plaintiff. ECF 65-3 at PageID #895-896.

61.     MCM asks consumers who wish to dispute a debt to provide information about the basis for their dispute. ECF 36 at ¶¶ 10 n. 1, 142.

62.     MCM has a formal procedure to endeavor the consumer for a reason when initiating a verbal dispute. Exs. 9, 13. That procedure includes asking "probing questions" of callers in order to determine what its next steps in servicing the account will be. Ex. 9 at Midland-028; Ex. 13 at Midland-300-01. It also involves keeping notes on individual accounts with shorthand bits of information about each account. Ex. 5 at Midland 002-04; Ex. 3 at 28:10.

63.     MCM's policy is to advise consumers to send their disputes in "writing" to an MCM office, and MCM requires its employees to inform consumers of this advice.  Ex.13 at Midland-297-98 ("Use the following procedures for verbal disputes *inside* the validation period (timely dispute): 1. Advise the consumer to send their dispute in writing (this is required)…").

64.     If the consumer calls 45 days after MCM's initial communication, MCM's policy is to advise the consumer to send their dispute in writing along with supporting documentation of their dispute, and it is MCM's policy to advise the consumer of this requirement.  Ex.13 at Midland-298 ("Use the following procedures for verbal disputes outside the validation period (untimely dispute): 1. Advise the consumer to send their dispute in writing along with supporting documentation of their dispute…").

65.     On October 17, 2013, Plaintiff contacted MCM by phone and was informed, "Your call may be monitored or recorded.  . . .  This is an attempt to collect a debt; any information obtained will be used for that purpose."  Ex. 20.

66.     MCM understood the nature of Plaintiff's call "CU [Customer] STS [states] WANTS TO DISPUTE." Ex. 5 at Midland-003 (call 10:22:08 a.m.)

67.     Plaintiff asked, "I want to know what do I have to do if I want to dispute the debt." In response, MCM informed Plaintiff, "advise me what your dispute is and I can see if I can assist you with that." Ex. 20.

68.     Plaintiff asked, "How do I get it off my credit report?" In response, MCM informed Plaintiff "Well, we need to, you know, work with what your dispute is in order to remove it, sir. So why are you disputing?" *Id.*

69.     MCM asked Plaintiff, "I need to know what your dispute is . . . So you are saying you want to dispute it. Why is it that you want to dispute it?" *Id.*

70.     MCM responded to Plaintiff, "Sir, you called in to dispute the debt. I need to know why you are disputing.  So I'm asking you questions." *Id.*

71.     Thereafter, MCM asked Plaintiff, "Did you want to move forward on your dispute?"  *Id.*   In response, Plaintiff informed MCM, "I told you I dispute it because it's a nonexistent debt."  MCM responded, "But you haven't given me why you are disputing. You are just saying you are disputing. I need to know what you are disputing." *Id.*

72.     Plaintiff responded to MCM, "It's a nonexistent debt."   MCM then responded, "okay, sir, but that's not a dispute." *Id.*

73.     The alleged debt was never marked as disputed.  Ex. 3 at 19:21-24; Ex. 7 at Midland-016.

74.     Neither MCM nor MF marked the alleged debt as disputed in the notes on Plaintiff's account.  Ex. 3 at 19:21-24; Ex. 5 at Midland-002-04; Ex. 7 at Midland-016.

75.     MCM has promulgated a set of "warning codes" that its representatives use to determine how the MCM system will treat an account when the consumer does not immediately pay. MCM uses code 050 to document all verbal disputes on an account. Ex. 3 at 15:17-23. MCM uses code 261 to document when a consumer refuses to pay, but it does not indicate a dispute or trigger the same FDCPA protections as code 050.  *Id.* at 20:14-17; 40:14-25.  MCM uses code 289 to signify that an account has been closed, collections activity ceased, and information sent to credit reporting agencies to remove the account from their records.  *Id.* at 37:15-24; Ex. 21.  These codes are not mutually exclusive, though an MCM representative would have to add multiple codes for more than one to appear on an account. *Id.* at 22:16-23, 39:25-40:2; 41:12-22.

76.     MCM's policy is to mark all verbal types of disputes with code 050.  Ex. 13 at Midland-297-98.  Those accounts marked with code 050 do not include accounts where a dispute

was made in writing.  Ex. 3 at 15:17-23.  If a consumer verbally says, "I dispute the debt," that statement would qualify an account to be coded 050.  *Id.* at 34:24-35:1.  Additionally, MCM's policy with regard to consumers in New York State as well as New York City is to mark all disputes with code 050.  Ex. 8 at Midland-022; Ex. 9 at Midland-029; Ex. 11 at Midland-053-54; Ex. 12 at Midland-292.  In such cases, MCM "is required to honor the request."  *Id.* at Midland-293.  Once code 050 is placed on an account, it remains unless the consumer tells MCM to remove the dispute. Ex. 3 at 41:25-42:2.

77.     MCM asked Plaintiff, "So you are saying you want to dispute it. Why is it that you want to dispute it?"  In response, Plaintiff informed MCM, "Because it is a nonexistent debt." However, MCM inquired Plaintiff to "elaborate as to what that means. Did you already pay it with Verizon? Did you never have Verizon?"  Ex. 20.

78.     MCM questioned Plaintiff, "So I need you to elaborate so I can assist you with your dispute. Did you ever have Verizon?"  Ex. 20.

79.     MCM repeated its question, "Did you ever have Verizon, sir?"  Plaintiff replied, "I don't understand the question you are asking me. This is a nonexistent debt."  MCM responded, "It's a very straightforward question. Did you ever have Verizon service?" Ex. 20. Thereafter, Plaintiff concluded the call and Elliott marked the account with code 289. Ex. 3 at 31:12-32:1.

80.     On or about December 15, 2014, MCM produced a purported cessation letter (the "Cessation Letter") addressed to Plaintiff.  Ex. 21.

81.     The Cessation Letter is dated October 17, 2013.  *Id.*

82.     The Cessation Letter represents "Original Creditor: Verizon New York Inc., Original Account No.: ****5496, MCM Account No.: ****9948, Current Balance: $131.21." *Id.*

83.     The Cessation Letter states, "we **have** instructed the three major credit reporting agencies to delete the above-referenced MCM account from your credit file. Please be advised, our credit reporting does not affect any credit reporting of this account by the original creditor." (emphasis added).  *Id.*

84.     The Cessation Letter informs, "Please understand this is a communication from a debt collector. This is an attempt to collect a debt. Any information obtained will be used for that purpose."  *Id.* at Midland-013.

85.     The Cessation Letter informs, "All payments made via mail should be sent to the following address: P.O. Box 60578, Los Angeles, CA 90060-0578."  *Id.* at Midland-013.

86.     MCM stated that the "request to delete the Account from Mr. Huebner's credit file was processed and transmitted to the three major credit reporting agencies on **October 23, 2013**." (emphasis added).  ECF 21-1 at ¶ 9.

87.     As of October 31, 2014, MCM's records maintain the current balance for Plaintiff is $131.21.  Ex. 4 at Midland-001.

88.     On October 17, 2013 at 10:22:08 Plaintiff "CALLED TO DISPUTE THE A/C." Ex. 5 at Midland-003.

89.     On that call, MCM's employee asked Plaintiff, "I need to know what your dispute is . . . So you are saying you want to dispute it. Why is it that you want to dispute it? . . ."  MCM also admits that Plaintiff replied, "Because it's a nonexistent debt."  Ex. 20.

90.     MCM confirmed, "So you are saying you want to dispute it."  Ex. 20. *See also* Ex. 20 at 14 ("Sir, you called in to dispute the debt.").

91.     MCM's policy is to mark all verbal disputes with code 050.  Ex. 3 at 15:17-23.

92.     Thereafter, MCM stated to Plaintiff that the alleged debt "is existent because it's here in our system."  Ex. 20.

93.     Thereafter, MCM stated to Plaintiff "you haven't given me why you are disputing." *Id.*

94.     Plaintiff informed MCM, "It's a nonexistent debt."  *Id.*

95.     MCM replied, "Okay, sir, but that's not a dispute."  *Id.*

96.     On four later dates (October 23, 2013, November 19, 2013, December 17, 2013, and January 16, 2014), MCM communicated to at least one third party that Plaintiff's "HDCBAL" is $131.00 and "HDPDUE" is $131.00. *See* Ex.18 (Midland-290 defines "HDCBAL= current balance" and "HDPDUE=past due amount").

97.     As of October 31, 2014, MCM's records represent that the account status of the alleged Verizon debt attributed to Plaintiff is "open."  Ex. 4 at Midland-001 ("Open/Closed: **O**").

98.     The "Last Ltr [letter]" MCM issued to Plaintiff was on August 9, 2013.  Ex. 5 at Midland-002 ("Last Ltr: 08/09/2013").

99.     As of April 23, 2015, CreditCheck Total records indicate that Defendants maintains that Plaintiff has an alleged balance of $131.21, and that Defendants did not communicate Plaintiff's dispute when they reported information about Plaintiff's account to CreditCheck Total. Ex. 15 at *4.

Dated: Brooklyn, New York
      January 15, 2016

           Respectfully submitted,

           **POMERANTZ LLP**

           By: */s/ Gustavo F. Bruckner*
              Gustavo F. Bruckner
              600 Third Avenue
              New York, NY 10016

T:  (212) 661-1100
F: (212) 661-8665
gfbruckner@pomlaw.com

Jayne A. Goldstein (pro hac vice)
1792 Bell Tower Lane, Suite 203
Weston, FL 33326
T: 561-270-0795
F: 954-315-3454
jagoldstein@pomlaw.com

Perry Gattegno (pro hac vice)
10 S LaSalle, Suite 3505
Chicago, IL 60603
T: (312) 377-1181
pgattegno@pomlaw.com

**POLTORAK P.C.**

Jacob T. Fogel, Esq.
26 Court Street, Suite 908
Brooklyn, NY 11242
T: (718) 855-4792
F: (718) 228-9272
jayfogel@att.net

*Attorneys for Plaintiff Levi Huebner and the Putative Class*

## <u>VERIFICATION</u>

I, Levi Huebner, verify to Rule 11(b) of the Federal Rules of Civil Procedure and under the laws prohibiting perjury, that I conducted a reasonable inquiry to the facts and laws stated in the foregoing pleading, and certify in good faith that under the circumstances:

1. The factual allegations stated in the foregoing related to me are true to the best of my knowledge.

2. The factual allegations stated in the foregoing related to the Defendants is made to the best of my knowledge by familiarity of the facts and statements Defendants or its agents made, while reserving the right to verify its veracity or dispute them.

Dated: Brooklyn, NY
     January 15, 2016                                          Respectfully submitted,

                                                               */s/ Levi Huebner*
                                                              Levi Huebner