**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

LEVI HUEBNER on behalf of himself and
all other similarly situated consumers,

                Plaintiff,

    -against-

MIDLAND CREDIT MANAGEMENT,
INC. and MIDLAND FUNDING LLC,

                Defendants.

**CASE NO. 1:14-cv-06046-BMC**

### DEFENDANTS MIDLAND CREDIT MANAGEMENT, INC.
### AND MIDLAND FUNDING LLC'S RESPONSE TO
### PLAINTIFF'S STATEMENT OF ADDITIONAL FACTS

Defendants Midland Credit Management, Inc. ("MCM") and Midland Funding, LLC
("MF") (collectively, "Midland"), by and through its undersigned counsel, respectfully submits
this Reply to Plaintiff's Responsive Local Civil Rule 56.1 Statement. Midland replies only to
those Responses of Plaintiff to which it takes issue with facts Plaintiff alleges and responds to
each of Plaintiff's statements of additional material facts alleged to be in dispute.

7.     Plaintiff claims that Verizon told him they would remove the $131 charge from
his invoice and that invoices Plaintiff later received indicated that the charge had
been credited or removed. *Id.* at 35:6-18.

*Plaintiff's Response to 7.* Plaintiff does not contest Proposed Fact 7, but he
objects because Proposed Fact 6 is not material to summary judgment. The causes
of action do not depend upon whether Verizon jerry-rigged the line. Proposed Fact
7 does not bear upon whether Defendants violated the FDCPA in the process of
collecting an alleged debt. To the extent that Proposed Fact 7 is relevant,
Defendants omitted to include that the interference requiring work to be
performed occurred outside Plaintiff's home. Under New York law, Verizon could
not charge Plaintiff for work due to line difficulties outside of Plaintiff's property.
*See* Ex. 14, 16 NYCRRR 609.2(a) (limiting the scope of charges to
"Residential service which is basic local exchange service furnished in private

1

homes or apartments, including all parts of the subscriber s domestic establishment"). Thus, the jerry-rigging was not properly billable to Plaintiff.

**Midland's Reply**: Plaintiff presents no evidence that the work at issue was completed outside his residence and no evidence showing that the work at issue was not properly billed to him. Midland leaves Plaintiff to his burden of proof.

9.  Plaintiff claims that he called Verizon to dispute the charge. *Id.* at 34:13-25.

**Plaintiff's Response** *to 9.* Plaintiff contests Proposed Fact 9. Per the Court's Individual Practice III(B)(4)(a), Proposed Fact 9 is not a fact. Plaintiff did call Verizon to dispute the charge, which MCM's records support. ECF 65-3 at Page ID #907. MCM's printout shows that (1) the only ("First" and "Final") bill Verizon ever issued to Plaintiff was dated March 22, 2011, (2) the last payment Plaintiff made was April 4, 2011, and (3) and the write off date was May 5, 2011. There is no evidence that Verizon issued to Plaintiff more than one bill invoice because Verizon accepted Plaintiff's dispute.

Pursuant to the Court's Individual Practice III(B)(4)(a), Defendants paragraph 9 should read as follows: "Plaintiff called Verizon to dispute the charge. *Id.* at 34:1325."

**Midland's Reply**: Midland objects to Plaintiff's mischaracterization of its record found at ECF 65-3, Page ID #907, to the extent Plaintiff asserts that the document provides that Plaintiff only received one invoice from Verizon or that the document supports Plaintiff's claim that Verizon accepted his dispute. The document reflects a balance due on the line labeled "Current Balance." Further responding, Plaintiff has presented no evidence other than his testimony that he called Verizon to dispute the charge.

10. Plaintiff claims that Verizon told him they would remove the $131 charge from his invoice and that invoices Plaintiff later received indicated that the charge had been credited or removed. *Id.* at 35:6-18.

**Plaintiff's Response** *to 10.* Plaintiff contests Proposed Fact 10. Per the Court's Individual Practice III(B)(4)(a), Proposed Fact 10 is not a fact. Verizon did remove the charge, which MCM's records support. ECF 65-3 at Page ID 907. MCM's printout shows that (1) the only ("First" and "Final") bill Verizon ever issued to Plaintiff was dated March 22, 2011, (2) the last payment Plaintiff made was April 4, 2011, and (3) the write off date was May 5, 2011. There is no evidence that Verizon issued to Plaintiff more than one bill invoice after April 4, 2011, because Verizon removed the charge from Plaintiff's account.

Per the Court's Individual Rules III(B)(4(a), Defendants' paragraph 10 should read as follows: "Verizon told Plaintiff they would remove the $131 charge from his invoice and that invoices Plaintiff later received indicated that the charge had been credited or removed." *Id.* at 35:6-18.

**Midland's Reply**: Plaintiff has produced no evidence, other than his assertion, that Verizon waived the $131 charge or that invoices later received later received indicated that the charge had been credited or removed. Midland leaves Plaintiff to his burden of proof.

11.     Plaintiff cannot locate any of the invoices reflecting the credit or provide any other documentation that the account was credited, simply asserting that Verizon told him over the phone that the $131 charge had been waived. *Id.* at 36:19-37:6.

**Plaintiff's Response** *to 11.* Plaintiff contests Proposed Fact 11. Plaintiff submitted into evidence the worksheet produced by Verizon. Ex. 16. Absent from the work records are any entry of a service charge despite containing Plaintiff's credit card information. Plaintiff also produced Ex. 17 from I.C. Systems, which shows that Verizon could not verify the charge. Moreover, MCM's printout shows that (1) the only ("First" and "Final") bill Verizon ever issued to Plaintiff was dated March 22, 2011, (2) the last payment Plaintiff made was April 4, 2011, and (3) and the write off date was May 5, 2011. ECF 65-3 at Page ID 907. There is no evidence that Verizon issued to Plaintiff more than one bill invoice.

**Midland's Reply**: Midland objects to Plaintiff's characterization of Ex. 16, titled "Trouble History for: 7187569815 Clip Date 11-24-10." This document is not an invoice or statement to Plaintiff but rather is an internal Verizon document, as indicated on page 4 of 15 of Ex. 16, which states "Not for use or disclosure outside the Verizon companies except under written agreement."

Midland further objects to Plaintiff's characterization of Ex. 17 as showing that "Verizon could not verify the charge." Ex. 17 states that I.C. Systems "did not receive validation of the account" from Verizon in response to a request from I.C. Systems.

Midland objects to Plaintiff's mischaracterization of its record found at ECF 65-3, Page ID #907 to the extent that Plaintiff asserts that the document states that Plaintiff only received one invoice from Verizon.

13.     On July 22, 2013, MF purchased accounts from several Verizon entities, including from Verizon New York, Inc. *Id.* at 29:10-19; 32:11-22; Ex. C at Midland-014.

***Plaintiff's Response*** *to 13*. Plaintiff contests Proposed Fact 13. Proposed Fact 13, a conclusory statement by MCM's 30(b)(6) witness, is not admissible at trial because it is hearsay and self-serving. *See* Fed. R. Evid. 801(c). In addition, MCM's statement fails to inform that those debts purchased from Verizon are "without recourse." (ECF 65-3 p. 15). Moreover, Midland-014 does not evidence its relation to the alleged debt likewise, Midland-015 does not certify whether its content authenticate with the data of the Notification File conveyed in Midland-014. *See* Ex. 6 at Midland-014-15. To the contrary, Angelique Ross testified that MF has ***no*** employees, but that MCM acts in the name of MF to service debt. Ex.2 at 14-16.

***Midland's Reply****:* The testimony of MCM's 30(b)(6) witness is admissible at trial and for purposes of the present motion pursuant to the business records exception of Fed. R. Evid. 803(6). Midland can produce a records custodian at trial who could testify regarding their admissibility under the exception, and Plaintiff has provided no plausible reason to doubt the trustworthiness of the records.

Further responding, Midland-015 expressly provides that it was printed by MCM from electronic records provided by several Verizon entities, including Plaintiff's creditor Verizon New York, Inc. *See* ECF 11-1, identifying Plaintiff's creditor as Verizon New York, Inc.

14.   Verizon provided MF data regarding Plaintiff's Verizon account (the "Account"), reflecting that it was one of the accounts that MF purchased along with others from Verizon and that it was due and owing at the time of MF's purchase in the amount of $131.21. Ex. B at 54:24-56:7, 66:13-22; Ex. C at Midland-015.

***Plaintiff's Response*** *to 14*. Plaintiff contests Proposed Fact 14. Proposed Fact 14, a conclusory statement by MCM's 30(b)(6) witness, is not admissible at trial because it is hearsay and self-serving. *See* Fed. R. Evid. 801(c). Ex. 6 (Midland 015) is not a business record from Verizon or MF, but is instead a self-serving printout manufactured by MCM. In discovery, MF did not produce the "Notification File" showing that the alleged debt was subject to a purchase from Verizon. Indeed, Midland-015 does not certify whether its content authenticates with the data of the Notification File conveyed in Midland-014. *See* Ex. 6.

***Midland's Reply****:* The testimony of MCM's 30(b)(6) witness, as well as Midland's business records, are admissible at trial and for purposes of the present motion pursuant to the business records exception of Fed. R. Evid. 803(6). Midland can produce a records custodian at trial who could testify regarding their admissibility under the exception, and Plaintiff has provided no plausible reason to doubt the trustworthiness of the records.

Further, Ex. 6 (Midland-015) is a business record produced by MCM using data provided by Verizon as the document itself states.

15. MCM created a record reflecting the details of the Account from electronic records provided by the various Verizon entities to MF. Ex. B at 55:14-56:7; Ex. C at Midland-015.

*Plaintiff's Response to 15*. Plaintiff contests Proposed Fact 15. Proposed Fact 15, a conclusory statement by MCM's 30(b)(6) witness, is not admissible at trial because it is hearsay and self-serving. *See* Fed. R. Evid. 801(c). Moreover, Midland-015 is not a business record from Verizon or MF, but a self-serving statement about a printout manufactured by MCM. *See* Ex. 6. In discovery, MCM failed to produce any evidence showing that the "various Verizon entities" provided such information about Plaintiff to MF. The Court has no way of knowing what "electronic records were provided by the various Verizon entities to MF."

*Midland's Reply:* The testimony of MCM's 30(b)(6) witness, as well as Midland's business records, are admissible at trial and for purposes of the present motion pursuant to the business records exception of Fed. R. Evid. 803(6). Midland can produce a records custodian at trial who could testify regarding their admissibility under the exception, and Plaintiff has provided no plausible reason to doubt the trustworthiness of the records.

Further, Ex. 6 (Midland-015) is a business record produced by MCM using data provided by Verizon as stated on the document itself.

16. The record reflects that the Account was issued in Plaintiff's name at the Malbone Street Address, is associated with Plaintiff's telephone number ending in 9815, and shows a last payment date of April 4, 2011. Ex. A at 25:10-13; Ex. B at 62:25-63:5; Ex. C at Midland-015.

*Plaintiff's Response to 16*. Plaintiff contests Proposed Fact 16. Proposed Fact 16, a conclusory statement by MCM's 30(b)(6) witness, is not admissible at trial because it is hearsay and self-serving. *See* Fed. R. Evid. 801(c). While it is true that MCM's hearsay printout shows that the last payment Plaintiff made was April 4, 2011, MCM produced no evidence whatsoever that Verizon ever issued to Plaintiff a bill for an outstanding balance after the "last payment date of April 4, 2011." Thus, Proposed Fact 16 is immaterial to the extent that Defendants seek to legitimize a never invoiced billed debt.

*Midland's Reply:* The testimony of MCM's 30(b)(6) witness, as well Midland's business records, are admissible at trial and for purposes of the present motion pursuant

5

to the business records exception of Fed. R. Evid. 803(6). Midland can produce a records custodian at trial who could testify regarding their admissibility under the exception, and Plaintiff has provided no plausible reason to doubt the trustworthiness of the records.

17. MCM's records reflect that the balance due on the Account is $131.21. Ex. C at Midland-001-002, Midland-015.

*Plaintiff's Response to 17.* Plaintiff admits to Proposed Fact 17 to the extent that MCM's records make such misrepresentation. Plaintiff contests Proposed Fact 17 to the amount charged as a balance due. Plaintiff acknowledges that despite MCM's purported deletion letter deleting the alleged tradeline, MCM has not ceased its collection efforts against Plaintiff for the amount represented in the alleged deleted tradeline.

*Midland's Reply:* Plaintiff presents no evidence, other than his assertion, that his account carries a balance due of $131.21. Further, Midland's records demonstrate that Midland closed the Account (Ex. F at 118:14-21. Ex. 3 at 44:15-45:9) and requested deletion of the Account (Ex. 18).

18. On December 15, 2014, MCM produced to Plaintiff an initial collection letter ("the Initial Letter"), dated August 9, 2013, properly addressed to Plaintiff's at 478 Malbone St, Fl 1, Brooklyn, NY 11225-3200, demanding payment of $131.21. ECF 11-1; ECF 35 at ¶¶ 71-73; Ex. A at 38:14-39:2.

*Plaintiff's Response to 18.* Admitted. Plaintiff acknowledges that the first time he received the Initial Letter was when MCM produced it on "December 15, 2014," not at any time before that.

*Midland's Reply:* Midland denies Plaintiff's assertion that he first received the Initial Letter from MCM on December 15, 2014.

19. MCM's records reflect that the Initial Letter was mailed to Plaintiff at his address on or about August 8, 2013, and that it was not returned as undeliverable. Ex. C at Midland-003; ECF 35-5 at ¶ 3.

*Plaintiff's Response to 19.* Plaintiff contests Proposed Fact 19. Plaintiff testified that he never received the "Initial Letter." Whether Plaintiff received the Initial Letter is, at the very least, a genuine issue of material fact.

*Midland's Reply:* Whether Plaintiff received the Initial Letter is not a material fact.

20.     MCM furnished information regarding the Account to the major credit reporting
        agencies on September 25, 2013. MF does not report to the CRAs. ECF 35-5 at ¶
        4; Ex. B at 126:15-127:5; Ex. C at Midland-005.

        ***Plaintiff's Response*** *to 20.* Plaintiff contests Proposed Fact 20. Proposed Fact 20, a
        conclusory statement by MCM's 30(b)(6) witnesses is not admissible at trial as
        hearsay and self-serving. *See* Fed. R. Evid. 801(c). The purported document "Midland-
        005" is conclusory and does not show to *whom* the communication was made. *See* Ex.
        18. Indeed, MF did communicate the alleged debt to at least a third party. *See* Ex. 15.
        Moreover, in its Certification to the Court, MCM certified to the validity of
        CreditCheck Total's records, "MCM reports information to the CRAs on MF's behalf.
        If MF appears on Plaintiff's CreditCheck Total document, it is because MCM
        reported that Plaintiff owed a debt owned by MF." ECF 60 at 4. (Emphasis
        added).

        ***Midland's Reply: Midland's Reply:*** The testimony of MCM's 30(b)(6) witness, as
        well as Midland's business records, are admissible at trial and for purposes of the present
        motion pursuant to the business records exception of Fed. R. Evid. 803(6). Midland can
        produce a records custodian at trial who could testify regarding their admissibility
        under the exception, and Plaintiff has provided no plausible reason to doubt the
        trustworthiness of the records.

        Further responding, Exhibit 15 is inadmissible hearsay. Midland objects to
        Plaintiff's unsupported assertion that it shows that MF communicated the Account
        to a third party.

45.     MCM's records reflect that on October 17, 2013, MCM closed the Account,
        ceased all collection activity, and coded the Account as closed.  Ex. B at $131:15-
        132:20; Ex. C at Midland-002 to -003.

        ***Plaintiff's Response*** *to 45.* Plaintiff contests Proposed Fact 45. MCM conceded that
        Plaintiff's account was not marked as disputed. Ex.3 at 38:24-39:7. As of October 31,
        2014, MCM's records claimed that Plaintiff still owes $131.21 for the alleged
        Verizon debt attributed to Plaintiff. ECF 65-3 at Page ID 893, 894, 897, and 898.
        MCM's records represent that the account status of the alleged Verizon debt attributed
        to Plaintiff is "open." Ex. 4 at Midland-001 ("Open Closed: 0"). Moreover, ECF 355
        9 shows that MCM's alleged deletion was not processed until October 23, 2013.

        ***Midland's Reply:*** Plaintiff's dispute was processed by coding the account 289,
        which closed the account, ceased collection activity and triggered a request for
        deletion as set forth in the following paragraphs. Plaintiff's assertion that his
        account remains open is a willful misrepresentation of Midland's records and
        testimony. Ex. F at 118:14-21; Ex. 3 at 44:15-45:9; Ex. 5 at Midland-002.

46.     MCM's records reflect that MCM began the process to transmit a request to the three major credit reporting agencies (Experian, Equifax and TransUnion – the "CRAs") to delete the information it had reported regarding the Account on October 17, 2013.  Ex. B at §131:8-132:6; Ex. C at Midland-002 to -003.

   ***Plaintiff's Response*** *to 46.* Plaintiff contests Proposed Fact 46. MCM's records show that the "Last Ltr letter " issued to Plaintiff was on August 8, 2013 there is no evidence that the deletion letter was actually transmitted on "October 17, 2013." Ex. 5 at Midland-002 ("Last Ltr: 08 09 2013."). MCM's records show that the alleged deletion was not processed until October 23, 2013. Ex. 18 at Midland-005.

   Proposed Fact 46 is belied by Defendants own records. *See* Ex.18. Notwithstanding that MCM allegedly deleted the alleged debt as of October 17, 2013, Midland-287 shows that on four later dates (October 23, 2013, November 19, 2013, December 17, 2013, and January 16, 2014), MCM communicated to the CRAs that Plaintiff's "HDCBAL" is $131.00 and "HDPDUE" is $131.00. *Id.* Midland-290 defines "HDCBAL current balance" and "HDPDUE past due amount." *Id.* In plain words, MCM did not transmit a request to delete the information it had reported regarding the Account on October 17, 2013. Instead, MCM informed the CRAs, a third party, that Plaintiff owes them $131 without communicating the dispute.

   ***Midland's Reply***: Plaintiff misrepresents MCM's records regarding the Deletion Letter. In MCM's records, just above MCM's notes regarding Plaintiff's call of October 17, 2013, it states "DELETION LETTER," "10/17/13." Pl. Ex. 5 at Midland-002. Plaintiff solicited testimony from Angelique Ross, Midland's corporate representative, regarding the meaning of this text. Ex. F at 122:20-124:9. Ms. Ross explained that it indicates that a Deletion Letter was sent to Plaintiff on October 17, 2013. *Id.*

   Further responding, Plaintiff misrepresents MCM's records regarding the multiple deletion requests it sent to the CRAs. The first page of Ex. 18, titled "Bureau Reports by Reporting Date," reflects a report on 9/25/13 using status code "93," meaning "Account assigned to … collections." Ex. 18 at Midland-005. The next four reports, dated from 10/23/13 through 1/16/14, show status code "DA," and status description "Delete Entire Account (for reasons other than fraud)." *Id.* The following page of Plaintiff's Ex. 18 (Midland-286) reflects the same five status codes (one "93" and four "DA" codes); Midland-289 reflects the same reporting dates as Midland-005, and Midland-290 provides that status code "93" indicates "collection" and "DA" means "delete account." *Id.*

47.     MCM's records reflect that its first deletion request was transmitted to the CRAs on October 23, 2013, completing the deletion request process. Ex. B at 131:20-132:20; Ex. C at Midland-005; ECF 35-5 at ¶ 9.

***Plaintiff's Response*** *to 47.* Plaintiff contests Proposed Fact 47. Besides the representation of an alleged "deletion letter," there is no evidence that MCM actually deleted the alleged Verizon debt attributed to Plaintiff. MCM did not produce any evidence that MF authorized MCM to delete the alleged Verizon debt attributed to Plaintiff allegedly purchased by MF. Indeed, MCM's records represent that the account status of the alleged Verizon debt attributed to Plaintiff is "open." Ex. 4 at Midland-001 ("Open Closed: 0").

Proposed Fact 47 is belied by Defendants own records. *See* Ex.18. Notwithstanding that MCM allegedly deleted the alleged debt as of October 17, 2013, Midland-287 shows that on four later dates (October 23, 2013, November 19, 2013, December 17, 2013, and January 16, 2014), MCM communicated to the CRAs that Plaintiff's "HDCBAL" is $131.00 and "HDPDUE" is $131.00. *Id.* Midland-290 defines "HDCBAL current balance" and "HDPDUE past due amount." *Id.* In plain words, when conducting that alleged "deletion request process," MCM informed the CRAs, a third party, that Plaintiff owes them $131 without communicating the dispute.

***Midland's Reply****:* Midland incorporates by reference its reply to paragraph 46.

48.   MCM's records reflect that it transmitted duplicate requests for deletion of the Account to the three major credit reporting agencies on November 19, 2013, December 17, 2013, and January 16, 2014. It is MCM's practice to issue duplicate requests for deletion to the credit reporting agencies to ensure that the agencies process the request for deletion. MCM's records reflect no later reporting activity. Ex. C at Midland-005; ECF 35-5 at ¶¶ 9-10.

***Plaintiff's Response*** *to 48.* Plaintiff contests Proposed Fact 48. Proposed Fact 48, a conclusory statement by MCM's 30(b)(6) witness, is not admissible at trial because it is hearsay and self-serving. *See* Fed. R. Evid. 801(c). As of April 23, 2015, CreditCheck Total shows that Defendants maintain that Plaintiff has an alleged balance of $131.21. ECF 35-3 at Page ID 453. The records of CreditCheck Total are consistent with MCM's records showing that that the account status of the alleged Verizon debt attributed to Plaintiff is "open." Ex. 4 at Midland-001 ("Open Closed: 0"). Indeed, MCM certified to the Court, "If MF appears on Plaintiffs CreditCheck Total document, it is because MCM reported that Plaintiff owed a debt owned by MF." ECF 60 at 4 (emphasis added).

Proposed Fact 48 is belied by Defendants own records. *See* Ex.18. Notwithstanding that MCM allegedly deleted the alleged debt as of October 17, 2013, Midland-287 shows that on four later dates (October 23, 2013, November 19, 2013, December 17, 2013, and January 16, 2014), MCM communicated to the CRAs that Plaintiff's "HDCBAL" is $131.00 and "HDPDUE" is $131.00. *Id.* Midland-290 defines "HDCBAL current balance" and "HDPDUE past due amount." *Id.* In plain words, when conducting that alleged "deletion request process," MCM informed the CRAs—a third party—that Plaintiff owes them $131 without communicating the dispute.

***Midland's Reply****:* The testimony of MCM's 30(b)(6) witness is admissible at trial and for purposes of the present motion pursuant to the business records exception of Fed. R. Evid. 803(6). Midland can produce a records custodian at trial who could testify regarding their admissibility under the exception, and Plaintiff has provided no plausible reason to doubt the trustworthiness of the records.

Regarding the CreditCheck documents, Midland incorporates by reference its statements of fact at paragraphs 52-55.

Plaintiff's assertion that his account remains open misrepresents Midland's records and testimony that the account was closed when Plaintiff called MCM on October 17, 2013. Ex. F at 118:14-21; Ex. 3 at 44:15-45:9; Ex. 5 at Midland-002.

Plaintiff misrepresents MCM's records regarding the deletion requests it sent to the CRAs. The first page of Ex. 18, titled "Bureau Reports by Reporting Date," reflects a report on 9/25/13 using status code "93," meaning "Account assigned to … collections." Ex. 18 at Midland-005. The next four reports, dated from 10/23/13 through 1/16/14, show status code "DA," and status description "Delete Entire Account (for reasons other than fraud)." *Id.* The following page of Plaintiff's Ex. 18 (Midland-286) reflects the same five status codes (one "93" and four "DA" codes); Midland-289 reflects the same reporting dates as Midland-005, and Midland-290 provides that status code "93" indicates "collection" and "DA" means "delete account." *Id.*

49.   On December 15, 2014, MCM produced a letter to Plaintiff ("the Deletion Letter") dated October 17, 2013, advising Plaintiff that MCM ceased collections and instructed the CRAs to delete the information MCM had reported regarding the Account from Plaintiff's credit file. ECF 35 ¶¶ 76-77, 79-80; ECF 11-2.

***Plaintiff's Response*** *to 49.* Plaintiff contests Proposed Fact 49. MCM's records show that the "Last Ltr letter" issued to Plaintiff was on August 8, 2013 there is no evidence that the deletion letter was actually transmitted on "October 17, 2013." Ex. 5 at Midland-002 ("Last Ltr: 08 09 2013."). Plaintiff admits that December 15, 2014 is the first time that MCM produced the alleged "Deletion Letter") dated October 17, 2013.

Besides the representation of an alleged "deletion letter," there is no evidence that MCM deleted the alleged Verizon debt attributed to Plaintiff. MCM did not produce any evidence that MF authorized MCM to delete the alleged Verizon debt attributed to Plaintiff allegedly purchased by MF. Indeed, MCM's records represent that the account status of the alleged Verizon debt attributed to Plaintiff is "open." Ex. 4 at Midland-001 ("Open Closed: 0").

Proposed Fact 49 is belied by Defendants own records. *See* Ex.18. Notwithstanding that MCM allegedly deleted the alleged debt as of October 17, 2013, Midland-287 shows that on four later dates (October 23, 2013, November 19, 2013, December 17, 2013, and January 16, 2014), MCM communicated to the CRAs that Plaintiff's "HDCBAL" is $131.00 and "HDPDUE" is $131.00. *Id.* Midland-290 defines "HDCBAL current balance" and "HDPDUE past due amount." *Id.* In plain words, when instructing the CRAs to delete the information from Plaintiff's credit file," MCM informed the CRAs—a third party—that Plaintiff owes them $131 without communicating the dispute.

*Midland's Reply*: Plaintiff misrepresents MCM's records regarding the Deletion Letter. In MCM's records, just above MCM's notes regarding Plaintiff's call of October 17, 2013, it states "DELETION LETTER," "10/17/13." Pl. Ex. 5 at Midland-002. Plaintiff solicited testimony from Angelique Ross, Midland's corporate representative, regarding the meaning of this text. Ex. F at 122:20-124:9. Ms. Ross explained that it indicates that a Deletion Letter was sent to Plaintiff on October 17, 2013. *Id.*

Plaintiff's assertion that his account remains open misrepresents Midland's records and testimony that the account was closed when Plaintiff called MCM on October 17, 2013. Ex. F at 118:14-21; Ex. 3 at 44:15-45:9; Ex. 5 at Midland-002.

Plaintiff misrepresents MCM's records regarding the multiple deletion requests it sent to the CRAs. The first page of Ex. 18, titled "Bureau Reports by Reporting Date," reflects a report on 9/25/13 using status code "93," meaning "Account assigned to … collections." Ex. 18 at Midland-005. The next four reports, dated from 10/23/13 through 1/16/14, show status code "DA," and status description "Delete Entire Account (for reasons other than fraud)." *Id.* The following page of Plaintiff's Ex. 18 (Midland-286) reflects the same five status codes (one "93" and four "DA" codes); Midland-289 reflects the same reporting dates as Midland-005, and Midland-290 provides that status code "93" indicates "collection" and "DA" means "delete account." *Id.*

52.    Plaintiff has not produced a credit report issued by one of the three main consumer reporting agencies, Equifax, Experian and TransUnion. Ex. A at 129:20-130:14, $131:16-132:3, 136:9-25, 234:5-235:2.

*Plaintiff's Response to 52.* Plaintiff contests Proposed Fact 52. Plaintiff produced a credit report record maintained by CreditCheck Total, a subsidiary of Experian. *See* Ex.15. This document demonstrates that Defendants maintain that the account is still "open," and also that they did not communicate Plaintiff's dispute when they communicated information about his alleged debt to third

parties. MCM has conceded that they did not mark Plaintiff's account as disputed. Ex.3 at 38:24-39:7. MCM's records are consistent also representing that the account status of the alleged Verizon debt attributed to Plaintiff is "open." Ex. 4 at Midland-001 ("Open Closed: 0."). The evidence that Plaintiff produced is sufficient because the FDCPA focuses on the communication of a disputed debt to third parties without communicating that the debt has been disputed. At least one such third party to which Defendants communicated is CreditCheck Total.

**Midland's Reply:** Plaintiff's assertion that his account remains open misrepresents Midland's records and testimony that the account was closed when Plaintiff called MCM on October 17, 2013. Ex. F at 118:14-21; Ex. 3 at 44:15-45:9; Ex. 5 at Midland-002.

Plaintiff's dispute was processed by coding the account 289, which closed the account, ceased collection activity and triggered a request for deletion as set forth in the following paragraphs. Plaintiff's assertion that his account remains open is a willful misrepresentation of Midland's records and testimony. Ex. F at 118:14-21; Ex. 3 at 44:15-45:9; Ex. 5 at Midland-002.

Plaintiff  misrepresents MCM's records regarding the multiple deletion requests it sent to the CRAs. The first page of Ex. 18, titled "Bureau Reports by Reporting Date," reflects a report on 9/25/13 using status code "93," meaning "Account assigned to … collections." Ex. 18 at Midland-005. The next four reports, dated from 10/23/13 through 1/16/14, show status code "DA," and status description "Delete Entire Account (for reasons other than fraud)." *Id.* The following page of Plaintiff's Ex. 18 (Midland-286) reflects the same five status codes (one "93" and four "DA" codes); Midland-289 reflects the same reporting dates as Midland-005, and Midland-290 provides that status code "93" indicates "collection" and "DA" means "delete account." *Id.*

53.     "Instead of providing a credit report issued directly from a CRA, Plaintiff has produced redacted documents titled "CreditCheck Total." When asked to produce any copy of his credit report in his possession or control, Plaintiff produced only copies of his CreditCheck Total documents. Ex. 15; Plaintiffs Response to MCM's Request for Production No. 20.

**Plaintiff's Response** *to* 53. Plaintiff contests Proposed Fact 53. Plaintiff produced a record that demonstrates that Defendants maintain that the account is still "open," and also that they did not communicate Plaintiff's dispute when they communicated information about his alleged debt to third parties. MCM has conceded that they did not mark Plaintiff's account as disputed. Ex. 3 at 38:24-39:7. MCM's records also represent that the account status of the alleged Verizon debt attributed to Plaintiff is "open." Ex. 4 at Midland-001 ("Open Closed: O."). The evidence that Plaintiff produced is sufficient because the FDCPA focuses on the communication of a disputed debt to third parties without

communicating that the debt has been disputed. At least one such third party to which Defendants communicated is CreditCheck Total.

Indeed, Proposed Fact 53 is belied by Defendants own records. *See* Ex.18. Notwithstanding that MCM allegedly deleted the alleged debt as of October 17, 2013, Midland-287 shows that on four later dates (October 23, 2013, November 19, 2013, December 17, 2013, and January 16, 2014), MCM communicated to the CRAs that Plaintiff's "HDCBAL" is $131.00 and "HDPDUE" is $131.00. *Id.* Midland-290 defines "HDCBAL current balance" and "HDPDUE past due amount." *Id.* In plain words, the records of CreditCheck Total show a consistent fact, MCM informed the CRAs—a third party—that Plaintiff owes them $131 without communicating the dispute.

***Midland's Reply:*** Plaintiff's assertion that his account remains open misrepresents Midland's records and testimony that the account was closed when Plaintiff called MCM on October 17, 2013. Ex. F at 118:14-21; Ex. 3 at 44:15-45:9; Ex. 5 at Midland-002.

Plaintiff's dispute was processed by coding the account 289, which closed the account, ceased collection activity and triggered a request for deletion as set forth in the following paragraphs. Plaintiff's assertion that his account remains open is a willful misrepresentation of Midland's records and testimony. Ex. F at 118:14-21; Ex. 3 at 44:15-45:9; Ex. 5 at Midland-002.

Plaintiff misrepresents MCM's records regarding the multiple deletion requests it sent to the CRAs. The first page of Ex. 18, titled "Bureau Reports by Reporting Date," reflects a report on 9/25/13 using status code "93," meaning "Account assigned to … collections." Ex. 18 at Midland-005. The next four reports, dated from 10/23/13 through 1/16/14, show status code "DA," and status description "Delete Entire Account (for reasons other than fraud)." *Id.* The following page of Plaintiff's Ex. 18 (Midland-286) reflects the same five status codes (one "93" and four "DA" codes); Midland-289 reflects the same reporting dates as Midland-005, and Midland-290 provides that status code "93" indicates "collection" and "DA" means "delete account." *Id.*

54. Plaintiff's CreditCheck Total monitoring reports "Terms and Conditions" states, under "FCRA Disclosures," that "[t]he credit report you are requesting from [CreditCheck] is not intended to constitute the disclosure of Experian information required by the FCRA or similar laws. Experian's National Consumer Assistance Center provides a proprietary consumer disclosure that is different from the consumer credit report provided by [CreditCheck]. The disclosure report must be obtained directly from Experian by going to [Experian's website] or by calling [Experian's toll-free number]…. Although comprehensive, the credit reports from each of the three national credit reporting companies that are available from [CreditCheck] may not have the same information as a credit report obtained

directly from the three national credit reporting companies or through the central source." Ex. D.

***Plaintiff's Response*** *to 54*. Plaintiff contests Proposed Fact 54. Unlike the FCRA that applies only to Credit Reporting Agencies, the FDCPA consists of distinct procedures that apply strictly to debt collectors. The CreditCheck Total report produced by Plaintiff is consistent with the records produced by MCM. Plaintiff produced a record that demonstrates that Defendants maintain that the account is still "open," and also that they did not communicate Plaintiff's dispute when they communicated information about his alleged debt to third parties. First, MCM has conceded that they did not mark Plaintiff's account as disputed. Ex.3 at 38:24-39:7. MCM's records also represent that the account status of the alleged Verizon debt attributed to Plaintiff is "open." Ex. 4 at Midland-001 ("Open Closed: O."). The evidence that Plaintiff produced is sufficient because the FDCPA focuses on the communication of a disputed debt to third parties without communicating that the debt has been disputed. At least one such third party to which Defendants communicated is CreditCheck Total. Second, Proposed Fact 54 is belied by Defendants own records. *See* Ex.18. Notwithstanding that MCM allegedly deleted the alleged debt as of October 17, 2013, Midland-287 shows that on four later dates (October 23, 2013, November 19, 2013, December 17, 2013, and January 16, 2014), MCM communicated to the CRAs that Plaintiff's "HDCBAL" is $131.00 and "HDPDUE" is $131.00. *Id*. Midland-290 defines "HDCBAL current balance" and "HDPDUE past due amount." *Id*. In plain words, MCM informed the CRAs—a third party—that Plaintiff owes them $131 without communicating the dispute.

***Midland's Reply:*** Plaintiff's assertion that his account remains open misrepresents Midland's records and testimony that the account was closed when Plaintiff called MCM on October 17, 2013. Ex. F at 118:14-21; Ex. 3 at 44:15-45:9; Ex. 5 at Midland-002.

Plaintiff's dispute was processed by coding the account 289, which closed the account, ceased collection activity and triggered a request for deletion as set forth in the following paragraphs. Plaintiff's assertion that his account remains open is a willful misrepresentation of Midland's records and testimony. Ex. F at 118:14-21; Ex. 3 at 44:15-45:9; Ex. 5 at Midland-002.

Plaintiff cites no evidence that Midland communicated with CreditCheck Total.

Plaintiff misrepresents MCM's records regarding the multiple deletion requests it sent to the CRAs. The first page of Ex. 18, titled "Bureau Reports by Reporting Date," reflects a report on 9/25/13 using status code "93," meaning "Account assigned to … collections." Ex. 18 at Midland-005. The next four reports, dated from 10/23/13 through 1/16/14, show status code "DA," and status description "Delete Entire Account (for reasons other than fraud)." *Id.* The following page of Plaintiff's Ex. 18 (Midland-286) reflects the same five status codes (one "93" and

four "DA" codes); Midland-289 reflects the same reporting dates as Midland-005, and Midland-290 provides that status code "93" indicates "collection" and "DA" means "delete account." *Id.*

55.    When questioned at his deposition, Plaintiff was unable to provide a cogent explanation of the information found in the CreditCheck documents. Ex. A 130:2-136:25.

   ***Plaintiff's Response*** *to* 55. Plaintiff contests Proposed Fact 55. "CreditCheck Total is part of a family of online consumer credit reporting sites belonging to Consumerinfo.com, Inc., an Experian company." Ex. 15. The information reported by CreditCheck is consistent with the records produced by MCM. Plaintiff produced a record that demonstrates that Defendants maintain that the account is still "open," and also that they did not communicate Plaintiff's dispute when they communicated information about his alleged debt to third parties. MCM has conceded that they did not mark Plaintiff's account as disputed. Ex.3 at 38:24-39:7.

   MCM's records also represent that the account status of the alleged Verizon debt attributed to Plaintiff is "open," without communicating the dispute. Ex. 4 at Midland-001 "Open Closed: 0.").

   Proposed Fact 55 is belied by Defendants own records. *See* Ex.18. Notwithstanding that MCM allegedly deleted the alleged debt as of October 17, 2013, Midland-287 shows that on four later dates (October 23, 2013, November 19, 2013, December 17, 2013, and January 16, 2014), MCM communicated to the CRAs that Plaintiff's "HDCBAL" is $131.00 and "HDPDUE" is $131.00. *Id.* Midland-290 defines "HDCBAL current balance" and "HDPDUE past due amount." *Id.* In plain words, MCM informed the CRAs—a third party—that Plaintiff owes them $131 without communicating the dispute. Only Defendants can provide a cogent explanation of the information found in their files.

   ***Midland's Reply:*** Plaintiff's assertion that his account remains open misrepresents Midland's records and testimony that the account was closed when Plaintiff called MCM on October 17, 2013. Ex. F at 118:14-21; Ex. 3 at 44:15-45:9; Ex. 5 at Midland-002.

   Plaintiff's dispute was processed by coding the account 289, which closed the account, ceased collection activity and triggered a request for deletion as set forth in the following paragraphs. Plaintiff's assertion that his account remains open is a willful misrepresentation of Midland's records and testimony. Ex. F at 118:14-21; Ex. 3 at 44:15-45:9; Ex. 5 at Midland-002.

Plaintiff cites no evidence that Midland communicated with CreditCheck Total.

Plaintiff misrepresents MCM's records regarding the multiple deletion requests it sent to the CRAs. The first page of Ex. 18, titled "Bureau Reports by Reporting Date," reflects a report on 9/25/13 using status code "93," meaning "Account assigned to … collections." Ex. 18 at Midland-005. The next four reports, dated from 10/23/13 through 1/16/14, show status code "DA," and status description "Delete Entire Account (for reasons other than fraud)." *Id.* The following page of Plaintiff's Ex. 18 (Midland-286) reflects the same five status codes (one "93" and four "DA" codes); Midland-289 reflects the same reporting dates as Midland-005, and Midland-290 provides that status code "93" indicates "collection" and "DA" means "delete account." *Id.*

## REPLY TO PLAINTIFF'S STATEMENT OF ADDITIONAL FACTS

56.     Midland Credit Management, Inc. ("MCM") services debts acquired in the name of Midland Funding LLC ("MF") (collectively "Midland" or "Defendants"). Ex. 2 at 14-16.

**RESPONSE: Admitted.**

57.     MCM is a debt collector. Ex. 2 at 13:5-9.

**RESPONSE: MCM admits that, at times, it is a debt collector. MCM lacks knowledge and information sufficient to form a belief as to whether Plaintiff's debt (the "Account") was incurred for personal, family or household purposes.**

58.     MCM obtains portfolios of alleged "debt" from MF. Ex. 2 at 14:6-8; 15:23 – 16:23 ("MCM would basically, I believe, make those arrangements on behalf of Midland Funding").

**RESPONSE: MCM admits that it services debt on behalf of MF. MCM denies that it takes title to the debt or that it obtains "alleged debt."**

59.     MCM services debts acquired in the name of MF from, among other entities, Verizon New York Inc. ("Verizon"). MCM sought to collect from Plaintiff an alleged consumer debt ("alleged debt") in the name of Verizon. Ex. 6 at Midland-014.

**RESPONSE: MCM admits that it services debts held by MF and that it attempted to collect an account from Plaintiff that Plaintiff formerly owed to Verizon. *See* ECF 11-1 (MCM's initial collection letter to Plaintiff). MCM denies that the account was an "alleged consumer debt" and lacks information and knowledge sufficient to form a belief whether the account was a consumer debt as defined under the FDCPA.**

60.     MCM assumed the alleged debt without a valid social security number of Plaintiff.  ECF 65-3 at Page ID #895-896.

**RESPONSE: MCM admits that Plaintiff's account was not associated with a social security number but denies that this is relevant. Plaintiff does not claim that MCM contacted the wrong person.**


61.     MCM asks consumers who wish to dispute a debt to provide information about the basis for their dispute. ECF 36 at ¶¶ 10 n. 1, 142.

**RESPONSE: Upon receipt of a verbal dispute, MCM marks the account at issue as disputed (Ex. 13 at Midland-297-298) or, in certain cases, codes the account 289, which closes the account, causes MCM to request deletion of the any information reported to the Consumer Reporting Agencies (CRAs) and triggers issuance of a Deletion Letter to the consumer. Ex. 3 at 37:14-24, 31:15-22. MCM also inquires regarding the basis of the dispute.**


62.     MCM has a formal procedure to endeavor the consumer for a reason when initiating a verbal dispute. Exs. 9, 13. That procedure includes asking "probing questions" of callers in order to determine what its next steps in servicing the account will be. Ex. 9 at Midland-028; Ex.13 at Midland-300-01. It also involves keeping notes on individual accounts with shorthand bits of information about each account. Ex. 5 at Midland 002-04; Ex. 3 at 28:10.

**RESPONSE: Midland lacks knowledge and information to respond to Plaintiff's assertion that MCM "has a formal procedure to endeavor the consumer for a reason…" as the statement is nonsensical.**

**To the extent Plaintiff intends to assert that MCM's agents asks consumers who wish to dispute a debt to provide information about the basis for their dispute and that MCM's agents take notes regarding their conversations with consumers, admitted.**

63.     MCM's policy is to advise consumers to send their disputes in "writing" to an MCM office, and MCM requires its employees to inform consumers of this advice. Ex.13 at Midland-297-98 ("Use the following procedures for verbal disputes inside the validation period (timely dispute): 1. Advise the consumer to send their dispute in writing (this is required)… ").

**RESPONSE: MCM admits that its policy is to ask consumers to send disputes in writing but denies that this is a requirement to have one's account marked disputed; rather, the requirement is that the agents advise the consumer to send their dispute in writing.**


64.     If the consumer calls 45 days after MCM's initial communication, MCM's policy is to advise the consumer to send their dispute in writing along with supporting documentation of their dispute, and it is MCM's policy to advise the consumer of this requirement. Ex.13 at Midland-298 ("Use the following procedures for verbal disputes outside the validation period (untimely dispute): 1. Advise the consumer to send their dispute in writing along with supporting documentation of their dispute… ").

17

**RESPONSE: MCM admits that this policy applies to consumers calling after the expiration of 45 days from MCM's initial communication. To the extent Plaintiff implies that MCM requires a consumer to send a written dispute and/or supporting document of their dispute in order to dispute an account, denied.**

65.     On October 17, 2013, Plaintiff contacted MCM by phone and was informed, "Your call may be monitored or recorded. . . . This is an attempt to collect a debt; any information obtained will be used for that purpose." Ex. 20.

**RESPONSE: Admitted.**

66.     MCM understood the nature of Plaintiff's call "CU [Customer] STS [states] W ANTS TO DISPUTE." Ex. 5 at Midland-003 (call 10:22:08 a.m.)

**RESPONSE: This alleged fact is incomprehensible. Midland admits that Plaintiff quotes from Midland-003 of Ex. 5.**

67.     Plaintiff asked, "I want to know what do I have to do if I want to dispute the debt." In response, MCM informed Plaintiff, "advise me what your dispute is and I can see if I can assist you with that." Ex. 20.

**RESPONSE: Denied to the extent Plaintiff misrepresents MCM's response by omitting the word "Just."**

68.     Plaintiff asked, "How do I get it off my credit report?" In response, MCM informed Plaintiff "Well, we need to, you know, work with what your dispute is in order to remove it, sir. So why are you disputing?" *Id.*

**RESPONSE: Admitted.**

69.     MCM asked Plaintiff, "I need to know what your dispute is . . . So you are saying you want to dispute it. Why is it that you want to dispute it?" *Id.*

**RESPONSE: MCM admits that its agent did make the above statement, however, Plaintiff omits other quotations that provide context and refers to Ex. 20 for context.**

70.     MCM responded to Plaintiff, "Sir, you called in to dispute the debt. I need to know why you are disputing. So I'm asking you questions." *Id.*

**RESPONSE: MCM admits that its agent made the statement quoted above in response to Plaintiff's statement "Well, I don't understand what questions you are asking me."**

71.     Thereafter, MCM asked Plaintiff, "Did you want to move forward on your dispute?" *Id.* In response, Plaintiff informed MCM, "I told you I dispute it because it's a nonexistent debt." MCM responded, "But you haven't given me why you are disputing. You are just saying you are disputing. I need to know what you are disputing." *Id.*

**RESPONSE: Denied. Plaintiff misquotes MCM's agent.**


72.     Plaintiff responded to MCM, "It's a nonexistent debt." MCM then responded, "okay, sir, but that's not a dispute." *Id.*

**RESPONSE: Admitted.**


73.     The alleged debt was never marked as disputed. Ex. 3 at 19:21-24; Ex. 7 at Midland-016.

**RESPONSE: MCM admits that Plaintiff's account was not marked 050, rather it was marked 289, causing the account to be closed, collection efforts to cease and the issuance of multiple requests to delete all information reported to the CRAs and a letter to Plaintiff informing him that the deletion requests would issue. Ex. 3 at 37:14-24; 31:15-22. Further responding, Ex. 5 at Midland-002, an excerpt of the notes regarding Plaintiff's Account, states "DIS- DISPUTED" near the top of the page.**


74.     Neither MCM nor MF marked the alleged debt as disputed in the notes on Plaintiff's account. Ex. 3 at 19:21-24; Ex. 5 at Midland-002-04; Ex. 7 at Midland-016.

**RESPONSE: Denied. MCM's records state "DIS – DISPUTED." Ex. 5 at Midland-002. Plaintiff misrepresents the contents of Midland-016, which clearly reflects that the Account was coded 289 in response to Plaintiff's dispute and indicates "DIS," for "disputed."**

**Further responding, MF does not service its own accounts and therefore does not mark debts as disputed.**


75.     MCM has promulgated a set of "warning codes" that its representatives use to determine how the MCM system will treat an account when the consumer does not immediately pay. MCM uses code 050 to document all verbal disputes on an account. Ex. 3 at 15:17-23. MCM uses code 261 to document when a consumer refuses to pay, but it does not indicate a dispute or trigger the same FDCPA protections as code 050. *Id.* at 20:14-17; 40:14-25. MCM uses code 289 to signify that an account has been closed, collections activity ceased, and information sent to credit reporting agencies to remove the account from their records. *Id.* at

37:15-24; Ex. 21. These codes are not mutually exclusive, though an MCM representative would have to add multiple codes for more than one to appear on an account. *Id.* at 22:16-23, 39:25-40:2; 41:12-22.

**RESPONSE: Denied. Plaintiff inaccurately paraphrases the testimony of Midland's corporate representative. Midland refers to the actual testimony in Exhibit 3.**

76.    MCM's policy is to mark all verbal types of disputes with code 050. Ex. 13 at Midland-297-98. Those accounts marked with code 050 do not include accounts where a dispute was made in writing. Ex. 3 at 15:17-23. If a consumer verbally says, "I dispute the debt," that statement would qualify an account to be coded 050. *Id.* at 34:24-35:1. Additionally, MCM's policy with regard to consumers in New York State as well as New York City is to mark all disputes with code 050. Ex. 8 at Midland-022; Ex. 9 at Midland-029; Ex. 11 at Midland-053-54; Ex. 12 at Midland-292. In such cases, MCM "is required to honor the request." *Id.* at Midland-293. Once code 050 is placed on an account, it remains unless the consumer tells MCM to remove the dispute. Ex. 3 at 41:25-42:2.

**RESPONSE: Admitted. Further responding, MCM may code an account 289 upon making a determination that it wished to close an account and stop any further collection nativity. Ex. 3 at 31:15-22.**

77.    MCM asked Plaintiff, "So you are saying you want to dispute it. Why is it that you want to dispute it?" In response, Plaintiff informed MCM, "Because it is a nonexistent debt." However, MCM inquired Plaintiff to "elaborate as to what that means. Did you already pay it with Verizon? Did you never have Verizon?" Ex. 20.

**RESPONSE: Plaintiff excludes the beginning of the exchange, required for context, which shows that Plaintiff was asking how to have the debt removed from his credit report rather than simply lodge a dispute. Midland refers to Exhibit 20 for context.**

78.    MCM questioned Plaintiff, "So I need you to elaborate so I can assist you with your dispute. Did you ever have Verizon?" Ex. 20.

**RESPONSE:  Plaintiff excludes the beginning of the agent's statement, required for context, in which MCM's agent states "Okay, sir. But I don't know what that means." Ex. 20.**

79.    MCM repeated its question, "Did you ever have Verizon, sir? Plaintiff replied, "I don't understand the question you are asking me. This is a nonexistent debt." MCM responded, "It's a very straightforward question. Did you ever have Verizon service?" Ex. 20. Thereafter, Plaintiff concluded the call and Elliott marked the account with code 289. Ex. 3 at 31:12-32:1.

**RESPONSE: Denied to the extent that Plaintiff omits relevant portions of the conversation. Midland refers to Ex. 20. Midland admits that MCM's agent coded the account 289.**

80.     On or about December 15, 2014, MCM produced a purported cessation letter (the "Cessation Letter") addressed to Plaintiff. Ex. 21.

**RESPONSE: Denied. Plaintiff mischaracterizes the letter, which states that MCM requested deletion of the Account.**

81.     The Cessation Letter is dated October 17, 2013. *Id.*

**RESPONSE: Midland denies Plaintiff's characterization of the letter as a "Cessation Letter" but admits it sent Plaintiff a letter on October 17, 2013, and that letter was dated October 17, 2013.**

82.     The Cessation Letter represents "Original Creditor: Verizon New York Inc., Original Account No.: ****5496, MCM Account No.: ****9948, Current Balance: $131.21." *Id.*

**RESPONSE: Midland denies Plaintiff's characterization of the letter as a "Cessation Letter" but admits it sent Plaintiff a letter on October 17, 2013 that contained the language alleged.**

83.     The Cessation Letter states, "we **have** instructed the three major credit reporting agencies to delete the above-referenced MCM account from your credit file. Please be advised, our credit reporting does not affect any credit reporting of this account by the original creditor." (emphasis added). *Id.*

**RESPONSE: Midland denies Plaintiff's characterization of the letter as a "Cessation Letter" but admits it sent Plaintiff a letter on October 17, 2013 that contained the language alleged.**

84.     The Cessation Letter informs, "Please understand this is a communication from a debt collector. This is an attempt to collect a debt. Any information obtained will be used for that purpose." *Id.* at Midland-013.

**RESPONSE: Midland denies Plaintiff's characterization of the letter as a "Cessation Letter" but admits it sent Plaintiff a letter on October 17, 2013 that contained the language alleged.**

85.     The Cessation Letter informs, "All payments be sent to the made via mail should following address: P.O. Box 60578, Los Angeles, CA 90060-0578." *Id.* at Midland-013.

**RESPONSE: Midland denies Plaintiff's characterization of the letter as a "Cessation Letter" but admits it sent Plaintiff a letter on October 17, 2013. Further responding, Plaintiff omits mention that the statement "All payments be sent to the made via mail should following address: P.O. Box 60578, Los Angeles, CA 90060-0578" appears below bold text stating "IF YOU LIVE IN COLORADO, THIS APPLIES TO YOU," language required under Colorado law.**

86.     MCM stated that the "request to delete the Account from Mr. Huebner's credit file was processed and transmitted to the three major credit reporting agencies on October 23, 2013." (emphasis added). ECF 21-1 at ¶ 9.

**RESPONSE: Admitted.**


87.     As of October 31, 2014, MCM's records maintain the current balance for Plaintiff is $131.21. Ex. 4 at Midland-001.

**RESPONSE: Admitted. Further responding, MCM's records also reflected that the account was closed and disputed, Ex. 5 at Midland-002; Ex. F at 118:14-21.**

88.     On October 17, 2013 at 10:22:08 Plaintiff "CALLED TO DISPUTE THE A/C." Ex. 5 at Midland-003.

**RESPONSE: Denied. The statement is incomprehensible as a statement of fact. Midland admits that its records do include this notation at Midland-003.**


89.     On that call, MCM's employee asked Plaintiff, "I need to know what your dispute is . . . So you are saying you want to dispute it. Why is it that you want to dispute it? . . ." MCM also admits that Plaintiff replied, "Because it's a nonexistent debt." Ex. 20.

**RESPONSE: Denied. Midland refers to Exhibit 20 for the full conversation in context.**


90.     MCM confirmed, "So you are saying you want to dispute it." Ex. 20. See also Ex. 20 at 14 ("Sir, you called in to dispute the debt.").

**RESPONSE: Denied. Midland refers to Exhibit 20 for the full conversation in context.**


91.     MCM's policy is to mark all verbal disputes with code 050. Ex. 3 at 15:17-23.

**RESPONSE: Denied. Plaintiff mischaracterizes the testimony at 15:17-23, which is as follows:**

**Q.     What does the 050 signify? What does that mean to you?**

**A.      That means there was a verbal disputed documented on the account.**

**Q.      050 would only be for verbal disputes as opposed to written disputes?**

**A.      Correct.**

92.      Thereafter, MCM stated to Plaintiff that the alleged debt "is existent because it's here in our system." Ex. 20.

**RESPONSE: Midland admits that, at one point in the conversation with Plaintiff, its agent made this statement.**

93.      Thereafter, MCM stated to Plaintiff "you haven't given me why you are disputing." *Id.*

**RESPONSE: Midland admits that, at one point in the conversation with Plaintiff, its agent made this statement.**

94.      Plaintiff informed MCM, "It's a nonexistent debt." *Id.*

**RESPONSE: Admitted.**

95.      MCM replied, "Okay, sir, but that's not a dispute." *Id.*

**RESPONSE: Midland admits that, at one point in the conversation with Plaintiff, its agent made this statement.**

96.      On four later dates (October 23, 2013, November 19, 2013, December 17, 2013, and January 16, 2014), MCM communicated third party that Plaintiff's "HDCBAL" to at least one is $131.00 and "HDPDUE" is $131.00. See Ex.18 (Midland-290 defines "HDCBAL= current balance" and "HDPDUE=past due amount").

**RESPONSE: Denied. Plaintiff omits relevant information, including the fact that each of the reports described above included the code "DA," meaning "delete account." Ex. 18.**

97.      As of October 31, 2014, MCM's records represent that the account status of the alleged Verizon debt attributed to Plaintiff is "open." Ex. 4 at Midland-001 ("Open/Closed: O").

**RESPONSE: Denied. The designator "O" does not signify that Plaintiff's Account is open. Ex. F at 118:14-21; Ex. 3 at 44:15-45:9.**

98.     The "Last Ltr [letter]" MCM issued to Plaintiff was on August 9, 2013. Ex. 5 at Midland-002 ("Last Ltr: 08/09/2013").

**RESPONSE: Denied. Plaintiff mischaracterizes MCM's records. MCM's records demonstrate that Plaintiff's assertion is incorrect: just above MCM's notes regarding Plaintiff's call of October 17, 2013, it states "DELETION LETTER," "10/17/13." Pl. Ex. 5 at Midland-002. Plaintiff solicited testimony from Angelique Ross, Midland's corporate representative, regarding the meaning of this text. Ex. F at 122:20-124:9. Ms. Ross explained that it indicates that a Deletion Letter was sent to Plaintiff on October 17, 2013.** *Id.* **Notably, however, in over eight hours of deposing Ms. Ross, Plaintiff** *never* **inquired about the "Last Ltr" field. While MCM's first (and last)** *collection* **letter to Plaintiff is dated August 9, 2013, MCM's notes unequivocally demonstrate that the Deletion Letter was transmitted on October 17, 2013.** *See* **ECF 11-1.**

99.     As of April 23, 2015, CreditCheck Total records indicate that Defendants maintains that Plaintiff has an alleged balance of $131.21, and that Defendants did not communicate Plaintiff's dispute when they reported information about Plaintiff's account to CreditCheck Total. Ex. 15 at *4.

**RESPONSE: Denied. The CreditCheck Total records are inadmissible hearsay. Further, they are not credit reports. Ex. D. Plaintiff could not explain the meaning of the records. Ex. A 130:2-136:25.**

Dated:  New York, New York
            January 22, 2016

                                       Respectfully submitted,

                                       **MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN, P.C.**

                                       By:     /s/ *Matthew B. Johnson*
                                            Matthew B. Johnson (MJ 1622)
                                            Attorneys for Defendants
                                            Midland Credit Management, Inc.
                                            and Midland Funding, LLC
                                            88 Pine Street, 21st Floor
                                            New York, New York 10005-1811
                                            (212) 376-6433