**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

LEVI HUEBNER on behalf of himself and
all other similarly situated consumers,

                     Plaintiff,

     -against-

MIDLAND CREDIT MANAGEMENT,
INC. and MIDLAND FUNDING LLC,
                   Defendants.

**CASE NO. 1:14-cv-06046-BMC**


**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION**
**FOR SANCTIONS AGAINST PLAINTIFF AND PLAINTIFF'S COUNSEL**


**MARSHALL DENNEHEY WARNER**
**COLEMAN & GOGGIN**
Matthew B. Johnson
Wall Street Plaza
88 Pine Street, 21st Floor
New York, NY 10005
Tel: (212) 376-6433
mbjohnson@mdwcg.com

*Attorneys for Defendants Midland Credit*
*Management, Inc. and Midland Funding, LLC*

## <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION ................................................................................................ 1

II.  PROCEDURAL HISTORY AND STATEMENT OF FACTS ...................................... 1

   A.   Plaintiff's Entrapment Attempt. ..................................................................... 1

   B.   Procedural History of the Action. ................................................................... 2

   C.   Midland Issued Multiple Warnings to Plaintiff Regarding Its Intent to Seek its Fees
        and Costs. ............................................................................................................ 7

III. ARGUMENT ...................................................................................................... 9

   A.   Legal Standard ................................................................................................. 9

     1.   Plaintiff Should be Ordered to Pay Midland's Fees and Costs Pursuant to 15
          U.S.C. § 1692k(a)(3) for Bringing this Action in Bad Faith and For the Purpose of
          Harassment. ...................................................................................................... 9

     2.   Fees, Costs and Expenses should be Awarded under 28 U.S.C. § 1927 for
          Unreasonable Multiplication of Proceedings in Bad Faith. .................................. 10

     3.   The Court should award Sanctions for Plaintiff's Conduct Prior to and during this
          Litigation Pursuant to its Inherent Authority. .................................................... 10

   B.   Plaintiff should be Sanctioned for his Bad Faith Effort to Take Advantage of the
        FDCPA and Require Midland to Incur Substantial Defense Fees and Costs or
        Submit to his Demand. ..................................................................................... 12

IV. CONCLUSION. ................................................................................................ 15

i

## TABLE OF AUTHORITIES

**Cases**

*Amaprop Ltd. v. Indiabulls Fin. Servs. Ltd.*, 483 F. App'x 634 (2d Cir. 2012) ...................... 10-11

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991) ........................................................................ 10, 11

*Dow Chem. Pacific Ltd. v. Rascator Mar. S.A.*, 782 F.2d 329 (2d Cir. 1986) ............................ 12

*Eisemann v. Greene*, 204 F.3d 393 (2d Cir. 2000) ........................................................................ 11

*Ford v. Principal Recovery Group, Inc.*, No. 09-cv-627-JTC, 2011 U.S. Dist. LEXIS 111535, 2011 WL 4549200 (W.D.N.Y. Sept. 29, 2011) ........................................................... 10, 13, 14

*Hasbrouck v. Arrow Financial Services LLC*, No. 1:09-CV-748 (MAD/RFT), 2011 U.S. Dist. LEXIS 53928, 2011 WL 1899250 (N.D.N.Y. May 19, 2011) ................................................ 9

*Huebner v. Midland Credit Management, Inc.*, 14 Civ. 6046 (BMC), 2015 U.S. Dist. LEXIS 57535 (E.D.N.Y. 2015) ................................................................................................. 4, 5

*Huebner v. Midland Credit Management, Inc.*, 85 F. Supp. 3d 672 (E.D.N.Y. 2015)... 2, 3, 12, 13

*Huebner v. Midland Credit Management, Inc.*, No. 14 Civ. 6046 (BMC), 2016 U.S. Dist. LEXIS 73211 (E.D.N.Y. June 6, 2016) .......................................................... 2,4, 6, 7, 14

*Jacobson v. Healthcare Fin. Servs., Inc.*, 434 F. Supp. 2d 133 (E.D.N.Y. 2006) ....................... 13

*Kahen-Kashani v. Nat'l Action Fin. Servs., Inc.*, No. 03CV828, 2004 U.S. Dist. LEXIS 28420, 2004 WL 1040384 (W.D.N.Y. April 12, 2004) ..................................................................... 9

*Konits v. Karahalis*, 409 Fed. Appx. 418 (2d Cir. 2011) .............................................................. 10

*Kropelnicki v. Siegel*, 290 F.3d 118 (2d Cir. 2002) ...................................................................... 12

*Martin v. Giordano*, No. 11-CV-4507 (ARR)(JO), 2016 U.S. Dist. LEXIS 61007 (E.D.N.Y. May 9, 2016) ............................................................................................................... 10, 11, 12

*Oliveri v. Thompson*, 803 F.2d 1265 (2d Cir. 1996) ..................................................................... 10

*Popson v. Galloway*, No. 10-cv-77E, 2010 U.S. Dist. LEXIS 75960 (W.D. Pa. July 27, 2010) ... 9

*Ransmeirer v. Mariani*, 718 F.3d 68 (2d Cir. 2013); ................................................................... 10

*Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323 (2d Cir. 1999) ............................ 10, 11

*Sierra Club v. U.S. Army Corps of Engineers*, 776 F.2d 383 (2d Cir. 1985) .............................. 11

*Spira v. Ashwood Financial, Inc.*, 358 F. Supp. 2d 150 (E.D.N.Y. 2005) ...................................... 9


**Statutes**

15 U.S.C.§ 1692k(a)(3) ........................................................................................................... passim

15 U.S.C. § 1692a ........................................................................................................................... 1

28 U.S.C. § 1927 .................................................................................................................... passim


**Rules**

Fed. R. Civ. P. 5(d)(1) ..................................................................................................................... 3

Fed. R. Civ. P. 11 ........................................................................................................................... 7

Fed. R. Civ. P. 16(f)(1)(B) .............................................................................................................. 4

## DEFENDANTS' MEMORANDUM IN SUPPORT
## OF THEIR MOTION FOR AWARD OF FEES AND COSTS

AND NOW come Defendants Midland Credit Management, Inc. ("MCM") and Midland Funding, LLC (collectively "Midland"), by and through their undersigned counsel, Marshall Dennehey Warner Coleman & Goggin, who respectfully submit this Memorandum in Support of their Motion for Fees and Costs pursuant to 15 U.S.C. § 1692k(a)(3), 28 U.S.C. § 1927 and this Court's Inherent Authority.

### I.        INTRODUCTION

Plaintiff Levi Huebner ("Plaintiff") filed this action on behalf of himself and a putative class seeking statutory damages, actual damages and attorney fees and costs under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692a *et seq*. ECF 35 (Third Amended Complaint ("TAC")). Plaintiff's claims arise out of his failed attempt to entrap Midland into a violation of the FDCPA during a phone call he placed to Midland. Despite failing to lure Midland into an FDCPA violation, Plaintiff pressed forward with his baseless action, in bad faith and for the purpose of harassment, in hopes of obtaining either being paid to walk away or identifying  a viable cause of action through discovery. Plaintiff's efforts to use the FDCPA and this Court to extract payment from Midland have come to naught and Plaintiff's conduct warrants Midland's recovery of all reasonable costs and fees it expended in defending Plaintiff's baseless action.

### II.       PROCEDURAL HISTORY AND STATEMENT OF FACTS

#### A.        Plaintiff's Entrapment Attempt.

Plaintiff's scheme to entrap Midland began after MCM mailed a properly addressed letter, dated August 9, 2013, to Plaintiff's residence, seeking to collect a debt of $131.00. *Huebner v. Midland Credit Management, Inc.*, No. 14 Civ. 6046 (BMC), 2016 U.S. Dist. LEXIS 73211, at

1

*2-3 (E.D.N.Y. June 6, 2016) ("*Huebner III*"). Although Plaintiff denies receiving the letter, it was not returned as undeliverable. *Id.*

On October 17, 2013, Plaintiff called MCM, spoke with an agent and surreptitiously recorded the entire conversation. *Id.* at *3 In that conversation, Plaintiff asked what he had to do to dispute his debt, then stated he wanted to get it off his credit history. *See id.; Huebner v. Midland Credit Management, Inc.*, 85 F. Supp. 3d 672, 675-79 (E.D.N.Y. 2015) ("*Huebner I*"). The agent attempted to assist Plaintiff, but Plaintiff refused to discuss his dispute and evaded the agent's efforts to determine the source of Plaintiff's dispute. *Huebner III* at *3-4. After the call, MCM coded Plaintiff's account "289" to delete the account, cease collection activity and trigger the sending of multiple notices to the three major consumer reporting agencies ("CRAs"), informing them of the account's status. *Id.* at *3, *5-6. The same day, MCM mailed Plaintiff a letter informing him that it had ceased collection efforts and instructed the CRAs to delete the information it had reported concerning the account. *Id.* at *4. Plaintiff denies he received this letter as well. TAC ¶¶ 76-78.

Plaintiff never produced a copy of any of his credit reports, instead opting to rely on a document that explicitly stated it was not to be relied upon as a substitute for an actual credit report. *Huebner III* at *6-7.

### B.     Procedural History of the Action.

Plaintiff filed a Complaint in the United States District Court for the Eastern District of New York on October 15, 2014. ECF 1. On October 16, 2014, the Court issued an Order to Show Cause why the Complaint should not be dismissed for failing to provide a short and plain statement of the claim. In response, on October 23, 2014, Plaintiff filed the First Amended Complaint. ECF 3. Both complaints alleged, *inter alia*, that Midland denied Plaintiff the right to dispute his debt verbally. ECF 1 at ¶ 41; ECF 3 at ¶ 39.

On December 11, 2014, Plaintiff's counsel moved to adjourn the initial status conference, which had been set for December 16, 2014. The Court adjourned the initial conference to January 8, 2015, and ordered Plaintiff to file proof of service as required by Fed. R. Civ. P. 5(d)(1). Order of Dec. 12, 2014. Plaintiff filed another motion to adjourn the initial conference on January 2, 2015. ECF 12. The Court granted the motion, expressing sympathy for counsel's asserted medical condition but admonishing counsel that if he could not proceed, he must consider whether Plaintiff needs to obtain new counsel. Order of Jan. 2, 2015.

On February 2, 2015, the Court held an Initial Status Conference by telephone at the request of Plaintiff's counsel. Minute Entry of Feb. 2, 2015. At the conference, Plaintiff's counsel represented to the Court that MCM told Plaintiff he could only dispute his debt in writing and that Plaintiff's recording of this telephonic conversation would prove a "writing requirement." *Huebner I* at 674. The Court subsequently reviewed Plaintiff's recording and found that the word "writing" was never used in the call. *Id.* Finding that "[t]his case has all the earmarks of a setup," the Court issued an Order to Show Cause directing Plaintiff to explain why the case should not be dismissed with fees and costs awarded and Rule 11 sanctions imposed by February 18, 2015. *Id.* at 675.

Plaintiff moved for an extension to respond on February 15, 2015, which the Court granted. ECF 17; Order of Feb. 17, 2015. On March 2, 2015, Plaintiff's counsel moved for a second extension to respond, stating he needed to obtain a certified transcript of Plaintiff's call with Midland; Midland objected noting that Plaintiff had not consulted Midland in connection with this or the prior extension request. ECF 19. The Court extended Plaintiff's deadline to March 18, 2015. Order of March 2, 2015.

3

In his response to the Court's Order to Show Cause, Plaintiff abandoned his initial claim in favor of previously undisclosed claims. *Huebner v. Midland Credit Management, Inc.*, 14 Civ. 6046 (BMC), 2015 U.S. Dist. LEXIS 57535, at *16-*17 (E.D.N.Y. 2015) ("*Huebner II*"). In his Amended Complaint, Plaintiff asserted "a whole new theory of the case that is at odds with the one he set forth in the joint letter and described at the Initial Status Conference." *Huebner II* at *17. In addition, Plaintiff alleged that the Court was biased and sought recusal. *Huebner II* at *3-4.

Finding that Plaintiff's representations were "an attempt to mislead defendant and the Court, just as plaintiff himself attempted to trick defendant into committing an FDCPA violation" in violation of Fed. R. Civ. P. 16(f)(1)(B), the Court sanctioned Plaintiff's counsel in the amount of $500. *Id.* at *20. Although the Court noted that Plaintiff's motion to recuse was arguably sanctionable under Rule 11(c), the Court opted not to impose further sanctions. *Id.*

On May 21, 2015, Plaintiff filed a Second Amended Complaint; on June 5, 2015, he filed the TAC. ECF 29 & 35. Both the Second and Third Amended Complaints dispensed with the claim that Midland denied Plaintiff the right to dispute the debt verbally. *See generally* ECF 29 & 35. Despite the fact that Plaintiff, like any person, can obtain a free copy of his credit history from each of the three major CRAs each year, Plaintiff elected not to produce his credit history as reported by any one of the three national CRAs. Instead, Plaintiff attached excerpts from a "CreditCheck Total" document as exhibits to the Second and Third Amended Complaints. ECF 29 Exs. A&C; ECF 35 Exs. A&C; *Huebner III* at *6. The CreditCheck document, by its own terms, is not to be relied upon as a report from one of the three recognized CRAs. *Id.* at *6-7.

On August 17, 2015, Midland deposed Plaintiff, who appeared with his counsel Steven Goldman. Ex. A (Huebner Dep.) at 1-2. Plaintiff testified that he had represented plaintiffs in

4

four or five FDCPA suits. *Id.* at 17:5-23. Instead of responding to Midland's question "who drafted this Third Amended Complaint," Plaintiff's counsel objected, consulted with Plaintiff, then asserted attorney-client privilege. *Id.* at 63:9-17. Asked if Jacob T. Vogel, who signed the complaint, had drafted it, Plaintiff's counsel again asserted attorney-client privilege. *Id.* at 63:19-64:3. Plaintiff represented that he did not draft the complaint and his counsel objected to Midland's question as to whether any counsel of record drafted the Complaint. *Id.* at 64:3-66:19.

Finally, although the Court had already sanctioned Plaintiff's counsel for misrepresenting that Midland told him he could not verbally dispute his debt, a claim the Court found "had been debunked completely" (*Huebner II* at *19), Plaintiff testified, under oath, "Midland did tell me that I had to dispute the debt in writing." Ex. A at 182:17-183:22.

On August 24, 2015, Plaintiff and his counsel Jacob T. Fogel deposed Midland's corporate Representative, Angelique Ross. Ex. D (Ross Dep.) at 1-2. Although Plaintiff had his counsel verbalize the questions to Ms. Ross, Plaintiff himself communicated with Mr. Fogel throughout the deposition, writing notes on a piece of paper in front of Mr. Fogel and whispering to him. *Id.* at 40:21-41:7. Midland's counsel began keeping track of the number of times Plaintiff whispered in his counsel's ear at 11:08 A.M. *Id.* at 100:2-16. By 1:19 P.M., Plaintiff had whispered in his counsel's ear 98 times; Midland's counsel admonished Plaintiff that his counsel must conduct the deposition himself. *Id.* As the deposition drew to a close, Plaintiff had whispered to Mr. Fogel at least 340 times; Midland's counsel stated for the record that Plaintiff's counsel had not conducted the deposition, Plaintiff had. *Id.* at 224:19-225:9.

On September 1, 2015, 34 minutes before Plaintiff's deadline to move for class certification, Plaintiff filed a motion for an extension, seeking to indefinitely defer his obligation to move for class certification. ECF 48; Order of Sept. 2, 2015. The Court found Plaintiff's

motion consistent with Plaintiff's prior conduct, appearing to be more interested in keeping the action pending than getting it resolved. Order of Sept. 2, 2015.

On November 13, 2015, Plaintiff's counsel filed a letter motion seeking to revoke certain "confidential" designations applied to Midland's documents. ECF 57. Finding the motion frivolous, the Court sanctioned Plaintiff's counsel $350 for again attempting to delay resolution of this action. Court Order, Nov. 13, 2015.

Thereafter, Midland moved for summary judgment (ECF 63) and Plaintiff moved for class certification (ECF 91). In his motion for class certification, Plaintiff abandoned the classes asserted in the TAC in favor of a new class, consisting of all persons who, according to Midland's records, have either a United States or New York State mailing address, within a year before the filing of this action, who verbally disputed the debt and were asked probing questions regarding the reason for the dispute. ECF 91.

On June 6, 2016, the Court issued a Memorandum Decision & Order, granting Midland's Motion for Summary Judgment, dismissing the TAC and denying Plaintiff's Motion for Class Certification. *Huebner III*, at \*1-2. The Court found that the undisputed facts revealed that Plaintiff attempted to entrap Midland into violating the FDCPA, that Midland did nothing wrong in its efforts to collect the debt at issue and that Midland did report the debt as disputed. *Id*. Further, even if the Court had not granted Midland's motion, it would have denied class certification because the class Plaintiff proposed would include consumers who were not subjected to violations of the FDCPA and because the proposed classes required an individualized inquiry as to the facts and circumstances of each putative class member. *Id.* at \*20-21. Finally, the Court held that Plaintiff was an improper class representative because he

would be subject to a defense not available to other class members; namely, that he attempted to entrap the collection agent into violating the FDCPA. *Id.* at *28-30.

**C.  Midland Issued Multiple Warnings to Plaintiff Regarding Its Intent to Seek its Fees and Costs.**

Throughout the course of this litigation, Midland made its intention to seek its costs and fees in this matter clear, both on the record and in its communications with Plaintiff's various attorneys and paralegals.[1] *See* ECF 13 at page 5 of 7 (Midland's section of Joint Letter of January 28, 2015, explaining why Plaintiff fails to state a claim and noting that Plaintiff presses on at the peril of paying Midland's attorney fees should the Court find that Plaintiff brought this action in bad faith and for the purpose of harassment); Ex. C (email exchange of Feb. 9-10, 2015, between Midland's counsel and Plaintiff's counsel Elie Poltorak, requesting dismissal of the action and stating that Midland would seek its fees and costs pursuant to 1692k if Plaintiff failed to dismiss; Plaintiff's counsel's response stating that if Midland wished to waste its time on motion practice, be his guest, otherwise respond to Plaintiff's settlement demand); ECF 21 (Midland's Reply to Plaintiff's Response to Court's Order to Show Cause, arguing that Plaintiff should be sanctioned under Fed. R. Civ. P. 11); Ex. D (Email exchange of May 7, 2015, between Midland's counsel to Elie Poltorak's paralegal (Mr. Weisshaus), requesting dismissal of the action and informing Plaintiff that should he pursue his claims "asserted in bad faith and for the purpose of harassment, Midland will seek its fees and costs"); ECF 36 at ¶ 102, n.7 (Answer to TAC, noting that the Court has rejected Plaintiff's "Reason Requirement" theory and reserving the right to

---

[1] Plaintiff's latest counsel of record, from Pomerantz LLP, appeared in early January 2016 (ECF 77-82). Midland did not directly warn the Pomerantz attorneys to dismiss the action as Midland had made its views clear prior to their appearance and the Pomerantz attorneys moved with reasonable speed to bring this action to conclusion. Midland does not, however, believe that the Pomerantz firm should have agreed to take on prosecution of this clearly baseless action, or that the Pomerantz firm should have asserted what the Court found were "preposterous and in bad faith" arguments regarding class certification. *See Huebner III*, at *22, n.8.

7

recover reasonable costs and fees under § 1692k(a)(3)); Ex. E (except from transcript of Sept. 4, 2015 Status Conference, wherein Midland advised the Court and Plaintiff "we believe this case was brought in bad faith and for [the] purpose of harassment, and we'll be seeking our fees…"); Ex. F (email dated Oct. 20, 2015, from Midland's counsel to Elie Poltorak's paralegal and counsel explaining that Midland is seeking its fees and costs for defense of this action because it was brought in bad faith for the purpose of harassment); Ex. G (Nov. 9, 2015 email from Midland's counsel to Plaintiff's counsel Jacob Fogel and Elie Poltorak's paralegal explaining that Midland had provided an "out" for Plaintiff [to escape liability for] his bad faith and harassing claim); Ex. H (email from Midland's counsel to Elie Poltorak's paralegal and counsel Jacob Fogel, dated Nov. 9, 2015, quoting 1692k(a)(3) and stating that Plaintiff should be on notice that bringing suit in bad faith and for a harassing purpose has consequences); Ex. I (email of Nov. 13, 2015, from Midland's counsel to Elie Poltorak's paralegal and counsel Jacob Fogel explaining that Plaintiff does not state a claim and that Midland will seek its fees and costs for this action); Ex. J (November 29, 2015 email from Midland's counsel to Elie Poltorak's paralegal and counsel Jacob Fogel attaching a memo addressed to all Plaintiff's counsel and last page of memo, quoting 1692k(a)(3) and stating that Midland is entitled to its fees and costs for defending this action); ECF 66 (reserving right to seek costs and fees pursuant to § 1692k(a)(3) in Midland's Memorandum of Law supporting Motion for Summary Judgment). In addition, the Court noted that it would determine "whether to award costs and attorneys' fees to defendants if it turns out [Plaintiff's class discovery demand] was just a fishing expedition." ECF 54, ¶ 5.

Over the course of this action, Midland repeatedly put Plaintiff on notice of its intent to seek its fees and costs unless Plaintiff dismissed his baseless suit. Midland incurred over

$100,000 in attorney fees and costs defending this action.[2] Now that the Court has also concluded that Plaintiff's suit was baseless, Midland respectfully requests to be made whole.

III.        ARGUMENT

   A.        Legal Standard

Midland respectfully requests an award of its fees and costs pursuant to FDCPA section 1692k(a)(3), 28 U.S.C. § 1927 and the Court's inherent authority to fashion relief for Plaintiff's bad faith and vexatious conduct.

   1.        **Plaintiff Should be Ordered to Pay Midland's Fees and Costs Pursuant to 15 U.S.C. § 1692k(a)(3) for Bringing this Action in Bad Faith and For the Purpose of Harassment.**

The FDCPA provides that "[o]n a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs." 15 U.S.C. § 1692k(a)(3). Under this section, sanctions are awarded against the plaintiff. *See, e.g., Popson v. Galloway*, No. 10-cv-77E, 2010 U.S. Dist. LEXIS 75960, at *23-24 (W.D. Pa. July 27, 2010) ("In § 1692k(a)(3), the FDCPA provides a mechanism for sanctions against a plaintiff"). In order to receive an award of costs and fees under this section, a defendant "must provide evidence of plaintiff's bad faith (as opposed to counsel's bad faith) and proof that the suit was instituted for the purpose of harassment." *Hasbrouck v. Arrow Financial Services LLC*, No. 1:09-CV-748 (MAD/RFT), 2011 U.S. Dist. LEXIS 53928, at *20, 2011 WL 1899250, at *7 (N.D.N.Y. May 19, 2011) (citing *Kahen-Kashani v. Nat'l Action Fin. Servs., Inc.*, No. 03CV828, 2004 U.S. Dist. LEXIS 28420, 2004 WL 1040384, at *7 (W.D.N.Y. April 12, 2004); *Spira v. Ashwood Financial, Inc.*, 358 F. Supp. 2d 150, 161 (E.D.N.Y. 2005) (same).

---

[2] Should the Court grant Midland's motion and award fees and costs, Midland respectfully requests 10 days after the Court issues its decision to produce documentation of its fees and costs, redacted to preserve attorney-client privilege.

9

2.      **Fees, Costs and Expenses should be Awarded under 28 U.S.C. § 1927 for Unreasonable Multiplication of Proceedings in Bad Faith.**

Title 28 U.S.C. § 1927 provides that "[a]ny attorney … who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. In the Second Circuit, "[s]anctions may be imposed under § 1927 only when there is a finding of conduct constituting or akin to bad faith." *Ford v. Principal Recovery Group, Inc.*, No. 09-cv-627-JTC, 2011 U.S. Dist. LEXIS 111535, at *18, 2011 WL 4549200 (W.D.N.Y. Sept. 29, 2011) (quoting *Konits v. Karahalis*, 409 Fed. Appx. 418, 423 (2d Cir. 2011)(internal punctuation omitted)). An award is proper under this section only "when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1996); *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999) (same).

3.      **The Court should award Sanctions for Plaintiff's Conduct Prior to and during this Litigation Pursuant to its Inherent Authority.**

Exercising its inherent authority, the Court has broad power to fashion sanctions against an attorney, party or a non-party for a wide variety of bad faith, vexatious, wanton or oppressive conduct. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-50 (1991); *Ransmeirer v. Mariani*, 718 F.3d 68, 68 (2d Cir. 2013); *Martin v. Giordano*, No. 11-CV-4507 (ARR)(JO), 2016 U.S. Dist. LEXIS 61007, at *37 (E.D.N.Y. May 9, 2016). The grounds for imposing sanctions under a court's inherent authority and pursuant to 28 U.S.C. § 1927 differ, in that unlike sanctions imposed pursuant to Section 1927, a court can rely on its inherent power to impose sanctions for conduct leading up to litigation and for commencing a frivolous lawsuit. *See, e.g., Amaprop Ltd. v.*

*Indiabulls Fin. Servs. Ltd.*, 483 F. App'x 634, 635 (2d Cir. 2012) ("An award of sanctions under the court's inherent power is proper when a party advances a claim lacking colorable basis and does so in bad faith."). The Court's inherent authority is not repealed or modified by statute or rule, and can be used in conjunction with other statutes and rules to impose sanctions. *Chambers*, 501 U.S. at 48-49.

Under both the court's inherent authority and 28 U.S.C. § 1927, "'a court must find clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith — that is, motivated by improper purposes such as harassment or delay'" in order to impose sanctions. *Martin*, 2016 U.S. Dist. LEXIS 61007, at *37-38 (quoting *Eisemann v. Greene*, 204 F.3d 393, 396 (2d Cir. 2000)). "'The test is conjunctive and neither meritlessness alone nor improper purpose alone will suffice.'" *Id.* at *38 (quoting *Sierra Club v. U.S. Army Corps of Engineers*, 776 F.2d 383, 390 (2d Cir. 1985)).

When evaluating the first factor, "a claim is deemed entirely without color when it lacks any basis in law or fact." *Id.* (citing *Sierra Club*, 776 F.2d at 390); *see also* Schlaifer, 194 F.3d at 337 ("A claim is colorable when it reasonably might be successful, while a claim lacks a colorable basis when it is utterly devoid of a legal or factual basis."). As to the bad faith element, the Second Circuit has restrictively interpreted this standard in determining whether certain conduct merits sanction. *Id.* (citing *Eisemann*, 204 F.3d at 396). The Circuit has stated that "bad faith may be inferred only if actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *Id.* (quoting *Schlaifer*, 194 F. 3d at 336) (internal punctuation and citation omitted). A "'high degree of specificity in the factual findings'" is required to support a determination that a party or attorney

11

acted in bad faith. *Id.* (quoting *Dow Chem. Pacific Ltd. v. Rascator Mar. S.A.*, 782 F.2d 329, 344 (2d Cir. 1986)).

**B. Plaintiff should be Sanctioned for his Bad Faith Effort to Take Advantage of the FDCPA and Require Midland to Incur Substantial Defense Fees and Costs or Submit to his Demand.**

The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). It was passed in response to abuses in collection activity such as "'obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process.'" *Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002) (quoting S. Rep. No. 95-382, at 2 (1977)). Plaintiff does not allege to have been a victim of any of these abuses. *See generally,* TAC. Instead, Plaintiff and his counsel used their knowledge of the FDCPA to concoct and enact a plot to entrap an MCM collection agent into what Plaintiff alleged was a violation of the law in a transparent effort to force Midland to settle or incur great expense to defend against his baseless claims. Plaintiff, in wholesale fashion, failed in his efforts to craft a claim through deception.

This Court, as well as others in this District and beyond, has commented on the proliferation of FDCPA litigation raising claims of "confusion" or "deception" regarding practices that confuse no one. *Huebner I* at 673. This action represents "a deliberate and transparent attempt by a sophisticated debtor" to utilize the least sophisticated consumer standard to entrap Midland into a violation of the FDCPA. *Id.* Although Midland "did everything by the

12

book," it was still forced to defend this suit. *Id.* Judge Glasser's observation regarding abuses of the FDCPA for personal gain is particularly apt:

> The interaction of the least sophisticated consumer standard with the presumption that the FDCPA imposes strict liability has led to a proliferation of litigation in this District. . . . The cottage industry that has emerged does not bring suits to remedy the "widespread and serious national problem" of abuse that the Senate observed in adopting the legislation . . . . Rather, the inescapable inference is that the judicially developed standards have enabled a class of professional plaintiffs.

*Jacobson v. Healthcare Fin. Servs., Inc.*, 434 F. Supp. 2d 133, 138 (E.D.N.Y. 2006) (citations omitted), *aff'd in part, rev'd in part, and vacated by* 516 F.3d 85, 96 (2d Cir. 2008).

Plaintiff, a practicing attorney, is well aware of the high costs of litigation as well as the amount of employee time a business like Midland has to devote to defending an action like this, and sought to take advantage of these burdens. Plaintiff assumed that he could concoct a claim and assert it on behalf of a class (albeit one not capable of definition) in order to make the potential defense costs substantial. Using this action as a cudgel, Plaintiff sought to maximize the potential settlement value in the vain hope that Midland would sooner pay him and his counsel than spend the six-figure sum ultimately required to defend this action. This blatant effort to extract money from a company that did everything by the book should not go unsanctioned.

In a strikingly similar case, the Western District of New York sanctioned counsel for a plaintiff/former debt collector who had attempted to bait a collection agency into a violation. *Ford v. Principal Recovery Group, Inc.*, No. 09-CV-627-JTC, 2011 U.S. Dist. LEXIS 111535, at *2 & *20-21, 2011 WL 4549200 (W.D.N.Y. Sept. 29, 2011). In *Ford,* the plaintiff recorded her telephone call with a debt collector. *Id.* at *3-4. The court reviewed a transcript of the call and found that it appeared plaintiff attempted to bait defendant into violating the FDCPA. *Id.* at *21. Opining on this conduct, the court stated:

13

> A cursory reading of the transcript makes clear that defendant did not threaten to garnish plaintiff's wages or mislead her as to how long she or defendant had her account in their office. Plaintiff and her counsel have egregiously manipulated the FDCPA, compelling the defense of frivolous claims and wasting the court's time and resources in an attempt to recover statutory damages.

*Id.* Further, the court found that the plaintiff's responses to requests for admission were not based on any evidence. *Id.* at *22. Concluding that the plaintiff had violated Rule 11(b)(3) & (4) because her complaint and responses to requests for admissions lacked evidentiary support, the court ordered plaintiff's counsel to pay all attorney fees and costs associated with defense of the action. *Id.* at *23.

In the case at bar, Midland warned Plaintiff many times over the course of this litigation that it would seek its fees and costs for Plaintiff's and his counsel's prosecution of this baseless action. *See* Exs. C-J. The facts of this case are, if anything, even more disturbing and worthy of sanction than those of *Ford*, as Plaintiff is a member of the bar who participated in the litigation of his action to a significant degree.

Plaintiff attempted, but failed, to set-up Midland to create an actionable claim, maintained and multiplied this litigation despite his failure to generate a viable claim and engaged in class discovery not calculated to identify the putative class that he ultimately proposed. *See Huebner III*, at *26 (Plaintiff produced no indication that Midland maintains recordings of its conversations with consumers or written records of any contact between Midland and any consumer but himself). In his motion for class certification, Plaintiff asserted a legal theory for the claims of the putative class not advanced in any of Plaintiff's four filed complaints. *See id.* at *21-22. Plaintiff's proposed classes are both not capable of determination and inclusive of consumers who may have been subject to a violation of the FDCPA as well as others, like Plaintiff, who were not. *Id.* at *24. Further, *after* the Court sanctioned Plaintiff's

14

counsel for, *inter alia*, misrepresenting that Midland told him he could not verbally dispute his debt, Plaintiff falsely asserted, under oath, that "Midland did tell me that I had to dispute the debt in writing." Ex. A at 182:17-24.

### IV.        CONCLUSION.

At every turn, as evidenced in Plaintiff's many letter motions as well as the numerous joint letter motions filed with the Court, Plaintiff has been combative with Midland and uncooperative with the Court's efforts to resolve this action in a timely fashion. Plaintiff was the foreman in these efforts, supported by seven attorneys who were equally bound as officers of the Court not to advance frivolous claims for an improper purpose. Plaintiff's bad faith activities began before Plaintiff filed this action, which he thereafter maintained for the purpose of harassment. Plaintiff and his multiple counsel sought to benefit from the FDCPA's damages and fee shifting provisions, though Midland suggests that Plaintiff himself is the most culpable of the group. As such, sanctions are appropriate for Plaintiff pursuant to 15 U.S.C. § 1692k(a)(3) and for all involved in the prosecution of this action pursuant to 27 U.S.C. § 1927 and the Court's inherent authority. Midland respectfully requests that Plaintiff be sanctioned by being required to pay Midland's full attorney fees and costs incurred in the litigation of this action, which constitute a sum exceeding $100,000, and for such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: New York, New York          **MARSHALL DENNEHEY WARNER**
       June 13, 2016          **COLEMAN & GOGGIN**

By: *_/s/ Matthew B. Johnson_*
Matthew B. Johnson (MJ 1622)
*Attorneys for Defendants Midland*
*Credit Management, Inc. and*
*Midland Funding, LLC*
Wall Street Plaza
88 Pine Street, 21st Floor
New York, New York 10005
Tel: (212) 376-6433
Fax: (212) 376-6490
MBJohnson@mdwcg.com

16