# Exhibit G

```
                                        1
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------x
LEVI HUEBNER on behalf of himself and all
other similarly situated consumers,

              Plaintiff,

      v.           14-cv-6046 (BMC)

MIDLAND CREDIT MANAGEMENT, INC.,
and MIDLAND FUNDING, LLC,

              Defendants.
-------------------------x
              August 24, 2015
              10:40 a.m.


      Deposition of ANGELIQUE D. ROSS, taken
by plaintiff, pursuant to Federal Rule 30
(b)(6), at the offices of Pirozzi & Hillman,
16 West 36th Street, New York, NY 10018,
before Joseph B. Pirozzi, a Registered
Professional Reporter and Notary Public of
the State of New York.
```

```
                                        2
APPEARANCES:


POLTORAK PC
   Attorneys for plaintiffs
   26 Court Street
   Suite 908
   Brooklyn, NY 11242
BY:  JACOB T. FOGEL
         of Counsel


MARSHALL DENNEHY WARNER COLEMAN & GOGGIN
   Attorneys for defendants
   Wall Street Plaza
   88 Pine Street
   New York, NY 10005
BY:  MATTHEW B. JOHNSON


PRESENT:
LEVI HUEBNER
```

```
                                        3
              STIPULATIONS

      IT IS HEREBY STIPULATED AND AGREED, by
and between counsel for the respective
parties hereto, that all objections, except
as to form, are reserved to the time of
trial.
      IT IS FURTHER STIPULATED AND AGREED
that the deposition may be signed and sworn
to before any officer authorized to
administer an oath.
      IT IS FURTHER STIPULATED AND AGREED
that the sealing and filing of the
deposition be waived.
```

```
                                        4
                  Ross
ANGELIQUE D. ROSS,
   called as a witness, having been duly
   sworn, testified as follows:
EXAMINATION
BY MR. FOGEL:
      Q.   Okay.  Good morning, Ms. Ross.
My name is Jacob Fogel.  I'll be asking you
questions with regards to the case called
Levi Huebner versus Midland Credit
Management Corporation.
          If for any reason you don't
understand a question, please let us know,
I will be happy to repeat, rephrase, or
have the court reporter read it back.
          Also, just for clarity purposes,
we can't talk over each other.  So I'll
wait until you finish your answer and,
hopefully, you will wait until I finish my
question.
          In addition, you can gesture with
your hands but also a verbal response is
necessary so we have something on the
record.
          If you need a break for any
```

101

Ross

1
2    AFTERNOON SESSION
3         2:21 p.m.
4    EXAMINATION CONTINUED
5    BY MR. FOGEL:
6         Q.   Does MCM accept verbal disputes
7    to debts over the phone?
8         A.   I'm sorry, can you repeat the
9    very last part?
10        Q.   Does MCM accept verbal debts over
11   the phone?
12             MR. JOHNSON:  Objection to form.
13        Q.   I'm sorry, I'll just take that
14   question back and we'll ask again.
15             Does MCM accept verbal disputes
16   to debts over the phone?
17        A.   Yes.
18        Q.   And can you tell us, if someone
19   would be calling MCM to dispute a verbal
20   debt, who would pick up or what's the title
21   of the person that would pick up that call?
22        A.   I don't know what you mean by
23   verbal debt.
24        Q.   In other words, if you wanted to
25   verbally dispute a debt and you call MCM

102

Ross

1
2    and someone picks up the phone, who's the
3    one that does that?
4         A.   If you are disputing, it can be
5    either an account manager or Consumer
6    Support Services.
7         Q.   And the initial person could be
8    either one?
9         A.   It depends on which number you
10   called.  If you just called the number on
11   the letter, it would go to an account
12   manager first.
13        Q.   And then if someone wanted to
14   actually dispute the debt, would the
15   account manager refer them to someone else?
16        A.   I'm sorry, I don't understand
17   that question.
18        Q.   The account manager is the first
19   one to pick up if you called the number on
20   the letter, is that correct?
21        A.   Yes.
22        Q.   And then would the account
23   manager be able to take the disputed debt
24   and write it down as disputed or would he
25   have to send it to another location?

103

Ross

1
2         A.   No.  He could, everyone that
3    speaks to a consumer can mark the account
4    as disputed.  For additional help with
5    resolution of the dispute they would
6    transfer it to Consumer Support Services.
7         Q.   Okay.  And let's say there was no
8    request for additional support services,
9    let's say, somebody said, I dispute the
10   debt, what would the account manager do
11   then?
12        A.   It depends on, I mean did they
13   hang up?  If the person just hung up,
14   there's no one to transfer.
15        Q.   I'm not talking about if they
16   hung up.  A person says, I'm disputing a
17   debt, the account manager, what does the
18   account manager supposed to do, is he
19   supposed to then take down the disputed
20   debt as he said, that the debt is disputed?
21             MR. JOHNSON:  Objection to form.
22        A.   When you mean take down, do you
23   mean document?
24        Q.   Right.
25        A.   What do you mean?

104

Ross

1
2         Q.   Okay.  When a person says, I'm
3    disputing a debt to an account manager,
4    what does the account manager do next?
5         A.   The account manager will document
6    the account.  They can code the account as
7    disputed and/or transfer the account over
8    to Consumer Support Services.
9         Q.   After the account manager
10   documents the account, what does the
11   account manager tell the consumer?
12             MR. JOHNSON:  Objection to form.
13        A.   Tell them in relation to what?
14        Q.   He just said, I dispute the debt,
15   okay, and you just told me that the account
16   manager is supposed to take that down.
17   What is the next thing that the account
18   manager is supposed to tell the consumer?
19             MR. JOHNSON:  Objection to form.
20        A.   I don't, I mean, do you mean
21   generally what they might say?
22        Q.   Right.
23        A.   If they are going to transfer
24   them, they likely would tell them they were
25   transferring them to another department.

105

Ross

Q. Okay. And would the manager actually tell them, we accept your dispute, or anything like that or just transfer, tell them, okay, now I'm going to transfer you? What is he supposed to tell them before he transfers them?

MR. JOHNSON: Objection to form.

A. There's no language about accepting. We accept all disputes. So saying that is strange to me.

Q. So once a consumer says, I dispute a debt, you do not have to inform the consumer that your debt is disputed?

A. The consumer is telling us they are disputing, so I don't understand the question.

Q. So once -- that's the question. The consumer is saying, I'm disputing a debt. Does the account manager have to say that your debt is disputed?

MR. JOHNSON: Objection to form.

A. No. They don't. They can say, okay. They may say, okay, I understand.

Q. Can they ask them why they are

106

Ross

disputing the debt?

A. Sure, they can ask. They can. They don't have to.

Q. Is that the usual policy to ask why the consumer is disputing the debt?

A. It can be. It depends, because we're trying to understand how to resolve it. So there may be some questions as to what the general dispute is so that the dispute can be resolved. Generally, that doesn't happen with an account manager. It happens within Consumer Support Services.

Q. Okay. So just to make it clear, the account manager would not have to tell the consumer that the debt is disputed after he asks to say that the debt is disputed, is that correct?

MR. JOHNSON: Objection to form.

A. I don't think that's what I understood your question to mean.

Q. Okay. So once the consumer says, okay, my debt is disputed, the account manager is not obligated to tell him that his debt is disputed, that's what you are

107

Ross

saying?

MR. JOHNSON: Objection to form.

A. I don't think that's what I'm saying. I don't know if I understand your question.

Q. Tell me in your own words, the way I understood what you told me is that if a consumer calls up and said, the debt in the letter that you just sent, the usual letter that you send out, is disputed, the account manager do does not necessarily have to tell them, yes, your debt is disputed, is that what you are saying?

MR. JOHNSON: Objection to form.

A. I still don't think that's what I'm saying.

Q. Can you tell me what the next step after the debtor says -- after the consumer says the debt is disputed, what is the next step that the account manager is supposed to do?

A. It depends. So they may transfer it or they may ask a question regarding the dispute. A lot of times it's just a

108

Ross

transfer.

Q. Okay. And is there any guidelines for this account manager as to what he's supposed to do?

A. Yes.

Q. Do you have those guidelines?

A. They would be produced in documents.

Q. Without those guidelines, do you know what they are?

A. Generally, yes.

Q. Could you tell us what they are?

MR. JOHNSON: If you are going to ask her about the policy, she'd rather look at the exhibit.

Q. Okay. The question is, before we get to the exhibit, you just said that you know what they are. So I'm asking again, what is the account manager supposed to do after the consumer says, I'm disputing a debt?

MR. JOHNSON: Objection to form.

A. I mean I can give you the step-by-step in the document. We produced