# Exhibit M

Page 1

```
         UNITED STATES DISTRICT COURT
         EASTERN DISTRICT OF NEW YORK


LEVY HUEBNER, on behalf    ) Case No
of himself and all other   ) 1 14-cv-06046-BMC
similarly situated         )
customers,                 )
                           )
         Plaintiff,        )
                           )
    vs                     )
                           )
MIDLAND CREDIT MANAGEMENT, )
INC , and MIDLAND FUNDING  )
LLC,                       )
                           )
         Defendants        )
                           )


     TELEPHONIC 30(b)(6) DEPOSITION OF MIDLAND
       Witness  JACQUELINE ROSS
            Pages 1 - 50
         San Diego, California
        Friday, January 8, 2016




Reported by   KARLA MEYER BAEZ
              RPR-CRR, CSR No  4506
              Job No   178390
HUDSON REPORTING & VIDEO          1-800-310-1769
```

Page 2

```
1          UNITED STATES DISTRICT COURT
2          EASTERN DISTRICT OF NEW YORK
3
4
    LEVY HUEBNER, on behalf    ) Case No
5   of himself and all other   ) 1 14-cv-06046-BMC
    similarly situated         )
6   customers,                 )
                               )
7            Plaintiff,        )
                               )
8       vs                     )
                               )
9   MIDLAND CREDIT MANAGEMENT, )
    INC , and MIDLAND FUNDING  )
10  LLC,                       )
                               )
11           Defendants        )
                               )
12
13
14
15      TELEPHONIC 30(B)(6) DEPOSITION OF MIDLAND
16   CREDIT MANGEMENT, INC  and MIDLAND FUNDING LLC, by
17   JACQUELINE ROSS, the witness, taken on behalf of the
18   Plaintiffs, at 501 West Broadway, Suite 800, San Diego,
19   California, commencing 1 16 p m  and ending 2 45 p m ,
20   on Friday, January 8, 2016, before Karla Meyer Baez,
21   RPR-CRR, Certified Shorthand Reporter No  4506
22
23
24
25
```

Page 3

```
1               A P P E A R A N C E S
2
    For the Plaintiffs:
3
        POMERANTZ LLP
4       BY: JAYNE A  GOLDSTEIN, ESQ  [TELEPHONIC]
        1792 Bell Tower Lane
5       Suite 203
        Weston, Florida  33326
6       954 315 3454
        jagoldstein@pomlaw com
7
        and
8
        POMERANTZ LLP
9       BY: PERRY GATTEGNO, ESQ  [TELEPHONIC]
        10 S LaSalle, Suite 3505
10      Chicago, IL 60603
        Office: (312) 377-1181
11      Direct: (312) 881-4859
        pgattegno@pomlaw com
12
13
14  For the Defendants:
15      MARSHALL DENNEHEY WARNER COLEMAN AND GOGGIN, PC
        BY: ANDREW M  SCHWARTZ, ESQ  [TELEPHONIC]
16      and MATTHEW B  JOHNSON, ESQ  [TELEPHONIC]
        2000 Market Street, 24th Floor
17      Philadelphia, Pennsylvania  19103
        215 575 2765
18      amschwartz@mdwcg com
19      and
20      MIDLAND CREDIT MANAGEMENT
        BY: ANDREW E  ASCH, ESQ
21      3111 Camino del Rio North
        Suite 130
22      San Diego, California  92108
        858 505 1244
23      andrew asch@mcmcg com
24
25
```

Page 4

```
1             SAN DIEGO, CALIFORNIA
2          FRIDAY, JANUARY 8, 2016; 1:16 P M
3
4               ANGELIQUE ROSS
5       having been first duly sworn by the Certified
6       Shorthand Reporter, testified as follows:
7
8       MR  SCHWARTZ:  Andrew Schwartz  Do you want me
9   to -- in order to keep the flow of the deposition going
10  smoothly -- we're on the record; correct?
11      THE REPORTER:  Yes
12      MR  SCHWARTZ:  I want to make sure -- I want to
13  put on the order with respect to this deposition   I
14  just want to read some language in, so that if I object
15  and instruct my client, the deponent, not to answer, it
16  will be based on the order of the court
17      And the order of the court with respect to this
18  second deposition is the deposition -- I'm going to read
19  from the order   Plaintiff may take a further 90-minute
20  deposition of the Defendant's Rule 30(b)(6) witness,
21  limited solely to the additional documents produced
22  under one above
23      And then if I go to one, it is the documents
24  that were produced were the spreadsheets with the code
25  040 folks and with the code 261 folks
```

Page 13

```
 1       Q.  Would you please describe what criteria was
 2   used?
 3       A.  The    between the dates of October 11th, 2013,
 4   and October 15th, 2014, there is one list that
 5   identified accounts where a 050 was placed on the
 6   account, and the other list is a list of accounts where
 7   a warning code 261 was placed on the account.  Between
 8   those dates.
 9       Q.  And on those dates between October 11th, 2013,
10   and October 15, 2014, what date was identified in the
11   data?  I'm going to give you an example so you
12   understand the question.
13           Was that a date when you first obtained the
14   account?
15       A.  I'm not sure I understand the question.
16       Q.  Okay.  You identified a log, a list that
17   identified all of the 050s; that's correct?
18       A.  Yes.
19       Q.  And you said it was between the date of October
20   11th, 2013, and October 15th, 2014; is that correct?
21       A.  Correct.
22       Q.  What date in the customer or consumer's file
23   does that relate to?
24       A.  That relates to the date that that code was
25   placed on the account.
```

Page 14

```
 1       Q.  Okay.  Did anyone else assist Mr. Peterson in
 2   preparing Exhibits Q and R?
 3       A.  I'm sorry, there was a little bit of static at
 4   the beginning of that question.  Can you repeat it,
 5   please?
 6       Q.  Did anyone assist Mr. Peterson in preparing
 7   Exhibits Q and R?
 8       A.  No.
 9       Q.  Do you know if Mr. Peterson prepared Exhibits Q
10   and R, then, himself, only himself?
11       A.  Yes.
12           MS. GOLDSTEIN:  Will the court reporter please
13   mark Midland's 305 Plaintiffs' Exhibit S.
14           (Deposition Exhibit S was marked for
15            identification)
16           (Discussion off the record re marking exhibits)
17   BY MS. GOLDSTEIN:
18       Q.  We can go back on the record for now.  We're
19   handing you what's been marked as Plaintiffs' Exhibit S.
20       A.  Okay.
21       Q.  Have you seen this document before?
22       A.  Yes.
23       Q.  Can you tell me what that is, Exhibit S is?
24       A.  It's   looks like part of the list that was
25   provided for one of those warning codes.
```

Page 15

```
 1       Q.  And because Exhibit S is Midland 305 and we
 2   stated previously that Midland 305 to 4707 are the Bates
 3   numbers for Exhibit Q, is it correct that this is the
 4   first page of Exhibit Q?
 5       A.  I'm sorry, you said it was 305    I'm sorry,
 6   305 through what page?
 7       Q.  4707?
 8       A.  For Q?  Yes.
 9       Q.  Okay.  And, again    I'm repeating
10   Plaintiffs' Exhibit Q were the accounts coded 050;
11   correct?
12       A.  Correct.
13       Q.  So Plaintiffs' Exhibit S, like Sam, is the
14   first page of a call log produced having the coding of
15   050; correct?
16       A.  Yes, I believe so.
17       Q.  What does the 050 signify?  What does that mean
18   to you?
19       A.  That means there was a verbal dispute
20   documented on the account.
21       Q.  050 would only be for verbal disputes as
22   opposed to written disputes?
23       A.  Correct.
24       Q.  Going across the top of Plaintiffs' Exhibit S,
25   I note that the first column is the account number; is
```

Page 16

```
 1   that correct?
 2       A.  That's correct.
 3       Q.  And the account number, is that Midland's
 4   account number?
 5           MR. SCHWARTZ:  Objection as to form.
 6   BY MS. GOLDSTEIN:
 7       Q.  Whose account number is it?
 8       A.  Midland's account number.
 9       Q.  And the next column marks the first dispute
10   date; is that correct?
11       A.  That's correct.
12       Q.  And the next column is the consumer's address;
13   is that correct?
14       A.  That's correct.
15       Q.  And the fourth column is the consumer's phone
16   number; is that correct?
17       A.  That's correct.
18       Q.  And the last column is the consumer's name; is
19   that correct?
20       A.  That's correct.
21       Q.  Now, looking at Plaintiffs' Exhibit S, on the
22   first one it's H███ S███████; correct?
23       A.  Correct.
24       Q.  If Mr. Ch████ verbally disputed his account
25   and later said, oh, I'm going to pay you now, would his
```

Page 17

1  name still appear on this log?
2     A. Yes.
3     Q. So this log would encompass -- is it correct to
4  state that this log would encompass anyone who was ever
5  marked in that time period as 050?
6     A. Yes.
7     Q. And would it also be correct that every person
8  on Exhibit Q -- is it correct that every person on
9  Exhibit Q would have an entry for the first dispute
10 date?
11    A. Yes. They should.
12    Q. Who decided that the account, first dispute,
13 address, phone numbers, and customer's name would be
14 used to make up the list on Plaintiffs' Q?
15    A. Can you repeat the beginning part of that
16 question?
17    Q. Who decided that the information on Exhibit Q,
18 the account, the first dispute date, the address, phone
19 numbers and consumer's name would be put on Exhibit Q?
20    A. That was decided in conversation with our
21 attorneys.
22    Q. Did you have any input in deciding which of
23 those things would be included?
24    A. I was part of the conversation. I don't -- I
25 don't know that I had direct input.

Page 18

1     Q. Plaintiffs' Exhibit S, could you tell me if
2  they are in special order?
3     A. I believe they are in numerical order by
4  account number.
5     Q. And looking at the first dispute column, where
6  was that information obtained from?
7     A. It was obtained from our system known as
8  iSeries.
9     Q. And looking at the phone numbers, do you know
10 where Midland obtained those phone numbers?
11    A. From the same system.
12    Q. Are the phone numbers obtained from the system
13 provided by the consumer or some other third party?
14       MR. SCHWARTZ: Objection as to form.
15       You can answer.
16    A. It could be a mix of both. Some may be
17 provided
18 BY MS. GOLDSTEIN:
19    Q. Could you explain how it could be a mix of
20 both?
21    A. Some may be provided by the consumer. Others
22 may be provided by a third party, such as an issuer.
23    Q. Is the issuer the same as the entity that held
24 the initial disputed debt?
25    A. Yes.

Page 19

1     Q. Did you examine Exhibit Q to see if
2  Mr. Huebner's name was anywhere on that log?
3     A. I did.
4     Q. And was it?
5     A. No.
6     Q. So Mr. Huebner's name was nowhere on Exhibit Q;
7  is that correct?
8     A. Correct.
9     Q. If Mr. Huebner's account was ever marked as
10 050, would his name appear on Exhibit Q?
11    A. If it was marked with a 050 between that date
12 range
13    Q. Yes.
14    A.    it would.
15    Q. That's the question. I'm sorry. I can
16 rephrase it so it's clear.
17       If Mr. Huebner's account was marked 050 between
18 the date range October 13th, 2013, through October 15th,
19 2014, would his name appear on Exhibit Q?
20    A. Yes.
21    Q. So is it correct to state Mr. Huebner's account
22 was not marked as 050 between the dates October 11th,
23 2013, and October 15th, 2014?
24    A. Yes.
25       MS. GOLDSTEIN: Court reporter, please mark

Page 20

1  Exhibit T, like Tom, and that would be Midland 4708.
2        (Deposition Exhibit T was marked for
3        identification)
4  BY MS. GOLDSTEIN:
5     Q. Have you seen this document before, Ms. Ross?
6     A. Yes.
7     Q. Can you identify this document?
8     A. This is part of the listing of accounts where a
9  261 warning code was added during the period of time of
10 October 11th, 2013, to October 15th, 2014.
11    Q. And would it be correct to say that this is the
12 first page of Exhibit R?
13    A. Yes. I believe so.
14    Q. You just said a 261 warning code. Could you
15 explain to me what a 261 warning code is?
16    A. A 261 warning code is a refusal to pay.
17    Q. And once again look at the top of Exhibit T,
18 and the first column is accounts; is that correct?
19    A. Yes.
20    Q. The second column first dispute; is that
21 correct?
22    A. Yes.
23    Q. And the third column is the address; is that
24 correct?
25    A. Yes.

Page 21

1  Q. The fourth column is the phone number; is that
2  correct?
3  A. Yes.
4  Q. The fifth column is the consumer's name; is
5  that correct?
6  A. Yes.
7  Q. For the record, for both Exhibit R and Exhibit
8  T, T being the first page of Exhibit R, the columns
9  account, first dispute, address, phone numbers, and
10 consumer name, those were chosen by counsel; is that
11 correct?
12 A. You're asking -- I'm sorry, I didn't quite
13 understand that question.
14 Q. I'm asking if those columns, the types of
15 columns, account number, first dispute, address, phone
16 number, and consumer -- if those were chosen by counsel.
17     MR. SCHWARTZ: I'm going to object. I'm going
18 to object on privilege grounds.
19     MS. GOLDSTEIN: Well, I'm not asking what was
20 said. I'm just ask if counsel determined that. I'm not
21 asking for the communication.
22     MR. SCHWARTZ: But you're asking
23     MS. GOLDSTEIN: I'm asking a yes or no, did
24 counsel. That's not a communication.
25     MR. SCHWARTZ: I'll put the objection on the

Page 22

1  record. You can ask and she can answer, but I don't
2  waive privilege.
3      MS. GOLDSTEIN: Okay.
4  Q. Were those columns decided by counsel?
5  A. I don't know if "decided" is the right word,
6  but it was a conversation that included counsel.
7  BY MS. GOLDSTEIN:
8  Q. Okay. Thank you. The term warning code, are
9  all of the codes considered warning codes, or is only
10 261 considered a warning code?
11 A. I'm not sure what you mean by all the codes.
12 Q. There's other codes as well, 050, 033, 026.
13 A. Okay.
14 Q. Are they all considered warning codes?
15 A. Yes.
16 Q. Now, in producing Exhibits Q and R, would there
17 be people listed on Plaintiffs' Exhibit Q and also
18 listed on Plaintiffs' Exhibit R?
19 A. There could be. If they had both codes, they
20 would.
21 Q. It's correct to say that a person could be
22 coded 050 and 261; is that correct?
23 A. That's correct.
24 Q. I'm sorry, I didn't hear your response?
25 A. That's correct.

Page 23

1  Q. Thank you. Looking at Exhibit T, I want you to
2  look at the first two accounts. One is ▇265 and the
3  next one is ▇369.
4      Do you see those?
5  A. Yes.
6  Q. And is it correct that there are approximately
7  104 accounts separate from each other?
8  A. Yes.
9  Q. And then considering those two accounts, the
10 first dispute on the first one was November 26, 2013?
11     MR. SCHWARTZ: Hold on. I'm going to put an
12 objection in because I think that the first dispute
13 heading is a misnomer. There is no dispute on the 261,
14 but I'm not going to testify; so...
15     MS. GOLDSTEIN: Please don't.
16     MR. SCHWARTZ: Objection to form, because
17 you're mischaracterizing.
18     MS. GOLDSTEIN: Well, I'm not
19 mischaracterizing. I'm reading what it says directly
20 from the exhibit that you produced and you prepared.
21     MR. SCHWARTZ: Okay. We'll get to it.
22     MS. GOLDSTEIN: Okay.
23 Q. The first dispute noted as November 26, 2013,
24 and then 104 accounts later the same person, who was
25 coded as 261, their dispute was notated as March 15th,

Page 24

1  2014; is that correct?
2  A. I don't think I understood the question. I'm
3  sorry, I got lost somewhere.
4  Q. Let's look back at Exhibit T.
5  A. Okay.
6  Q. The first account is ▇265, and that's the
7  first dispute. The next column says first dispute
8  November 26, 2013, to be accurate 26-NOV-13.
9      And the second column corresponding with
10 account ▇369 is 15-MAR-14.
11     Do you see where I'm discussing now, Ms. Ross?
12 A. Yes, I do.
13 Q. Okay. And you told me -- you testified a
14 little while ago that the accounts were in order of the
15 way the accounts were, and so account ▇369 is
16 approximately 104 accounts later than ▇265, and my
17 question is could you explain why the dispute date would
18 be so different on those two accounts.
19     MR. SCHWARTZ: Objection as to form.
20     You can answer.
21 A. It just means that -- the labeling, it does say
22 first dispute, but a 261 is not actually a dispute code.
23     It just means that the first line for ▇265,
24 consumer D▇ H▇ had a 261 added on her account in
25 November of 2013, whereas L▇ J▇ didn't have a

Page 25

1  261 added until March of 2014. I don't — I don't
2  think — I mean the order of the accounts is — that
3  number doesn't coincide directly with what I think
4  you're getting at about the space in time.
5  BY MS. GOLDSTEIN:
6    Q. Okay. Thank you. So it's your testimony that
7  it was the date that it was coded as a 261 that would
8  appear on this log as first dispute; is that correct?
9    A. Yes.
10     MR. SCHWARTZ: Objection to form. Sorry, guys.
11  Okay. It's my fault.
12    A. This — yeah, this log is the date that the
13  code was added to that particular account.
14  BY MS. GOLDSTEIN:
15    Q. We spoke a little bit ago about some people
16  might be coded 050 and 261.
17      If there was such a person, would this log show
18  a different date of first dispute than the log of 050 on
19  the same person?
20    A. I'm not sure I understood that. Can you repeat
21  that?
22    Q. Okay. Sure. Let me go back. So some people
23  you said have a coding of 050 as being disputed and
24  their second column would be the date of their first
25  dispute; is that correct?

Page 26

1    A. Correct.
2    Q. And if that same person also had a coding of
3  261, would their second column be the same as their date
4  of first dispute if they were on the 050 log, or would
5  that have a different date when it was marked 261?
6    A. It would have the date that it was marked 261.
7  So if it was marked 261 on a date different, it would
8  show different dates for that first column — or I'm
9  sorry — for that date column.
10     MS. GOLDSTEIN: I would like to mark Exhibit U,
11  which would be Midland 13146.
12     (Deposition Exhibit U was marked for
13      identification)
14  BY MS. GOLDSTEIN:
15    Q. Would you take a look at that, Ms. Ross,
16  please.
17    A. Yes.
18    Q. Have you seen this document before?
19    A. Yes.
20    Q. If you go down through Exhibit U about
21  three quarters of the way down, account number
22  8559659948. You see that?
23    A. Yes.
24    Q. And there is Mr. Huebner's name; is that
25  correct?

Page 27

1    A. Correct.
2    Q. And the date that corresponds to what was
3  titled as first dispute is 11 OCT 13; is that correct?
4    A. Correct.
5    Q. And is it your testimony that that date,
6  October 11th, 2013, is the date that Midland notated a
7  261 code — warning code on Mr. Huebner's account?
8    A. Yes.
9    Q. Where did Midland obtain that information?
10    A. I'm not sure I understand the question. Where
11  did we obtain what information?
12    Q. That this 261 was coded on October the 11th,
13  2013.
14    A. From our system iSeries.
15    Q. Just put that to the side for a second, please.
16  And off the record one minute, please.
17     (Discussion off the record)
18     (Deposition Exhibit V was marked for
19      identification)
20  BY MS. GOLDSTEIN:
21    Q. Could you take a look at — for the record, let
22  me identify Exhibit V, like Victor. That would be
23  Midland 002 to Midland 005. If you'd look at that
24  document and tell me when you've finished reviewing it.
25    A. Did you say it went to Midland 005?

Page 28

1    Q. Yes.
2    A. This one only goes to 004.
3    Q. 4. Sorry, I misspoke.
4    A. Okay.
5    Q. Yes. Three pages.
6    A. Okay.
7    Q. Have you seen this document before?
8    A. Yes.
9    Q. What is this document?
10    A. These are account notes.
11    Q. And so looking at Midland 003, about one third
12  down on the page corresponding with 10 11 2013, what do
13  these notes signify?
14    A. Those notes signify an account manager that
15  documented the account on that day.
16    Q. Is there anywhere to signify on that date that
17  the consumer, Mr. Huebner, refused to pay?
18    A. Can you repeat the question?
19    Q. Is there anything on those notes to indicate
20  that on that date, 10 11 2013, Mr. Huebner refused to
21  pay?
22    A. No. That's not captured in the documentation,
23  but the AM may have added that code to move the account
24  out of their — basically their work list.
25    Q. I'm sorry, I didn't hear what you said. Could

Page 29

1  you repeat that or could the court reporter read it
2  back?
3      A.  The AM or account manager can also add that
4  warning code, may have added that warning code to move
5  this account out of their direct workable accounts,
6  basically to move it out of his list of accounts he was
7  working.
8      Q.  Where is that notated?
9      A.  It's not.
10     Q.  So how would it be notated as refusal to pay
11 without a communication from Mr. Huebner?
12     A.  As I mentioned, sometimes the account manager
13 may use that code to move the account because the 261
14 code will actually move the account out of their
15 workable queue and if they are not able to reach the
16 party they are trying to contact.
17     Q.  Well, how do they know that it's the refusal to
18 pay and not someone deceased or in jail or just not
19 answering?
20     A.  Well, they would -- in order to mark it with
21 jail or deceased, they typically would have been told
22 that by someone.  It's a little bit different.  The 261
23 actually will move the account out of their queue, so
24 they may add it for that reason.
25     Q.  Well, how would I know by examining Exhibit R

Page 30

1  which people were moved just to be out of a queue and
2  marked as 261 and which people were refusing to pay?
3      A.  I don't know that you could easily identify
4  that.  Those are -- it's a list of accounts that had a
5  261 on them.
6      Q.  So your previous testimony was that a log on
7  261 were all people who refused to pay.  Is that still
8  your testimony?
9          MR. SCHWARTZ:  I object.  I think that's a
10 mischaracterization.  She said that's what the code
11 stands for.
12         Go ahead.
13     A.  Yeah, that might -- my testimony was that the
14 261 is what the code stands for, and that list is a list
15 of the accounts where that code was added, but you asked
16 me what the 261, you know, said basically.
17         (Brief interruption, telephone ringing)
18 BY MS. GOLDSTEIN:
19     Q.  Well, how can you discern from Exhibit V that
20 that was the reason that that was coded that way?
21         MR. SCHWARTZ:  Objection as to form.  Are you
22 talking about Huebner's account or
23         MS. GOLDSTEIN:  Yes.  Yes.  Yes, his account.
24         MR. SCHWARTZ:  I'm sorry, did you say Exhibit
25 Z, as in zebra, or V as in Victor?

Page 31

1  BY MS. GOLDSTEIN:
2      Q.  V like Victor.
3      A.  I'm sorry, can you repeat that question?
4      Q.  How can you tell from Exhibit V that that's the
5  reason that Mr. Huebner's account was marked as 261 on
6  October 11th, 2013?
7      A.  I don't know that you can tell directly from
8  Exhibit V.  It's just my experience because
9  there -- when I look at the previous notations, that
10 person hadn't -- it doesn't look like they actually
11 reached Mr. Huebner, and that code was added.
12     Q.  Isn't it correct on Exhibit V that on October
13 17th, 2013, Mr. Huebner called to dispute the debt?
14     A.  Yes.
15     Q.  And was -- at that time was Mr. Huebner's
16 account marked 050 to dispute the debt?
17     A.  No, it wasn't.  It was marked with a 289,
18 because in the course of that conversation the
19 representative determined that they would close the
20 account and stop any further collection activity.  So
21 the 289 is used instead of a 050, because that's the end
22 of that kind of dispute route.
23         It's being closed.  So it's a code maybe beyond
24 a 050.  In the process it's the next step beyond, so
25 there was no need to mark it with a 050 in between

Page 32

1  there.
2      Q.  Is it Midland's policy to mark it as 289 and
3  not 050 if the customer tells them they are disputing
4  the debt?
5          MR. SCHWARTZ:  Objection as to form.
6          You can answer.
7      A.  That doesn't apply in every situation.  If
8  the -- in the course of that conversation it's from our
9  standpoint going to resolution or being closed, then you
10 would use a -- you could use a 289 to signify that it's
11 resolved or, you know, the dispute is -- or the account
12 is being closed at that point.
13 BY MS. GOLDSTEIN:
14     Q.  Isn't it correct that it's Midland's policy for
15 New York residents if they verbally dispute the debt to
16 always mark their account as 050?
17     A.  No, not if the account is being closed.
18         MS. GOLDSTEIN:  I'm going to mark as
19 Plaintiffs' W Midland 291 to Midland 303.
20         (Deposition Exhibit W was marked for
21         identification)
22         MR. SCHWARTZ:  Before you go any further, I'd
23 like to track that down.  291.  I'm getting there.  291
24 to 293.  I'm going to object.
25         MS. GOLDSTEIN:  303.

Page 33

1  MR. SCHWARTZ: Yeah, I'm going to instruct her
2  not to answer that. It goes beyond    for the objection
3  I raised originally, that goes way beyond the scope of
4  the judge's order, so I'm going to instruct her not to
5  answer any questions that relate to these documents.
6      You already had the opportunity. She's already
7  testified. So I'm instructing her not to answer.
8      Do you acknowledge?
9      MS. GOLDSTEIN: Do you take your attorney's
10 instruction?
11     MR. SCHWARTZ: I do.
12     MS. GOLDSTEIN: Okay. We're still going to
13 mark that as an exhibit.
14     THE REPORTER: It's been marked.
15     MS. GOLDSTEIN: Thank you. Can we take a
16 five minute break?
17     MR. SCHWARTZ: Sure. Let's put everybody on
18 hold.
19     MS. GOLDSTEIN: Right.
20     MR. SCHWARTZ: That's fine.
21     MS. GOLDSTEIN: Thank you. We'll come
22 back    I have 5:20 Eastern. We'll come back at 5:25.
23     MR. SCHWARTZ: Everybody put it on mute,
24 please, including the reporter's phone.
25 //////

Page 34

1       (Recess was taken from 2:19 until 2:24 p.m.)
2  BY MS. GOLDSTEIN:
3      Q. Ms. Ross, is there any set criteria to
4  determine whether a person should be marked as 050 or
5  261?
6      A. What do you mean by "criteria"?
7      Q. Is there any policy to give guidance to the
8  customer representative to determine how to mark either
9  250 or 261?
10     MR. SCHWARTZ: Objection as to form.
11     You can answer if you can.
12     A. For 050 there is information provided to help
13 the representatives understand disputes and to
14 understand verbal disputes so they'll know when to mark
15 it with the 050.
16 BY MS. GOLDSTEIN:
17     Q. Can you explain to me an example of some of
18 that information?
19     A. If a consumer stated that the account was
20 fraudulent or that they had paid it already or they just
21 disputed it wasn't theirs, those would be things
22 identified as a dispute. Those are some examples of a
23 verbal dispute.
24     Q. How about if the consumer says "I dispute the
25 debt"? Would that be marked 050?

Page 35

1      A. Yes.
2      Q. How about 261? Would there be any kind of
3  information to the customer support person to help
4  identify when to code that 261?
5      A. There    Yes. They may use that code when, you
6  know, a consumer tells them they are not going to pay,
7  they can't pay and, you know, there is not going to be a
8  way to resolve the account, they don't    they are not
9  planning on paying. That code can be used to mark the
10 account, and then it would actually move the account out
11 of that collector's workable account queue.
12     Q. But they would still place a code of 261; is
13 that correct?
14     A. I'm sorry, I didn't understand that question.
15     Q. You said it would be marked out of that
16 person's queue.
17     A. Yes. By using
18     Q. Would it go to a different code?
19     A. No. The code wouldn't change. The queue,
20 which is just a location within our system, that would
21 change; but the code would remain.
22     Q. So once a person is coded either 050, 261, or
23 anything, those codes would remain on    in your system
24 on their sheet; is that correct?
25     MR. SCHWARTZ: Objection as to form.

Page 36

1      You can answer.
2      A. They    generally that's true, although there
3  are situations where, for example, if a consumer says
4  they are no longer disputing, and they, you know, give
5  very clear    very clear dialogue they are no longer
6  disputing and they want to pay on the account where the
7  050 would be removed, but the information would be
8  documented on the account that that's what they wanted
9  to have happen, or some people may not want it to report
10 on their credit report as disputed, so they will ask us
11 to remove the dispute from their account, and that would
12 be a reason to remove it.
13 BY MS. GOLDSTEIN:
14     Q. Did you finish? I'm sorry, I cut you off.
15     A. I was just saying that would be a reason to
16 remove it, but only on their request.
17     Q. And there's people that would actually tell you
18 not to report to the credit agency that they are not
19 disputing the charge?
20     MR. SCHWARTZ: Objection as to form.
21     A. Yes, there are. Usually not right away, you
22 know. It's usually not in the same conversation, but
23 they may decide at a later date and time they are no
24 longer disputing.
25 //////

Page 37

1  BY MS. GOLDSTEIN:
2      Q. So I think about an hour ago when we began I
3  asked you about Exhibit Q and whether if someone changed
4  their mind they would still have been listed on Exhibit
5  Q.
6      Is that still your testimony?
7      A. Yes, it is.
8      MS. GOLDSTEIN: Okay. I have no further
9  questions.
10     MR. SCHWARTZ: Yeah, I have a couple questions.
11 I have a couple questions.
12             EXAMINATION
13 BY MR. SCHWARTZ:
14     Q. The question is when you testified to -- you
15 mark it -- I believe it was a 289 code, just for
16 clarity, you said it closes out the case. I believe
17 that's what your testimony was; is that correct, it
18 closes the account? Is that accurate?
19     A. Yes. It closes the account.
20     Q. What does that mean?
21     A. That means that the account is no longer
22 available for collection activity, and it also will
23 ensure we send information to remove that account from
24 the credit reporting.
25     Q. So just to make sure I'm clear, when you enter

Page 38

1  that 289, it's a deletion code? Is that  how would
2  you quantify it?
3      A. Yes, I would say it's a deletion code.
4      Q. Okay. So are you aware of any way   I don't
5  know if this goes beyond your knowledge. Do you know of
6  any way you can dispute a deleted account?
7      MS. GOLDSTEIN: Objection. Form.
8  BY MR. SCHWARTZ:
9      Q. You can answer.
10     A. No. I   are you referring to from the credit
11 report?
12     Q. Correct.
13     A. Oh, no, because you wouldn't see it to dispute
14 it.
15     Q. Okay. So let's go back to, I think it was,
16 Exhibit R. Is R the 050 one?
17     MS. GOLDSTEIN: Q.
18     MR. SCHWARTZ: Q. I'm sorry.
19     Q. Let's go back to Q. Well, we can actually
20 go   I guess it was   S was 305; right? That's the
21 document we were looking at?
22     A. Yes.
23     Q. Bear with me a second. I got to get that.
24     Okay. So these are   so this is the   just
25 to make sure I understand, this is a list of people who

Page 39

1  verbally disputed and it was coded as a dispute. Is
2  that an accurate statement for the time period?
3      A. Yes.
4      Q. Okay. And Mr. Huebner's name   I believe you
5  testified that the Plaintiff's name was not on this
6  particular spreadsheet; is that right?
7      A. Yes. That's correct.
8      Q. Why not?
9      A. During the conversation where he disputed, by
10 the end of that conversation the representative had
11 determined they would close the account, so they added
12 the 289 warning code, which indicated that that account
13 was being closed.
14     It's a more, I guess, final indicator of what's
15 happening on the account; and so that code would be
16 used, not a 050.
17     Q. And so as you   again, looking back at this
18 first page   I guess it's Exhibit S   the first page
19 of this dispute code 050 spreadsheet   okay? Let me
20 know you're looking at it.
21     A. I am.
22     Q. Okay. Would anybody who is a 289, a deletion
23 code   would any person on that list   would they
24 appear in this spreadsheet?
25     A. They would not unless for some reason someone

Page 40

1  had added the other code as well. The 289 code is a
2  separate   would be a separate list.
3      Q. Okay. Turn your attention to Exhibit T, which
4  is the first page of   it's the refusal to pay
5  spreadsheet. Tell me when you're there.
6      A. I'm there.
7      Q. And I am not.
8      Okay. So you see at the top there are these
9  categories. We talked about this before. There's the
10 first header says account. The second header is where I
11 want you to pay attention.
12     It says first dispute, and it's got dates
13 underneath it. Okay? Let me ask you this question
14 while you're looking at that: Is the 261 code a dispute
15 code?
16     A. No, it is not.
17     Q. So if you put 261 on an account, would that
18 indicate that a consumer disputed the account?
19     A. No, it would not.
20     Q. And it wouldn't mark a credit report as
21 disputed?
22     A. No, it would not.
23     Q. Why not?
24     A. Because it's not a dispute code. You would use
25 a different code if the consumer was disputing.

Page 41

1    Q. So if a person then said I -- just to make sure
2  I understand, I'll give you an example. If I said "I'm
3  unemployed, I can't pay this," you'd enter a 261 code,
4  refusal to pay; is that accurate?
5    A. Yes.
6    Q. If I said to you "I can't pay it because I
7  don't think I owe this," how would that be marked?
8    A. If they said they didn't think they owed it,
9  then likely there would be a -- probably a follow up
10 question to determine what they meant by that, but that
11 sounds more like a dispute, so that would be a 050.
12   Q. So in what instance would it be marked with the
13 refusal to pay code, the 261 code, and the 050 code?
14 Give me an example.
15   A. Let's say that we provided something to the
16 consumer after dispute. The dispute code would still
17 remain because it will remain as long as they are
18 disputing. And we may then ask them for additional
19 information and they refuse to further try to resolve
20 their dispute and they just say, well, I'm not going to
21 send anything and I'm not going to pay this either.
22 Then you may see both codes on the account.
23   Q. Even if both codes are on -- even if somebody
24 had done that, it would still be marked as disputed?
25   A. Yes, as long as the -- if the consumer is still

Page 42

1  disputing, we don't take those codes off unless they
2  specifically tell us to remove the dispute.
3    Q. Mr. Huebner appears on the spreadsheet K -- I'm
4  sorry -- on Q, which is the full spreadsheet or I
5  believe -- no. We marked it as U; is that correct?
6    A. U, yes.
7    Q. On U Mr. Huebner appears on the refusal to pay
8  261 spreadsheet; is that correct?
9    A. That's correct.
10   Q. Does that give -- looking at that, does that
11 indicate that he disputed his debt based on just the
12 spreadsheet? I'm not talking about the account list.
13   A. No.
14   Q. So just to be clear, code 261 is entirely
15 independent of a dispute code?
16   A. Correct.
17   Q. Okay. Now, going back to the -- to Exhibit T
18 at the top it has certain labels, account and first
19 dispute.
20      Do you see that?
21   A. Yes.
22   Q. Okay. Now, notwithstanding the fact it says
23 first dispute, those are the same categories that are in
24 Exhibit S?
25   A. Yes.

Page 43

1    Q. Okay. If you look at the first account -- we
2  talked about this a little bit. It says November
3  13th -- no, I'm sorry -- November 26, 2013?
4    A. Yes.
5    Q. Is that a first dispute?
6    A. No.
7    Q. What is it? Sorry, I didn't mean to cut you
8  off.
9       What is it?
10   A. It's the date that that warning code 261 was
11 added. It's -- first dispute is -- it's just a
12 mislabeling of the header of the column. I mean it
13 probably would be better if it just said date or date
14 warning code was added.
15   Q. So I want to make sure that we're looking at
16 Exhibit T. Looking down that entire column, is your
17 answer consistent --
18   A. Yes.
19   Q. -- that -- okay.
20   A. Because T is 2 -- sorry.
21   Q. Go ahead.
22   A. T is the 261 list, and that would be the date
23 that that warning code was added, which is not a dispute
24 code.
25   Q. And so throughout the entire -- I guess with

Page 44

1  the Q, R -- it's R. The entire document you don't have
2  in front of you, I believe, but will be the entire
3  spreadsheet for code 261 refusal to pay -- that entire
4  spreadsheet would your testimony remain consistent that
5  that date under the column first dispute is in fact the
6  date when the code 261 is entered?
7    A. That's correct.
8       MR. SCHWARTZ: Okay. I don't think I have any
9  further. Let me just make sure.
10      MS. GOLDSTEIN: I have a couple of follow up if
11 you don't have more.
12      MR. SCHWARTZ: Go ahead. I'm done.
13            FURTHER EXAMINATION
14 BY MS. GOLDSTEIN:
15   Q. You testified that 289 closes the account; is
16 that correct?
17   A. That's correct.
18   Q. And then is the customer's or consumer's file
19 which you've maintained on your computer -- would that
20 account be marked closed?
21   A. Yes. If you mean would it look closed from --
22   Q. Yes. Would it be marked closed when -- the
23 date that the 289 code was put in?
24   A. That's not exactly how it looks in our system;
25 but, yes, you could tell that the date that the 289 was

Page 45

1  added would be the date that the internal account is
2  closed and no longer available for collection activity.
3      Q.  And when you just said it would look a little
4  different, could you describe how different it would
5  look?
6      A.  It basically would look like the Exhibit V, but
7  when you mention the word "closed," I mean it doesn't
8  say "closed." It says, you know, account deleted. So
9  I'm sorry, that's what I meant.
10     Q.  Okay.  And you just spoke about labeling of
11 Exhibit R.
12         Did the plaintiff choose those headings of
13 account, first dispute, address, billing numbers,
14 consumer's name to put on these exhibits?
15     A.  We -- yes, we did, and I believe we used the
16 050 list first and likely just used the same headings
17 and didn't --
18     Q.  I'm going to clarify the question, because I
19 don't think you understood me.
20         I asked if the plaintiff chose those.  So let
21 me just go back and ask.
22         Did the plaintiff, Mr. Huebner, choose those
23 headings?
24     A.  No.
25     Q.  And it's correct that Midland chose those

Page 46

1  headings; correct?
2      A.  Yes.
3      MS. GOLDSTEIN:  I have no further questions.
4      MR. SCHWARTZ:  Thank you.
5      MS. GOLDSTEIN:  Thank you everyone.  Have a
6  very nice weekend.
7      MR. SCHWARTZ:  Bye, everybody.
8      (Whereupon at 2:45 p.m. the deposition was
9      concluded)

Page 47

1  DECLARATION UNDER PENALTY OF PERJURY
2
3      I, JACQUELINE ROSS, do hereby declare under
4  penalty of perjury that I have read and examined the
5  foregoing testimony and the same is a true, correct, and
6  complete transcription of the testimony given by me and
7  any corrections appear on the attached errata sheet
8  signed by me
9
10 _____  _____
      (DATE)                 (SIGNATURE)

Page 48

1  REPORTER'S CERTIFICATE
2
3      I, KARLA MEYER BAEZ, Certified Shorthand Reporter
4  No  4506 for the State of California, do hereby certify:
5      That prior to being examined, the witness named in
6  the foregoing 30(b)(6) deposition, JACQUELINE ROSS, was
7  duly sworn to testify the truth, the whole truth, and
8  nothing but the truth;
9      That said deposition was taken down by me in
10 shorthand at the time and place therein named and
11 thereafter reduced by me to typewritten form and that
12 the same is a true, correct, and complete transcript of
13 said proceedings
14     Before completion of the deposition, review of the
15 transcript { } was {X} was not requested  If requested,
16 any changes made by the deponent (and provided to the
17 reporter) during the period allowed, are appended
18 hereto
19     I further certify that I am not interested in the
20 outcome of the action
21     Witness my hand this 14th day of January, 2016
22
23
24              _____
25              KARLA MEYER BAEZ, CSR NO  4506