UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------- X
                                                         :
LEVI HUEBNER, on behalf of himself and all               :
other similarly situated customers,                      :
                                                         :       **MEMORANDUM DECISION**
                                         Plaintiff,      :       **AND ORDER**
                                                         :
                     - against -                         :       14 Civ. 6046 (BMC)
                                                         :
MIDLAND CREDIT MANAGEMENT, INC.                          :
and MIDLAND FUNDING LLC,                                 :
                                                         :
                                       Defendants.       :
-------------------------------------------------------- X

**COGAN**, District Judge.

Before me is the motion of defendants Midland Credit Management, Inc. and Midland

Funding LLC (collectively, "defendant") for attorneys' fees, costs, and sanctions.   If there was

ever a mountain made out of a mole hill, it is this case.  Plaintiff, an attorney experienced with

the Fair Debt Collections Practice Act ("FDCPA"), 15 U.S.C. § 1692, sought to parlay his $131

debt into a technical violation so that he could serve as a class representative in a case where

there was no FDCPA violation, for a class that could never have been ascertained, and where he

would have been the most atypical of representatives if a class could have been ascertained.  My

preliminary rulings and the facts uncovered in discovery made these problems clear, but he did

not give up, doubling down on his efforts to make something out of next to nothing.  For its part,

defendant, perceiving the vulnerability of plaintiff's position, responded in kind by throwing

every impediment and all of its resources in plaintiff's way.  In the process, common sense

departed and huge amounts of attorneys' time and fees accrued.  Plaintiff has already been

nominally sanctioned twice for his conduct, prior to my decision granting defendant's motion for

summary judgment, in an effort to reorient plaintiff's perspective.  That was ineffective, and I am

compelled to grant defendant's motion in part, although considering defendant's approach to the case, the sanction will not be nearly what it seeks.

## BACKGROUND

The factual background of this case is set out in detail in this Court's June 6, 2016 Memorandum Decision & Order, granting defendant's motion for summary judgment and denying plaintiff's motion for class certification. See Huebner v. Midland Credit Mgmt., Inc., No. 14 Civ. 6046, 2016 WL 3172879 (E.D.N.Y. June 6, 2016). To summarize, plaintiff allegedly had an outstanding debt of $131 that he owed Verizon for work it had done on his home telephone line. Defendant eventually purchased that debt.

After defendant attempted to contact plaintiff several times, plaintiff called defendant and recorded this call. Plaintiff stated that he wanted to dispute the debt. When defendant's representative asked him why, plaintiff repeatedly gave ambiguous and non-responsive answers. Notwithstanding that, as a result of the call, defendant marked plaintiff's debt as disputed; defendant requested multiple times that the three recognized credit reporting agencies (Experian, Transunion, and Equifax, the "CRAs") delete the debt from plaintiff's credit report; it sent notice to plaintiff in writing that it was stopping collection efforts and that it had notified the CRAs to not list the debt; and it did, indeed, cease collection efforts.

Plaintiff filed this suit alleging a number of violations of the FDCPA. Shortly after plaintiff filed his complaint, I ordered plaintiff to show cause why the complaint should not be dismissed with leave to amend for failing to provide a short and plain statement of the case.[1] In response, plaintiff filed his First Amended Complaint. The initial status conference was adjourned twice at plaintiff's request. At the initial status conference, in explaining his theory of

---

[1] The complaint was more like a brief. It cited 28 reported and unreported decisions from various courts, each with parenthetical discussions, some of which were over one paragraph long.

the case, plaintiff's attorney represented that defendant told plaintiff that he could only dispute his debt in writing. I asked for a copy of the recording of the call. When I listened to it after the conference, it was clear that defendant had not imposed any sort of writing requirement on plaintiff. I therefore ordered plaintiff to explain why the case should not be dismissed with fees and costs awarded and Rule 11 sanctions imposed. Huebner v. Midland Credit Mgmt., Inc., 85 F. Supp. 3d 672 (E.D.N.Y. 2015).

Plaintiff sought, and was granted, two extensions prior to responding. Plaintiff's response asserted new theories of the case and also frivolously sought my recusal. I chastised plaintiff for making representations that were "an attempt to mislead defendant and the Court, just as plaintiff himself attempted to trick defendant into committing an FDCPA violation." Huebner v. Midland Credit Mgmt., Inc., 14 Civ. 6046, 2015 WL 1966280, at *7 (E.D.N.Y. May 1, 2015). I also imposed a sanction of $500 on plaintiff's counsel.

Plaintiff pressed onward, subsequently filing both a second and third amended complaint. Extensive discovery ensued. Both parties came to the Court several times during discovery, seeking extensions or asking me to resolve various disputes.[2] Defendant was slow to provide plaintiff with all of the discovery that the Court ordered it to produce, and plaintiff was forced to approach the Court multiple times to seek its intervention. In response, defendant untimely argued that certain discovery requests were unduly burdensome and that it did not have access to specific documents that the Court had ordered it to produce. On four separate occasions, I was forced to explain defendant's discovery obligations to it and reprimand it for failing to comply with these obligations in a timely fashion. Plaintiff's counsel, for his part, moved to revoke certain "confidential" designations applied to defendant's documents. I held that this motion was

---

[2] To the extent that defendant's motion seeks sanctions based on these disputes, such as plaintiff's interference during the deposition of defendant's corporate representative, I am not considering it. Defendant should have sought sanctions when the disputes arose.

frivolous because the parties' jointly-stipulated protective order addressed precisely how to address the situation for which plaintiff was requesting relief.  I sanctioned plaintiff $350 for delaying resolution of this action by filing this motion.

At the close of the extended discovery period, defendant moved for summary judgment and plaintiff moved for class certification.  Plaintiff retained new counsel, Pomerantz LLP ("Pomerantz"), prior to opposing defendant's motion for summary judgment.  Pomerantz did not replace plaintiff's previous counsel, Poltorak P.C. ("Poltorak"); rather, Pomerantz took on a co-counsel role.  I issued a decision granting defendant's motion for summary judgment and denying plaintiff's motion for class certification.  Shortly thereafter, defendant moved for attorneys' fees, costs, and sanctions.  Pomerantz moved to withdraw as plaintiff's counsel; I granted its motion because it had a potential conflict of interest with plaintiff and his other counsel in defending against the sanctions motion.

Finally, it is also worth noting that during the course of the litigation, defendant repeatedly warned plaintiff and Poltorak, that it intended to seek attorneys' fees and costs from plaintiff if he and his attorneys continued to pursue his claims.

## DISCUSSION

I.  **Legal Standard**

A.  *Motion for Fees and Costs Pursuant to 15 U.S.C. § 1692k(a)(3)*

The FDCPA includes a fee shifting provision that states that "[o]n a finding by the court that an action under this section was brought in bad faith and for the purposes of harassment, the court may award to the defendant attorneys' fees reasonable in relation to the work expended and costs."  15 U.S.C. § 1692k(a)(3).  "Defendant must provide evidence of plaintiff's bad faith (as opposed to counsel's bad faith) and proof that the suit was instituted for the purpose of

harassment." Hasbrouck v. Arrow Fin. Servs. LLC, No. 09 Civ. 748, 2011 WL 1899250, at *7 (N.D.N.Y. May 19, 2011) (internal citation omitted); see also Puglisi v. Debt Recovery Solutions, LLC, 822 F. Supp. 2d 218, 233 (E.D.N.Y. 2011) (same).

### B.  Motion for Fees and Costs Pursuant to 28 U.S.C. § 1927

A separate statutory provision provides for the recovery of fees and costs from "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously [that he] may be required by the court to satisfy personally" those costs "reasonably incurred because of such conduct."  28 U.S.C. § 1927.  To impose sanctions under § 1927, a court must find clear evidence that "(1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith – that is, 'motivated by improper purposes such as harassment or delay.'"  Eisemann v. Greene, 204 F.3d 393, 396 (2d Cir. 2000) (quoting Schlaifer Nance & Co. v. Estate of Warhol, 194 F.3d 323, 336 (2d Cir. 1999)).  A claim is without color when it lacks any basis in law or fact.  Schlaifer, 194 F.3d at 337.  The inquiry is "whether a reasonable attorney . . . could have concluded that facts supporting the claim might be established, not whether such facts actually had been established."  Id.  The ability to make a judgment as a matter of law on the claim at issue is "a necessary, but not a sufficient, condition for a finding of a total lack of a colorable basis."  Id.  A claim is brought in bad faith "only if the actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay."  Id. at 336.

As one leading treatise notes, sanctions under Section 1927 are "designed primarily to punish the offending attorney and to deter the repetition of the sanctionable conduct."  James William Moore et al., Moore's Federal Practice, Judicial Code Title 28 U.S.C. § 1927.2[3] (2012).  In addition, sanctions may include "an award of the attorney's fees and expenses

'incurred' by the party, so that a sanction clearly has a compensatory element as well." Id. (quoting Hamilton v. Boise Cascade Express, 519 F.3d 1197, 1205-06 (10th Cir. 2008)).  A court must make factual findings supported by a high degree of specificity in order to impose sanctions pursuant to this provision.  See Wolters Kluwer Fin. Servs., Inc. v. Scivantage, 564 F.3d 110, 114 (2d Cir. 2009).  Sanctions under this provision, as well as those imposed under the Court's inherent power, can be directed against individual attorneys or a law firm as a whole.  See Enmon v. Prospect Capital Corp., 674 F.3d 138, 147 (2d Cir. 2012).

### C.  Motion for Sanctions Pursuant to the Court's Inherent Power

The Court also has broad power to fashion sanctions against an attorney, party, or a non-party for a wide variety of poor behavior, including bad faith and wanton or oppressive conduct. See Chambers v. NASCO, Inc., 501 U.S. 32, 44-50, 111 S. Ct. 2123, 2132-35 (1991); Ransmeirer v. Mariani, 718 F.3d 68 (2d Cir. 2013).  At the same time, sanctions should be imposed cautiously and thoughtfully.  See Knipe v. Skinner, 19 F.3d 72, 78 (2d Cir. 1994). Sanctions imposed pursuant to the Court's inherent power, like those under § 1927, can only be ordered where there is both bad faith and a lack of a colorable claim, and the court makes detailed factual findings to support the sanctions.  See Amaprop Ltd. v. Indiabulls Fin. Servs. Ltd., 483 F. App'x 634, 635 (2d Cir. 2012).

### II.   Analysis

I am not going to impose sanctions against Pomerantz because it had a limited role in this case.  Pomerantz was plaintiff's attorney for a brief time.  During that time it conducted a supplemental deposition, opposed defendant's motion for summary judgment, and moved for class certification.  Keeping in mind my obligation to strictly construe § 1927, Pomerantz's conduct does not rise to the level of bad faith because it did not act in a manner directed to harass

or delay the litigation.  See United Realty Advisors v. Verschleiser, 14 Civ. 5903, 2015 WL 3498652, at *2 (S.D.N.Y. June 3, 2015).  Even defendant has conceded that Pomerantz acted expeditiously once it was retained as counsel.

Defendant argues that Pomerantz multiplied the litigation by moving for class certification and by opposing its summary judgment motion.  First, "even unreasonable and vexatious conduct [] is not sanctionable unless it results in proceedings that would not have been conducted otherwise."  Id.  Deadlines in the case had already been in place for some time before Pomerantz was retained, and based on what I have observed of plaintiff, it is virtually certain that plaintiff would have persisted with the case even if Pomerantz had not agreed to represent him. Second, defendant's argument seems to reduce down to "because plaintiff lost his motions, his attorneys should have to pay defendant's fees."  That is not the law, and treating it as such could discourage lawyers from taking on certain cases where they believe it is a close case.  See Schlaifer, 194 F.3d at 337.  Pomerantz was wrong – it was not a close case – but it chose to represent plaintiff after evaluating his claim and deciding that there was a potentially viable claim.  In addition, plaintiff and his other counsel concealed defendant's warnings and intent to seek fees and costs from Pomerantz.  Failure to disclose this information may have impacted Pomerantz's assessment of the case.

Defendant has not articulated any actual bad faith conduct by Pomerantz.  Moreover, Pomerantz has already suffered significant consequences for its brief role in this lawsuit.  It has agreed to forego its fees for the substantial work it did on the case, and it also had to fully brief both a motion to withdraw and this sanctions motion – both of which it undoubtedly did without compensation.  If a sanction is due against Pomerantz, that is sanction enough for its limited involvement.

7

Poltorak is in a different position.  It was plaintiff's original counsel on this case and it utilized a number of different attorneys throughout this litigation, including Leopold Gross, Steven Goldman, and Elie Poltorak, none of whom took responsibility for putting an end to this case.  Poltorak's conduct is sanctionable under 28 U.S.C. § 1927 because it pursued a claim that had no legal basis, and it acted in bad faith.  Its conduct multiplied the proceedings in this case unreasonably.  It will be jointly and severally liable with plaintiff for the sanctions detailed at the conclusion of this Order.

First, Poltorak represented to the Court that defendant had required plaintiff to dispute his debt in writing.  That was simply false.  When I so ruled based on the recording, which Poltorak had in its possession, Poltorak advanced a new theory of the case.  The new theory – that defendant violated the FDCPA because it asked him questions that plaintiff himself had instigated – had no basis in the FDCPA.  As I discussed in detail in my prior Order, it was absurd to argue that the FDCPA prohibited defendant's representative from asking plaintiff what he meant when he responded to her question by saying that his debt was "non-existent."  It's hard to imagine any person who would not have asked plaintiff what he meant by "non-existent." Plaintiff's statement practically begged for a follow-up question because it was so strange.  I am sure plaintiff knew that, and that is why he said it.

In addition, once defendant's internal documents, which were produced in discovery, proved that it had marked the debt as disputed, reported it to the three recognized CRAs as disputed on multiple occasions and asked them to mark the debt as disputed, sent plaintiff a letter advising him of such, and stopped all collection efforts, Poltorak's failure to recognize that the case was devoid of merit was simply beyond the pale.

On top of this, defendant repeatedly warned Poltorak that if it continued to pursue the case, defendant intended to seek fees and costs.  These warnings should have made counsel think hard about pursuing the case, but if they had any effect, they only caused Poltorak to intensify its efforts.

Throughout the case, Poltorak engaged in other misconduct that unnecessarily multiplied the proceedings.  It filed a baseless motion for recusal; it repeatedly filed pre-motion conference letters that were well beyond the three-page limit in my Individual Practices (on one occasion, for example, a 22-page letter, and on another, a 14-page letter), thus defeating the efficiency purpose behind a premotion conference; and it filed a frivolous motion to remove certain confidentiality designations.

Poltorak had an obligation to review plaintiff's claim and evaluate whether there was any merit to it.  Poltorak clearly did not take this obligation seriously, even after receiving repeated warnings and sanctions from this Court and defendant.  In continuing to prosecute the case, it harassed defendant and caused it to spend a substantial sum to defend the case.

For the same reasons that Poltarak engaged in sanctionable conduct, plaintiff, who the record shows is an attorney and worked hand-in-hand with his lawyers throughout the case,[3] will also be sanctioned pursuant to the fee-shifting provision contained in § 1692k(a)(3), as well as my inherent power to sanction.  Plaintiff's claim was without legal support and was prosecuted in bad faith.  He acted in a manner designed to harass defendant and to try to force it into settling his claim.

Plaintiff pursued his FDCPA claim against defendant long after it was clear that he did not have a viable claim.  Plaintiff initially argued that defendant required him to submit a writing

_____

[3] Defendant asserts, for example, that at the deposition of defendant's corporate representative, plaintiff whispered virtually every question into his attorney's ear, who would then put the question to the witness.  Plaintiff has not denied this.

before it would allow him to dispute his debt, even though his very own recording of the phone call proved that was not true.  Plaintiff responded to this point by alleging that the debt was invalid and that he had not received certain documents, like the cancellation notice, from defendant even though they were mailed to his address.  By the time the case reached the class certification stage, plaintiff was alleging a new theory based on the operative third complaint – namely that the FDCPA had been violated in part because defendant did not mark his debt as disputed, did not inform the CRAs to mark the debt as disputed, and because he was asked questions when he sought to dispute his debt.  All of these positions were either factually without basis or legally wrong.

As plaintiff sought to defend his pursuit of this action, he only made it worse.  He sought to demonstrate that, in fact, even though defendant's records showed that it had marked his debt as disputed as a result of his telephone call and had reported it as such to the three recognized CRAs, defendant's records were false.  But instead of offering his credit report from one of the three recognized CRAs, which would have been simple for him to obtain, to show that the debt was still listed, he put forward a report from a credit aggregator that contained an express caveat that it was not purporting to accurately reflect his credit report.  By not producing his credit report, he did nothing to refute the inference that the debt had actually been removed.  Moreover, not producing a report from the CRAs, and producing a qualified report from an aggregator instead, certainly looked like an effort to further mislead the Court.

Similarly, he attempted to excuse his attempt to entrap defendant's employee into committing an FDCPA violation by portraying himself as a "tester" who was merely ascertaining defendant's compliance with the FDCPA.  The use of "testers" frequently occurs in Fair Housing Act and Americans with Disabilities Act litigation, see e.g., Bernstein v. City of New York, 621

10

F. App'x 56 (2d Cir. 2015); <u>Fair Housing Justice Ctr., Inc. v. Broadway Crescent Realty, Inc.</u>,

No. 10 Civ. 34, 2011 WL 856095 (S.D.N.Y.  March 9, 2011).  I am unaware of the use of

"testers" in FDCPA litigation, although I suppose there is no reason why testers could not be

used to determine compliance with that statute.[4]

　　　But more fundamentally, if one is going to be a "tester" to assess compliance with any

statute, it should go without saying that one must administer a test that has at least a semblance

of relevance and fairness, or else the test has no probative value.  Here, as I pointed out in my

June 6th Order, plaintiff's conduct was the antithesis of that which the "least sophisticated

consumer" would have undertaken.  He deliberately ran the collection agent in circles in an effort

to confuse her.  The least sophisticated consumer would answer a simple question simply, or at

least say that he was declining to answer.  He would not seek to embroil a collection agent in an

existential discussion of the meaning of the word "non-existent."  That is not being a "tester."

Rather, in a broad sense, that is what used to be called barratry.

　　　Plaintiff's position is all the more difficult to justify because he insisted that he was an

"adequate" class representative; that his claim was "typical;" and that there were common factual

questions among the proposed class members even though the conversation he had with the

collection agent would be hard to ever replicate with anyone, even him.

　　　Defendant, however, was not without fault.  Its conduct extended the duration of the case

far beyond what was necessary and made it more difficult for plaintiff to obtain the discovery

that could have brought this case to an earlier conclusion.  Defendant clearly did not take its

discovery obligations as seriously as it should have at the outset of the case, which led it to

---

[4] It may be the case that since the Supreme Court's recent decision in <u>Spokeo, Inc. v. Robins</u>, 136 S. Ct. 1540, 1549 (2016), plaintiff does not even have standing to assert one of his later theories that defendant's representative was precluded from asking him any questions when she marked his debt as disputed.  <u>See Rod v. Columbia Recovery Grp., LLC</u>, No. C16-0191, 2016 WL 6094821 (W.D. Wash. Oct. 19, 2016); <u>Jackson v. Abendroth & Russell, P.C.</u>, ___ F. Supp. 3d ___, No. 4:16-cv-00113, 2016 WL 4942074 (S.D. Iowa Sept. 12, 2016) (collecting cases).

untimely discover that some of its obligations would be somewhat burdensome.  As I stated in a discovery Order on October 15, 2015, "[d]efendants fail to explain why they did not discover and alert the court to these issues of burden as part of the extensive discovery disputes in this matter and why they waited until only four days before the conclusion of supplemental discovery to raise these issues."  Defendant's delay in producing certain documents relevant to plaintiff's motion for class certification forced me to extend plaintiff's deadline to move, thus further delaying the case.   It repeatedly attempted to avoid turning over certain documents that were relevant to plaintiff's case, even though I instructed it to do so.  Defendant's failure to timely comply with its discovery obligations forced the Court to repeatedly intervene in disputes between the parties that it should never have had to address, thus increasing the cost of the litigation and its duration.

Both sides therefore lost sight of the forest for the trees.  It may be that defendant, whose business requires it to regularly defend FDCPA cases, saw an opportunity to use this case, once I pointed out that plaintiff's effort at entrapment had failed, to make its own point to both this plaintiff and future plaintiffs that it won't be pushed around.  If so, that is just as bad a misuse of the litigation process as plaintiff's misuse in bringing this case.  I am not inclined to impose "a pox on both houses," since plaintiff started and unreasonably pursued this action, but I do hold both sides responsible in different degrees for the expansion of this $131 case beyond all reason.

Under these circumstances, a substantial sanctions award would only further distort what should have been a minor litigation.  Although a sanction on plaintiff and Poltorak, jointly and severally, is appropriate, the sanction will be limited to the attorneys' fees and costs incurred in connection with the motion for sanctions and some portion of the attorneys' fees and costs incurred in connection with opposing the class certification motion, as of the various baseless

proceedings in this case, that was the one with the least basis in law or fact. Defendant is ordered to submit proof of its fees and costs related to both its motion for sanctions and its opposition to class certification within 14 days. Alternatively, the parties can have a discussion about this case and resolve this issue themselves.

## CONCLUSION

Defendant's motion for attorneys' fees and costs is granted in part and denied in part as set forth above.

**SO ORDERED.**

_____
                                                       U.S.D.J.

Dated: Brooklyn, New York
       November 10, 2016